# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Henry Stursberg,<br><br>                Plaintiff,<br><br>v.<br><br>Morrison Sund, PLLC,<br><br>                Defendant. | Court File No.:2:21-cv-00825-KSM<br><br><br>**DECLARATION OF RYAN R. DREYER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

STATE OF MINNESOTA   )
                          ) ss.
COUNTY OF HENNEPIN  )

I, Ryan R. Dreyer, being first duly sworn on oath, hereby state and allege as follows:

1.    I am a principal at Morrison Sund, PLLC, the defendant in the above-captioned matter.

2.    Attached hereto as **Exhibit 1** is a true and correct copy of a transcript from a contested hearing in the Minnesota Bankruptcy Court heard on June 10, 2020.

3.    Attached hereto as **Exhibit 2** is a true and correct copy of a Complaint filed by Plaintiff and 1648 Properties, LLC in the State Court of Minnesota (Sherburne County) dated October 14, 2020.

4.    Attached hereto as **Exhibit 3** is a true and correction copy of a Memorandum of Law filed by Plaintiff and 1648 Properties, LLC in the State Court of Minnesota (Sherburne County) dated November 10, 2020.

5.    Attached hereto as **Exhibit 4** is a true and correction copy of a Memorandum of Law filed by Plaintiff and 1648 Properties, LLC in the State Court of Minnesota (Sherburne County) dated December 3, 2020.

6.     Attached hereto as **Exhibit 5** is a true and correct copy of the First Amended Answer and Counterclaim of Defendant filed in the State Court of Minnesota dated November 24, 2020.

7.     Attached hereto as **Exhibit 6** is a true and correct copy Plaintiffs' Answer to Counterclaim filed in the State Court of Minnesota dated December 15, 2020.

8.     Attached hereto as **Exhibit 7** is a true and correct copy of the Order filed by the State Court of Minnesota (Sherburne County) on March 16, 2021.

9.     Attached hereto as **Exhibit 8** is a true and correct copy of the Notice of Case Filing of an appeal filed by Plaintiff and 1648 Properties, LLC issued by the Minnesota Court of Appeals.

10.    Attached hereto as **Exhibit 9** is a true and correct copy of the Statement of Case of Plaintiff and 1648 Properties, LLC filed with the Minnesota Court of Appeals.

11.    Attached hereto as **Exhibit 10** is a true and correct copy of Henry Stursberg's November 10, 2020 Affidavit filed in the Sherburne County District Court.

12.    Attached hereto as **Exhibit 11** is a true and correct copy of Henry Stursberg's May 18, 2020 Motion for Attorney Fees filed in the United States Bankruptcy Court District of Minnesota.

13.    Attached hereto as **Exhibit 12** is a true and correct copy of the Declaration of Ryan Dreyer dated May 15, 2020 filed in the United States District Court for the Eastern District of Pennsylvania Court File No. 2:20-CV-01635-KSM.

14.    Attached hereto as **Exhibit 13** is a true and correct copy of the Declaration of Erika L. Stein dated May 18, 2020 filed in the United States District Court for the Eastern District of Pennsylvania Court File No. 2:20-CV-01635-KSM.

15. Attached hereto as **Exhibit 14** is a true and correct copy of the Declaration of Matthew Burton dated May 18, 2020 filed in the United States District Court for the Eastern District of Pennsylvania Court File No. 2:20-CV-01635-KSM.

16. Attached hereto as **Exhibit 15** is a true and correct copy of Morrison Sund's November 24, 2020 Amended Answer and Counterclaim filed in the Sherburne County District Court.

11. I declare under the penalty of perjury that everything I have stated in this document is true and correct, to the bet of my knowledge.

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Date: 4/26/2021

Ryan R. Dreyer

**Exhibit 1**

1            UNITED STATES BANKRUPTCY COURT

2               DISTRICT OF MINNESOTA

3  --------------------------------------------------------

4  In Re:                BKY No. 20-402-KHS

5  H.J.S.,              Chapter 7

6        Debtor.

7  --------------------------------------------------------

8

9

10      BEFORE THE HONORABLE KATHLEEN H. SANBERG

11         United States Bankruptcy Judge

12

13               * * *

14         TRANSCRIPT OF PROCEEDINGS

15            JUNE 10 2020

16               * * *

17

18  Proceedings recorded by electronic sound recording,
    transcript prepared by transcription service.

19

20          LISA M. THORSGAARD, RPR
          (651) 280-8985

21

22

23

24

25

1          A-P-P-E-A-R-A-N-C-E-S

2

3      Amy Swedberg, Maslon LLP, 3300 Wells Fargo Center,

4   90 South 7th Street, Minneapolis, Minnesota, appeared on

5   behalf of debtor.

6

7      Cynthia Hegarty, Morrison Sund, PLLC, 5125 County

8   Road 101, Suite 200, Minnetonka, Minnesota, appeared on

9   behalf of Matthew Burton.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          P-R-O-C-E-E-D-I-N-G-S

2                    THE COURT:  The next matter on

3    for hearing this afternoon is In Re: H.J.S.

4    It's Case No. 20-00-402.  We have a motion for

5    fees and costs.

6              Counsel, note your appearances, please.

7                    MS. SWEDBERG:  Good afternoon,

8    Your Honor.  This is Amy Swedberg from the

9    Maslon law firm for the movant, H.J.S.

10                    MS. HEGARTY:  Good afternoon,

11    Your Honor.  This is Cynthia Hegarty from

12    Morrison Sund on behalf of the firm.

13                    MR. BURTON:  Good afternoon, Your

14    Honor.  Matthew Burton also appearing but

15    Ms. Hegarty will be doing the argument.

16                    THE COURT:  Okay.  Ms. Swedberg,

17    please proceed.

18                    MS. SWEDBERG:  Sure.  I also just

19    wanted to note for the record that the movant,

20    H.J.S., is also on the phone.

21              And I want to start by saying I don't

22    want to, you know, waste the Court's valuable

23    time summarizing the brief, so I'm going to

24    spend some time just focusing on a few of the

25    salient facts as well as supplement some

1    discussion of the relevant legal authority.

2         You know, as you know, we received the

3    25-page brief from the Morrison Sund firm Friday

4    evening and had very short time to get you a

5    response in order to have the Court have time to

6    read it before the hearing today, so I want to

7    supplement some additional authority.

8         I'm also going to use the acronym H.J.S.

9    to keep the anonymity that the Court ordered.

10   If I slip up and say his full first or last

11   name, I'd ordinarily ask the Court to redact

12   that from the record, but at this point I kind

13   of feel like the cat is out of the bag even

14   though we've opened this miscellaneous

15   proceeding with the initials and even though in

16   the responding brief and Mr. Burton's affidavit,

17   he used those initials.  He also filed public

18   exhibits including unredacted emails and letters

19   and hundreds of pages of pleadings from another

20   federal district court action.

21                 THE COURT:  I'm going to stop you

22   right there, Ms. Swedberg.

23                 MS. SWEDBERG:  Sure.

24                 THE COURT:  The federal court

25   action in Pennsylvania has attached a copy of

1      the transcript of the hearing; isn't that

2      correct?

3                      MS. SWEDBERG:   I understand that.

4      I understand that, yes.

5                      THE COURT:   Okay.   Two things.

6      First of all, doesn't it have the name in that?

7                      MS. SWEDBERG:   It does.

8                      THE COURT:   Okay.   Second of all,

9      I issued an order when you requested that the

10     case be reopened so you could get a transcript.

11     Now, one, the transcript seems to indicate it's

12     before Judge Constantine, which I don't know how

13     that happened.   And the complaint talks about

14     Judge Constantine as opposed to me.   And so I'm

15     not quite sure how that happened because this

16     court did not do the transcript.   That was done

17     elsewhere.

18           And my order indicated that the

19     transcript was not to be used for any purpose

20     without the party receiving it being told it was

21     confidential, and yet, it was filed with the

22     complaint in the Pennsylvania action.   No one

23     came back to me --

24                      MS. SWEDBERG:   I understand.

25                      THE COURT:   -- to seek release

1       from that order.  I mean, I'm -- you know, as

2       far as I'm concerned, your client has waived any

3       kind of privilege or any kind of seal by filing

4       that with the Pennsylvania court without it

5       being under seal with the Pennsylvania court.

6                Can you explain that?

7                     MS. SWEDBERG:  Your Honor, yeah.

8       I will explain that to you and I'll explain the

9       sequence of events and it's unfortunate.

10      Because what happened -- I actually didn't even

11      catch the typo that -- which is an important

12      typo -- that referred to the wrong judge.

13           What had happened was we obtained the

14      recording, you know, shortly after the hearing,

15      as you know.  And then there was some time

16      before we provided it to a court reporting

17      agency to create a transcript.  We provided them

18      with express, explicit instructions and emails

19      that they should mark the transcript

20      confidential as part of a sealed record.

21      Unfortunately, I missed that they didn't do this

22      when we received it back, and I shared it with

23      counsel for my client in Pennsylvania.  I was

24      not aware that it was attached to the complaint

25      until after the complaint had been filed and had

1    not been consulted about that.

2         I do take responsibility for the fact

3    that I missed that the court reporter did not

4    file -- follow our instructions but certainly

5    would have provided some notice, I think, to

6    Pennsylvania counsel and maybe provide them with

7    a copy of the motion that we filed requesting

8    the transcript, so there was -- but I do agree

9    that my client made an intentional decision to

10   waive that anonymity in the context of seeking

11   to enforce his rights after settlement

12   discussions failed.

13        I wasn't a part of those discussions, and

14   so I understand why you're upset, and I

15   understand the point you're making.  And, you

16   know, for purposes of making this hearing easier

17   today, I'm happy just to refer to him as Henry

18   maybe just to keep it a little bit more, you

19   know, straightforward in terms of who we're

20   talking about.

21        But along those lines, I did want to

22   point out that there's another concern I have

23   beyond the identity being disclosed, and that is

24   that the affidavit that was submitted in what

25   seems to be an apparent attempt to sort of shift

1     blame away from the law firm's actions and make

2     Henry look like the bad guy here, is a

3     discussion of confidential attorney-client

4     communications, including litigation strategy

5     and litigation that is still pending in state

6     court.  I'm concerned about that.  Again, the

7     cat is out of the bag.  And our firm is not

8     representing Henry in that pending litigation,

9     but I do want to just point out that that was

10     concerning to me and that my client reserves all

11     rights relating to those disclosures.

12               THE COURT:  Let's just talk about

13     the issue here today.

14               MS. SWEDBERG:  The motion.  Sure.

15               THE COURT:  Let's talk about the

16     motion for fees and costs.

17               MS. SWEDBERG:  Okay.  Understood,

18     Your Honor.  Apologize for that distraction.

19         I just want to talk about the abstention

20     doctrine initially first.  That is very rarely

21     invoked by bankruptcy courts.  I think there

22     were two published decisions in Minnesota both

23     involving companies.  And then the case I had

24     before Judge Ridgway last summer also involved a

25     company.

1           This is an unusual case because it's an

2    individual, not a company.  I think that

3    Morrison Sund could have put the company, 1648

4    Properties, which is also their client, in the

5    case if they were concerned about the value of

6    their attorney lien into a bankruptcy but

7    instead they chose to put Henry in individually.

8           There's another case in which an

9    individual was put into an involuntary and there

10   was a 305 dismissal.  And that's the In Re:

11   Kujawa case.  It's cited in the response brief

12   filed by Morrison Sund for the proposition that

13   303 remedies are not available for a 305

14   dismissal.  But that case is actually very

15   important and relevant to this motion for many

16   reasons that I will talk about directly at this

17   point.

18           First of all, there's a district court

19   appeal of the initial dismissal of the case, and

20   that was heard by the Eastern District of

21   Missouri 1998.  And I'd also just point out that

22   even though it was a filing against an

23   individual, it was really against the business.

24   It was a sole proprietorship and so it was filed

25   against him as d/b/a his business.  So they had

1    no choice but to put him in individually.

2            The appeal of the bankruptcy court's

3    initial dismissal under 305 was heard by the

4    Eastern District of Missouri District Court.

5    And that was in 224 B.R. 104 in 1998.

6            The Court noted, you know, this is really

7    a two-party dispute.  It wasn't the typical

8    reasons you do abstention where it's, you know,

9    maybe a distribution proceeding outside of

10   bankruptcy, best interests of the creditor, but

11   they really saw that filing as wrongful.

12           And in that decision at page 108 the

13   court said that regardless of whether the

14   dismissal was pursuant to Section 305 and

15   regardless of whether the dismissal under that

16   section strips the court of its authority to

17   impose remedies under 303, and it cited that

18   disputed authority knowing -- noting that

19   Kidwell and Trina Associates cases follow in

20   favor of 303 remedies where a decision called

21   Kaufman is against 303 remedies for 305

22   dismissal.

23           And the court said, well, regardless

24   of -- you know, we're not going to decide that

25   issue here because we don't have to because the

1  bankruptcy court, quote, always has the inherent
2  power to impose civil sanctions on the parties
3  who appear before it including costs, attorneys'
4  fees, or actual and punitive damages for abuse
5  of its procedures.
6           And in that case it was actually a
7  bankruptcy filed by an attorney against his
8  former client.  It was -- it actually had five
9  petitioning creditors and met the other
10 requirements for a bankruptcy.  But -- and then
11 after the attorney was removed from the case
12 for -- basically as the filing party, it was
13 unethical for that attorney to be representing
14 the petitioning creditors.  They were removed as
15 counsel and then they filed their own attorney
16 fee claim.  So it does have some similarities to
17 this case.
18           But the reason why I wanted to point out
19 that district court appeal of the In Re: Kujawa
20 decision, which was cited by -- in the response
21 brief is there's a footnote No. 2 in that
22 decision.  And the district court states, after
23 noting the split of authority, in so holding the
24 court respectfully disagrees with the
25 conclusions reached by the district court in

1  Kaufman.

2        In other words, the district court was

3  making an express opinion that the split of

4  authority, if they had to decide upon it, and I

5  realize this is dicta, but that they believe

6  that 303 remedies were still available.

7        In that Kujawa case the bankruptcy court

8  ultimately awarded over $78,000 in attorneys'

9  fees and $100,000 in sanctions.  That was

10  affirmed by the Eighth Circuit Bankruptcy

11  Appellate Panel in 2000 under 256 B.R. 598.

12  They made a small reduction reducing the fees to

13  66,000 based on some legal work clearly

14  unrelated to the consequences from the

15  involuntary bankruptcy filing.

16        The Eighth Circuit Bankruptcy Appellate

17  Panel at pages 608 through 610 of that decision

18  also expressly rejected any arguments that there

19  was unclean hands of the debtor based on some

20  alleged misrepresentations of the debtor.  They

21  rejected the argument that the debtor was

22  getting a windfall.  And they noted that despite

23  the presence of technical requirements for the

24  filing, that there was no bona fide dispute,

25  sufficient number of creditors, appropriate

1     dollar amount, that the bankruptcy filing was

2     improper from its inception, and it undoubtedly

3     constituted unethical conduct on the attorney's

4     part.

5          The court noted that considering the

6     bankruptcy court was sanctioning the attorney

7     for conduct beyond the signing of the pleadings

8     in violation of Rule 9011, we find the inherent

9     power to sanction to be particularly applicable

10    here.

11         So they didn't affirm on the basis of

12    9011, which I acknowledge we did not file our

13    motion under that rule even though the court has

14    sua sponte authority to award that in the form

15    of an order to show cause.  But the court relied

16    on several U.S. Supreme Court and Eighth Circuit

17    decisions in making that decision.

18         One of the -- the U.S. Supreme Court

19    Chambers v. Nasco, Inc. which is 501 U.S. 32

20    1991; Grainer v. City of Champlin.  That's an

21    Eighth Circuit case from 1998.  152 F.3d 787.

22    That recognized the court's inherent power to

23    assess attorneys' fees as a sanction.

24         In Re: Clark.  Another Eighth Circuit

25    case from 2000 which is 223 F.3d 859.

1  Bankruptcy -- they recognize the bankruptcy

2  court has inherent authority to impose civil

3  sanctions for abuses of the bankruptcy process

4  and that Section 105 gives the bankruptcy courts

5  broad power.

6       The Eighth Circuit went on to -- in a

7  subsequent appeal.  They -- they evaluated the

8  situation and they affirmed the attorneys' fees

9  in full and they reversed the award of the

10  $100,000 sanction only.  That was in a decision

11  in 2001 and it was 270 F.3d 578.

12       And the Eighth Circuit recognized that

13  the bankruptcy court recited three separate

14  bases to award attorneys' fees to this

15  individual debtor who wrongfully had a

16  bankruptcy filed against him even though, again,

17  they met the technical requirements.  And that

18  was Bankruptcy Rule 9011, 11 U.S.C. Section 105

19  and its inherent authority.

20       And going back, I want to just highlight

21  some points in the brief including some of the

22  background facts that make this case very unique

23  because, again, it's an involuntary filed

24  against an individual consumer, not against the

25  company.  In fact, virtually a lot of the cases

1       including all the cases that discuss 303

2       remedies not being available as Section 305

3       dismissal and nearly all business bankruptcy

4       filings.  I think Kujawa was the only one.  And

5       in that case they said, well, even if we don't

6       have the authority under 303, the court --

7       bankruptcy court has the authority under several

8       other provisions, including 105, including the

9       inherent authority, and they refer to Bankruptcy

10      Rule of Federal Civil Procedure 9020 and also

11      the ability to sanction.

12              And the Eighth Circuit expressly said --

13      they affirmed the attorneys' fee award on the

14      basis of inherent authority because it went

15      beyond just the signing of the pleadings under

16      9011.

17              Again, this was a filing against an

18      individual consumer.  He was the founding owner

19      of an investment banking firm that has been in

20      business for over 25 years.  It was based on a

21      two-party dispute over unpaid invoices.

22              And the next day after the bankruptcy was

23      filed, I was contacted by Mr. Burton, and they

24      were willing to stipulate to dismiss.  But I

25      explained to him --

1           THE COURT:  Ms. Swedberg.  I'm

2      going to stop you right there.  I want to get to

3      the issue -- two issues.  One is the timeliness

4      of this motion and the fact that the -- there is

5      a proceeding already underway in federal court

6      in Pennsylvania for damages arising out of the

7      bankruptcy filing; isn't that true?

8           MS. SWEDBERG:  Certainly.  Yes.

9      I'll address both those points.

10          THE COURT:  Okay.  Then I'm not

11     sure I have -- you know, I'll just say right

12     now.  I'm not sure I have authority when that

13     portion is already before the Pennsylvania

14     bankruptcy -- excuse me -- Pennsylvania district

15     court.

16          MS. SWEDBERG:  The requests for

17     the attorneys' fees that were incurred in

18     connection with the dismissal is not an issue

19     that's before the Pennsylvania court.  There's

20     not a specific request for damages.  It's not

21     specifically requested in the complaint.  And in

22     connection with the dismissal --

23          THE COURT:  Doesn't the complaint

24     ask for damages arising out of the bankruptcy

25     filing?

1      MS. SWEDBERG:  Your Honor, the

2   action in Pennsylvania was filed in lieu of my

3   client choosing to pursue bad faith remedies

4   under Section 303(i)(2).

5      When the case dismissed was dismissed

6   earlier this year, there was a reservation of

7   rights of all remedies under 303.

8      The attorneys' fees award for dismissal

9   is a routine award.  And if we had dismissed

10  under 303 and provided notice to all creditors,

11  which would then -- then this award would be

12  routine.  Still be within the discretion of the

13  court but it's routine.  And the consent that

14  was offered the day after the petition was filed

15  to stipulate to dismissal was not available

16  without giving notice to all of Henry's

17  creditors, which would have caused him

18  significantly more damage than he already has.

19                THE COURT:  Okay.

20                MS. SWEDBERG:  So that was the

21  reason for it.

22                THE COURT:  I appreciate that.

23  But what you're telling me is there was a

24  conscious decision not to notice all creditors

25  and not to seek sanctions under 303.

1               MS. SWEDBERG:  No.  There was a

2    conscious decision not to notice all creditors

3    and seek dismissal under 305 in order to

4    mitigate the damages.  And I'm not saying that

5    Henry is waiving his rights to seek sanctions

6    under 303.  There is arguments pending right now

7    before the Pennsylvania court on preemption

8    issues but have not been decided.

9               Regardless of how those are decided,

10   though, and regardless of, you know, what

11   happens with that litigation, I can assure you

12   that Henry is not seeking a double recovery, and

13   this is not intended to overlap with the

14   proceedings in Pennsylvania.

15              The reason why, the primary reason why

16   Henry chose to file an action in Pennsylvania

17   rather than coming back to this court for all of

18   his remedies beyond the attorneys' fees, which,

19   again, does not require a finding of bad faith

20   which is something we expressly preserved, and

21   in fact would have filed the motion quite

22   earlier, we actually had a calendar date

23   scheduled with your clerk, and it was the

24   interruption of COVID that postponed that

25   motion.  I didn't view his filing that motion --

1    I explained to Henry -- also, Henry wanted to be

2    here in person before Your Honor for the hearing

3    on the motion for attorneys' fees.  I explained

4    we couldn't do that now.  I also explained the

5    court was coming down with orders that had said

6    only essential matters need to go forward.  So

7    there was a period of time --

8                    THE COURT:  No, no, no.  I have

9    never entered an order, never entered an order

10   indicating that only essential matters would go

11   forward.  I have been hearing routine matters.

12   I've been hearing all matters that I normally

13   hear with the exception of live witness

14   testimony since the very beginning of this.

15            I hear -- I hear lift stays every single

16   week.  I hear motions -- you know, 2004 motions.

17   I hear everything.  I have never entered an

18   order stating that only essential items would be

19   heard.

20                    MS. SWEDBERG:  You're absolutely

21   correct, Your Honor.  I'm referring to more of

22   the general orders that were issued by the

23   federal district court --

24                    THE COURT:  And that does not

25   apply --

1           MS. SWEDBERG:   When the immediate

2     shutdown happened.

3           THE COURT:   That does not

4     apply -- those orders --

5           MS. SWEDBERG:   I agree.

6           THE COURT:   -- the court do not

7     apply to the bankruptcy court.

8           MS. SWEDBERG:   I agree, Your

9     Honor.  And the 100 percent primary reason the

10    motion was delayed is because Henry wanted to

11    appear in person.  And that was something that

12    we -- it was very important to him.  And he was

13    even, you know, willing to risk traveling at

14    that time that that's how important it was to

15    him.  But I told him that this hearing was not

16    going to go forward in person and he couldn't

17    travel here for it.  That was the primary reason

18    we did not move forward with the motion earlier

19    when the COVID interruption occurred.

20          There were also, as I mentioned, some

21    settlement discussions that our firm was not a

22    part of before the Pennsylvania action was filed

23    in which there was an attempt to reach a global

24    resolution of issues and for whatever reason

25    that did not happen.

1    But Henry has the right under the

2    inherent authority of this court and Section 303

3    to obtain an award of attorneys' fees in this

4    context of this bankruptcy filing.

5    And that's -- that's what I want to talk

6    a little bit about, Your Honor, is that in my

7    client's own words, this was the most incredibly

8    emotionally and physical demeaning and

9    exhaustive and destructive thing that's happened

10   to him.  He says it's the worst thing that's

11   happened to him in his entire business career,

12   that his professional and personal life was

13   turned upside down.

14   And I want to focus the Court's attention

15   on what happened just prior to the filing

16   because even though the response cites the Bock

17   Transportation case from the Eighth Circuit BAP

18   as the events leading up to the filing not being

19   relevant, that case is completely

20   distinguishable on its facts.

21   That case concerned a party that was

22   claiming that they were trying to hold some

23   individual liable for a business and so they put

24   the entity in bankruptcy and the court rejected

25   those arguments.

1           But here what we have is emails that

2      express exactly why this debtor was put in

3      bankruptcy.  And I submit to the Court that the

4      Morrison Sund firm knew that it would cause

5      great harm, pain, and suffering, both

6      emotionally and financially, in the form of

7      attorneys' fees as well as how it hurts his

8      credit by putting him in an involuntary

9      bankruptcy.

10          I just want to start with the email sent

11     on Friday, December 13, about a month before the

12     filing --

13               THE COURT:  I don't want to have

14     you go through all of this.  I don't think it's

15     relevant in terms of what -- in terms of, you

16     know, your comment that the court has inherent

17     authority to sanction, et cetera.  But that's

18     not the way you brought this motion.  And I

19     think that there are concerns with regard to the

20     court case that's going on in Pennsylvania and

21     also a time limitation on bringing this motion.

22               MS. SWEDBERG:  I'd like to --

23               THE COURT:  Go ahead.

24               MS. SWEDBERG:  I would like to

25     address that time limitation.

1            The law is very clear.  There is no

2   bankruptcy case that has held that the Rule 303

3   remedies cannot be sought beyond the -- they've

4   always held that you have a reasonable amount of

5   time to seek those.

6            THE COURT:  And is five months

7   reasonable?

8            MS. SWEDBERG:  In the cases I've

9   read there's been -- people have waited as long

10  as two years.  In fact, that's the case that I

11  quoted from in which the party was trying to

12  bring analogy to the Dragonetti Act under state

13  law.  And that was one that actually involved an

14  appeal of the dismissal following, and they

15  basically -- I've seen courts where they have --

16  they have suspended the time period of any kind

17  of limitations during that appeal.

18            And the local rule that was referred to

19  in the DVI Receivables case, that is based on a

20  local rule.  It's not a rule that's in our

21  jurisdiction.  And, you know, it certainly could

22  be.  It certainly could be something that could

23  be brought up in terms of attorneys' fees and

24  setting a time limit for it.

25            But under the Federal Rules of Civil

1    Procedure, under the cases that have -- every

2    bankruptcy case that has looked at this there

3    were two bankruptcy decisions other than the DVI

4    Receivables, case which is not good law for this

5    argument, that were cited in connection with

6    this Rule 54 time limit argument advanced by

7    Morrison Sund and both of those bankruptcy

8    proceedings were adversary proceedings.  And

9    it's clear that Rule 54 through Rule 7054 does

10   extend to adversary proceedings which is -- what

11   is not clear at all and has not been held by any

12   other bankruptcy court to look at this issue is

13   that there is a 14-day time limit on the ability

14   to seek the remedies following dismissal.  And

15   I've looked at nearly every one of these cases,

16   and there is often times a month lag.  Whether

17   it's because of what happened here with

18   settlement communications, whether it's because

19   of a global pandemic happening and my client

20   wanting to sit and personally sit in your

21   courtroom and express to you his concern about

22   how this destroyed him emotionally, physically

23   and has destroyed his business, destroyed his

24   ability to get mortgages as an investment

25   banker, it has caused significant harm.

1            And the reason that the Pennsylvania

2       action was initiated is because -- we were

3       initially looking at bringing a motion for

4       change of venue because this case never, never

5       should have been filed in Minnesota.  That was

6       done wrongfully at the firm's own convenience,

7       and it was done with the representation in the

8       petition that this was -- that Henry either

9       resided, had principle assets in or his

10      principle place of business was in Minnesota and

11      none of that was true.  None of it.

12           He owns the interest in a Pennsylvania

13      limited liability company that has a minority

14      interest in a Minnesota entity that used to own

15      some real property that went into foreclosure in

16      December of last year.  And while they may have

17      a redemption right, this company that he has a

18      minority interest in through his Pennsylvania

19      company, that's the only connection to

20      Minnesota.  He does not have his principle

21      assets in Minnesota.

22           It would have been completely appropriate

23      to seek a change of venue to Pennsylvania and

24      maybe we should have done that and dragged out

25      the petition longer just so that he could pursue

1      his remedies in Pennsylvania.  But we didn't do

2      that because we wanted to get the case dismissed

3      as soon as possible so he could start using his

4      credit cards again.

5             There was so much we went through to try

6      and get those reinstated.  His credit --

7      notwithstanding the, you know, no credit

8      reporting order, his credit score has still been

9      harmed because of the way the credit card

10     companies have still responded.  You know,

11     trying to explain to a manager on a credit card

12     company on the phone, you know, the fact that

13     this was an involuntary bankruptcy and it was

14     promptly dismissed doesn't mean much.  They hear

15     the word bankruptcy and they think of one thing.

16     We don't want to extend credit to this person.

17            And even though some of his credit cards

18     were reinstated, those credit cards, the limits

19     were cut.  I mean, there's certain places he

20     still cannot even get a credit card.  And this

21     is just one aspect of his damages.

22            The most important aspect is how it's

23     injured his business.  And he wanted to pursue

24     his remedies in his home state.  We looked at

25     bringing a motion for change of venue so that

1    those issues could be heard.  And we are

2    concerned, Your Honor, with the fact that a

3    final order had already been entered in

4    connection with the case that was initially

5    ordered and that the supplemental proceedings

6    were pending and in terms of the timing on

7    change of venue.  And so that's the reason for

8    the delay and that's the reason for the

9    Pennsylvania action.

10    But notwithstanding that there is a

11    Pennsylvania action pending, he is not seeking a

12    double recovery.  The sanctions in terms of the

13    attorneys' fees that he had to pay just to get

14    this case dismissed, and it didn't matter that

15    the Morrison Sund law firm contacted me the day

16    after they filed it and said well, we'll

17    stipulate to dismissal.  I think they thought

18    they could just withdraw it or dismiss it

19    quickly.  And this was all part of that scheme

20    to put pressure on him to move up on his

21    $100,000 settlement offer for invoices.  And

22    that's an improper reason to file for

23    bankruptcy.

24    And the law in the Eighth Circuit is

25    extremely clear that if a bankruptcy is filed

1   for these kind of improper reasons when it's a

2   two-party dispute, I mean, this has been the law

3   in the Eighth Circuit since 1985, that the

4   Eighth Circuit recognizes that's an improper use

5   of bankruptcy to use it as a collection

6   mechanism.

7         And I know you don't want me to go

8   through those emails and I won't, but I would

9   encourage you to read the ones that we submitted

10  with Exhibit A and look at that in comparison

11  even to the affidavit that was just filed in

12  response to this motion.

13        There's one thing I want to point to you

14  in the Burton declaration at paragraph 18 and

15  19.  It states, and I quote, you know, in

16  December '19, Henry sought a 50 percent discount

17  of his fees.  The discount and plan were

18  unacceptable.  And this was relayed to him.  I

19  then spent a period of time attempting to

20  encourage Henry to make a more reasonable offer,

21  "so that the firm's interest in a potential

22  involuntary bankruptcy would abate."

23        And then it goes on to say, Henry needed

24  to make an acceptable offer or the firm would

25  move forward with involuntary bankruptcy.  And

1      the firm elected to act when they didn't receive

2      an acceptable offer.

3              That is not an acceptable reason for

4      filing involuntary bankruptcy.  That's -- this

5      is in the declaration that was just filed in

6      response to the motion as well as the history of

7      the email communications leading up to this.

8              And Henry is seeking damages for what

9      happened to him in connection with the

10     Pennsylvania action, but he is not seeking his

11     award of attorneys' fees in that action for what

12     he had to pay Minnesota counsel to dismiss that

13     case.  That is something squarely within Your

14     Honor's jurisdiction.  It was expressly reserved

15     in the order dismissing the case that he could

16     bring a motion --

17                      THE COURT:  It was expressly

18     reserved.  However, it doesn't necessarily mean

19     he's entitled to it.  Just because there's a --

20                      MS. SWEDBERG:  I understand that.

21                      THE COURT:  -- reservation of

22     rights, doesn't mean somebody actually has the

23     right.

24                      MS. SWEDBERG:  I understand that,

25     Your Honor.  I'm not disputing that you don't

1     have 100 percent discretion here.  This is

2     within the discretion of the bankruptcy court.

3          But I also want to point out, you know,

4     in these Eighth Circuit and Eighth Circuit BAP

5     cases that look at attorneys' fees in somewhat

6     analogous situation, I mean, the Kujawa case has

7     a convoluted history, I agree.  But it was

8     ultimately worded on a wrongful filing.  In

9     fact, in that case they noted that this attorney

10    had threatened involuntary bankruptcy filing

11    against his clients in the past and had, like, a

12    history of doing that.

13         I don't suggest that that's the case

14    here, but it certainly happened very quickly in

15    the case of they're attempting to collect fees

16    from Henry.  And that's an improper purpose to

17    file an involuntary bankruptcy.

18         And I'm not asking -- sitting here asking

19    you to sanction the firm.  All I'm asking you to

20    do is to reimburse Henry for the amount he had

21    to pay the Maslon firm to get this mistake

22    fixed.  And whether it was even an unintentional

23    mistake because they thought they could simply

24    stipulate to dismiss it promptly or withdraw it,

25    it was an error.  It was a professional error.

1           This is an attorney who said he's been

2   practicing in bankruptcy for 30 years, since

3   1985.  Eighth Circuit says you do not file a

4   bankruptcy involuntarily against especially an

5   individual consumer for this reason.

6           And I realize there's lots of

7   after-the-fact justifications provided here.

8   There's lots of attempts to cast blame on my

9   client as a bad person.  But even in the Kujawa

10  case where there were allegations that a debtor

11  had been making misrepresentations and was a bad

12  actor in many other ways and that he had unclean

13  hands, the court said, well, that -- that may be

14  the case but it's not giving him a windfall just

15  by reimbursing him for the attorneys' fees.  He

16  had to pay to get the case dismissed.

17          And that is all that we're asking for in

18  connection with, Your Honor, and that's why I

19  provided the breakdown in Exhibit B to say these

20  are the fees that we had to incur up until the

21  January 15 hearing.  I recognize that some

22  courts have viewed that as an appropriate time

23  to cut off a fee award for dismissal.

24          There's many decisions which have

25  recognized the court's discretion beyond that

1      time frame as well as the fees that were

2      incurred in a very hotly contested motion to get

3      reimbursement for these fees.  I mean, I

4      honestly think we're getting close to spending

5      at least half the fees that we had to incur

6      through January 15 just to get the case

7      dismissed.  And to get it dismissed in a way

8      that we were all, at that point after the

9      mistake had been made, all in agreement on.  And

10     there is nothing that could have been done to

11     save Henry those fees.  He had to go through

12     that proceeding or it would have required

13     dismissal under 303 notice to all of his

14     creditors.

15           And if this court really views this as an

16     improper situation to provide attorneys' fees, I

17     just want you to consider what his alternative

18     was.  He could have moved for change of venue.

19     He could have gotten the case moved to

20     Pennsylvania to preserve his right to pursue his

21     303 bad faith remedies there.  He could have

22     agreed to notice to all of his creditors and

23     which would have compounded his damages, and he

24     could have increased the amount of damage he

25     would have sought for wrongful filing.  And then

1    he could have, by doing that, guaranteed he was

2    going to get -- have the right, express right

3    under the law to get those 303 remedies.  And we

4    wouldn't be here dealing with whether 303

5    remedies are available for 305.

6         The point I'm trying to make in pointing

7    you to these inherent authority and these other

8    cases is that I really believe that, Your Honor,

9    if this was a case dismissed under 303, we

10   wouldn't have any question here.  And the reason

11   we did 305 is because we were trying to mutually

12   find a way to mitigate his damages.

13        And the -- but the damages occurred.  And

14   you know, his credit card was literally turned

15   off within about 24 hours.  I think that's even

16   how he found out about the case before he was --

17   even received a copy of the petition.  And when

18   we talked in January about trying to, you know,

19   work out a global resolution, Henry at that

20   point had no clue, no idea the extent of how

21   this would come to continue to haunt him in his

22   professional and personal life.

23        And I made it very clear, even in the

24   emails that were submitted to the Court, that

25   there was going to be no agreement reached and

1    that Henry was reserving all of his remedies

2    until after dismissal.  And then we would,

3    quote, negotiate for an agreement.

4         And now, you know, Morrison Sund is

5    complaining that there was some oral agreement

6    reached with my partner, Chris Sur.  He

7    100 percent denies that.  He even told them that

8    we can't agree on anything because the automatic

9    stay is in place.  And we are presenting the

10   court with dismissal on the basis of no

11   collusive settlement with a single petitioning

12   creditor, which is a basis to -- which is the

13   whole reason why the Code says give notice to

14   all creditors under 303.

15        So there was -- there was no agreement.

16   Henry had no idea what the scope of his damages

17   would be when the petition was just filed.  And

18   after it was dismissed, there were several

19   attempts, I believe, over a period of weeks.  I

20   was not a part of those negotiations, but I do

21   know that there were negotiations for a long

22   time while we're trying to reach a global

23   resolution.  And when that could not be reached,

24   we had a pending motion -- or excuse me -- had a

25   hearing date scheduled.  Henry said I want to

1    personally be there.  And I've said this is not

2    a time when the court is going to give us the

3    personal hearing at any time, you know, for any

4    reason.

5                    THE COURT:  You're going back

6    over ground you've already covered.  I'd like to

7    have you wrap it up.

8                    MS. SWEDBERG:  I respect that.

9                    THE COURT:  Okay.

10                   MS. SWEDBERG:  I respect that.

11   Thank you.  And again, I'm not trying to waste

12   your time, and I'm not going to spend any time

13   going over what's already in the brief.  And

14   there is also language in other -- in some of

15   the decisions that I've discovered since then

16   that again support 303 remedy for 305.  I'm not

17   going to belabor that point either because I

18   don't think it's necessary for the Court to rest

19   its ruling on 303.

20           I just want to maybe call attention to

21   the conclusion that I submitted which, you know,

22   points out just how easy it is to file an

23   involuntary bankruptcy and that, you know, it's

24   so simple to just fill out a couple blanks in a

25   petition and e-file it with court.  I mean,

1    that's all it took to destroy this guy.  And

2    that's the reason why the Code views it now as

3    if you do that, you have to pay the price of

4    what it costs to get the case dismissed.

5           And that is the reason we're seeking just

6    the reimbursement of Henry's attorneys' fees

7    from this court and consistent with the

8    statements that were made on the record at the

9    January 15 hearing.  And he is not seeking a

10    double recovery and would not pursue those fees

11    awarded here in any other proceeding.

12           Thank you, Your Honor.

13                    THE COURT:  Thank you.

14    Ms. Hegarty.

15                    MS. HEGARTY:  Thank you, Your

16    Honor.  I'd like to first -- this is kind of

17    different than how I was going to originally

18    approach this, but I'd like to address this in

19    the order in which you've kind of raised some

20    questions regarding timing and regarding the

21    Pennsylvania action.  I do want to talk about

22    this 305, 303 dichotomy that -- let's talk about

23    the things that you were most interested in

24    first.

25           Two issues, I think, need to be addressed

1      in terms of whether this motion is appropriately

2      before the Court now.  One is jurisdictional and

3      one is the timing issue.

4              My first concern is that when the court

5      abstains under 305, it declines to exercise

6      jurisdiction, one.

7              But second, and maybe more importantly,

8      in the order granting the dismissal under 305,

9      the court expressly said at paragraph 2, the

10     motion to dismiss the involuntary petition under

11     303 is denied as moot.  So there was no finding.

12     There was no retention of jurisdiction at all by

13     this court.  And that's the thing that's

14     different here than in every other case that

15     opposing counsel (unintelligible).  In those

16     cases the court has expressly written that they

17     are retaining limited jurisdiction to hear other

18     types of motions dealing with sanctions and most

19     of them have to do with bad faith.

20              The thing that's notable here is that

21     there's been no allegation of bad faith.  They

22     want to talk about how Morrison Sund is the bad

23     guy.  And, you know, we're trying to do the

24     right thing in not harming Henry's business

25     interests because that was never the intent in

1    cooperating.  But what that did is that put us

2    in a position to really not get to talk in

3    January and instead this was really a one-sided

4    thing of either law firm in a two-person

5    dispute.  And that's not at all what this was

6    and I'll get to those facts.

7         So the first contention is the Court

8    doesn't have jurisdiction to hear this.  It was

9    not expressly retained which is required and the

10   abstention (unintelligible) jurisdiction.

11        But secondly, and maybe more importantly,

12   is the issue of timing.  And this is

13   (unintelligible) take a look at it.  This, in

14   fact, is a contested proceeding.  This is

15   stemming from an involuntary petition.  And

16   because it's a contested proceeding, 1018 allows

17   Rule 7050 (unintelligible).  And we've got to

18   then take a look and determine does he actually

19   comply with 7054 and filed within 14 days after

20   entry of judgment.  In this case he didn't.

21        If you take a look at Ms. Swedberg's time

22   records, she started drafting this petition well

23   within that 14 days.  She just chose not to file

24   it.  And the thing that's even more instructive

25   is that she's sitting here giving her three

1     reasons for the delay today.  One, the pandemic,

2     which the Court has already pointed out is no

3     reason because everything has continued to go

4     forward telephonically.

5          But secondly, settlement discussions in

6     the Pennsylvania case.  And this isn't --

7     there's no evidence but I'll tell you there were

8     no discussions.  We reached out.  We said we'd

9     like to talk about settlement.  We were told

10    categorically there will be no settlement

11    discussions until the motions are decided.

12         Let's not pretend that there were ongoing

13    settlement discussions because that was not

14    factually what happened.

15         Third, the fact that he wants to appear

16    during a pandemic doesn't mean that you just get

17    to wait and wait and wait and wait and wait for

18    a deadline waiting for the pandemic to be over.

19    There was no order by any court setting time

20    limits as a result of COVID-19.

21         And so for that reason, I believe not

22    only their lack of jurisdiction but the matter

23    has been time barred.

24         Next, the Pennsylvania action is

25    something that's concerning to me because, you

1    know, we're in bankruptcy court here.  This is a

2    court that requires a measure of transparency

3    and honesty that we don't always see in district

4    court.

5         And, frankly, I'm really concerned about

6    the fact that there was no disclosure that

7    attorneys' fees were being sought in the

8    Pennsylvania action.  There was just cursory

9    reference to the fact that it even existed at

10   all.  This whole notion that we have to spend a

11   lot of time and money to protect Henry's

12   identity through sealing an expungement is all

13   just a big legal fiction and (unintelligible) of

14   legal fees that he's now trying to recoup from

15   my law firm because as soon as the next thing

16   that happens, he runs to a Pennsylvania attorney

17   who not only attaches the involuntary petition

18   as Exhibit A to the complaint, but then also

19   attaches the entirety of the transcript without

20   court permission.  And neither of those things

21   suggest to me really that confidentiality was a

22   big deal at all.  It was an effort to run up

23   fees to try to stick it to the law firm.

24        When you look at the history

25   (unintelligible) here (unintelligible) Leonard

1       Street was the first law firm that represented

2       the movant.  Ran up fees of about $250,000.

3       Decided he didn't want to pay those --

4                   THE COURT:  Ms. Hegarty, I'm

5       going to interrupt you.  I don't think that's

6       terribly relevant for today's motion.  Let's

7       just stick to what is relevant for today.

8                   MS. HEGARTY:  Well, so let's go

9       back to the Pennsylvania action.  There's now

10      multiplicity that's being sought.  They're

11      trying to seek attorneys' fees through

12      Ms. Swedberg's firm in this action.  They're

13      seeking the same fees in the Pennsylvania

14      action.

15          Under the first to file doctrine this

16      court shouldn't be hearing that matter because

17      the Pennsylvania action is pending first before

18      this motion was filed, that issue.

19          The next issue that I think is important,

20      Your Honor, is this 305, 303 dichotomy.  And

21      here's where I think that the cases upon which

22      Ms. Swedberg is relying are inherently wrong.

23      And this really goes to strict construction of

24      the plain language of the Bankruptcy Code.

25      There are two reasons here that attorneys' fees

1     can't be awarded under 303(i) regardless of the

2     jurisdiction and timing issues we just

3     discussed.

4          303(i) first says if the court dismisses

5     a petition under this section.  Now, the plain

6     language of that suggests that there's dismissal

7     under the section.  The way the cases that are

8     stemming from the Ninth Circuit that

9     Ms. Swedberg cites is they're reading an extra

10    word into it.  They're reading in the word, if a

11    court dismisses a petition filed under the

12    section.  That's not what it says.

13         And the reason we know that there's a

14    difference is if you look at page 303(j),

15    303(j), in fact, says, only after notice to all

16    creditors at the hearing may the court dismiss a

17    petition filed under this section.

18    (Unintelligible) of this statute understood how

19    to use the word.  And the word "filed" doesn't

20    appear in 303(i).  And because the Court did not

21    dismiss the petition under 303(j), doesn't get

22    to award attorneys' fees or any other kind of

23    sanctions under 303(1), 1 or 2.

24         But that's not even the first reason.

25    The other reason is it then says, if a court

1       dismisses a petition under this section other

2       than on consent of all petitioners, only then

3       does the right to award to attorneys' fees

4       arise.

5            You just heard Ms. Swedberg even admit

6       once the firm filed involuntary petition on

7       Wednesday, January 8, on Thursday, January 9,

8       prior to the filing of the motion to dismiss,

9       Mr. Burton sent an email to Ms. Swedberg and

10      told her categorically that we were willing to

11      consent to dismissal of this.  The only reason

12      for that was we had been told that this was

13      going to hurt Henry's business opportunities at

14      his company, and that was not what we were

15      hoping to do.  We didn't realize that he had his

16      personal and his business matters so commingled.

17      It wasn't a sole proprietorship.  It was a

18      corporate entity.  And when we learned that

19      that's not how he's conducting his business, we

20      did want to assist him in minimizing any damage

21      to his business.  We weren't -- we didn't have

22      any issues with (unintelligible).

23           So we consented to this dismissal well

24      before Friday at 11 p.m. when she decided to

25      file the motion to dismiss, thereby incurring

1    all these additional legal fees.

2    (Unintelligible) to the court very quickly

3    without all the briefing and all the legal

4    argument, and that's not what they chose to do

5    here.

6    So I think when we take a look at the

7    plain language of the statute along with the

8    reasoning in Kaufman v. RCO Implant

9    Technologies, 182 C.R. 115 from the District of

10    Maryland in 1995, it discusses the split of

11    authority, but it also talks about the

12    importance of the legislative history under

13    303(i) which discusses that a dismissal under

14    305 does not give rise to a damages claim under

15    303(i) or otherwise.

16    And the reason for that is the dismissal

17    wasn't under 303.  And here the consent of the

18    petitioning creditor was given.  But maybe more

19    importantly, it's axiomatic that attorneys' fees

20    do not arise unless it's part of a contract or

21    it's expressly provided for in the statute.  And

22    11 U.S.C. 305 does not discuss any award of

23    attorneys' fees when the court has dismissed an

24    involuntary petition based on the doctrine of

25    abstention.

1          So I'm sorry to have to say it, but it's

2     not the first time I've said it, the Ninth

3     Circuit got it wrong.  And, unfortunately, we

4     don't have -- we don't have authority in this

5     district.  But I think (unintelligible) of

6     authority, if this case is going to be decided

7     on that, that that's an issue that's -- all of

8     us expending some additional time on because

9     it's important and the plain language of the

10    statute matters.

11          I mean, at this point it doesn't sound

12    like Your Honor really wants to wade into the

13    mud with the facts.

14                    THE COURT:  No, I don't.  I

15    think --

16                    MS. HEGARTY:  I'm not going to do

17    that.

18                    THE COURT:  I think this may be

19    able to be determined based on the procedural

20    issues that I mentioned earlier.  So I don't

21    think we need to wade any further into the

22    facts.

23                    MS. HEGARTY:  One of the other

24    things, the only other thing I'd like to say for

25    the record are twofold.

1          One, Ms. Swedberg had included in

2     Exhibit A in the movant's reply brief kind of a

3     chart that she's made that is a summary of some

4     emails but not all but doesn't give the full

5     context of the discussion and was really drafted

6     in such a way as to paint my firm in a bad

7     light.  And, one, I -- I ask that it be

8     stricken.  It is not evidence and it should not

9     be part of this record.

10         Second, to the extent that the Court is

11    to consider any of this on the merits with

12    regard to the mud slinging, I want discovery and

13    an evidentiary hearing because our law firm has

14    not had an opportunity to present the good faith

15    basis for this filing, and I think that that is

16    warranted.  Additionally --

17              THE COURT:  Ms. Hegarty, isn't

18    that part of the suit in Pennsylvania?  I mean,

19    aren't you going to be able to have

20    discovery, et cetera?

21              MS. HEGARTY:  We will but if

22    we're going to have -- but if we're going to be

23    sitting here slinging mud and talking about

24    using the Court's inherent authority to sanction

25    us here, I think that the Court needs to

1    understand what the good faith basis were for

2    the filing rather than just sit here and listen

3    to Amy recite continually (unintelligible)

4    two-party dispute and need to be slapped.

5    There's more to it than that simple -- the

6    simple discussion that she's thrown out there.

7    And, again, I'm not going to get into the facts

8    if you don't want to hear them.

9                    THE COURT:  No.

10                    MS. HEGARTY:  And we do have an

11   opportunity to deal with these Pennsylvania

12   (unintelligible) and will.  But what happened

13   to -- I was most concerned about in January,

14   Henry put in an extensive declaration saying the

15   law firm did all these horrible -- and because

16   we were consenting to the release sought, it

17   wasn't worth going through, but I do believe

18   he's perjured himself in that declaration, and I

19   know that we can prove that.

20                    THE COURT:  Okay.  Now, again,

21   you're getting into weeds that I don't want to

22   wade into.  So do you have anything further that

23   you want me to consider?

24                    MS. HEGARTY:  Honestly, not that

25   wasn't already before the Court.  We've already

1  talked about the lack of candor with respect to

2  the Pennsylvania action.  And I think that

3  unless there's been anything else that you would

4  like me to address that you think is relevant to

5  your consideration, I don't think that there's

6  anything else (unintelligible).

7              THE COURT:  Okay.  Ms. Swedberg,

8  ordinarily I would give you an opportunity to

9  respond but, quite frankly, I think I have heard

10  enough.

11       I want to take a 15-minute break.  It's

12  approximately 3:00 now.  If you want to get off

13  the phone and dial back in at 3:15, I'll render

14  an oral decision at that time.  So we are in

15  recess until 3:15.

16       (A break was had in the proceedings)

17              THE COURT:  Good afternoon.  We

18  are back in the H.J.S. case on the motion for

19  attorneys' fees and costs.  I'm going to go

20  ahead and go through my decision.

21       Before the Court is H.J.S.'s motion for

22  attorneys' fees and costs pursuant to

23  Section 303(i)(1) of the Bankruptcy Code.

24       H.J.S. seeks to recover from petitioning

25  creditor, Morrison Sund, PLLC, in excess of

1    $50,000 in damages for services rendered in

2    connection with the dismissal of an involuntary

3    petition filed against H.J.S. in Case

4    No. 20-40050.

5          H.J.S. also requests declaratory relief

6    providing that Morrison Sund cannot use its

7    disputed prejudgment -- prepetition judgment as

8    a basis to set off any award of legal fees and

9    costs.  Morrison Sund opposes the motion and

10   requests an order denying it in its entirety.

11         The instant supplementary proceeding

12   originates from the sealed involuntary Chapter 7

13   case filed on January 8, 2020, by petitioning

14   creditor, Morrison Sund, against H.J.S.

15         On January 10 H.J.S. filed an expedited

16   motion to dismiss under 11 U.S.C. Section 303

17   for bad faith and/or under Section 11 U.S.C.

18   Section 305.

19         On January 13 Morrison Sund filed a reply

20   consenting to the dismissal of the involuntary

21   petition.

22         On January 14 H.J.S. filed an amended

23   expedited motion to seal under Section

24   303(k)(1).

25         On January 15 the court held a hearing on

1 both motions.  To the court's surprise, H.J.S.

2 requested dismissal under 305(a)(1) rather than

3 under Section 303.  H.J.S. explained the

4 motivation for doing so was to avoid

5 Section 303(j)'s requirement of providing notice

6 to all creditors prior to a dismissal.

7       At the hearing Morrison Sund again gave

8 its consent to dismissal.  The court admonished

9 Morrison Sund for what it appeared to be its use

10 of an involuntary proceeding as an inappropriate

11 debt collection device.  The remainder of the

12 hearing focused on whether the court had the

13 authority to expunge the record.  The court held

14 it lacks such authority under the Bankruptcy

15 Code.

16       The court dismissed the involuntary

17 petition under Section 305(a)(1) ruling that

18 dismissal would be better served -- excuse me --

19 that dismissal would better serve the interests

20 of creditors and the debtor.

21       At the vehement request of H.J.S. the

22 court granted the amended motion to seal and

23 exercised its discretion to seal the records

24 relating to the involuntary petition pursuant to

25 Section 303(k)(1).

1           Further, the court exercised its

2     discretion to mitigate any harm to H.J.S. by

3     prohibiting all consumer reporting agencies from

4     making any consumer reports with information

5     relating to the involuntary proceeding under

6     Section 303(k)(2).

7           On January 15, the court entered an order

8     consistent with its ruling at oral argument.

9           H.J.S. commenced the instant supplemental

10    proceeding on January 23, 2020.

11          On March 26, 2020, H.J.S. filed a

12    complaint in the Eastern District of

13    Pennsylvania against Morrison Sund, PLLC, and

14    Matthew Burton asserting various tort claims and

15    alleging damages stemming from the involuntary

16    case -- bankruptcy case.  And that was case

17    No. 20-CV-1635.  The Court takes judicial notice

18    of the Pennsylvania action.

19          The court has jurisdiction over this

20    proceeding under 28 U.S.C. Sections 157(b) and

21    1334, Federal Rule of Bankruptcy Procedure 5005,

22    local Rule 1071-1.  Venue in this court is

23    proper pursuant to 28 U.S.C. Section 1408 and

24    1409.

25          For the reasons to be discussed, H.J.S.'s

1    motion is denied.

2         Timeliness.  As a threshold matter,

3    Morrison Sund argues that the motion is time

4    barred.  Federal Rule of Bankruptcy Procedure

5    1018 provides that certain rules in part 7 apply

6    to all proceedings contesting an involuntary

7    petition.  Despite H.J.S.'s argument otherwise,

8    the instant matter is, without question, a

9    proceeding concerning a contested involuntary

10   proceeding.  It involves and originates from the

11   contested involuntary petition.  See, 9 Collier

12   on Bankruptcy paragraph 1018.01 (16th ed. 2019).

13        If Morrison Sund had not filed the

14   involuntary petition, H.J.S. would have no basis

15   for recovery in the instant supplemental

16   proceeding.

17        Rule 7054 is one of the enumerated rules

18   in Rule 1018.  Federal Rule of Civil Procedure

19   54 made applicable by Rule 7054 states that

20   unless the statute or court order provides

21   otherwise, a motion for fees and related

22   nontaxable expenses must be filed no later than

23   14 days after entry of judgment unless

24   substantive state law requires those fees to be

25   proved at trial as an element of damages.  Fed.

1    R. Civ. P. 54(d)(2)(B)(i) and Fed. R. Bankr.

2    P. 7054(b)(2)(A).

3         The parties do not dispute that the

4    dismissal order is a judgment within the meaning

5    of Section -- excuse me -- of Rule 54(a).  The

6    fees at issue in this motion are not required to

7    be proved at trial as an element of damages.

8    The dismissal order did not expressly reserve

9    the court's jurisdiction to hear the issue of

10   fees and costs beyond the 14-day deadline

11   imposed by Rule 54 or otherwise suspend

12   Rule 54's time limits.  All the dismissal order

13   provides is that nothing in it shall prejudice

14   H.J.S.'s right to file and pursue claims and

15   remedies against petitioning creditor.  Because

16   there is no court order or statute providing

17   otherwise, under the plain language of the

18   federal rules, the 14-day time limit appears to

19   apply.

20        The Court recognizes that there are out

21   of circuit case law and authority standing for

22   the proposition that there's no specific statute

23   of limitations for seeking fees and costs under

24   Section 303(i).  See, for example, In Re:

25   National Medical Imaging, LLC, 570 B.R. 147, 157

1    (Bankr. E.D. Pa. 2017); In Re, Imani Faye LP,

2    2022 WL 5418983, at 6 (B.A.P. 9th Cir.

3    November 7, 2012); and In Re: Capital Finance,

4    Inc., 2007 WL 7535047, at 6-7 (B.A.P. 9th Cir.

5    2012).

6         However, the Ninth Circuit BAP cases were

7    both decided before Rule 7054 was amended in

8    2014.  The amendment prescribed the procedure

9    for seeking an award of attorneys' fees and

10   costs by incorporating most of the provisions of

11   Rule 54(d)(2).  In making their decision, the

12   Ninth Circuit BAP cases relied in part on

13   Rule 7054's then exclusion of Rule 54(d).

14        The bankruptcy court in National Medical

15   Imaging provides rule analysis on the issue

16   beyond citing to the two BAP cases discussed

17   above.  In Re: National Medical Imaging, LLC 570

18   B.R. 156-57.

19        Here the court entered judgment on

20   January 15, 2020.  Under the Federal Bankruptcy

21   Rules and Rules of Civil Procedures, the

22   deadline to file a motion for fees and costs

23   expired on January 29, 2020.  H.J.S. did not

24   file the instant motion until May 18, 2020, over

25   100 days after the time expired.

1          H.J.S.'s reasons for the delay include

2     negotiations and having had a time for a

3     hearing, although they didn't file any motion

4     and did not go forward with the hearing.  The

5     Court agrees that the motion is untimely.

6          Now I want to talk about the interplay

7     between Section 303(i) and Section 305.

8          The plain language of section 303(i)

9     provides that if a court dismisses a petition

10    under this section other than on consent of all

11    petitioners and the debtor, the court may, in

12    its discretion, award attorneys' fees and costs

13    against the petitioning creditor and in favor of

14    the debtor.  Thus, even assuming the motion is

15    not time barred, dismissals pursuant to Section

16    305 preclude recovery under section 303(i).

17    See, 2 Collier on Bankruptcy paragraph 303.33 at

18    10, (16th ed. 2019).

19         The Court recognizes that there is a

20    authority on this issue and there's a lack of

21    binding Eighth Circuit authority on whether

22    303(i) can be utilized in the context of a

23    dismissal under Section 305(a).  But the

24    bankruptcy court's plain language and the

25    legislative history is clear.  Both the House

1    and Senate reports explicitly provide that a

2    dismissal in the best interests of creditors

3    under 305(a)(1) would not give rise to a damages

4    claim.  S. Rep. No. 95-989, at 34 (1978).  H.

5    Rep. -- excuse me -- No. 95-595, at 324 (1977).

6    See also, 2 Collier on Bankruptcy 303.33.

7         Further, the few courts in the Eighth

8    Circuit that have addressed the issue concluded

9    the damages under 303(i) are unavailable in a

10   case dismissed under 305.  See, under Kujawa,

11   2000 WL 33954570, at 16-17 (Bankr. E.D. Mo.

12   2000); In Re: Iowa Coal Mining Company, 242 B.R.

13   661, 673 (Bankr. S.D. Iowa 1999).

14        The underlying rationale is sound.  It

15   would be inconsistent to decline to exercise

16   jurisdiction and dismiss a case on the grounds

17   that the parties' interests are best served by

18   the court's noninvolvement but then consider a

19   suit for damages stemming from the same

20   procedure.

21        Under basic principles of statutory

22   interpretation if the plain language the statute

23   is clear, it is controlling.  In Re: Family

24   Pharmacy, Inc., 614 B.R. 58, 65-66 (8th Cir.

25   B.A.P. 2020).  And that collects the United

1    States Supreme Court cases.

2          That's where an examination of the

3    statute's ordinary meaning gives a clear answer

4    judges must stop.  Food Marketing Institute v.

5    Argus Leader Media, 139 S. Ct. 2356 at 64

6    (2019).

7          Applying the Bankruptcy Code's plain

8    language and following the underlying intent of

9    Congress, the Court holds that dismissal under

10   Section 305 precludes H.J.S.'s recovery of

11   Section 303(i) damages.

12         The Court also declines H.J.S.'s

13   invitation to award fees and costs under 11

14   U.S.C. Section 105(a).

15         Finally, and although it has no bearing

16   on my decision, I note that H.J.S. adopts

17   contradictory positions in this proceeding and

18   the Pennsylvania action.  They are in response

19   to a preemption argument advanced in a motion to

20   dismiss, H.J.S. acknowledged that Section 303(i)

21   remedies are unavailable because the involuntary

22   petition was dismissed under Section 305.

23         Consent under Section 303(i).  Morrison

24   Sund argues that even if the motion is timely

25   and permitted by Section 303, it still fails

1    because Morrison Sund consented to the

2    dismissal.  A precondition for damages under

3    Section 303(i) is that the involuntary petition

4    is dismissed based -- dismissed other than on

5    consent to the petitioners and the debtor.

6        In his reply brief H.J.S. attempts to

7    argue that the type of consent Morrison Sund is

8    insufficient to avoid a claim under Section

9    303(i).  The Court disagrees.

10       Morrison Sund filed a reply brief

11   expressly consenting to dismissal three days

12   after H.J.S. filed his expedited motion to

13   dismiss.  Morrison Sund confirmed its consent

14   again at oral argument.

15       Further, the Pennsylvania complaint

16   acknowledged Morrison Sund's consent to the

17   dismissal.  Once again, H.J.S. adopts a

18   contradictory position in this proceeding and

19   the Pennsylvania action.  Morrison Sund

20   consented to the dismissal within the meaning of

21   Section 303(i).

22       Overlapping recovery.  Contrary to

23   counsel's representation, the Court is concerned

24   that H.J.S. is pursuing double recovery in this

25   action and the Pennsylvania action.

1             In the Pennsylvania action H.J.S. seeks

2       to recover damages well in excess of $1 million

3       for abuse of process, wrongful use of civil

4       proceedings, and other light tort causes of

5       action stemming from the involuntary bankruptcy

6       case.

7             The Pennsylvania complaint cites H.J.S.'s

8       legal fees and costs as part of the damages.

9       H.J.S. did not address the Pennsylvania action

10      in any substantive manner until the reply brief.

11            The reply brief acknowledges the

12      Pennsylvania action, as with this action, seeks

13      to remedy the alleged damages caused by the

14      involuntary bankruptcy filing.

15            Given the first to file doctrine and the

16      ongoing nature of the Pennsylvania action and

17      the Court's serious concerns H.J.S. would be

18      seeking overlapping recovery.  In addition to

19      the reasons previously discussed, the Court

20      declines to exercise its discretion to award

21      fees and costs under Section 303(i).

22            Two other matters that I want to address.

23      First, H.J.S. strenuously argued that this court

24      needed to seal and even expunge the record

25      citing the serious and irreparable harm that

1     would befall H.J.S. and his business absent such

2     relief. The Court denied the request to expunge

3     but entered an order sealing the record of the

4     involuntary proceeding. In the instant

5     proceeding H.J.S. filed an uncontested motion

6     for the conditional release of the sealed

7     transcript for the January 15 hearing.

8     On February 12, 2020, the court entered

9     an order granting the request. The order

10     required H.J.S. to treat the transcript as

11     confidential. The transcript was to be marked

12     confidential. The order provided that H.J.S.

13     may release a copy of the transcript only to

14     those parties who acknowledge in writing that

15     the information contained in the transcript is

16     confidential and subject to the sealed

17     proceeding, yet less than two months after the

18     Court approved the transcript's conditional

19     release, H.J.S. attached a copy of the

20     transcript to its client in the Pennsylvania

21     action in direct violation of this court's

22     order. H.J.S. did not file the complaint under

23     seal, did not file a transcript as an exhibit

24     under seal, and H.J.S. did not mark the

25     transcript as confidential. The transcript is

1    not redacted.

2          The Court admonishes H.J.S. for making it

3    expend significant time, effort, and resources

4    to seal the record only to have H.J.S.

5    voluntarily publish the full transcript to the

6    general public.  My staff bent over backwards in

7    order to have the record sealed.

8          Second, throughout the Pennsylvania

9    action, the parties refer to the presiding judge

10   of the involuntary bankruptcy case as The

11   Honorable Katherine Constantine.  The parties

12   should know better than to make such an obvious

13   mistake and should correct the record in the

14   Pennsylvania case.

15         In conclusion, for all the reasons I have

16   just discussed, H.J.S.'s motion for fees and

17   costs is denied.  We stand adjourned.

18                     * * *

19

20

21

22

23

24

25

1  STATE OF MINNESOTA  )
                      )  ss.
2  COUNTY OF WASHINGTON)

3

4        BE IT KNOWN, that I transcribed the

5  electronic recording relative to the matter

6  contained herein;

7

8

9        That the proceedings were recorded

10  electronically and stenographically transcribed

11  into typewriting, that the transcript is a true record

12  of the proceedings, to the best of my

13  ability;

14

15

16        That I am not related to any of the

17  parties hereto nor interested in the outcome of

18  the action;

19

20

21        IN EVIDENCE HEREOF, WITNESS MY HAND.

22

23                          _____

24                          s:/ Lisa M.Thorsgaard

25

**Exhibit 2**

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF SHERBURNE | TENTH JUDICIAL DISTRICT |
| 1648 Properties, LLC, and Henry Stursberg, | File No. _____ |
| | CASE TYPE: Civil Other |

Plaintiffs,

**COMPLAINT**

v.

Morrison Sund PLLC,

Defendant.

-------------------------------------------------------

Plaintiffs 1648 Properties, LLC and Henry Stursberg (collectively, "Plaintiffs"), for their complaint against Defendant Morrison Sund PLLC, state and allege as follows:

## PARTIES

1.  Plaintiff 1648 Properties, LLC ("1648 Properties") is a Pennsylvania Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1528 Walnut Street, Suite 2008, Philadelphia, PA 19102.

2.  Plaintiff Henry Stursberg ("Stursberg") is an individual residing at 250 South 17th Street, Philadelphia, PA 19103.

3.  Defendant Morrison Sund, PLLC ("Morrison Sund") is a Minnesota Limited Liability Company with its principal place of business at 5125 County Road 101, Suite 200, Minnetonka, Minnesota 55435.

## JURISDICTION AND VENUE

4.  This Court has personal jurisdiction over Morrison Sund because Morrison Sund is a Minnesota Professional Liability Company organized in and transacting business within the State of Minnesota and acts alleged in this Complaint took place within this District.

5.     The actions set forth in this Complaint occurred in part in Sherburne County, Minnesota. Morrison Sund has its principal place of business in Hennepin County.

## FACTS

6.     Defendant Morrison Sund represented 1648 Properties as plaintiff and Stursberg as a third-party defendant in a lawsuit (the "Lawsuit") commenced by 1648 Properties against defendants Amicorp, Inc.; Amicorp Communities, LLC; KAW Parks, LLC ("KAW Parks"); Pinerock Properties, LLC; Kent Titcomb; and Brenton Titcomb (collectively, the "Titcomb Parties"), among other parties. The Lawsuit was venued in Sherburne County District Court, Tenth Judicial District, Court File No. 71-CV-18-605.

7.     Morrison Sund began representing 1648 Properties and Stursberg in or about March 2019, after the Lawsuit had already been commenced by other counsel on or about May 23, 2018.

8.     The defendants in the Lawsuit were represented by Scott D. Blake of Felhaber Larson, 200 South 6th Street, Minneapolis, MN 55402. KAW Parks and the other defendants in the Lawsuit were never represented by Defendant Morrison Sund.

9.     Defendant Morrison Sund represented only 1648 Properties and its owner, Henry Stursberg, in the Lawsuit.

10.    KAW Parks is 100% owned by Amicorp Communities, LLC ("Amicorp Communities"), one of the other defendants in the Lawsuit.

11.    KAW Parks is the sole fee owner of certain real property located in Sherburne County, Minnesota (the "Property"), legally described as:

> The South Half of the Northwest Quarter of the Northeast Quarter (S ½ of NW ¼ of  NE ¼) of Section Thirty (30), Township Thirty-three (33), Range Twenty Seven (27),Sherburne County, Minnesota.

12. The Property is commonly known as Big Lake Mobile Home Park, 126 Office Street, Big Lake, Minnesota 55309.

13. During Defendant Morrison Sund's representation of Plaintiffs 1648 Properties and Stursberg, which lasted from March 2019 to December 2019, Morrison Sund invoiced 1648 Properties and Stursberg approximately $300,000 in attorneys' fees and costs.

14. Defendant Morrison Sund and attorney Ryan R. Dreyer ("Dreyer") served and filed a Second Amended Complaint on or about August 15, 2019.

15. The Second Amended Complaint did not identify any claim against the various defendants as asserted under Minn. Stat. § 322C.0701. The failure to assert a claim under Minn. Stat. § 322C.00701 crippled the manner in which 1648 Properties and Stursberg could pursue their case against the defendants in the Lawsuit and reduced the value and benefit to Plaintiffs 1648 Properties and Stursberg of the legal services provided by Morrison Sund.

16. In the absence of this claim, 1648 Properties and Stursberg did not have access to the Court's equitable powers to demand various means of equitable relief, including a mandatory buyout of their interests in companies owned with Titcomb entities, or to seek fair value for those interests. The absence of this claim made negotiation of a settlement much more difficult and protracted than it would have otherwise been.

17. During the period Morrison Sund represented 1648 Properties and Stursberg, Morrison Sund and Dreyer never took the deposition of the principal defendant, Kent Titcomb, and took only one deposition, that of Brenton Titcomb.

18. Moreover, even though the Second Amended Complaint asserted a claim for an Accounting, and raised a number of allegations relating to financial improprieties, Defendant Morrison Sund and Dreyer did not engage an expert to testify and support the claims and

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

defenses of Plaintiffs 1648 Proprieties and Stursberg. For the amount of the fees charged to Plaintiffs, Morrison Sund should have engaged, prepared, and paid an expert to testify in support of the claims asserted on behalf of Plaintiffs.

19.    The attorneys' fees and costs charged by Morrison Sund and the Dreyer team for the specific work they chose to undertake, and failed to undertake, were excessive and caused a breakdown in the relationship between Morrison Sund and Dreyer, on the one hand, and Plaintiffs, on the other. Ultimately, Plaintiffs refused to pay all of the excessive fees and costs.

20.    In or about December of 2019, Morrison Sund ceased representing 1648 Properties and its attorneys withdrew from the Lawsuit.

21.    At all times until that withdrawal, KAW Parks was adverse to the clients represented by Morrison Sund and a defendant in the Lawsuit in which Morrison Sund represented Plaintiffs.

22.    On or about December 13, 2019, Defendant Morrison Sund and Morrison Sund Managing Member attorney Erika L. Stein, f/k/a Erika S. Rosenhagen, recorded a Notice of of Intention to Assert Attorney's Lien ("Notice" to "Notice of Attorney's Lien") against the Property, which was notarized by Dreyer. A true and correct copy of the Notice is attached as **Exhibit A**.

23.    On or about December 10, 2019, Defendant Morrison Sund and Stein filed a UCC1 with the Minnesota Secretary of State to give notice that Morrison Sund had "an attorney's lien against debtor 1648 Properties, LLC's ownership interests and financial rights in Amicorp Communities, LLC and "KAW Parks, LLC, if any" (the "1648 Properties UCC1"). A true and correct copy of the 1648 Properties UCC1 is attached as **Exhibit B**.

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

24.    The statement by Morrison Sund and Stein of "if any" demonstrates that Morrison Sund, Dreyer, and Stein knew and understood that 1648 Properties did not have either an ownership interest or financial rights in KAW Parks when it filed the UCC1 relating to 1648 Properties.

25.    On or about December 10, 2019, Defendant Morrison Sund and Stein filed a UCC1 with the Minnesota Secretary of State to give notice that Morrison Sund provided Notice of Attorney's Lien against Plaintiff Stursberg's ownership interests and financial rights in 1648 Properties, LLC (the "Stursberg UCC1").  A true and correct copy of the Stursberg UCC1 is attached as **Exhibit C**.  (Collectively, the 1648 Properties UCC1 and the Stursberg UCC1 are referred to as "the UCC1s".)

26.    Defendant Morrison Sund and Stein knew at the time they filed the Notice of Attorney's Lien against the Property that the Property was owned solely by KAW Properties, and that Plaintiffs, Defendant Morrison Sund's former clients, did not have any interest or ownership in the Property.

27.    The Notice of Attorney's Lien against the Property that Defendant Morrison Sund and Stein filed is improper and illegal since Plaintiffs, the only clients of Morrison Sund and Dreyer in the Lawsuit, did not at any time have an ownership or other interest in the Property.

28.    In addition, the attorney's lien of Morrison Sund filed against the Property is improper and illegal because Morrison Sund and Dreyer have not conferred any benefit on Plaintiffs by their representation of them.  On the basis of *quantum meruit,* the legal services of Morrison Sund have not had any value to Plaintiffs.  Indeed, the Settlement Agreement into which Plaintiffs have entered was achieved despite the legal work done by Morrison Sund and Dreyer on behalf of Plaintiffs, which Plaintiffs have had to overcome.

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

29.　　Likewise, the Notices of Attorney's Lien that Defendant Morrison Sund and Stein filed against Plaintiffs 1648 Properties and Stursberg are also illegal as Morrison Sund and Dreyer did not confer any benefit on Plaintiffs by their representation of Plaintiffs in the Lawsuit.  On the basis of *quantum meruit,* the legal services of Morrison Sund have not had any value to Plaintiffs.

30.　　At a minimum, Plaintiffs dispute the value of the legal services that Morrison Sund and Dreyer undertook on behalf of Plaintiffs while Morrison Sund and Dreyer were representing Plaintiffs.

31.　　The UCC1 filings that Morrison Sund and Stein filed with the Minnesota Secretary of State giving notice of Morrison Sund's purported attorney's liens are also improper and illegal as Morrison Sund is not entitled to an attorney's lien against plaintiffs under Minn. Stat. § 481.13.

32.　　After Morrison Sund and Dreyer withdrew as counsel for Plaintiffs in the Lawsuit, Morrison Sund also brought an action in U.S. Bankruptcy Court for the District of Minnesota in or about December  2019 to place Plaintiff Stursberg into involuntary bankruptcy under Chapter 7.  This action prevented Plaintiff Stursberg from obtaining financing to consummate a favorable settlement with the defendants in the Lawsuit and destroyed any value that Morrison Sund could claim for its legal services.  Ultimately, the Bankruptcy Court dismissed the action and Morrison Sund's effort to place Plaintiff Stursberg into involuntary bankruptcy as improper and abusive, but the settlement opportunity at that time was lost.

33.　　On or about September 1, 2020, Plaintiffs 1648 Properties and Stursberg, on the one hand, and the Titcomb Parties, on the other, settled all claims asserted in the Lawsuit (the "Settlement Agreement").  The parties to the Lawsuit thereafter dismissed the Lawsuit with prejudice.

6.

34.     Since the execution of the Settlement Agreement, Kent Titcomb and KAW Properties have undertaken to sell the Property at Big Lake and a closing is scheduled to take place in mid-November.

35.     The Property is unique and cannot be replaced by monetary damages.

36.     The Property has been foreclosed upon and the period for KAW Parks to redeem the Property from the foreclosure will expire on December 4, 2020.

37.     The Notice of Attorney's Lien filed by Defendant Morrison Sund and Stein against the Property is illegal and improper under Minn. Stat. § 481.13 since Plaintiffs do not now own or have an interest in the Property and did not own or have an interest in the Property at the time Morrison Sund filed the Notice in December 2019.

38.     The title to the Property cannot be sold free and clear of all encumbrances without removal of the improper and illegal Morrison Sund attorney's lien.  The improper and illegal lien is jeopardizing the sale of the Property.

39.     If the Property cannot be sold by December 4, 2020 due to the existence of the unlawful Notice of Attorney's Lien of Morrison Sund, KAW Properties and others will suffer substantial and irreparable harm through the foreclosure and complete loss of the unique Property.

40.     Plaintiffs will also suffer harm if Plaintiffs and the Titcomb Parties are unable to fulfill their obligations under their Settlement Agreement with the Titcomb Parties.

41.     In early to mid-September, Mr. Blake, counsel for the Titcomb Parties, communicated with Dreyer of Morrison Sund.  Attorney Blake offered to Dreyer that money from the sale of the Property would be put into escrow to be available to pay any attorney's fees and costs that Plaintiffs 1648 Properties and Stursberg are determined by a court to owe Morrison Sund if Morrison Sund would remove the Notice of Attorney's Lien that Morrison Sund had placed on

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

the Property. By doing so, the unlawful Morrison Sund Notice of Attorney's Lien and lien would not impede and prevent the sale of the Property.

42. In response to Mr. Blake's overture, Dreyer on September 18, 2020, at 1:13 p.m., sent Daniel Bernheim, counsel for Plaintiffs, an e-mail that reads as follow:

> Mr. Bernheim, I understand from Scott Blake that Henry has reached settlement terms on the Minnesota lawsuit against Titcomb and his entities. Mr. Blake asked me if Morrison Sund PLLC is willing to release its attorney's lien against the Big Lake property in exchange for an escrow of some of the proceeds pending resolution of claims between Morrison Sund and Henry. Henry, 1648 Properties and Stursberg & Fine owe Morrison Sund PLLC $281,215.58 in the following breakdown:
>
> Attorney Fees from Minnesota Case: $191,407.83
> Interest on unpaid fees owed: $9,460.15
> Collection Attorney Fees: $61,004.50
> Collection Costs: $19,343.10
> Total: $281,215.58
>
> Morrison Sund looks at this as an opportunity for a global settlement with Henry and his entities and will agree to release its attorney's lien in the real estate in exchange for payment via wire of $281,215.58 and a mutual release of claims between it (including attorneys), Henry and his entities. You should be aware that in addition to the attorney's lien recorded against the real estate, Morrison Sund PLLC also has perfected security interests in any proceeds that Henry and/or 1648 Properties may receive from settlement of this lawsuit, sale of the land or otherwise. Morrison Sund will terminate these security interests as part of a settlement on the above terms.

43. Upon information and belief, the "Collection Attorney Fees" of $61,004.50 relate at least in part to the attorney time Morrison Sund attorneys incurred in attempting to put Plaintiff Stursberg into involuntary bankruptcy, an attempt that the Bankruptcy Court rejected and dismissed.

44. If the Property is not sold, and the Titcomb Parties lose the Property to foreclosure, precluding performance by the parties of the terms of the Settlement Agreement, the loss of the

Property will destroy any argument that Morrison Sund and Dreyer had or could have that Morrison Sund and Dreyer conferred any benefit on Plaintiffs through their representation of Plaintiffs. Under this circumstance, Plaintiffs in their worst case would not owe Morrison Sund anything and Morrison Sund and potentially others will be liable for millions of dollars of losses sustained by the Titcomb Parties and Plaintiffs.

## COUNT I
## VIOLATION OF MINN. STAT. § 481.13 – NOTICE OF ATTORNEY'S LIEN ON THE PROPERTY

45. Plaintiffs reallege paragraphs 1 through 44 as if set forth fully herein.

46. Minn. Stat. § 481.13 sets out the Minnesota statute for attorney fees liens.

Minn. Stat. § 481.13 permits an attorney to obtain a lien upon "the interest of the attorney's client in any . . . property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of the lien claims, . . ."

47. KAW Parks has at all times relevant hereto been the sole owner of the Property.

48. Plaintiffs do not own or have any interest in the Property and did not own or have any interest in the Property while represented by Morrison Sund and Dreyer.

49. KAW Parks was never a client of Morrison Sund in the Lawsuit.

50. Morrison Sund has never through its representation conferred any benefit on KAW Parks.

51. Because Plaintiffs do not and did not own or have any interest in the Property, Defendant Morrison Sund, Dreyer, and Stein did not have the right to claim and give notice of an attorney's lien against the Property under Minn. Stat. § 481.13.

52. The unlawful lien placed by Morrison Sund and Stein on the Property of KAW Parks constitutes slander of title against the Property which KAW Parks and other Titcomb Parties are selling.

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

53.     As a result, Defendant Morrison Sund and Stein have caused KAW Parks and Plaintiffs to suffer harm from the filing of the Notice of Attorney's Lien against the Property as the Notice will prevent Plaintiffs and the Titcomb Parties from performing their obligations under their Settlement Agreement.

54.     The value to Plaintiffs of the Morrison Sund legal services at issue and other recoverable costs and interest is not $281,215.58.

55.     Plaintiffs 1648 Properties and Stursberg are entitled to a mandatory injunction requiring Defendant Morrison Sund and Stein immediately to remove the Notice of Attorney's Lien against the Property as the Notice and any UCC1s are improper and unlawful.

56.     As a first alternative, if the Court determines the Notice of Attorney's Lien on the Property to be lawful or is unable to decide this issue by the mid-November closing date, Plaintiffs 1648 Properties and Stursberg request that the Court direct Plaintiffs 1648 and Stursberg to place into escrow with the Court from the proceeds received by Plaintiffs 1648 Properties and Stursberg at the mid-November closing the amount identified in the Notice of Attorney's Lien, $199,339.33, or such other amount deemed reasonable by the Court, and compelling Defendant Morrison immediately to remove and release its Notice of Attorney's Lien on the Property so that the Property may be sold without the cloud of such lien and Morrison Sund's Attorney's Lien may be determined by summary proceeding either before mid-November or at such other time that the Court may determine.

57.     As a second alternative, if the Court determines the Notice of Attorney's Lien on the Property and/or Plaintiffs to be lawful, Plaintiffs 1648 Properties and Stursberg request a summary proceeding on an expedited basis to determine the amount and value of Morrison

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

Sund's attorney's lien against the Property so that the Property can be sold by KAW Parks and

the Titcomb Parties to their bona fide purchaser on November 18, 2020.

## COUNT II
### VIOLATION OF MINN. STAT. § 481.13 – NOTICE OF ATTORNEY'S LIENS AGAINST PLAINTIFFS 1648 PROPERTIES AND STURSBERG

58.    Plaintiffs reallege paragraphs 1 through 56 as if set forth fully herein.

59.    Minn. Stat. § 481.13 sets out the Minnesota statute for liens for attorney fees.

Minn. Stat. § 481.13 permits an attorney to obtain a lien upon "the interest of the attorney's client

in any . . . property involved in or affected by any action or proceeding in which the attorney

may have been employed, from the commencement of the action or proceeding, and, as against

third parties, from the time of filing the notice of the lien claims, . . ."

60.    Defendant Morrison Sund through its representation of Plaintiffs has not conferred any

benefit on Plaintiffs 1648 Properties and Stursberg and their services do not have any value.

61.    Plaintiffs 1648 Properties and Stursberg achieved their settlement with the Titcomb

Parties without any involvement or assistance of Defendant Morrison Sund or Dryer and over

obstacles created by the legal services rendered by Morrison Sund.

62.    The value to Plaintiffs of the Morrison Sund legal services at issue and other recoverable

costs and interest is not $281,215.58.

63.    Because Plaintiffs have never owned any interest in the Property, Defendant Morrison

Sund, Dreyer, and Stein did not have the right to claim and give notice of an attorney's lien

against the Property and the lien placed on the Property by Morrison Sund is unlawful under

Minn. Stat. § 481.13.

64.    The unlawful lien placed by Defendant Morrison Sund and Stein on the Property of

KAW Parks constitutes slander of title of the Property which KAW Parks and other Titcomb

Parties are selling and which will prevent the sale of the Property by KAW Parks.

11.

65. Because Defendant Morrison Sund, Dreyer, and Stein never conferred any benefit on Plaintiffs 1648 Properties and Stursberg as a result of their representation of them, Defendant Morrison Sund did not have the right to claim and give Notice of Attorney's Liens against either Plaintiff 1648 Properties or Plaintiff Stursberg and the Notice of Attorney's Lien and the UCC1s filed against Plaintiffs 1648 Properties and Stursberg are unlawful under Minnesota law, including under Minn. Stat. § 481.13.

66. Plaintiffs 1648 Properties and Stursberg have suffered, and are continuing to suffer irreparable harm and damages as a result of the filing of the Notice of Attorneys' Lien by Defendant Morrison Sund against the Property and the UCC1s filed against Plaintiffs 1648 Properties and Stursberg, including, but not limited to, special damages for the attorney's fees and costs expended and being expended to remove the cloud on the title to the Property. Plaintiffs allege that its damages resulting from the improper filing of the Notice and the UCC1s are in excess of $50,000. Plaintiffs 1648 Properties and Stursberg are entitled to a mandatory injunction requiring Defendant Morrison Sund and Stein immediately to remove the Notice filed against the Property and the UCC1s filed against Plaintiffs 1648 Properties and Stursberg as the alleged attorney's liens are improper and illegal.

67. As a first alternative, if the Court determines the Notice of Attorney's Lien on the attorney's liens against Plaintiffs 1648 Properties and Stursberg to be lawful or is unable to decide this issue by the mid-November closing date, Plaintiffs 1648 Properties and Stursberg request that the Court direct Plaintiffs 1648 and Stursberg to place into escrow with the Court from the proceeds received by Plaintiffs 1648 Properties and Stursberg at the mid-November closing the amount identified in the Notice of Attorney's Lien, $199,339.33, or such other amount deemed reasonable by the Court, and compelling Defendant Morrison immediately to

12.

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

remove and release its Notice of Attorney's Lien on the Property so that the Property may be sold without the cloud of such lien and Morrison Sund's Attorney's Lien may be determined by summary proceeding either before mid-November or at such other time that the Court may determine.

68.    As a second alternative,  if the Court determines the Notice of Attorney's Lien on the Property and/or the attorney's liens against Plaintiffs 1648 Properties and Stursberg to be lawful, Plaintiffs 1648 Properties and Stursberg are entitled to a summary proceeding on an expedited basis before November 18, 2020, to determine the amount and value of the attorney's lien of Morrison Sund so that the Property can be sold by KAW Parks and the Titcomb Parties to their bona fide purchaser.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs 1648 Properties and Henry Stursberg pray for the entry of judgment against Defendant Morrison Sund as follows:

A.    An order directing Defendant Morrison Sund immediately to remove the Notice of Attorney's Lien filed against the Property;

B.    An order directing Defendant Morrison Sund immediately to remove the UCC1s filed against Plaintiffs 1648 Properties and Stursberg;

C.    Allowing counsel for Plaintiffs 1648 Properties and Stursberg to present a copy of the Court's Order to the Office of the Recorder for Sherburne County, which Office shall immediately cancel the Notice of Attorney's Lien against the Property;

D.    Allowing counsel for Plaintiffs 1648 Properties and Stursberg to present a copy of the Court's Order with respect to each Plaintiff to the Secretary of State, who shall cause the immediate cancellation of the UCC1s filed against each Plaintiff;

E.    Alternatively, an order of the Court directing Plaintiffs 1648 Properties and Stursberg to place into escrow with the Court from the proceeds received by Plaintiffs 1648 Properties and Stursberg at the mid-November closing the amount identified in the Notice of Attorney's Lien, $199,339.33, or such other amount deemed reasonable by the Court, and compelling Defendant Morrison immediately to remove and release its Notice of Attorney's Lien on the Property

so that the Property may be sold without the cloud of such lien and Morrison Sund's Attorney's Lien may be determined by summary proceeding either before mid-November or at such other time that the Court may determine

F.    As a second alternative, an order of the Court after a summary proceeding that the legal services and attorney's lien of Defendant Morrison Sund on the basis of *quantum meruit* do not have any value or establishing the reasonable value of such legal services;

G.    An award of pecuniary and special damages against Defendant Morrison Sund and in favor of Plaintiffs as provided by applicable law;

H.    Such other and further equitable and legal relief as the Court deems just and proper.

Dated: October 14, 2020

*/s/ John A. Cotter*
John A. Cotter (134296)
Jon S. Swierzewski (108017)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota 55437-1060
(952) 835-3800
jswierzewski@larkinhoffman.com
jcotter@larkinhoffman.com

**Attorneys for Plaintiffs 1648 Properties, LLC and Henry Stursberg**

## ACKNOWLEDGMENT

I hereby acknowledge that sanctions may be awarded pursuant to Minn. Stat. § 549.211, subd. 3, if the court determines that this document violates Minn. Stat. § 549.211, subd. 2.

*/s/ John A. Cotter*
John A. Cotter

14.

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM



**EXHIBIT A**

Office of the County Recorder
Sherburne County, MN
Doc. No. **883731**

Certified, filed, and or recorded on
December 13, 2019 3:00 PM

Michelle Ashe, County Recorder
By SD Deputy
Fees: $48.00

883731



---

*(Top 3 inches reserved for recording data)*

**ATTORNEY LIEN**

DATE: December 10, 2019

NOTICE IS HEREBY GIVEN, pursuant to Minn. Stat. 481.13, that the undersigned, Morrison Sund PLLC, a law firm of licensed attorneys (the "Lien Claimant"), hereby claims and intends to hold a lien for compensation for legal services in the amount of one hundred ninety-nine thousand, three hundred thirty-nine and 33/100 Dollars ($199,339.33) plus interest and collection costs upon the interest (if any) of 1648 Properties, LLC (the "Client") in that certain real property in Sherburne County, Minnesota, legally described as follows:

> South Half of the Northwest Quarter of the Northeast Quarter (S1/2 of NW1/4 of NE1/4) of Section Thirty (30),
> Township Thirty-three (33), Range Twenty Seven (27)

> PID #: 65-030-1215
> Commonly Known as: 126 Office Street, Big Lake, MN 55309

Check here if all or part of the described real property is Registered (Torrens) ☐

Morrison Sund PLLC

By: Erika Rosenhagen
Its: Managing Member

---

ECB-4013

71-CV-20-1114

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

Page 2 of 2

**ATTORNEY LIEN**

State of Minnesota, County of **Hennepin**

This instrument was acknowledged before me on **December 10, 2019**, by Erika Rosenhagen as Chief Manager of Morrison Sund PLLC.

(Stamp)



RYAN RUSSELL DREYER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2020

_(Signature of notarial officer)_

Title (and Rank):

My commission expires:

_(month/day/year)_

THIS INSTRUMENT WAS DRAFTED BY:
Morrison Sund PLLC
5125 County Road 101, Suite 200
Minnetonka, MN 55345
RRD

MINNESOTA
JUDICIAL
BRANCH

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM



**EXHIBIT B**

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

Filing Number: J123848700028
Date: 12/10/2019
Time: 10:33 AM
STATE OF MINNESOTA
Office: Office of the Minnesota
Secretary of State

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Carrie Hentges
5125 County Road 101
Minnetonka, MN 55345

## DEBTOR INFORMATION

**ORGANIZATION'S NAME**
1648 Properties LLC

| **MAILING ADDRESS**<br>1528 Walnut St., Suite 2008 | **CITY**<br>Philadelphia | **STATE**<br>PA | **POSTAL CODE**<br>19102 | **COUNTRY**<br>USA |
|---|---|---|---|---|

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
Morrison Sund PLLC

| **MAILING ADDRESS**<br>5125 County Road 101  Suite 200 | **CITY**<br>Minnetonka | **STATE**<br>MN | **POSTAL CODE**<br>55345 | **COUNTRY**<br>USA |
|---|---|---|---|---|

## COLLATERAL

Pursuant to Minn. Stat. 481.13, notice is hereby given that Morrison Sund PLLC has an attorney's lien against debtor 1648 Properties, LLC's ownership interests and financial rights in Amicorp Communities, LLC and KAW Parks, LLC (if any).

## ADDITIONAL INFORMATION(IF ANY)



Filed in District Court
State of Minnesota
10/16/2020 6:47 PM



**EXHIBIT C**

71-CV-20-1114

Filed in District Court
State of Minnesota
10/16/2020 6:47 PM

Filing Number: 1123838200025
Date: 12/10/2019
Time: 10:21 AM
STATE OF MINNESOTA
Office: Office of the Minnesota
Secretary of State

# UCC1 - Original Filing - UCC Financing Statement

**RETURN ACKNOWLEDGEMENT TO:**
Carrie Hentges
5125 County Road 101
Minnetonka, MN 55345

## DEBTOR INFORMATION

| INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | | |
|---|---|---|---|---|
| Stursberg | Henry | | | |

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1528 Walnut St., Suite 2008 | Philadelphia | PA | 19102 | USA |

## SECURED PARTY INFORMATION

**ORGANIZATION'S NAME**
Morrison Sund PLLC

| MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5125 County Road 101  Suite 200 | Minnetonka | MN | 55345 | USA |

## COLLATERAL

Pursuant to Minn. Stat. 481.13, notice is hereby given that Morrison Sund PLLC has an attorney's lien against debtor Henry Stursberg's ownership interests and financial rights in 1648 Properties, LLC.

## ADDITIONAL INFORMATION(IF ANY)

**Exhibit 3**

STATE OF MINNESOTA                    DISTRICT COURT

COUNTY OF SHERBURNE                   TENTH JUDICIAL DISTRICT

-------------------------------------------------    File No. 71-CV-20-1114

1648 Properties, LLC, and             CASE TYPE:  Civil Other/Misc.
Henry Stursberg,

                        Plaintiffs,

        v.                              **MEMORANDUM OF LAW
                                      IN SUPPORT OF EMERGENCY
                                      APPLICATION TO DETERMINE
Morrison Sund PLLC,                   EXISTENCE, SCOPE AND AMOUNT
                                      OF MORRISON SUND'S ATTORNEY'S
                    Defendant.       LIENS**

-------------------------------------------------

       Plaintiffs 1648 Properties, LLC ("1648 Properties") and Henry Stursberg ("Stursberg")

(collectively, "Plaintiffs") submit this Memorandum of Law in Support of their Application to

determine that Defendant Morrison Sund PLLC ("Defendant Morrison Sund" or "Morrison

Sund") does not have a valid attorney's lien, or in the alternative, to determine the scope and

amount of such lien.

## INTRODUCTION

       After running up fees and costs of over $284,000 as substituted counsel in *1648

Properties, LLC v. Amicorp, Inc., et al.,* Sherburne County, Tenth Judicial District Court, Court

File No. 71-cv-18-605 (the "Lawsuit") in just eight months, a rate of over $30,000 per month, the

relationship between 1648 Properties and Stursberg as clients of Morrison Sund ended when

Morrison Sund  was terminated based upon its misguided legal work, cost-inefficient effort, and

excessive fees.  While one objective of the Lawsuit in the Second Amended Complaint prepared

and filed by Morrison Sund was enforcement of a Settlement Agreement which required sale of

Big Lake Mobile Home Park property in Big Lake, Minnesota ("the Property"), the sale never

occurred.  In a misguided abuse of process to extract payment of its fees from Plaintiffs,

Morrison Sund then unlawfully filed a petition on January 8, 2020 to force Stursberg into involuntary bankruptcy, a proceeding that was quickly dismissed as improper by the Bankruptcy Court for the District of Minnesota on January 15, 2020. But its filing precluded Plaintiffs from obtaining financing to enter into a favorable settlement with defendants in the Lawsuit to purchase the Big Lake Property, resulting in significant damage to Plaintiffs and vitiating any value on a *quantum meruit* basis that Morrison Sund could argue its legal services had.

On December 10, 2019, Morrison Sund recorded a Notice of Attorney Lien ("Notice") against the Property, which was owned solely by KAW Parks, LLC, a party Morrison Sund was suing. Morrison Sund's Notice claims an attorney lien under Minn. Stat. § 481.13 in the property owned by KAW Parks in the amount of $199,339.33 "plus interest and collection costs upon the interest (if any) of 1648 Properties." Morrison Sund also filed UCC-1 statements on December 10, 2019 with the Minnesota Secretary of State giving notice of attorney liens against 1648 Properties and Stursberg. Morrison Sund now claims that those UCC-1 filings give it a security interest in all of the monies that Plaintiffs will receive for the interest of 1648 Properties in Communities, which as a result places a value on the lien many times the $199,339.33 amount stated in its Notice on December 10, 2019. Under Minn. Stat. § 481.13 and Minnesota law, it is Morrison Sund's burden to prove up the value of the attorney's liens it claims against Plaintiffs.

Ultimately in September 1, 2020, through new counsel working on behalf of Plaintiffs, Plaintiffs and the defendants in the Lawsuit entered into a settlement agreement in which Stursberg sold his interest in Amicorp Communities, LLC ("Communities") to one of the defendants in the Lawsuit. Morrison Sund had no part in negotiating or consummating the settlement and its legal services provided no benefit. The settlement was different from any settlement previously discussed among the parties. As a result, the legal services of Morrison

Sund provided no benefit to the ultimate resolution of the Lawsuit and therefore had no value to Plaintiffs under a *quantum meruit* theory. In fact, the legal services of Morrison Sund turned out to be an impediment as Morrison Sund, although it had researched a potential equitable claim under Minn. Stat. § 322C.0701 before it filed the Second Amended Complaint on behalf of 1648 Properties, failed to include such a claim in the Second Amended Complaint, which hamstrung efforts by later counsel to litigate the case and reach a settlement on behalf of Plaintiffs. To date, neither 1648 Properties nor Stursberg has received any money for the sale of 1648 Properties' interest in Communities. A closing is scheduled for November 18, 2020, at or after which 1648 Properties and/or Stursberg is to receive payment for the interest of 1648 Properties in Communities.

The attorney lien Morrison Sund claims on the Property is a cloud on the title to and sale of that Property. The lien is improper under Minn. Stat. § 481.13 as neither 1648 Properties nor Stursberg has any ownership interest in the Property. Not only is the lien improper and should be released by Morrison Sund for this reason, but Morrison Sund is now taking the position with counsel for KAW Parks, the seller of the property, that Morrison Sund's attorney liens in the property and against Plaintiffs are in the amount of $281,000, including, in addition to the $199,339.33 charged to Plaintiffs as attorneys' fees, over $81,000 for Collection Attorney Fees and Collection Costs incurred relating to its failed attempt to put Stursberg into involuntary bankruptcy and to resist the lawsuit that Stursberg commenced against Morrison Sund in federal court in Pennsylvania for the abuses of process in filing the petition for involuntary bankruptcy against Stursberg. The $81,000 in collection fees and costs provided no benefit or value to Stursberg, were in fact adverse to him, and have cost him significant attorneys' fees to defend against. These collection fees and costs are not includable in an attorney lien as they do not

constitute "compensation" under Minn. Stat. § 481.13 and *Effrem v. Effrem,* 818 N.W2d 546, 551-52 (Minn. Ct. App. 2012) (holding that "attorney fees and costs associated with obtaining an attorney lien under section 481.13 are not includable in the amount of the lien." ).  When confronted with this law and asked how much Morrison Sund required to settle its liens, attorney Dreyer of Morrison Sund  stated "$250,000 plus releases" to settle the lawsuit against Morrison Sund in Pennsylvania, continuing a pattern of abject abuse of process to extract amounts from Plaintiffs to which Morrison Sund is not entitled under the law.

Consequently, Plaintiffs seek an Emergency Hearing or Conference with the Court before the November 18, 2020 closing for an initial Court order:

1.  directing Plaintiffs to remove the improper lien on the Property as the Plaintiffs have no interest in the Property, the Property was not affected by the Lawsuit and the attorney lien on it is a cloud on title that negatively impacts the attempted sale of the Property;

2.  ordering KAW Parks, the seller of the  Property, to place into escrow with the Court from the proceeds of the sale of the Property, the sum of $199,339.33, the maximum amount of Morrison Sund's attorney lien, or such other amount the Court deems necessary;

3.  ordering Morrison Sund not to threaten or sue attorney Scott Blake, Felhaber Larson, KAW Parks or any other defendant in the Lawsuit if they comply with the Court's order to escrow into Court funds from any closing; and

4.  setting a hearing date and a further briefing schedule for a summary proceeding after November 18, 2020 to determine the value of Morrison Sund's attorney liens against Plaintiffs, or alternatively, setting a hearing date before November

18, 2020 to determine the value of Morrison Sund's attorney liens against Plaintiffs.

**FACTS**

## I.      THE PARTIES TO THIS ACTION

Plaintiff 1648 Properties, LLC ("1648 Properties") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania. Henry Stursberg is an individual resident of the Commonwealth of Pennsylvania. Stursberg is the sole owner of 1648 Properties. Morrison Sund is a professional limited liability organized under the laws of the State of Minnesota, with its registered office address at 5125 County Road 101, Suite 202, Minnetonka, Minnesota 55345.

## II.      THE LAWSUIT

1648 Properties was the plaintiff in a lawsuit against defendants Amicorp, Inc.; Amicorp Communities, LLC; KAW Parks; Pinerock Properties, LLC; Kent Titcomb; and Brenton Titcomb (collectively, the "Titcomb Parties"), among other parties. The Lawsuit was venued in Sherburne County District Court, Tenth Judicial District, Court File No. 71-CV-18-605 (the "Lawsuit").  Amicorp, Inc. held the majority ownership interest and 1648 Properties a minority ownership interest in Amicorp Communities, LLC ("Communities"). Affidavit of Henry Stursberg dated November 9,2020 ("Stursberg Aff."), ¶¶ 4-5. Communities owned one hundred percent of  KAW Parks, LLC ("KAW Parks"), which owns the Big Lake Property. Stursberg Aff., ¶¶ 3-8.

The Lawsuit involved various claims of misfeasance and sought enforcement of a settlement agreement made between Amicorp and 1648 Properties in 2018. Some of the defendants in the Lawsuit made third-party claims against Stursberg. The Lawsuit was settled in September 2020, and the Lawsuit has been dismissed. *Id., ¶¶ 8-9.*

## A.	Defendant Morrison Sund's Representation of Plaintiffs

 Defendant Morrison Sund represented 1648 Properties and Stursberg in the Lawsuit

from approximately March 11, 2019 until Morrison Sund's representation was terminated in

November 2019. On November 22, 2019, Morrison Sund withdrew as counsel for plaintiffs in

the Lawsuit. KAW Parks was represented in the Lawsuit by Scott Blake of Felhaber Larson. *Id.,*

¶ 10.

KAW Parks was at all times during the pendency of the Lawsuit and remains today the

sole fee owner of certain real property located in Sherburne County, Minnesota (the "Property"),

legally described as:

> The South half of the Northwest quarter of the Northeast quarter (S ½ of NW ¼ of NE
> ¼) of Section Thirty (30), Township Thirty-three (33), Range Twenty-seven (27),
> Sherburne County, Minnesota

Neither 1648 Properties nor Stursberg have ever held a fee interest in the Property. *Id.,* ¶ 7.

## B.	The Excessive Work of Morrison Sund

During the approximately eight months that Morrison Sund represented Plaintiffs 1648

Properties and Stursberg, Morrison Sund invoiced plaintiffs over $284,000 for their services,

averaging over $30,000 per month. *Id.,* ¶ 12.  During this period, Morrison Sund brought five

motions on behalf of 1648 Properties as plaintiff:

1.	a motion on May 18, 2019, to amend the complaint;

2.	a motion on May 18, 2019, to appoint a Receiver to manage the two
   mobile home properties and to remove Defendants Kent and Brenton
   Titcomb from control of the finances of the two parks;

3.	a motion on September 18, 2020 to compel discovery;

4.	a second motion on October 25, for appointment of a Receiver to
   refinance the properties and remove the Titcombs after having resisted
   Defendants' motion to appoint a limited receiver just a few weeks earlier;
   and

5. a motion on November 21, 2019 for Rule 11 sanctions.

A review of the motions reveals that Morrison Sund brought two similar motions to appoint a Receiver to manage the two mobile home properties and to remove the Titcombs from controlling the finances, losing both times. In addition, Morrison Sund brought the Rule 11 motion late in its representation of Plaintiffs which the Court denied. All told, the court completely denied all of Morrison Sund's motions except one. With respect to the remaining motion, to serve a Second Amended Complaint, the court granted that motion in part and denied it in part. *Id.,* Ex. A.

But in the proposed Second Amended Complaint, Morrison Sund failed to assert an explicit claim under Minn. Stat. § 322C.0701 to allow 1648 Properties to seek the equitable powers of the court to compel a mandatory buyout of the interest of 1648 Properties in Amicorp Communities or, alternatively, to compel a sale of the Big Lake property to 1648 Properties. Morrison Sund's invoices reflect that Morrison Sund researched Minn. Stat. § 322C.0701 several days before Morrison Sund brought the motion to amend. The fees charged for the preparatory work and the four lost motions were significant and excessive and provided little to no benefit to Plaintiffs, particularly when two of the motions were for the same purpose – for the appointment of a receiver -- and both were lost.

During the same period, defendants in the Lawsuit brought five motions of their own. But again, Morrison Sund's success rate was poor. Defendants in the Lawsuit succeeded in part on four of the five motions and entirely on the fifth.

While Morrison Sund represented Plaintiffs for eight months, Morrison Sund in those eight months took only one deposition – Brenton Titcomb, the son of Kent Titcomb, the owner of Amicorp, Inc. The Brenton Titcomb deposition was not helpful to Plaintiffs' cases. Stursberg Aff., ¶ 15. Thus, the fees expended on the Brenton Titcomb deposition did little or nothing to

advance the case.  Morrison Sund never took the deposition of the most central witness in the case, Kent Titcomb, even though Morrison Sund had rolled up over $284,000.00 in attorney's fees  by the time of its termination. *Id.*

### C.    The Termination of Defendant Morrison Sund

Exasperated with what he believed to be excessive fees and a lack of progress on the Lawsuit, Stursberg terminated Morrison Sund's representation of him and 1648 Properties in or about late November 2019.  *Id.,* ¶ 16.

### D.    The Notice of Attorney Lien Recorded and UCC-1s Filed by Morrison Sund

On or about December 10, 2019, Defendant Morrison Sund recorded a Notice of Attorney Lien against the Property. A true and correct copy of the Notice was attached to the Complaint in this matter as Exhibit A. The Notice states that a lien is claimed "upon the interest (if any) of 1648 Properties" in the Property. Defendant Morrison Sund knew at the time it filed the Notice that the Property was owned solely by KAW Properties, and not by 1648 Properties. Also, on December 10, 2019, Morrison Sund filed two UCC-1 Financing Statements with the Minnesota Secretary of State giving notice that it claimed an attorney lien under Minn. Stat. §481.13 against 1648 Properties and Stursberg.  A true and correct copy of the two UCC-1s filed by Morrison Sund are attached to the Complaint as Exhibits B and C.  The UCC-1 filed against 1648 Properties gives notice that Morrison Sund claims "an attorney's lien against debtor 1648 Properties' ownership interest and financial rights in Amicorp Communities, LLC and KAW Parks, LLC (if any)."  *See* Ex. B to Complaint.  The UCC-1 filed against Stursberg claims only "an attorney's lien against debtor Henry Stursberg's ownership interests and financial rights in 1648 Properties, LLC."  *See* Ex. C to Complaint.

**Morrison Sund's Petition to Place Henry Stursberg into Involuntary Bankruptcy**

Knowing of Stursberg's livelihood was as a commercial mortgage broker and financial consultant in Philadelphia, William Burton in late December 2019 or early January 2020 threatened to file an involuntary bankruptcy against him if Stursberg did not agree with Morrison Sund's fee demands. *Id., ¶* 22. Mr. Burton knew that an involuntary bankruptcy proceeding would have serious consequences on Stursberg's livelihood. *Id.* When Stursberg did not agree to those unreasonable demands, Morrison Sund filed a petition in the United Sates Court for the District of Minnesota (Bankruptcy) on January 8, 2020, seeking to put Stursberg into involuntary bankruptcy. *Id., ¶¶* 23. Morrison Sund acted as their own attorneys. Morrison falsely alleged that Stursberg was not generally paying his debts as they came due, the falsity of which was established in court at the hearing, so Morrison Sund could justify filing the petition in Minnesota. *Id., ¶* 24. Morrison Sund made other false allegations against Stursberg to try to maintain the involuntary bankruptcy action in the District of Minnesota. *Id.* In fact, Morrison Sund knew from representing Stursberg that Stursberg had lived in Philadelphia for over 36 years and had all of his business and principal assets in Pennsylvania for over 25 years. *Id., ¶* 25. The Bankruptcy Court dismissed the petition after Morrison Sund conceded that the Petition contained misrepresentations and had been filed as leverage to collect its own debt, which the Bankruptcy Court deemed improper. *Id., ¶* 26. At an expedited hearing on January 15, 2020, the Bankruptcy Court dismissed the involuntary petition and sealed the record in an attempt to mitigate the business and other harm that the filing was causing to Stursberg. *Id.* Stursberg has incurred in excess of $85,000 in fees to fight off the involuntary bankruptcy petition. *Id., ¶* 27.

Morrison Sund's filing of the petition for involuntary bankruptcy prevented Stursberg from achieving a favorable settlement of the Lawsuit. *Id., ¶* 28. Before the filing of Morrison

Sund's petition against him, Stursberg had entered into settlement discussions to purchase the Big Lake Property from Kent Titcomb and KAW Parks. Stursberg had an offer from Mr. Titcomb in early January for purchase of the Property that Stursberg was advised to take and that Stursberg had decided to take. Stursberg had contacted lenders and had opportunities and was able to obtain the necessary financing to consummate the purchase of the Property. *Id., ¶¶* 29-30.

Morrison Sund's petition for involuntary bankruptcy affected Stursberg's credit standing and eliminated his ability to borrow money. The filing of the petition prevented him from getting the financing required to purchase the Property. As a result, he did not consummate a settlement to purchase the Big Lake Property. If Stursberg had been able to consummate that settlement, he would have, among other things, owned a profitable mobile home park and had annual depreciation related to the Big Lake Mobile Home Park of over $350,000 per year. *Id., ¶¶* 32-33.

Thus, the pendency of the petition prevented. Stursberg from obtaining financing to settle the Lawsuit on favorable terms by buying the Big Lake Property from KAW Parks. The inability to purchase the Property effectively denied 1648 Properties the final outcome that was the focus of the primary claim Morrison Sund pleaded in the Second Amended Complaint and eliminated any benefit or value to Plaintiffs of the services provided by Morrison Sund to Plaintiffs.

### F.    The Pennsylvania Action

On March 26, 2020, Stursberg commenced an action against Morrison Sund and attorney William Burton of Morrison Sund in the United States District Court for the Eastern District of Pennsylvania, No. 2:20-cv--01635 to recover damages from the bad faith filing, abuse of process, and other unlawful conduct that occurred when Morrison Sund filed its involuntary

bankruptcy petition against Stursberg after Morrison Sund and Stursberg had a fee dispute. *Id.,* ¶ 34.

###### G. The Claimed Amount of the Attorney's Lien

During the eight months it represented 1648 Properties and Stursberg, Morrison Sund invoiced the total sum of $284,339.33. Stursberg paid Morrison Sund $105,000.00. *Id.,* ¶ 35 and Ex. C. Morrison Sund filed a Notice of Attorney Lien against the Property claiming that $199,339.33 is owed by Plaintiffs. *Id.,* ¶ 17 and Ex. A to Complaint.

Morrison Sund, however, has claimed that Stursberg must also pay Morrison Sund interest, for its ill-fated attempt to put Stursberg into involuntary bankruptcy, and for defending itself against Stursberg's lawsuit against Morrison Sund in Pennsylvania. *Id.,* ¶ 36 and Ex. D. Based on those additions, Morrison Sund, through attorney Ryan Dreyer, informed Daniel Bernheim, Pennsylvania counsel for Plaintiffs, on September 18, 2020 that the amount of its claimed attorney's lien is over $281,215.58. Attorney Dreyer stated:

> Mr. Bernheim, I understand from Scott Blake that Henry has
> reached settlement terms on the Minnesota lawsuit against Titcomb
> and his entities. Mr. Blake asked me if Morrison Sund PLLC is
> willing to release its attorney's lien against the Big Lake property
> in exchange for an escrow of some of the proceeds pending
> resolution of claims between Morrison Sund and Henry. Henry,
> 1648 Properties and Stursberg & Fine owe Morrison Sund PLLC
> $281,215.58 in the following breakdown:
>
> Attorney Fees from Minnesota Case: $191,407.83
> Interest on unpaid fees owed: $9,460.15
> Collection Attorney Fees: $61,004.50
> Collection Costs: $19,343.10
> Total: $281,215.58
>
> Morrison Sund looks at this as an opportunity for a global
> settlement with Henry and his entities and will agree to release its
> attorney's lien in the real estate in exchange for payment via wire
> of $281,215.58 and a mutual release of claims between it
> (including attorneys), Henry and his entities. You should be aware
> that in addition to the attorney's lien recorded against the real

estate, Morrison Sund PLLC also has perfected security interests in any proceeds that Henry and/or 1648 Properties may receive from settlement of this lawsuit, sale of the land or otherwise. Morrison Sund will terminate these security interests as part of a settlement on the above terms.

*Id.,* ¶ 36, Ex. D.

Thus, Morrison Sund readily acknowledges that over $90,000.00 of its claimed liens is for interest and collection fees and costs. Those additional fees and costs were not incurred in Morrison Sund's representation of the Plaintiffs, but instead incurred on its own behalf in attempting to place Stursberg into involuntary bankruptcy and in defending Stursberg's action in Pennsylvania against Morrison Sund.[1] Yet, Morrison Sund has repeatedly asserted that it must receive more than its invoiced fees before it will release the liens, as well as full release of all claims Plaintiffs may have against Morrison Sund. Indeed, Morrison Sund has repeatedly demanded $250,000 plus a release by Plaintiffs of all claims they may have against it to release it's liens. *See* Affidavit of John A. Cotter Dated November 10, 2020 ("Cotter Aff."), Exs. A and B.[2] Demanding more than the law allows for an attorney lien and for collection costs that the law precludes is another example of the type of sharp practices and misguided strategies that Morrison Sund has undertaken that led to excessive fees and costs, and that precluded a settlement beneficial to Plaintiffs and caused them damage.

---

[1] A party asserting an attorneys' lien may not under Minnesota law obtain collection costs as part of its attorneys' lien. *See* Argument, Section III *infra.*

[2] When asked what amount it would require to be escrowed into court for release of its liens pending a later determination Morrison Sund has also demanded many times more that it is entitled under Minnesota law. *See, e.g.,* Cotter Aff., Ex. D.

## H.    The Ultimate Settlement of the Lawsuit

The Lawsuit ultimately settled in September 2020 through the efforts of Plaintiffs'

Pennsylvania counsel, Daniel Bernheim, and Plaintiffs' counsel of record in the Lawsuit, John

Cotter.  Stursberg Aff., ¶ 38.  While the Settlement Agreement is confidential, and the

defendants in the Lawsuit have limited what can be said about the Settlement Agreement absent

it being filed under seal, the settlement involved 1648 Properties selling its membership interest

in Communities for a stated amount to be received by a date in the future.[3]  *Id.,* ¶ 39.  As of the

date of the settlement, Plaintiffs no longer have any direct or indirect interest in Communities

and have never had any indirect interest in any company downstream of Communities.  *Id.,* ¶ 40.

As a result of the 2020 Settlement Agreement, the Lawsuit has been dismissed with

prejudice as of September 21, 2019.  *Id.,* ¶ 42.   KAW Parks is presently attempting to obtain the

funds to consummate the settlement.  A sale of the Property by KAW Parks to fund the amount

due Plaintiffs pursuant to the Settlement Agreement is scheduled to take place on November 18,

2020.  *Id.,* ¶ 43.

None of the legal services performed by Morrison Sund contributed to the settlement.

*See Id.,* ¶ 44 *and* Cotter Aff., ¶ ¶ 11, 14.  And the settlement did not involve Plaintiffs obtaining

any interest in or to the Property on which Morrison Sund has placed its attorney lien. Stursberg

Aff., ¶ 45.  The settlement does not result in specific performance of the earlier settlement

agreement that was the subject of Count I of the Second Amended Complaint.  *Id.*  Indeed, 1648

Properties and Stursberg, instead of receiving the Property owned by KAW Parks, no longer

have an opportunity to acquire that Property.  *Id.,* ¶ 46.  Thus, none of the legal service provided

---

[3] Plaintiffs are willing to file the Settlement Agreement under seal if Morrison Sund agrees to  a
filing under seal and to keep the terms of it confidential or the Court enters an Order
approving the filing of the Settlement Agreement under seal.

by Morrison Sund contributed in any way directly or indirectly to the settlement and provided no value to Plaintiffs with respect to the settlement. Cotter Aff., ¶ 14. Indeed, the failure to plead an explicit claim under Minn. Stat. § 322C.0701 for equitable relief was an impediment to litigating for and achieving a different settlement. *Id.,* ¶¶ 15.

## ARGUMENT

### I. MORRISON SUND IS NOT ENTITLED TO AN ATTORNEY'S LIEN ON THE PROPERTY

#### A. The Governing Law

The existence of an attorney's lien in Minnesota is governed by statute. Minnesota Statutes Section 481.13 provides that:

> An attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the summons in the action . . . and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action . . . in which the attorney may have been employed, from the commencement of the action . . . .

Under Minnesota law, an attorney has a lien for compensation:

> (1) upon . . . the **interest of the attorney's client** in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed . . . .

Minn. Stat. §481.13, Subd. 1 (2019) (Emphasis added).[4]

The emphasized language is crucial – the lien can only be claimed on the client's interest.

An attorney is not entitled to make a claim against the property of a third-party. In this case,

Morrison Sund filed its Notice against the property of a party to the Lawsuit that Morrison Sund

---

[4] With respect to real property, an attorney must perfect the lien by filing a notice of intent to claim such a lien with the county recorder or registrar where the real property is located. Minn. Stat. §481.13, Subd. 2.

not only never represented, but was adverse to throughout its representation of 1648 Properties and Stursberg.

### B.     No Basis Exists for the Morrison Sund Attorney's Lien on the Property

The key provision of Minn. Stat. § 481.13 relevant here is that the attorney can only claim a lien on "the interest of [his or her] client in . . . property involved in or affected by [the] action or proceeding. The interest at issue must be that of the attorney's client, not of some third party. In this case, Morrison Sund knew exactly what Stursberg and 1648 Properties actually owned.  Stursberg owned 1648 Properties. 1648 Properties owned a minority interest in Communities. Communities owned KAW Parks. KAW Parks owned the Property. It is not until you go through these layers that you get to the Property. Morrison Sund's position is akin to claiming that because Stursberg owns one share of General Motors (hypothetically an adverse party, like KAW Parks), it can slap a lien on every car manufactured by General Motors. That is nonsense.

Indeed, in its Notice filed on the Property, Morrison Sund never even asserts that either of its clients have any interest in the Property.  Instead, Morrison Sund tries to hide its unreasonable position by adding the parenthetical "(if any)" to the Notice. *See* Ex. A to Complaint.  To show that Morrison Sund knew exactly what Stursberg and 1648 Properties actually owned, one need only look at the UCC Financing statements filed by Morrison Sund. Those UCC-1 statements claim an attorney's lien against 1648 Properties' ownership interests in Amicorp and Stursberg's ownership interests in 1648 Properties. *See* Ex. B to Complaint. Morrison Sund's representation of 1648 Properties and/or Stursberg in the Lawsuit does not give Morrison Sund the right to claim an attorney's lien against real property owned solely by KAW Properties, which was never represented by Morrison Sund.

In *Empro Corp. v. Scottland Hotels, Inc.*, 449 N.W.2d 734 (Minn. Ct. App. 1990), the attorney tried to enforce its attorney's lien against property that was the subject of a mechanic's lien action. That property, however, was owned not by the attorney's client, but by a third party. The court held that "an attorney's lien on a client's interest in litigation does not give a right to claim against any third party in the litigation." *Id.,* 449 N.W.2d at 737-38 (Minn. Ct. App. 1990). Consequently, any similar argument by Morrison Sund about an interest in the Property through litigation is insufficient to create a valid lien on the Property.

In *Williams v. Dow Chem. Co.*, 415 N.W.2d 20 (Minn. Ct. App. 1987), the attorney, Williams, was hired by Parranto to assist in pursuing a claim against Dow Chemical. Another party, Q Petroleum, was a co-plaintiff in the same case, but did not agree to compensate Williams for representation. The case eventually settled, and the proceeds were distributed according to a predetermined agreement. Williams filed an attorney's lien against all of the parties involved in the lawsuit, and against a banking entity that received some of the proceeds. The court found that the co-plaintiff and banking entity were not Williams' "clients" and therefore the lien did not attach to their share of the proceeds. "Under the statute, an attorney is given a lien 'upon the interest of his *client*.'" *Williams*, 415 N.W.2d 20, 26.

This case fits within the cases cited above. Morrison Sund could not put a lien on the Property because Plaintiffs did not have any interest in the Property. At most, under the 2018 Settlement Agreement, if it had ever been enforced, 1648 Properties may have had the right to acquire the Property from KAW Parks. But the 2018 Settlement Agreement was never performed and 1648 Properties has no interest in the Property. As a result, Morrison Sund did not have a right to place an attorney lien on the Property and Morrison Sund's attorney lien against the Property is invalid. But even if, for purposes of argument, a possible right to purchase could

somehow constitute an interest sufficient to support an attorney lien, that interest no longer exists. The Lawsuit was settled in September 2020 and has been dismissed with prejudice. 1648 Properties has no interest in  the Property. Although the terms of the 2020 Settlement Agreement are confidential, any interest Morrison Sund could argue 1648 Properties may have had in the Property was extinguished when the Lawsuit was settled and dismissed. *See Empro Corp.,* 449 N.W.2d at 737.

1648 Properties clearly has no interest in the Property. Consequently, Morrison Sund cannot claim an attorney's lien on the Property. The lien must be removed from the Property. Morrison Sund should not be able to hold KAW Parks hostage and preclude it from selling the Property and its cloud on title by means of an invalid lien must be removed.

## II.     MORRISON SUND IS NOT ENTITLED TO AN ATTORNEY'S LIEN AGAINST 1648 PROPERTIES OR HENRY STURSBERG

### A.     The *Quantum Meruit* Standard for Determining the Value of Morrison Sund's Attorney's Fee Lien against Plaintiffs 1648 Properties and Henry Stursberg

Defendant Morrison Sund represented 1648 Properties and Stursberg for slightly more than eight months. Morrison Sund began its representation on March 18, 2019 when 1648 Properties and Stursberg signed a Retainer Agreement with Morrison Sund. Stursberg Aff., Exhibit A.  In that limited time period, Defendant Morrison Sund billed 1648 Properties and Stursberg over $280,000.  Plaintiffs paid $85,000.00 of the attorney's fees and costs charged by Morrison Sund. *Id.,* ¶ 14. For the work actually undertaken by Morrison Sund and the benefit Morrison Sund provided to Plaintiffs as a result of that representation, Morrison Sund's legal services did not provide any benefit to Plaintiffs given the outcome of the case and the total fees and costs invoiced are excessive and lack value.  Defendant Morrison Sund has a claimed a lien

for the amount it billed 1648 Properties and Stursberg.[5]  The starting point for any evaluation of

a claim for attorney's fees is the engagement letter between the lawyer and client. *See Dorsey &*

*Whitney LLP, v. Grossman*, 749 N.W.2d 409, 418 (Minn. Ct. App. 2008) (citing *Thomas A.*

*Foster & Assocs., Ltd. v. Paulson*, 699 N.W.2d 1, 6 (Minn. Ct. App. 2005)). In this case, the

Morrison Sund Retainer Agreement is quite clear. Although initially its fees were to be

computed on an hourly basis, once the representation was terminated, Morrison Sund agreed it

would only be paid "reasonable compensation to the date of termination." Stursberg Aff., Exhibit

A, ¶ 4.

When determining what is reasonable compensation for an attorney, Minnesota courts

have consistently used these eight factors to determine the value of the attorney's services:

> (1) time and labor required;
> (2) nature and difficulty of the responsibility assumed;
> (3) amount involved and the results obtained;
> (4) fees customarily charged for similar legal services;
> (5) experience, reputation, and ability of counsel;
> (6) fee arrangement existing between counsel and the client;
> (7) contributions of others; and
> (8) timing of the termination.

*Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Tr.*, 912 N.W.2d 652, 658 (Minn. 2018).

**B.    The *Quantum Meruit* Value of Morrison Sund's Attorney's Fees Lien**

Application of the eight factors for determining the value of Morrison Sund's attorney

lien leads to the inescapable conclusion that the value of Morrison Sund's legal services to

Plaintiffs is $0.  While Morrison Sund spent a significant amount of time and labor litigating the

case, the time was poorly spent and excessive.  Morrison Sund averaged over $30,000 per month

in fees while it was on the case.  Morrison Sund spent an inordinate amount of time on failed

---

[5] As discussed *infra* at Section III, Defendant Morrison Sund is claiming its attorney's lien
includes additional sums expended in an effort to collect its fees.

motion practice. Of the five motions that it filed, it prevailed on only a part of one, the motion to amend the complaint. But in bringing that motion, Morrison Sund, even though it researched the claim shortly before bringing its motion to amend the complaint, failed to request to add an explicit claim under Minn. Stat. § 322C.0701 so that Plaintiffs could avail themselves of the equitable powers of the district court to seek, among other equitable relief: (1) a mandatory sale of the Big Lake Property to Plaintiffs; (2) an equitable division of the mobile home parks and other property owned by the subsidiary companies of Communities; or (3) a mandatory buyout of 1648 Properties' interests in Communities. Indeed, the bar for the existence of oppressive conduct against a minority member to force equitable relief is low and grounds existed in the Lawsuit to make a member oppression argument. Moreover, the mandatory sale of Big Lake to Plaintiffs or an equitable split of the mobile home parks and property would have allowed Stursberg to effect a §1031 tax-free exchange of real estate to avoid capital gains and to permit Plaintiffs to enjoy the advantages of depreciation from owning a mobile home park. None of these benefits accrued to Plaintiffs when Morrison Sund failed to move to amend to add an explicit claim under Minn. Stat. § 322C.0701. Consequently, the one motion on which Morrison Sund prevailed in part was really a pyrrhic victory.

As to the second and third factors, the nature and difficulty of the responsibility assumed was not high. The case while significant was not taxing on a practitioner with skill in the area. But the skill applied was limited. Many motions were lost, and many were ill-advised or poorly done. For example, two motions were brought for appointment of a receiver. It was misguided to attempt the motion once, let alone twice. One loss is enough. An attorney does not need to lose twice to know that a motion is unavailing. The motion to amend was misfocused and failed to seek a required claim. The extensive motion practice rolled up excessive fees for no benefit to

the clients. As to the result, Morrison Sund did not obtain any settlement or ultimate result for Plaintiffs, and failed on most motions in which it was involved.

As to the fourth factor, the fees charged are clearly excessive. Invoicing $280,000 in a mere eight months on a case of this nature is not usual and represents in many instances misguided judgment. The case was not where it should have been for the amount invoiced in fees. Only one deposition was taken, and it was of a really insignificant witness. But with $280,000 in fees expended the most important witness – Kent Titcomb – had not been deposed. And experts had not been engaged and prepared.

As to the fifth factor, the lack of experience of counsel in this type of case was evident from the misguided motion to amend. This motion and the limited number of depositions taken after $280,000 in fees had been incurred indicate that the attorneys did not have significant experience in legal areas central to the case, including Minn. Stat. § 322C.0701. While it is not our desire to criticize the ability of counsel unnecessarily, this case simply was not where it should have been after the $280,000 in time had been expended by substitute counsel. They simply could not allow themselves to get pulled into a war of attrition with a wealthier opponent feeding off of the businesses at issue.

The seventh factor is perhaps the most significant to the determination of the value of the Morrison Sund attorney lien. Morrison Sund was terminated in November 2019, more than ten months before the Lawsuit settled. The settlement was achieved through the work of new counsel in a different way from how the complaint was pleaded and over pleading obstacles created by the misguided motion practice of Morrison Sund. The Settlement Agreement was achieved 100% by the efforts and negotiations of others besides Morrison Sund. Indeed, the

Morrison Sund invoices do not contain any charges that relate to the settlement discussions that led to the consummation of the Settlement Agreement.

The eighth factor is instructive. Morrison Sund was terminated almost ten months before fact and expert discovery would have ultimately concluded. At $30,000 per month, Plaintiffs arguable faced another $300,000 in legal fees and costs, making the economics of the case suspect. In the end, termination by the clients was inevitable under the circumstances.

So, what is the value of Morrison Sund's attorney's lien claim? The work Morrison Sund performed, particularly the failure to plead a claim under Minn. Stat. § 322C.0701, hindered the prosecution of the case. Little of value or benefit existed from the eight months of motion practice without depositions of key people such as defendant Kent Titcomb. After Plaintiffs lost their opportunity to settle by purchasing the Big Lake property due to the petition for involuntary bankruptcy filed by Morrison Sund against Stursberg, the settlement had to be achieved in a different manner. Morrison Sund did not contribute to that effort at all. So, under *quantum meruit,* Morrison Sund's services provided no overall benefit or value, and their abuse of process in attempting to put Stursberg into involuntary bankruptcy vitiated any benefit that Morrison Sund could allege. Stursberg spent over $60,000 fighting off and overcoming the involuntary bankruptcy petition of Morrison Sund, while at the same time he lost his ability to obtain financing to settle the case by buying the Big Lake property and avoiding the capital gains taxes he now faces and losing the depreciation he would have had as a result of the purchase. The Bankruptcy Court determined the effort to put Stursberg into involuntary bankruptcy was improper. The attorney's lien that Morrison Sund claims is beyond what it is legally entitled since Morrison Sund, despite being shown case law proving it wrong, comes to this Court with unclean hands and in equity does not deserve to benefit from this conduct.

Thus, all things considered, the value of the Morrison Sund attorney lien is $0. In its best incarnation, it is worth $25,000.

## III. MORRISON SUND CANNOT ADD TO ITS CLAIMED ATTORNEY'S LIEN AMOUNTS EXPENDED IN TRYING TO PUT STURSBERG INTO INVOLUNTARY BANKRUPTCY OR IN DEFENDING ITSELF FROM STURSBERG'S LAWSUIT AGAINST IT IN PENNSYLVANIA

As discussed above, Morrison Sund invoiced Henry Stursberg the total sum of $284,339.33 during the eight months it represented him. Stursberg paid Morrison Sund $85,000.00. The maximum amount of fees that could thus be claimed in an attorney's lien is $199,339.33. But Morrison Sund, in direct violation of controlling Minnesota case law, has tried to claim that its lien includes its own fees for the ill-fated attempt to put Stursberg into involuntary bankruptcy, and for defending itself against Stursberg's lawsuit against Morrison Sund in Pennsylvania.

Morrison Sund has claimed that it can add such amounts to its attorney's lien because its engagement agreement with Stursberg allows them to recover its costs of collection. But this exact issue was addressed and disposed of by the Minnesota Court of Appeals in *Effrem v. Effrem*, 818 N.W.2d 546 (Minn. App. 2012), where the court held that:

> . . . collection fees and costs do not constitute "compensation" [within the meaning of Minn. Stat. §481.13] because they are not services rendered on behalf of the client. **Rather, they are services performed on behalf of the law firm.**

*Id.* At 551 (emphasis added). Morrison Sund's efforts to inflate its attorney's lien beyond the actual amounts invoiced is improper and directly contrary to Minnesota law. Its continued insistence that such costs be paid even after the holding of the *Effrem* case was cited to them constitutes additional abuse of process and Plaintiffs should be awarded their attorney's fees and costs for having to address this argument.

The same argument applies to Morrison Sund's attempt to add interest into its attorney lien. The engagement agreement does provide that interest will be charged on unpaid fees. But interest is not compensation for services provided to the clients, and thus is not properly included in the lien. Interest is recoverable, if at all, by pursuing a separate judgement for interest. *See Christensen Law Office, PLLC v. Olean*, 2015 WL 5312159 (Minn. App. Sept. 14, 2015) (attorney's lien for compensation; a separate judgment for interest and costs of collection).

## IV.  INTERIM EMERGENCY RELIEF REQUESTED

Because Morrison Sund does not have a valid attorney lien on the Property, the Court should immediately order Morrison Sund to release its Notice of Attorney Lien and any claim that it has an attorney lien against the Property so that it may be sold free and clear of any cloud caused by the existence of that lien.  The Court should then order that Plaintiffs place into escrow with the Sherburne County District Court Clerk $199,339.33, or another amount determined by the Court, from any closing that takes place for the sale of the Big Lake Property. The Court can then set a date for the summary proceeding required by Minn. Stat. § 481.13 and a determination of the value of Morrison Sund's attorney liens against 1648 Properties and Stursberg.  Finally, the Court should order Morrison Sund to not sue or threaten to sue Scott Blake, Felhaber Larson, or any defendant in the Lawsuit for not escrowing money into Court and not paying Morrison Sund the amount it demands for its attorney's liens.

## V.  FINAL RELIEF REQUESTED

Plaintiffs 1648 Properties and Henry Stursberg respectfully ask the Court to provide the initial relief requested in the Introduction.  Ultimately, Plaintiffs request that the Court hold a summary proceeding to determine the value of any lien the Court holds to be valid.  Plaintiffs request that at such a summary proceeding the Court determine the value of any valid lien of Morrison Sund is $0 as the legal services provided by Morrison Sund to Plaintiffs did not

provide any ultimate benefit or have any value to Plaintiffs. Further, Morrison Sund's filing of a petition for involuntary bankruptcy against Stursberg vitiated and destroyed any value it could argue its services provided to Plaintiffs on a *quantum meruit* basis and caused Stursberg over $60,000 in damages. If the Court determines that the Morrison Sund lien has a value of more than $0, Plaintiffs request that the Court find that Morrison Sund is not entitled to any collection fees or costs and that the value of its legal services to Plaintiffs, if not $0, is no more than $25,000.

## CONCLUSION

For the foregoing reasons, Plaintiffs request an emergency hearing to assure that the closing presently scheduled for November 18, 2020 can proceed without interference from the improper lien on the Property and that funds from the closing can be escrowed with the Clerk of Court in the amount of $199,339.33, pending a summary proceeding before the Court where Morrison Sund proves the value of their attorney liens against Plaintiffs.

Dated: November 10, 2020

*/s/ John A. Cotter*
John A. Cotter (134296)
Jon S. Swierzewski (108017)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota  55437-1060
(952) 835-3800
jcotter@larkinhoffman.com
jswierzewski@larkinhoffman.com

**Attorneys for Plaintiffs 1648 Properties, LLC and Henry Stursberg**

24.

**Exhibit 4**

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

STATE OF MINNESOTA

COUNTY OF SHERBURNE

-----------------------------------------------------

1648 Properties, LLC, and
Henry Stursberg,

Plaintiffs,

v.

Morrison Sund PLLC,

Defendant.

-----------------------------------------------------

DISTRICT COURT

TENTH JUDICIAL DISTRICT

File No. 71-CV-20-1114

CASE TYPE:  Civil Other/Misc.

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT
PLLC'S MOTION FOR JUDGMENT
PURSUANT TO MINN. STAT. § 418.13.**

# INTRODUCTION

Plaintiffs 1648 Properties, LLC ("1648 Properties") and Henry Stursberg ("Stursberg") (collectively, "Plaintiffs") submit this Memorandum of Law in Opposition to the Motion for Judgment Pursuant to Minn. Stat. § 418.13 of Defendant Morrison Sund PLLC ("Defendant"). After running up fees and costs of over $300,000 as substituted counsel in *1648 Properties, LLC v. Amicorp, Inc., et al.,* Sherburne County, Tenth Judicial District Court, Court File No. 71-cv-18-605 (the "Lawsuit") in just eight months, a rate of over $30,000 per month, Plaintiffs 1648 Properties and Stursberg terminated Defendant based upon its misguided legal work, cost-inefficient effort, and excessive fees.  While one objective of the Lawsuit in the Second Amended Complaint prepared and filed by Defendant was enforcement of a Mediated Settlement Agreement dated March 22, 2018 ("Mediated Settlement Agreement") which required sale of the Big Lake Mobile Home Park property in Big Lake, Minnesota (the "Property") to Plaintiffs, that sale never occurred.  When terminated and in a misguided abuse of process to extract payment of its fees from Plaintiffs, Defendant on January 8, 2020, unlawfully filed a petition in United States District Court for the District of Minnesota (Bankruptcy Court) to force Stursberg into

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

involuntary bankruptcy, a proceeding that was quickly dismissed as improper by the Bankruptcy

Court on January 15, 2020. But its filing precluded Plaintiffs from obtaining financing to enter

into a favorable settlement with defendants in the Lawsuit to purchase the Property as anticipated

by the Mediated Settlement Agreement. The resulting damage alone is significant enough to

vitiate any value on a *quantum meruit* basis that Defendant could argue its legal services

provided.[1]

On December 10, 2019, Defendant recorded a Notice of Attorney Lien ("Notice")

against the Property, claiming an attorney lien under Minn. Stat. § 481.13 by KAW Parks, LLC

("KAW Parks") in the amount of $199,339.33 "plus interest and collection costs upon the

interest (if any) of 1648 Properties."[2] The Property was owned by KAW Parks, LLC ("KAW

Parks"), which was neither an entity ever represented by the firm or owned by any client of

Defendant. Rather KAW Parks was owned by Amicorp Communities, LLC ("Communities")

of which 1648 Properties was a member holding a 49% interest. Defendant also filed UCC-1

statements on December 10, 2019 with the Minnesota Secretary of State giving notice of

attorney liens against 1648 Properties and Stursberg.

Ultimately in September 1, 2020, through new counsel working on behalf of Plaintiffs,

Plaintiffs and the defendants in the Lawsuit entered into a settlement agreement in which

Stursberg sold his interest in Communities to one of the defendants in the Lawsuit. Defendant

---

[1] The fact that so much of that which was done was unnecessary and overcharged, the $105,000.00 already paid is more than sufficient to compensate the firm. Any further claim is offset by the damage they have caused.

[2] By adding "plus interest and collection costs upon the interest (if any) of 1648 Properties," Defendant was overreaching in its Notice and attempting impermissibly to collapse its contract rights into its attorney lien claim in violation of the *Effrem* case. *See Effrem,* 818 N.W.2d at 551-52.

Morrison Sund had no part in negotiating or consummating the settlement and its legal services provided no benefit. To the contrary, the legal services of Defendant turned out to be an impediment as Defendant spent so much time on unproductive motions that the case was not remotely ready for trial. Hamstrung by the unnecessarily aggressive but non-productive approach, Plaintiffs were forced to settle their dispute by merely selling the 49% interest that Plaintiff 1648 Properties held in Communities and walk away. Not one aspect of Defendant's work created or enhanced the value of any asset or property of Plaintiffs. Plaintiffs 1648 Properties and Stursberg have now received the proceeds from the Settlement Agreement generated by the sale of 1648 Properties' interest in Communities just as it existed before Morrison Sund took on the legal representation of Plaintiffs.

Defendant has incorrectly asserted that the value of each of its three attorney liens is in excess of $300,000. Defendant asserts that the attorney liens include $199,339.33 charged to Plaintiffs as attorneys' fees and over $100,000 for Collection Attorney Fees and Collection Costs and interest. The collection fees and costs include fees and costs incurred to try to force Plaintiff Stursberg into involuntary bankruptcy. These purported "collection fees and costs" are not includable in an attorney lien as they do not constitute "compensation" under Minn. Stat. § 481.13 and *Effrem v. Effrem,* 818 N.W2d 546, 551-52 (Minn. Ct. App. 2012) (holding that "attorney fees and costs associated with obtaining an attorney lien under section 481.13 are not includable in the amount of the lien."). Although it is Defendant's burden under Minn. Stat. § 481.13 to prove up the value of its attorney liens , Defendant has recently chosen not to assert a claim under Minn. Stat. § 481.13 against Plaintiffs.

Consequently, Plaintiffs request that the Court deny Defendant's motion. If the Court reaches the merits of a claim by Defendant under Minn. Stat. § 481.13, Plaintiffs request that the

3.

Court determine Defendant's legal services have a value on a *quantum meruit* basis of $0 because they provided no benefit or value to Plaintiffs and Defendant, by its unlawful actions and unclean hands in the Bankruptcy Court, vitiated any value that those services could arguably have ever been deemed to possess.

## RECENT PROCEDURAL BACKGROUND

Previously, on November 10, 2020, Plaintiffs moved for an Emergency Application to determine that Defendant did not have a valid attorney's lien, or in the alternative to determine the scope and amount of such lien on the Property. On November 20, 2020, Judge Karen Schommer, sitting in for Judge Walter Kaminsky, issued an Order directing Defendant to discharge its attorney lien on the Property. Defendant refused to do so. While Defendant appealed the Order, it never sought a stay of its terms, and instead threatened and coerced the owner of the Property to extract unlawfully a $250,000 ransom to remove its attorney lien on the Property. Defendant did this even though Defendant acknowledged in a memorandum filed on November 25, 2020 that its attorney lien "arguably only secures compensation for legal services," citing the *Effrem* case.

Defendant has recently filed an Amended Answer and Counterclaim in which Defendant asserted four counterclaims, all of which are compulsory counterclaims in a lawsuit presently pending in Pennsylvania. But Defendant did not file a counterclaim under Minn. Stat. § 481.13 to prove up Defendant's attorney liens against Plaintiffs. Defendant has apparently waived or abandoned its attorney lien claim under Minn. Stat. § 481.13 in favor of its alleged contract and other claims. This is likely due to the fact that the *Effrem* case limits Defendant's attorney liens in the best case to $199,339.33.

# FACTS

## I.    THE PARTIES TO THIS ACTION

Plaintiff 1648 Properties, LLC ("1648 Properties") is a limited liability company organized under the laws of the Commonwealth of Pennsylvania. Henry Stursberg is an individual resident of the Commonwealth of Pennsylvania. Plaintiff Stursberg is the owner of Plaintiff 1648 Properties. Defendant is a professional limited liability organized under the laws of the State of Minnesota, with its registered office address at 5125 County Road 101, Suite 202, Minnetonka, Minnesota 55345.

## II.    THE LAWSUIT

Plaintiff 1648 Properties was the named plaintiff in the Lawsuit against defendants Amicorp, Inc.; Amicorp Communities, LLC; KAW Parks; Pinerock Properties, LLC; Kent Titcomb; and Brenton Titcomb (collectively, the "Titcomb Parties"), among other parties. Amicorp, Inc., held the majority ownership interest of 51% and 1648 Properties a minority ownership interest of 49% in Amicorp Communities, LLC ("Communities").  Communities owned one hundred percent of  KAW Parks , which owned the Property. Affidavit of Henry Stursberg dated November 9, 2020 ("Stursberg Aff."), ¶¶ 3-7.

The Lawsuit involved various claims of misfeasance and sought enforcement of a settlement agreement made between Amicorp and 1648 Properties in 2018. Some of the defendants in the Lawsuit made third-party claims against Stursberg. The Lawsuit was settled in September 2020, and the Lawsuit has been dismissed. *Id., ¶¶ 8-9.*

### A.    Defendant's Representation of Plaintiffs

 Defendant represented 1648 Properties and Stursberg in the Lawsuit from approximately March 11, 2019 until Defendant's representation was terminated in November 2019. On

November 22, 2019, Defendant withdrew as counsel for plaintiffs in the Lawsuit. KAW Parks

was represented in the Lawsuit by Scott Blake of Felhaber Larson. *Id.,* ¶ 10.

KAW Parks was at all times during the pendency of the Lawsuit and remains today the

sole fee owner of the Property located in Sherburne County, Minnesota, legally described as:

> The South half of the Northwest quarter of the Northeast quarter (S ½ of NW ¼ of NE
> ¼) of Section Thirty (30), Township Thirty-three (33), Range Twenty-seven (27),
> Sherburne County, Minnesota

Neither 1648 Properties nor Stursberg have ever held a fee interest in the Property. *Id.,* ¶ 7.

### B.     The Excessive Work of Defendant

During the approximately eight months that Defendant represented Plaintiffs 1648

Properties and Stursberg, Defendant invoiced plaintiffs approximately $300,000 for their

services, averaging over $30,000 per month. *Id.,* ¶ 12; *see also* Declaration of Daniel Bernheim,

3d, Esq., dated November 30, 2020, ¶ 16.  During this period, Defendant brought five motions on

behalf of 1648 Properties as plaintiff:

1. a motion on May 18, 2019, to amend the complaint;

2. a motion on May 18, 2019, to appoint a Receiver to manage the two
   mobile home properties and to remove Defendants Kent and Brenton
   Titcomb from control of the finances of the two parks;

3. a motion on September 18, 2020 to compel discovery;

4. a second motion on October 25, for appointment of a Receiver to
   refinance the properties and remove the Titcombs after having resisted
   Defendants' motion to appoint a limited receiver just a few weeks earlier;
   and

5. a motion on November 21, 2019 for Rule 11 sanctions.

A review of the motions reveals that Defendant brought two similar motions to appoint a

Receiver to manage the two mobile home properties and to remove the Titcombs from

controlling the finances, losing both times.  In addition, Defendant brought the Rule 11 motion

late in its representation of Plaintiffs which the Court denied. All told, the court completely denied all of Defendant's motions except one. With respect to the remaining motion to serve a Second Amended Complaint, the court granted that motion in part and denied it in part. *Id.,* Ex. A.

Defendant now contends that it attempted to assert a claim under Minn. Stat. § 322C.0701 in the proposed Second Amended Complaint to allow 1648 Properties to seek the equitable powers of the court, but the claim is barred under that statute. Defendant's invoices reflect that Defendant researched Minn. Stat. § 322C. Stursberg Aff., Ex. B at 7 (May 5 and 6, 2019 entries). The fees charged for the preparatory work and the four lost motions were significant and excessive and provided little to no benefit to Plaintiffs, particularly when two of the motions were for the same purpose – for the appointment of a receiver -- and both were lost. *See, e.g., id.,* Ex. B at 1, 25-26 (May 11 and 18, 2019 and November 7-11, 2019 entries).

During the same period, defendants in the Lawsuit brought five motions of their own. But again, Defendant's success rate was poor. Defendants in the Lawsuit succeeded in part on four of the five motions and entirely on the fifth.

While Defendant represented Plaintiffs for eight months, Defendant in those eight months took only one deposition – Brenton Titcomb, the son of Kent Titcomb, the owner of Amicorp, Inc. The Brenton Titcomb deposition was not helpful to Plaintiffs' cases. Stursberg Aff., ¶ 15. Thus, the fees expended on the Brenton Titcomb deposition did little or nothing to advance the case. Defendant never took the deposition of the most central witness in the case, Kent Titcomb, even though Defendant had rolled up approximately $300,000 in attorney's fees by the time of its termination. *Id.*

### C. The Termination of Defendant Morrison Sund

Exasperated with what he believed to be excessive fees and a lack of progress on the Lawsuit, Stursberg terminated Defendant's representation of him and 1648 Properties in or about late November 2019. *Id.,* ¶ 16.

### D. The Notice of Attorney Lien Recorded and UCC-1s Filed by Defendant

On or about December 10, 2019, Defendant recorded a Notice of Attorney Lien against the Property. A true and correct copy of the Notice was attached to the Complaint in this matter as Exhibit A. The Notice states that a lien is claimed "upon the interest (if any) of 1648 Properties" in the Property. Defendant knew at the time it filed the Notice that the Property was owned solely by KAW Parks, and not by 1648 Properties. Also, on December 10, 2019, Defendant filed two UCC-1 Financing Statements with the Minnesota Secretary of State giving notice that it claimed an attorney lien under Minn. Stat. § 481.13 against Plaintiffs 1648 Properties and Stursberg. A true and correct copy of the two UCC-1s filed by Defendant are attached to the Complaint as Exhibits B and C. The UCC-1 filed against 1648 Properties gives notice that Defendant claims "an attorney's lien against debtor 1648 Properties' ownership interest and financial rights in Amicorp Communities, LLC and KAW Parks, LLC (if any)." *See* Ex. B to Complaint. The UCC-1 filed against Stursberg claims only "an attorney's lien against debtor Henry Stursberg's ownership interests and financial rights in 1648 Properties, LLC." *See* Ex. C to Complaint.

### E. Defendant's Petition to Place Henry Stursberg into Involuntary Bankruptcy

Knowing Stursberg's livelihood was as a commercial mortgage broker and financial consultant in Philadelphia, William Burton in late December 2019 or early January 2020 threatened Stursberg if he did not agree with Defendant's fee demands. Stursberg Aff., ¶ 22. Mr. Burton knew that an involuntary bankruptcy proceeding would have serious consequences

on Stursberg's livelihood. *Id.* When Stursberg did not agree to those unreasonable demands, Defendant filed a petition in the United Sates Court for the District of Minnesota (Bankruptcy) on January 8, 2020, seeking to put Stursberg into involuntary bankruptcy. *Id.,* ¶¶ 23. Defendant acted as their own attorneys. Morrison falsely alleged that Stursberg was not generally paying his debts as they came due, the falsity of which was established in court at the hearing, so Defendant could justify filing the petition in Minnesota. *Id.,* ¶ 24. Defendant made other false allegations against Stursberg to try to maintain the involuntary bankruptcy action in the District of Minnesota. *Id.* In fact, Defendant knew from representing Stursberg that Stursberg had lived in Philadelphia for over 36 years and had all of his business and principal assets in Pennsylvania for over 25 years. *Id.,* ¶ 25. The Bankruptcy Court dismissed the petition after Defendant conceded that the Petition contained misrepresentations and had been filed as leverage to collect its own debt, which the Bankruptcy Court deemed improper. *Id.,* ¶ 26.

At an expedited hearing on January 15, 2020, the Bankruptcy Court dismissed the involuntary petition and sealed the record in an attempt to mitigate the business and other harm that the filing was causing to Stursberg. *Id.* Plaintiffs have moved to file the transcript of the hearing under seal in this matter. *See* Plaintiffs' Motion to File Settlement Agreement Confidentially and Bankruptcy Documents Under Seal dated November 30, 2020. While the Court has not ruled on this motion, Plaintiffs point the Court to pages 2, 20-21, 26, 29-30, 32, and 36 of that transcript for discussions and Court statements relevant to the impropriety of the petition of Defendant. *See* Declaration of John A. Cotter to File Confidential Document and Sealed Documents dated November 30, 2020 ("Cotter Dec. II"), Ex. B.

Stursberg has incurred in excess of $85,000 in fees to fight off the involuntary bankruptcy petition. *Id.,* ¶ 27.

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

Significantly, Defendant's filing of the petition for involuntary bankruptcy prevented Stursberg from achieving a favorable settlement of the Lawsuit. *Id.,* ¶ 28. Before the filing of Defendant's petition against him, Plaintiff Stursberg had entered into settlement discussions to purchase the Property from Kent Titcomb and KAW Parks. Plaintiff Stursberg had an offer from Mr. Titcomb in early January for purchase of the Property that Stursberg was advised to take and that Stursberg had decided to take. Stursberg had contacted lenders and had opportunities and was able to obtain the necessary financing to consummate the purchase of the Property. *Id.,* ¶¶ 29-30.

Defendant's petition for involuntary bankruptcy affected Stursberg's credit standing and eliminated his ability to borrow money. The filing of the petition prevented him from getting the financing required to purchase the Property. As a result, he did not consummate a settlement to purchase the Big Lake Property. If Stursberg had been able to consummate that settlement, he would have, among other things, owned a profitable mobile home park and had annual depreciation related to the Big Lake Mobile Home Park of over $350,000 per year. *Id.,* ¶¶ 32-33.

Thus, the pendency of the petition prevented Stursberg from obtaining financing to settle the Lawsuit on favorable terms by buying the Big Lake Property from KAW Parks and achieving the objective of the Mediated Settlement Agreement. The inability to purchase the Property effectively denied 1648 Properties the final outcome that was the focus of the primary claim Defendant pleaded in the Second Amended Complaint and eliminated any benefit or value to Plaintiffs of the services provided by Defendant to Plaintiffs.

### F.    The Pennsylvania Action

On March 26, 2020, Stursberg commenced an action against Defendant and attorney William Burton of Defendant in the United States District Court for the Eastern District of

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

Pennsylvania, No. 2:20-cv-01635 to recover damages from the bad faith filing, abuse of process, and other unlawful conduct that occurred when Defendant filed its involuntary bankruptcy petition against Stursberg after Defendant and Stursberg had a fee dispute.  *Id.*, ¶ 34.

### G.  The Claimed Amount of the Attorney's Lien

During the eight months it represented Plaintiffs 1648 Properties and Stursberg, Defendant invoiced them over $284,339.33. Stursberg paid Defendant $105,000.00.[3]  *Id.,* ¶ 35 and Ex. C.  Defendant filed a Notice of Attorney Lien against the Property claiming that $199,339.33 is owed by Plaintiffs.  *Id.,* ¶ 17 and Ex. A to Complaint. *See also* Bernheim Dec., ¶¶ 7-14.

Defendant, however, has claimed that Stursberg must also pay Defendant for interest, for its ill-fated attempt to put Stursberg into involuntary bankruptcy, and for defending itself against Stursberg's lawsuit against Defendant in Pennsylvania.  Stursberg Aff., ¶ 36 and Ex. D.  And Defendant recently has claimed Plaintiffs must pay for its fees and costs incurred in this matter. Based on those additions, Defendant, through attorney Ryan Dreyer, informed Daniel Bernheim, Pennsylvania counsel for Plaintiffs, on September 18, 2020 that the amount of its claimed attorney's lien is over $281,215.58.  Attorney Dreyer stated:

> Mr. Bernheim, I understand from Scott Blake that Henry has reached settlement terms on the Minnesota lawsuit against Titcomb and his entities. Mr. Blake asked me if Defendant PLLC is willing to release its attorney's lien against the Big Lake property in exchange for an escrow of some of the proceeds pending resolution of claims between Defendant and Henry. Henry, 1648 Properties and Stursberg & Fine owe Defendant PLLC $281,215.58 in the following breakdown:

---

[3] Plaintiffs and Defendant disagree over the amount Plaintiffs paid Defendant.  Defendant contends it is only $95,000.  *See* Def. Mem. at 5.

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

> Attorney Fees from Minnesota Case: $191,407.83
> Interest on unpaid fees owed: $9,460.15
> Collection Attorney Fees: $61,004.50
> Collection Costs: $19,343.10
> Total: $281,215.58
>
> Defendant looks at this as an opportunity for a global settlement with Henry and his entities and will agree to release its attorney's lien in the real estate in exchange for payment via wire of $281,215.58 and a mutual release of claims between it (including attorneys), Henry and his entities. You should be aware that in addition to the attorney's lien recorded against the real estate, Defendant PLLC also has perfected security interests in any proceeds that Henry and/or 1648 Properties may receive from settlement of this lawsuit, sale of the land or otherwise. Defendant will terminate these security interests as part of a settlement on the above terms.

*Id.,* ¶ 36, Ex. D.  Recently, on November 24, 2020, attorney Dreyer informed Plaintiffs' counsel that Plaintiffs were owed over $300,000.

Thus, Defendant readily acknowledges that over $100,000.00 of its claimed liens is for interest, purported collection fees and costs, and defense costs in this matter.  Those additional fees and costs were not incurred in Defendant's representation of the Plaintiffs, but instead incurred on its own behalf in attempting to place Stursberg into involuntary bankruptcy, defending Stursberg's action in Pennsylvania against Defendant, and litigating this matter.[4]  Yet, Defendant has repeatedly asserted that it must receive more than its invoiced fees before it will release the liens, as well as full release of all claims Plaintiffs may have against Defendant. Indeed, Defendant has repeatedly demanded $250,000 plus a release by Plaintiffs of all claims they may have against it to release its liens.  *See* Affidavit of John A. Cotter Dated November 10,

---

[4] A party asserting an attorneys' lien may not under Minnesota law obtain collection costs as part of its attorneys' lien.  *See* Argument, Section III *infra.*

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

2020 ("Cotter Aff."), Exs. A and B.[5]   Of course, that number has risen to in excess of $300,000 recently.  Demanding more than the law allows for an attorney lien and for collection costs that the law precludes is another example of the type of sharp practices and misguided strategies that Defendant has undertaken that led to excessive fees and costs, and that precluded a settlement beneficial to Plaintiffs and caused them damage.  Defendant's violation of the November 20 Order has only added to the litany of unsupportable practices.

### H.    The Ultimate Settlement of the Lawsuit

The Lawsuit ultimately settled in September 2020 through the efforts of Plaintiffs' Pennsylvania counsel, Daniel Bernheim, and Plaintiffs' counsel of record in the Lawsuit, John Cotter.  Stursberg Aff., ¶ 38.  The Settlement Agreement is confidential, but Plaintiffs filed a motion to have it filed as a "confidential document" under Gen. R. Prac. 11.06(c).  Under the Settlement Agreement, the settlement involved 1648 Properties selling its membership interest in Communities for a stated amount to be received by a date in the future.[6]  Stursberg Aff., ¶ 39. As of the date of the settlement, there can be no argument that Plaintiffs had any direct, indirect, or other interest in Communities, KAW Parks, or the Property.  *See id.,* ¶ 40.

As a result of the 2020 Settlement Agreement, the Lawsuit has been dismissed with prejudice as of September 21, 2019.  *Id.,* ¶ 42.  A sale of the Property by KAW Parks occurred on December 1, 2020.

---

[5] When asked what amount it would require to be escrowed into court for release of its liens pending a later determination, Defendant has also demanded many times more that it is entitled under Minnesota law.  *See, e.g.,* Cotter Aff., Ex. D.

[6] Plaintiffs are willing to file the Settlement Agreement under seal if Defendant agrees to  a filing under seal and to keep the terms of it confidential or the Court enters an Order approving the filing of the Settlement Agreement under seal.

None of the legal services performed by Defendant contributed to the settlement. *See Id.,* ¶ 44 *and* Cotter Aff., ¶ ¶ 11, 14. And the settlement did not involve Plaintiffs obtaining any interest in or to the Property on which Defendant has placed its attorney lien. Stursberg Aff., ¶ 45. The settlement does not result in specific performance of the Mediated Settlement Agreement that was the subject of Count I of the Second Amended Complaint. *Id.* Indeed, 1648 Properties and Stursberg, instead of receiving the Property owned by KAW Parks, no longer have an opportunity to acquire that Property. *Id.,* ¶ 46. Thus, none of the legal service provided by Defendant contributed in any way directly or indirectly to any settlement or judgment under the case law cited by Defendant and provided no value to Plaintiffs with respect to the settlement that was actually achieved. Cotter Aff., ¶ 14. Indeed, the failure to provide value in the legal services that Defendant provided Plaintiffs, including the fact that only one deposition was taken after approximately $400,000 of attorney time had been invested on the Lawsuit, was an impediment to litigating for and achieving a different settlement.

## ARGUMENT

### I. DEFENDANT IS NOT ENTITLED TO AN ATTORNEY'S LIEN ON THE PROPERTY

#### A. The Governing Law

The existence of an attorney's lien in Minnesota is governed by statute. Minnesota Statutes Section 481.13 provides that:

> An attorney has a lien for compensation whether the agreement for compensation is expressed or implied (1) upon the cause of action from the time of the service of the summons in the action . . . and (2) upon the interest of the attorney's client in any money or property involved in or affected by any action . . . in which the attorney may have been employed, from the commencement of the action . . . .

Under Minnesota law, an attorney has a lien for compensation:

14.

> (1) upon . . . the **interest of the attorney's client** in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed . . . .

Minn. Stat. §481.13, Subd. 1 (2019) (Emphasis added).[7]

The emphasized language is crucial – the lien can only be claimed on the client's interest. An attorney is not entitled to make a claim against the property of a third-party. In this case, Defendant filed its Notice against the property of a party to the Lawsuit that Defendant not only never represented, but was adverse to throughout its representation of 1648 Properties and Stursberg.

### B.     No Basis Exists for the Defendant Attorney's Lien on the Property

The key provision of Minn. Stat. § 481.13 relevant here is that the attorney can only claim a lien on "the interest of [his or her] client in . . . property involved in or affected by [the] action or proceeding." The interest at issue must be that of the attorney's client, not of some third party. In this case, Defendant knew exactly what Stursberg and 1648 Properties actually owned. Stursberg owned 1648 Properties. 1648 Properties owned a minority interest in Communities. Communities owned KAW Parks. KAW Parks owned the Property. It is not until you go through these layers that you get to the Property. Defendant's position is akin to claiming that because Stursberg owns one share of General Motors (hypothetically an adverse party, like KAW Parks), it can slap a lien on every car manufactured by General Motors. That is nonsense.

Indeed, in its Notice filed on the Property, Defendant never even asserts that either of its clients have any interest in the Property.  Instead, Defendant tries to hide its unreasonable position by adding the parenthetical "(if any)" to the Notice. *See* Ex. A to Complaint.  To show

---

[7] With respect to real property, an attorney must perfect the lien by filing a notice of intent to claim such a lien with the county recorder or registrar where the real property is located. Minn. Stat. § 481.13, Subd. 2.

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

that Defendant knew exactly what Stursberg and 1648 Properties actually owned, one need only look at the UCC-1 Financing statements filed by Defendant. Those UCC-1 statements claim an attorney's lien against 1648 Properties' ownership interests in Amicorp and Stursberg's ownership interests in 1648 Properties. *See* Ex. B to Complaint. Defendant's representation of 1648 Properties and/or Stursberg in the Lawsuit does not give Defendant the right to claim an attorney's lien against real property owned solely by KAW Properties, which was never represented by Defendant. Even if one or more Plaintiffs had some type of interest in the Property at one point in time, any such interest ended when Plaintiffs entered into the Settlement Agreement. *See Empro Corp. v. Scottland Hotels, Inc.*, 449 N.W.2d 734, 737-38 (Minn. Ct. App. 1990). In *Empro*, an attorney tried to enforce his attorney's lien against property that was the subject of a mechanic's lien action brought by his client. That property, however, was owned not by the attorney's client, but by a third party. The client changed attorneys, resulting in the first attorney filing an attorney lien. The client then settled the case and gave up any claim in the property covered by the mechanics lien, just as Plaintiffs have settled here and given up any arguable equitable interest in the Property. The Court of Appeals held: "Any interest Hall and Associates [here, Plaintiffs] may have had in the property [here, the Property] by virtue of its mechanics' lien [equitable lien] was extinguished when Hall and Associates [here, Plaintiffs] settled with Taping [here, the Titcomb parties]." *Id.*, 449 N.W.2d at 737-38. Moreover, the court held that "an attorney's lien on a client's interest in litigation does not give a right to claim against any third party in the litigation." *Id.* Consequently, any arguable equitable interest that Defendant claims Plaintiffs had in the Property ended when Plaintiffs entered into the Settlement Agreement and any similar argument by Defendant to that of PW&L about an interest in the

16.

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

Property through litigation in the Lawsuit is insufficient to create a valid attorney lien on the Property. *Id.*

This case fits within the *Empro* case. Defendant could not put a lien on the Property because Plaintiffs did not have any interest in the Property. At most, under the 2018 Settlement Agreement, if it had ever been enforced, 1648 Properties may have had the right to acquire the Property from KAW Parks. But the 2018 Settlement Agreement was never performed and 1648 Properties has no interest in the Property. As a result, Defendant did not have a right to place an attorney lien on the Property and Defendant's attorney lien against the Property is invalid. But even if, for purposes of argument, a possible right to purchase could somehow constitute an interest sufficient to support an attorney lien, that interest no longer exists. The Lawsuit was settled in September 2020 and has been dismissed with prejudice. 1648 Properties has no interest in the Property. Although the terms of the 2020 Settlement Agreement are confidential, any interest Defendant could argue 1648 Properties may have had in the Property was extinguished when the Lawsuit was settled and dismissed. *See Empro Corp.,* 449 N.W.2d at 737. Consequently, Defendant cannot claim an attorney's lien on the Property and should have to disgorge all monies received at the closing from KAW Parks. Alternatively, a constructive trust should be placed on the $250,000 received by Defendant from KAW Parks and escrowed in the Court for return to its rightful owner.

## II. DEFENDANT'S ATTORNEY LIENS AGAINST 1648 PROPERTIES AND HENRY STURSBERG

### A. The *Quantum Meruit* Standard for Determining the Value of Defendant's Attorney Liens against Plaintiffs 1648 Properties and Henry Stursberg

The starting point for any evaluation of a claim for attorney's fees is the engagement letter between the lawyer and client. *See Dorsey & Whitney LLP, v. Grossman,* 749 N.W.2d 409, 418 (Minn. Ct. App. 2008) (citing *Thomas A. Foster & Assocs., Ltd. v. Paulson,* 699 N.W.2d 1, 6

17.

(Minn. Ct. App. 2005)). In this case, the Defendant's Retainer Agreement is quite clear. Although initially its fees were to be computed on an hourly basis, once the representation was terminated, Defendant agreed it would only be paid "reasonable compensation to the date of termination." Stursberg Aff., Exhibit A, ¶ 4. As Defendant recognizes in its memorandum, "[a] attorney lien is an equitable lien created to prevent a client from benefiting from an attorney's services without paying for those service." *Dorsey,* 749 N.W.2d at 420. Put another way, " . . . , if a client recovers money as a result of an attorney's services, the attorney has a lien on the recovery as a security for fees owed by the client." *Thomas A. Foster & Associates, LTD v. Paulson,* 699 N.W.2d 1, 5 (Minn. App. 2005) (("[a]s an equitable lien, the attorney lien protects against a successful party receiving a judgment secured by an attorney's services without paying for those services").

When Defendant began representing Plaintiffs, Plaintiff 1648 owned a 49% interest in Communities. Plaintiffs, through the efforts of another law firm before any litigation began in Minnesota, already had entered into a Mediated Settlement Agreement on March 22, 2018. See Def. Mem. at 3. The Dunlevy law firm has commenced the Lawsuit and sued the Titcomb parties for specific performance of the Mediated Settlement Agreement to purchase the Property from KAW Parks. *Id.* Defendant represented 1648 Properties and Stursberg for slightly more than eight months. Defendant began its representation on March 18, 2019 when 1648 Properties and Stursberg signed a Retainer Agreement with Defendant. Stursberg Aff., Exhibit A. After eight months of Defendant's representation, Defendant had not achieved a judgment or a settlement. Defendant's efforts did not result in a purchase of the Property or materially advance that effort.

18.

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

In that limited eight-month period, Defendant billed 1648 Properties and Stursberg approximately $300,000. Plaintiffs paid $105,000.00 of the attorney's fees and costs charged by Defendant. *Id., ¶* 14. Defendant's legal services did not provide any benefit to Plaintiffs given the ultimate outcome of the case. The total fees and costs invoiced are excessive and lack value. Defendant has claimed a lien for the amount it billed 1648 Properties and Stursberg.

When determining what is reasonable compensation for an attorney, Minnesota courts have used these eight factors to determine the value of the attorney's services:

(1) time and labor required;
(2) nature and difficulty of the responsibility assumed;
(3) amount involved and the results obtained;
(4) fees customarily charged for similar legal services;
(5) experience, reputation, and ability of counsel;
(6) fee arrangement existing between counsel and the client;
(7) contributions of others; and
(8) timing of the termination.

*Faricy Law Firm, P.A. v. API, Inc. Asbestos Settlement Tr.*, 912 N.W.2d 652, 658 (Minn. 2018).

### B.     The *Quantum Meruit* Value of Defendant's Attorney Liens

Application of the eight factors for determining the value of Defendant's attorney lien leads to the inescapable conclusion that the value of Defendant's legal services to Plaintiffs is $0. While Defendant spent a significant amount of time and labor litigating the case, the time was poorly spent and excessive. Defendant averaged over $30,000 per month in fees while it was on the case. Defendant spent an inordinate amount of time on failed motion practice. Of the five motions that it filed, it prevailed on only a part of one, the motion to amend the complaint. But in bringing that motion, Defendant, even though it researched the claim shortly before bringing its motion to amend the complaint, continued to pursue by their own admission a claim under Minn. Stat. § 322C.0701 they knew was barred by the statute. Why did Defendant waste the time and money to bring a motion to amend under the statute if they knew it was not allowed?

19.

While Defendant claims it did obtain equitable relief in the form of a claim for dissolution against KAW Parks, Defendant limited itself to only dissolution and did not obtain consent for Plaintiff 1648 Properties to avail itself of the equitable powers of the district court to seek, among other equitable relief: (1) a mandatory sale of the Big Lake Property to Plaintiffs; and (2) an equitable division of the mobile home parks and other property owned by KAW Parks. Indeed, the bar for the existence of oppressive conduct against a minority member to force equitable relief is low and grounds existed in the Lawsuit to make a member oppression argument. Moreover, the mandatory sale of Big Lake to Plaintiffs or an equitable split of the mobile home parks and property would have allowed Stursberg to effect a §1031 tax-free exchange of real estate to avoid capital gains and to permit Plaintiffs to enjoy the advantages of depreciation from owning a mobile home park. None of these benefits accrued to Plaintiffs under the claims asserted by Defendant. Consequently, the one motion on which Defendant prevailed in part was really a pyrrhic victory.

As to the second and third factors, the nature and difficulty of the responsibility assumed was not high. The case while significant was not taxing on a practitioner with skill in the area. But the skill applied was limited. Many motions were lost, and many were ill-advised or poorly done. For example, two motions were brought for appointment of a receiver. It was misguided to attempt the motion once, let alone twice. One loss is enough. An attorney does not need to lose twice to know that a motion is unavailing. The motion to amend was misfocused and failed to seek a required claim. The extensive motion practice rolled up excessive fees for no benefit to the clients, particularly a late-filed motion under Rule 11, a rule the client could not be expected to understand. As to the result, Defendant did not obtain any settlement or ultimate result for Plaintiffs, and failed on most motions in which it was involved.

20.

As to the fourth factor, the fees charged are clearly excessive. Invoicing approximately $300,000 in a mere eight months on a case of this nature is not usual and represents in many instances misguided judgment. The case was not where it should have been for the amount invoiced in fees. Only one deposition was taken, and it was of a really insignificant witness. But with approximately $300,000 in fees expended the most important witness – Kent Titcomb – had not been deposed. And experts had not been engaged and prepared.

As to the fifth factor, the lack of experience of counsel in this type of case was evident from the misguided motion to amend. This motion and the limited number of depositions taken after $300,000 in fees had been incurred indicate that the attorneys did not have significant experience in legal areas central to the case. While it is not our desire to criticize the ability of counsel unnecessarily, this case simply was not where it should have been after the $300,000 in time had been expended by substitute counsel. They simply could not allow themselves to get pulled into a war of attrition with a wealthier opponent feeding off of the businesses at issue.

The seventh factor is perhaps the most significant to the determination of the value of the Defendant attorney lien. Defendant was terminated in November 2019, more than ten months before the Lawsuit settled. The settlement was achieved through the work of new counsel in a different way from how the complaint was pleaded and over pleading obstacles created by the misguided motion practice of Defendant. The Settlement Agreement was achieved 100% by the efforts and negotiations of others besides Defendant. Indeed, the Defendant invoices do not contain any charges that relate to the settlement discussions that led to the consummation of the Settlement Agreement.

The eighth factor is instructive. Defendant was terminated almost ten months before fact and expert discovery would have ultimately concluded. At $30,000 per month, Plaintiffs

arguable faced another $300,000 in legal fees and costs, making the economics of the case suspect. In the end, termination by the clients was inevitable under the circumstances.

So, what is the value of Defendant's attorney's lien claim? The work Defendant performed hindered the prosecution of the case. Little of value or benefit existed from the eight months of motion practice without depositions of key people such as defendant Kent Titcomb. After Plaintiffs lost their opportunity to settle by purchasing the Big Lake property due to the petition for involuntary bankruptcy filed by Defendant against Stursberg, the settlement had to be achieved in a different manner. Defendant did not contribute to that effort at all. So, under *quantum meruit,* Defendant's services provided no overall benefit or value, and their abuse of process in attempting to put Stursberg into involuntary bankruptcy vitiated any benefit that Defendant could allege. Stursberg spent over $85,000 fighting off and overcoming the involuntary bankruptcy petition of Defendant, while at the same time he lost his ability to obtain financing to settle the case by buying the Big Lake property and avoiding the capital gains taxes he now faces and losing the depreciation he would have had as a result of the purchase. The Bankruptcy Court determined the effort to put Stursberg into involuntary bankruptcy was improper. The attorney's lien that Defendant claims is beyond what it is legally entitled since Defendant, despite being shown case law proving it wrong, comes to this Court with unclean hands and in equity does not deserve to benefit from this conduct.

Thus, all things considered, the value of the Defendant attorney lien is $0. In its best incarnation, it is worth $25,000.

22.

### III.  DEFENDANT CANNOT ADD TO ITS CLAIMED ATTORNEY LIEN AMOUNTS EXPENDED IN TRYING TO PUT STURSBERG INTO INVOLUNTARY BANKRUPTCY OR IN DEFENDING ITSELF FROM STURSBERG'S LAWSUIT AGAINST IT IN PENNSYLVANIA

As discussed above, Defendant invoiced Henry Stursberg the total sum of $284,339.33 during the eight months it represented him. Stursberg paid Defendant $85,000.00. The maximum amount of fees that could thus be claimed in an attorney's lien is $199,339.33. But Defendant, in direct violation of controlling Minnesota case law, has tried to claim that its lien includes its own fees for the ill-fated attempt to put Stursberg into involuntary bankruptcy, and for defending itself against Stursberg's lawsuit against Defendant in Pennsylvania.

Defendant has claimed that it can add such amounts to its attorney's lien because its engagement agreement with Stursberg allows them to recover its costs of collection. But this exact issue was addressed and disposed of by the Minnesota Court of Appeals in *Effrem v. Effrem*, 818 N.W.2d 546 (Minn. App. 2012), where the court held that:

> . . . collection fees and costs do not constitute "compensation" [within the meaning of Minn. Stat. §481.13] because they are not services rendered on behalf of the client. **Rather, they are services performed on behalf of the law firm.**

*Id.* At 551 (emphasis added). Defendant's efforts to inflate its attorney's lien beyond the actual amounts invoiced is improper and directly contrary to Minnesota law. Its continued insistence that such costs be paid even after the holding of the *Effrem* case was cited to them constitutes additional abuse of process and Plaintiffs should be awarded their attorney's fees and costs for having to address this argument.

The same argument applies to Defendant's attempt to add interest into its attorney lien. The engagement agreement does provide that interest will be charged on unpaid fees. But interest is not compensation for services provided to the clients, and thus is not properly included in the lien. Interest is recoverable, if at all, by pursuing a separate judgement for interest. *See*

*Christensen Law Office, PLLC v. Olean*, 2015 WL 5312159 (Minn. App. Sept. 14, 2015)

(attorney's lien for compensation; a separate judgment for interest and costs of collection).

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied and a judgment entered against Defendant that the value of its attorney lien is $0. As demonstrated, Defendant did not contribute to the settlement that ended the Lawsuit and its legal services provided no benefit or value to Plaintiffs. Even if Defendant could make out some colorable claim that its services provided some value to Plaintiffs, Defendant's unlawful petition for involuntary bankruptcy against Plaintiff Stursberg destroyed any value Defendant could argue its services provided to Plaintiffs. If the Court determines that Defendant's lien has a value of more than $0, Plaintiffs request that the Court find that the value of Defendant's attorney liens collectively is at most $25,000 and that Defendant is not entitled to any of its purported collection fees or costs.

Because Defendant violated the November 20 Order, Defendant also requests that the Court order Defendant to reimburse KAW Parks $250,000 that it received at the closing from KAW Parks or escrow the $250,000 with the Clerk of Court for Sherburne County District Court for further determination.

Dated: December 3, 2020

*/s/ John A. Cotter*
John A. Cotter (134296)
Jon S. Swierzewski (108017)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota 55437-1060
(952) 835-3800
jcotter@larkinhoffman.com
jswierzewski@larkinhoffman.com

**Attorneys for Plaintiffs 1648 Properties, LLC and Henry Stursberg**

24.

Filed in District Court
State of Minnesota
12/3/2020 11:00 PM

# ACKNOWLEDGMENT

I hereby acknowledge that sanctions may be awarded pursuant to Minn. Stat. § 549.211, subd. 3, if the court determines that this document violates Minn. Stat. § 549.211, subd. 2.

*/s/ John A. Cotter*
John A. Cotter

25.

**Exhibit 5**

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

**STATE OF MINNESOTA**                          **DISTRICT COURT**

**COUNTY OF SHERBURNE**                    **TENTH JUDICIAL DISTRICT**

| | |
|---|---|
| 1648 Properties, LLC and Henry Stursberg, <br><br>                     Plaintiffs, <br> v. <br><br> Morrison Sund, PLLC, <br><br>               Defendant. | Court File No.:  71-CV-20-1114 <br> Case Type:  Civil Other/Miscellaneous <br> Hon. Walter Kaminsky <br><br><br> **AMENDED ANSWER AND COUNTERCLAIM** |

Defendant Morrison Sund, PLLC ("Morrison Sund") answers and responds to the Complaint of Plaintiffs 1648 Properties, LLC ("1648 Properties") and Henry Stursberg ("Stursberg") (collectively, "Plaintiffs") as follows:

## GENERAL DENIAL

Unless expressly admitted, conditioned, or qualified, Morrison Sund denies each and every allegation contained in the Complaint and puts Plaintiffs to their burden of proof.

## SPECIFIC RESPONSES

Morrison Sund answers and responds to each separately enumerated paragraph in the Complaint as follows:

## PARTIES

1.      As to paragraph 1, is without sufficient knowledge or information to either admit or deny the current legal status or address of 1648 Properties and therefore denies the allegations and puts Plaintiffs to their burden of proof.

2.      As to paragraph 2, is without sufficient knowledge or information to either admit or deny the current address of Stursberg and therefore denies the allegations and puts Plaintiffs to their burden of proof.

3.      As to paragraph 3, admits.

EXHIBIT
5

4.      As to paragraph 4, admits Morrison Sund transacts business within the State of Minnesota. As to the remaining allegations, states the allegations therein regarding personal jurisdiction constitute legal conclusions to which no response need be given. To the extent Plaintiffs have any legitimate and cognizable claims against Morrison Sund or any of its attorneys, however, personal jurisdiction would rest exclusively in Minnesota.

5.      As to paragraph 5, admits Morrison Sund has its principal place of business in Hennepin County and that some of the transactions alleged in the Complaint occurred in Sherburne County.

## FACTS

6.      As to paragraph 6, admits.

7.      As to paragraph 7, admits.

8.      As to paragraph 8, admits.

9.      As to paragraph 9, denies.

10.      As to paragraph 10, is without sufficient knowledge or information to either admit or deny the current ownership status of KAW Parks and therefore denies the allegations and puts Plaintiffs to their burden of proof. Admits Amicorp Communities was a defendant in the Lawsuit, as that term is used in the Complaint.

11.      As to paragraph 11, is without sufficient knowledge or information to either admit or deny that KAW Parks is the current sole fee owner of the "Property," as that term is used in the Complaint, and therefore denies the allegations and puts Plaintiffs to their burden of proof.

12.      As to paragraph 12, is without sufficient knowledge or information to either admit or deny that the Property is commonly known as the Big Lake Mobile Home Park and therefore denies the allegations and puts Plaintiffs to their burden of proof.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

13.     As to paragraph 13, states that the invoices Morrison Sund sent to Plaintiffs speak for themselves.  Morrison Sund affirmatively alleges that all work it billed for was performed and justified.

14.     As to paragraph 14, admits Morrison Sund caused a Second Amended Complaint to be filed on or about August 15, 2019.

15.     As to paragraph 15, states that the Second Amended Complaint speaks for itself regarding the claims made.  As to the remaining allegations, denies that any causes of action included or omitted in the Second Amended Complaint negatively affected Plaintiffs' ability to pursue their case.

16.     As to paragraph 16, denies.

17.     As to paragraph 17, admits Morrison Sund took the deposition of Brenton Titcomb.  As to the remaining allegations, states that any decisions to not depose other parties were tactics of counsel made with Plaintiffs' knowledge and/or caused by Plaintiffs' acts or omissions.

18.     As to paragraph 18, states that any decisions regarding if and when to retain an expert were tactics of counsel made with Plaintiffs' knowledge and/or caused by Plaintiffs' acts or omissions.  As to the remaining allegations, denies that Morrison Sound should have paid out of pocket for expert fees.

19.     As to paragraph 19, denies that the fees of Morrison Sund were unreasonable or excessive and puts Plaintiffs to their burden of proof.  As to the remaining allegations, admits Plaintiffs refused to pay Morrison Sund's legal fees and further states that Plaintiffs habitually failed to pay invoices of Morrison Sund in full.

20. As to paragraph 20, admits that Morrison Sund withdrew from representing Plaintiffs from the Lawsuit but deny any suggestion or implication this was by choice.

21. As to paragraph 21, admits.

22. As to paragraph 22, admits. The Notice of Attorney's Lien attached to the Complaint as **Exhibit A** speaks for itself.

23. As to paragraph 23, admits. The UCC1 attached to the Complaint as **Exhibit B** speaks for itself.

24. As to paragraph 24, denies.

25. As to paragraph 25, admits. The UCC1 attached to the Complaint as **Exhibit C** and labeled as the Stursberg UCC1 speaks for itself.

26. As to paragraph 26, denies.

27. As to paragraph 27, denies.

28. As to paragraph 28, denies.

29. As to paragraph 29, denies.

30. As to paragraph 30, admits Plaintiffs dispute the value of legal services Morrison Sund provided. Morrison Sund denies that Plaintiffs' dispute is factually or legally relevant or supported and puts Plaintiffs to their burden of proof.

31. As to paragraph 31, denies.

32. As to paragraph 32, admits an involuntary bankruptcy petition was filed and then promptly dismissed by stipulation of the parties. As to the remaining allegations therein, denies and puts Plaintiffs to their burden of proof.

33. As to paragraph 33, is without sufficient knowledge or information to either admit or deny Plaintiffs and the parties labeled in the Complaint as the Titcomb Parties settled all

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

claims and entered into a settlement agreement. Despite repeated demands, Morrison Sund has not been provided the settlement agreement and is not privy to the terms or conditions of settlement. Morrison Sund admits, upon information and belief, that the Court may have entered an order dismissing the Lawsuit.

34. As to paragraph 34, is without sufficient knowledge or information to either admit or deny the allegations therein and therefore denies the allegations and puts Plaintiffs to their burden of proof.

35. As to paragraph 35, denies.

36. As to paragraph 36, admits the Property has been foreclosed upon because Plaintiffs and/or the Titcomb Parties defaulted on one or more loans.

37. As to paragraph 37, denies.

38. As to paragraph 38, denies.

39. As to paragraph 39, denies.

40. As to paragraph 40, denies.

41. As to paragraph 41, admits attorney Scott Blake communicated with Morrison Sund attorney Ryan Dreyer about escrowing funds from the putative sale of the Property and removal of the Notice of Attorney's Lien. As to the remaining allegations therein, denies.

42. As to paragraph 42, states the text of the email reprinted therein speaks for itself. Morrison Sund further states that disclosure of the email may be in violation of Rule 408 of the Minnesota Rules of Evidence.

43. As to paragraph 43, denies. The fees identified therein relate to Morrison Sund's successful defense against Stursberg's motion for attorney fees and sanctions brought in Minnesota Bankruptcy Court as well as defending against an action Stursberg commenced

against Morrison Sund and one of its attorneys, Matthew Burton, in the United States District Court Eastern District of Pennsylvania, Case No. 2:20-cv-01635-KSM ("Pennsylvania Action").

44.     As to paragraph 44, denies.

## COUNT I
## VIOLATION OF MINN. STAT. § 481.13 – NOTICE OF ATTORNEY'S LIEN ON THE PROPERTY

45.     As to paragraph 45, restates and alleges all previous responses, allegations, and denials.

46.     As to paragraph 46, admits.

47.     As to paragraph 47, denies.

48.     As to paragraph 48, denies.

49.     As to paragraph 49, admits.

50.     As to paragraph 50, is without sufficient knowledge or information to either admit or deny the allegations therein and puts Plaintiffs to their burden of proof.

51.     As to paragraph 51, denies.

52.     As to paragraph 52, denies.

53.     As to paragraph 53, denies.

54.     As to paragraph 54, denies.

55.     As to paragraph 55, denies.

56.     As to paragraph 56, denies Plaintiffs are entitled to the relief requested therein.

57.     As to paragraph 57, denies Plaintiffs are entitled to the relief requested therein.

## COUNT II
## VIOLATION OF MINN. STAT. 481.13 – NOTICE OF ATTORNEY'S LIENS AGAINST PLAINTIFFS 1648 PROPERTIES AND STURSBERG

58. As to paragraph 58, restates and alleges all previous responses, allegations, and denials.

59. As to paragraph 59, admits.

60. As to paragraph 60, denies.

61. As to paragraph 61, denies.

62. As to paragraph 62, denies.

63. As to paragraph 63, denies.

64. As to paragraph 64, denies.

65. As to paragraph 65, denies.

66. As to paragraph 66, denies.

67. As to paragraph 67, denies Plaintiffs are entitled to the relief requested therein.

68. As to paragraph 68, denies Plaintiffs are entitled to the relief requested therein.

## **AFFIRMATIVE DEFENSES**

Morrison Sund asserts the following affirmative defenses:

1. Plaintiffs' Complaint fails in whole or in part to state claims upon which relief may be granted. Minn. Stat. § 481.13 does not create a cause of action in favor of Plaintiffs.

2. Plaintiffs' Complaint fails in whole or in part under the doctrine of abstention or similar grounds because Plaintiffs purport to assert claims and causes of action that they have already asserted in the pending Pennsylvania Action.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

3.     Plaintiffs' Complaint fails in whole or in part because of Plaintiffs' own fraud, misrepresentations, negligence, breaches of contract, unclean hands, unjust enrichment, and unlawful or inequitable conduct.

4.     Plaintiffs' Complaint fails in whole or in part because any alleged harms suffered by Plaintiffs are the result of their own conduct or the conduct of third parties over whom Morrison Sund has no control.

5.     Plaintiffs' Complaint fails in whole or in part because Plaintiffs have failed to take reasonable steps to mitigate their purported damages or have created their own damages.

6.     Plaintiffs' Complaint fails in whole or in part by application of preemption, res judicata, or collateral estoppel.

7.     Plaintiffs' Complaint fails in whole or in part because Plaintiffs lack standing.

8.     Plaintiffs' Complaint fails in whole or in part by application of waiver, ratification, accounts stated, and estoppel.

9.     Morrison Sund is entitled to an attorney's lien as allowed under Minn. Stat. § 481.13.

10.     Morrison Sund reserves the right to amend the Answer to add affirmative defenses upon further discovery of facts supporting such affirmative defenses.

## COUNTERCLAIM

Morrison Sund asserts the following Counterclaims against 1648 Properties, LLC and Henry Stursberg.

## PARTIES

1. 1648 Properties, LLC ("1648 Properties") is a Pennsylvania Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1528 Walnut Street, Suite 2008, Philadelphia, PA 19102.

2. Henry Stursberg ("Stursberg") is an individual residing in Pennsylvania.

3. Morrison Sund PLLC ("Morrison Sund") is a Minnesota Limited Liability Company with its principal place of business at 5125 County Road 101, Suite 200, Minnetonka Minnesota 55435.

4. Personal jurisdiction of 1648 Properties, LLC and Henry Stursberg is proper because 1648 Properties, LLC and Henry Stursberg have submitted to the jurisdiction of the Sherburne County District Court by invoking the power of this Court to obtain their own affirmative relief through the filing of a summons and complaint.

## FACTS

1. On March 18, 2019, Plaintiff in this lawsuit 1648 Properties and Stursberg entered into a Retainer Agreement with Morrison Sund.

2. 1648 Properties and Stursberg retained Morrison Sund to represent them in "litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park." (the "Titcomb Litigation").

3. The Big Lake Property and the Sherburne Village Property have a combined value of approximately $12,500,000.00 with roughly $7,000,000.00 of equity above and beyond what is owed to the secured lender.

4. The Retainer Agreement required 1648 Properties and Stursberg to pay Morrison Sund's invoices within 15 days after the billing date, to "review all bills or invoices it receives

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

from the Firm and that it will notify Firm promptly of any issues or concerns it has with its bill"
and "to pay interest to the Firm at the rate of 5% per annum on all fees and expenses."

5.      The Retainer Agreement specifically states that "Clients agree to pay the costs
incurred by the Firm to collect overdue fees and expenses, including attorneys' fees at the rate of
$200.00 per hour."

6.      On March 29, 2019, Morrison Sund formally noticed its appearance in the
Titcomb Litigation.

7.      From March 29, 2019 until November 22, 2019, Morrison Sund acted as attorney
of record for Plaintiffs and eventually also appeared on behalf of Stursberg & Fine following its
addition to the Titcomb Litigation.

8.      Among other hearings in the Titcomb Litigation, Morrison Sund appeared on
behalf of 1648 Properties and Stursberg at the following hearings:

> April 12, 2019 Motion for Summary Judgment
>
> April 24, 2019 Motion Hearing (Reduce Scope of Subpoena)
>
> May 24, 2019 Motion to Amend Complaint and Appoint Receiver
>
> June 17, 2019 Motion for Protective Order
>
> August 20, 2019 Motion to Amend Scheduling Order
>
> October 11, 2019 Motions to Compel, Injunction, Protective Order and Amend
>
> November 8, 2019 Motion for Appointment of Receiver

9.      Morrison Sund produced Memoranda of Law and filed documents in support or
opposition to Motions.

10.     Morrison Sund thoroughly researched, briefed, served and filed documents for
Motions.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

11.     Morrison Sund obtained and reviewed tens of thousands of discovery documents from the Titcomb Entities.

12.     Morrison Sund deposed Brenton Titcomb,

13.     Morrison Sund attended an all-day mediation that also required Morrison Sund to participate in follow up telephone conferences and to send and receive electronic communications.

14.     Morrison Sund engaged in many client meetings, telephone conferences, and negotiations.

15.     Morrison Sund conducted extensive legal research.

16.     Morrison Sund drafted numerous legal documents.

17.     After the fact, 1648 Properties and Stursberg wrongly criticizes Morrison Sund's representation of them in the Titcomb Litigation.[1]

18.     One of 1648 Properties' and Stursberg's improper criticisms is for pursuing the receiver motion.

---

[1] As Stursberg has raised an actual controversy about Morrison Sund's work, instituted a civil proceeding against Morrison Sund, and has made allegations about its representation, Morrison Sund is free to shed more light on the accusations and is not bound any confidentiality owed to Stursberg. Minn. R. P. Cond. 1.6(b)(8). It is well established under Minnesota law that even without an express waiver of the attorney-client privilege, the client impliedly waives the privilege where he himself discusses the contents of a professional communication or where he makes an attack upon the professional competence of his counsel. *State v. Walen,* 563 N.W.2d 742, 752 (Minn. 1997); *Melrose Floor Co. v. Lechner,* 435 N.W.2d 90, 92 (Minn. Ct. App. 1989) (stating that the attorney-client privilege may be waived by the plaintiff's choice to sue the lawyer).

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

19.     However, before work began on the receiver motion, Morrison Sund advised 1648 Properties and Stursberg that the court would likely deny the motion for appointment of a receiver because there was limited evidence of imminent harm.

20.     1648 Properties and Stursberg insisted that a Motion for Appointment of Receiver be filed.  Accordingly, Morrison Sund researched, drafted, filed and argued the Motion for Appointment of Receiver as demanded by Stursberg.

21.     The court denied the Motion for Appointment of Receiver ruling there was insufficient evidence of imminent harm.

22.     Another one of 1648 Properties' and Stursberg's improper criticisms is that Morrison Sund did not depose Kent Titcomb.

23.     Kent Titcomb resides in Florida.

24.     Kent Titcomb's wife resides in Florida and was a non-party to the Titcomb Litigation.

25.     Kent Titcomb's wife's brothers reside in Florida and were non-parties to the Titcomb Litigation.

26.     1648 Properties and Stursberg alleged that Kent Titcomb's wife's brothers worked on the properties that were the subject of the Titcomb Litigation.

27.     1648 Properties and Stursberg wanted Morrison Sund to depose these six people: Kent Titcomb, Kent Titcomb's wife, Kent Titcomb's wife's three brothers, Kent Titcomb's Florida bookkeeper.

28.     Making several trips to Florida to depose each of these six people would be costly.

29.     Morrison Sund endeavored to take all six depositions in one trip.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

30.     Doing all six depositions in one trip would reduce cost and save 1648 Properties and Stursberg money.

31.     Defense counsel in the Titcomb Litigation would not accept service of subpoenas to compel the depositions of these six people.

32.     Morrison Sund obtained orders appointing commissioners to obtain subpoenas in several different Florida county courts.

33.     Morrison Sund was in the process of coordinating with the 1648 Properties' and Stursberg's Florida counsel for service and scheduling of the depositions but Morrison Sund's representation ended before Morrison Sund deposed Kent Titcomb.

34.     1648 Properties and Stursberg are aggressive and demanding clients.

35.     1648 Properties and Stursberg insisted upon extremely aggressive litigation strategy and tactics in the Titcomb Litigation.

36.     1648 Properties and Stursberg demanded that Morrison Sund remove the Titcomb Litigation to federal court and get a federal prosecutor to arrest Kent Titcomb.

37.     Morrison Sund spent substantial time and effort during the Titcomb Litigation explaining and re-explaining that 1648 Properties and Stursberg were unlikely to succeed in removing the state court action to federal court and attempting to get federal prosecutors involved would be counterproductive to their goal of a business separation.

38.     1648 Properties and Stursberg demanded that Morrison Sund sue Kent Titcomb's wife.

39.     1648 Properties and Stursberg alleged that Kent Titcomb's wife's brothers were undocumented immigrants.

40.     1648 Properties and Stursberg demanded that Morrison Sund attempt to have Kent Titcomb's wife's brothers deported.

41.     1648 Properties and Stursberg believed that the threat of deportation would force a favorable settlement for them in the Titcomb Litigation.

42.     There was no evidence or facts that supported 1648 Properties' and Stursberg's claims regarding Kent Titcomb's wife or Kent Titcomb's wife's brothers.

43.     Morrison Sund explained and re-explained to 1648 Properties and Stursberg that making a threat to deport someone for the purposes of obtaining a favorable settlement agreement is unlawful and unethical and that it is not the job of private counsel to enforce the immigration laws of the United States.

44.     1648 Properties and Stursberg made numerous other similarly baseless demands of Morrison Sund.

45.     Morrison Sund refused to take action on these demands due to their impropriety and lack of factual support. However, each time, Morrison Sund attorneys had to explain and re-explain why 1648 Properties and Stursberg's baseless demands were not ethical, legal or in their best interests to pursue.  These explanations and re-explanations added to the time Morrison Sund attorneys spend on 1648 Properties and Stursberg's case and are part of the unpaid invoices.

46.     Morrison Sund sent monthly invoices to 1648 Properties and Stursberg for the legal services it provided to them pursuant to the Retainer Agreement.

47.     1648 Properties and Stursberg paid Morrison Sund a total of $95,000.00.

48.     1648 Properties' and Stursberg's last payment occurred on December 6, 2019.

49.    On November 22, 2019, Morrison Sund filed a Notice of Withdrawal as Counsel for 1648 Properties and Stursberg in the Titcomb Litigation.

50.    In December 2019, 1648 Properties and Stursberg sought a 50% discount of their fees owed to Morrison Sund and offered to pay on a payment plan.

51.    By the conclusion of Morrison Sund's representation, 1648 Properties and Stursberg had incurred additional legal fees and costs of at least $199,339.33.

52.    Following conclusion of the representation, 1648 Properties and Stursberg repeatedly confirmed to Morrison Sund that they would pay Morrison Sund PLLC's legal bills in full.

53.    In a December 13, 2019 email, Henry Stursberg stated:

I have a payment plan with your firm which I have honored. Per your direction I will continue to pay $10,000 per month until the invoice is paid in full. Henry

54.    As of November 8, 2020, Morrison Sund is owed at least the following amounts from 1648 Properties and Stursberg:

| | |
|---|---|
| Attorney Fees from Sherburne County Court File 71-CV-18-605: | $191,407.83 |
| Interest on unpaid fees: | $10,782.94 |
| Attorney Fees – Breach of Retainer Agreement: | $63,134.50 |
| Collection Costs/Disbursements: | $19,343.10 |
| **Total:** | **$281,215.58** |

55.    While 1648 Properties and Stursberg were refusing to pay Morrison Sund, 1648 Properties and Stursberg were arranging settlements and/or paying their other creditors in the State of Minnesota.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

56. 1648 Properties and Stursberg have sought the advice and counsel of at least six separate Minnesota law firms.

57. 1648 Properties and Stursberg owe several Minnesota attorneys and Minnesota law firms for legal representation provided to them.

58. 1648 Properties and Stursberg have a habit of refusing to pay Minnesota attorneys for their legal fees.

59. In December 2019, 1648 Properties and Stursberg retained the law firm of Maslon LLP.

60. Prior to Morrison Sund's representation, 1648 Properties and Stursberg had retained the law firm of Stinson Leonard Street ("Stinson").

61. Several times, Henry Stursberg made disparaging remarks to Morrison Sund attorneys about Stinson that, upon information and belief, are not true.

62. 1648 Properties' and Stursberg's untrue and disparaging statements are illegitimate excuses for not paying their debt to Stinson.

63. Prior to Morrison Sund's representation, 1648 Properties and Stursberg had retained Kevin Dunlevy of Beisel Dunlevy, P.A.

64. 1648 Properties and Stursberg wrongly accuse Morrison Sund of excessive billing.

65. On March 26, 2020, 1648 Properties and Stursberg sued Morrison Sund and Matthew Burton, one of Morrison Sund PLLC's owners in the U.S. District Court for the Eastern District of Pennsylvania Case No. 20-CV-01635 (the "Pennsylvania Action").

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

66. In the Pennsylvania Action, 1648 Properties and Stursberg seeks, among other things, to avoid their obligations pursuant to the Retainer Agreement and as well as an award of attorney fees against Morrison Sund.

67. The Pennsylvania Action is frivolous and without merit.

68. Additionally, the U.S. District Court for the Eastern District of Pennsylvania does not have personal jurisdiction over Morrison Sund.

69. The U.S. District Court for the Eastern District of Pennsylvania is an inconvenient forum for litigating a breach of contract matter that arose solely in the great State of Minnesota.

70. Morrison Sund was forced to hire Pennsylvania counsel to defend itself in the Pennsylvania Action.

71. Morrison Sund is incurring legal fees, costs and disbursements to defend the Pennsylvania action.

72. The legal fees, costs and disbursements Morrison Sund is incurring in the Pennsylvania Action are recoverable against 1648 Properties and Stursberg under the Retainer Agreement.

73. During September 2020, 1648 Properties, LLC, Mr. Stursberg and the other Defendants settled their claims in the Titcomb Litigation.

74. Morrison Sund filed a Notice of Attorney Lien on the Big Lake Property.

75. Morrison Sund filed UCC-1 financing statements on 1648 Properties and Henry Stursberg.

76. 1648 Properties and Stursberg requested that Morrison Sund remove its Notice of Attorney Lien from the Big Lake Property.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

77.     1648 Properties and Stursberg requested that Morrison Sund remove its UCC 1 filing statements.

78.     Upon information and belief, as part of the settlement of the Titcomb litigation, 1648 Properties and Stursberg agreed to relinquish its rights to the Big Lake Property in exchange for payment of money.

79.     Morrison Sund has offered to remove its Notice of Attorney Lien and UCC-1 filing statements in exchange for payment of its account.

80.     1648 Properties and Stursberg refuse to accept Morrison Sund's offer.

81.     1648 Properties and Stursberg have no intention of paying for the services Morrison Sund provided them.

82.     1648 Properties and Stursberg have taken deliberate action to avoid payment of their debts and to frustrate any effort to collect debts from them.

## COUNT I - BREACH OF CONTRACT

83.     Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

84.     On March 18, 2019, 1648 Properties, LLC and Henry Stursberg entered into a Retainer Agreement with Morrison Sund.

85.     The Retainer Agreement is an enforceable contract.

86.     The 1648 Properties, LLC and Henry Stursberg retained Morrison Sund to represent them in "litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park."

87.     Morrison Sund performed legal services for 1648 Properties, LLC and Henry Stursberg.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

88.     1648 Properties, LLC and Henry Stursberg agreed to pay invoices within 15 days after the billing date, to "review all bills or invoices it receives from the Firm and that it will notify Firm promptly of any issues or concerns it has with its bill" and "to pay interest to the Firm at the rate of 5% per annum on all fees and expenses."

89.     On numerous occasions, 1648 Properties, LLC and Henry Stursberg reaffirmed their promise to pay for these services.

90.     1648 Properties, LLC and Henry Stursberg have failed to become current on their outstanding balance.

91.     Therefore, 1648 Properties, LLC and Henry Stursberg have breached the contract.

92.     The Retainer Agreement specifically states that "Clients agree to pay the costs incurred by the Firm to collect overdue fees and expenses, including attorneys' fees at the rate of $200.00 per hour."

93.     Morrison Sund has incurred and continues to incur attorneys' fees, costs, disbursements, and interest as a direct and proximate result of 1648 Properties, LLC's and Henry Stursberg's breach of contract.

94.     Morrison Sund has incurred and continues to incur attorneys' fees, costs, disbursements, and interest as a direct and proximate result of 1648 Properties, LLC's and Henry Stursberg's failure to make timely payment pursuant to the Retainer Agreement.

95.     Morrison Sund has incurred and continues to incur attorneys' fees, costs, disbursements, and interest as a direct and proximate result of 1648 Properties, LLC's and Henry Stursberg's continued assertion of frivolous claims that seek to avoid liability under the Retainer Agreement.

96.     Accordingly, Morrison Sund has been damaged in an amount exceeding $50,000.00 exclusive of interest, costs and disbursements.

## COUNT II - ACCOUNT STATED

97.     Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

98.     As alleged above, Morrison Sund sent Invoices to 1648 Properties, LLC and Henry Stursberg demanding total payment of the unpaid balance.

99.     1648 Properties, LLC and Henry Stursberg received these invoices, did not object to or dispute the amount owed.

100.    On or about December 13, 2019, Henry Stursberg acknowledged 1648 Properties, LLC's and Stursberg's obligation to pay the invoices and promised to pay Morrison Sund PLLC "in full."

101.    1648 Properties, LLC and Henry Stursberg acquiesced to the amount owed as shown by the Invoices they received and to which they did not object and to which they promised to pay.

102.    Therefore, 1648 Properties, LLC and Henry Stursberg is liable to Morrison Sund for account stated in the total amount of $199,339.33, plus prejudgment interest, attorneys' fees, costs and disbursements.

## COUNT III - UNJUST ENRICHMENT

103.    Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

104.    Morrison Sund preformed legal services for the 1648 Properties, LLC and Henry Stursberg.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

105.     Morrison Sund represented the 1648 Properties, LLC and Henry Stursberg in litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park.

106.     1648 Properties, LLC and Henry Stursberg were enriched by a vigorous and intense defense of their legal interests that ultimately led to a settlement benefitting 1648 Properties, LLC and Henry Stursberg.

107.     1648 Properties, LLC and Henry Stursberg has failed to pay Morrison Sund PLLC the reasonable value of the legal services provided to them.

108.     It is unjust and unreasonable for 1648 Properties, LLC and Henry Stursberg to obtain the fruits of Morrison Sund's labor without payment.

109.     Accordingly, Morrison Sund has been damaged in an amount exceeding $50,000.00 exclusive of attorneys' fees, interest, costs and disbursements.

## COUNT IV – FRAUD

110.     Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

111.     Before Morrison Sund, PLLC represented 1648 Properties, LLC and Henry Stursberg, 1648 Properties, LLC and Henry Stursberg avoided paying their previous attorneys the full value of the legal services provided to them including but not limited to Stinson, LLP and Beisel & Dunlevy P.A.

112.     On March 18, 2019 when 1648 Properties, LLC and Henry Stursberg executed Morrison Sund PLLC's Retainer Agreement, they had no intention of paying Morrison Sund PLLC for all of the legal work they were about to demand Morrison Sund PLLC perform.

113.    Thus, 1648 Properties, LLC and Henry Stursberg knowingly and intentionally misrepresented that they would pay for the legal services rendered to them by Morrison Sund, PLLC when they entered into the Retainer Agreement.

114.    In subsequent communications oral and written, 1648 Properties, LLC and Henry Stursberg knowingly and intentionally misrepresented that they would pay for their account owing to Morrison Sund, PLLC.

115.    Morrison Sund, PLLC relied on 1648 Properties, LLC's and Henry Stursberg's promise to pay for legal services and began performing work to protect on 1648 Properties, LLC's and Henry Stursberg's interests in the Minnesota properties.

116.    Had Morrison Sund PLLC known that 1648 Properties, LLC and Henry Stursberg did not intend to pay it for its services, Morrison Sund PLLC would not have entered into the Retainer Agreement or performed work for Plaintiffs.

117.    After Morrison Sund PLLC had performed a substantial amount of work and it came time for 1648 Properties, LLC and Henry Stursberg to pay for that work, like they had done with Stinson, LLP and Beisel & Dunlevy PA, 1648 Properties, LLC and Henry Stursberg refused to pay for the legal services rendered to them by Morrison Sund PLLC.

118.    Furthermore, 1648 Properties, LLC and Henry Stursberg are attempting to secrete their non-exempt assets from Minnesota in order to put their assets beyond the reach of Minnesota Courts thereby frustrating Morrison Sund PLLC's collection efforts.

119.    In furtherance of this fraud, 1648 Properties, LLC and Henry Stursberg filed a frivolous lawsuit against Morrison Sund PLLC and one of its attorneys in the United States District Court Eastern District of Pennsylvania, Case No. 2:20-cv-01635-KSM ("Pennsylvania Action") in an attempt to harass Morrison Sund PLLC into dropping its claims for attorney fees.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

120.     Morrison Sund PLLC has had to incur attorneys' fees, interest, costs and disbursements defending the Pennsylvania Action.

121.     While representing 1648 Properties, LLC and Henry Stursberg, Morrison Sund, PLLC expended hundreds of hours of attorney and legal assistant time, incurred business expenses, and incurred costs.

122.     While representing 1648 Properties, LLC and Henry Stursberg, Morrison Sund PLLC's attorneys could not use the same time to represent other clients and generate income from other clients.

123.     1648 Properties, LLC's and Henry Stursberg's fraudulent representations are the actual and proximate cause of Morrison Sund PLLC's damages.

124.     Morrison Sund PLLC's injuries from the fraudulent misrepresentations are separate and distinguishable from its damages arising from breach of the retainer agreement.

125.     Accordingly, Morrison Sund, PLLC has suffered compensatory damages in an amount exceeding $50,000.00 exclusive of attorneys' fees, interest, costs and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Morrison Sund prays for the following relief:

1.     That Plaintiffs take nothing as and for their pretended causes of action;

2.     That the Complaint be dismissed with prejudice and on the merits;

3.     That Morrison Sund, PLLC be awarded judgment on its Counterclaim against 1648 Properties, LLC and Henry Stursberg, jointly and severally;

4.     That Morrison Sund be awarded prejudgment interest, costs, disbursements, and reasonable attorneys' fees as allowed at law or by contract; and

5.     For any other relief this Court deems just and equitable.

## JURY DEMAND

Pursuant to Rule 38 of the Minnesota Rules of Civil Procedure, Morrison Sund, PLLC

demands a trial by jury on all issues appropriate for the jury to consider.

**MORRISON SUND PLLC**

Dated:  November 24, 2020

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. § 549.211.


*/s/ Ryan R. Dreyer*　　　　　　　　　　


*/s/ Ryan R. Dreyer*　　　　　　　　　　
Ryan R. Dreyer (0332252)
Eric G, Nasstrom (0278257)
5125 County Road 101
Suite 200
Minnetonka, MN  55345
P:  (952) 975-0050
F:  (952) 975-0058
E:  rdreyer@morrisonsund.com
　　enasstrom@morrisonsund.com

***ATTORNEYS FOR DEFENDANT***
***MORRISON SUND PLLC***

**Exhibit 6**

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF SHERBURNE                      TENTH JUDICIAL DISTRICT

-------------------------------------------------------      File No. 71-CV-20-1114

1648 Properties, LLC, and                    CASE TYPE:  Civil Other/Misc.
Henry Stursberg,                             Hon. Walter Kaminsky
                          Plaintiffs,

           v.                                **PLAINTIFFS' ANSWER TO
                                             DEFENDANT'S COUNTERCLAIM**

Morrison Sund PLLC,

                          Defendant.

-------------------------------------------------------

           Plaintiffs 1648 Properties, LLC, and Henry Stursberg ("Plaintiffs"), for their Answer to

the Counterclaim of Defendant Morrison Sund, PLLC ("Defendant") states and alleges as

follows:


                                    **<u>PARTIES</u>**

   1.     Plaintiffs admit the allegations of paragraph 1 of the Counterclaim.  Except as

          hereinafter admitted or otherwise answered, Plaintiffs deny each and every allegation

          of the Counterclaims.

   2.     Plaintiffs admit the allegations of paragraph 2 of the Counterclaim.

   3.     Plaintiffs admit the allegations of paragraph 3 of the Counterclaim.

   4.     Plaintiffs admit the allegation of paragraph 4 of the Counterclaim that it commenced

          an action under Minn. Stat. § 481.13 against Defendant that jurisdiction and venue are

          proper in this court to resolve that action.

# FACTS

1.     Plaintiffs admit the allegations of the second paragraph 1 of the Counterclaim.[1]

2.     Plaintiffs admit with respect to the second paragraph 2 of the Counterclaim that the terms of the Retainer Agreement speak for themselves and deny the allegations of paragraph 2 to the extent they misrepresent the Retainer Agreement or quote its terms out of context.

3.     Plaintiffs admit the allegations of the second paragraph 3 of the Counterclaim as to the approximate value of the two mobile home park properties and allege that the combined equity is somewhat overstated.

4.     Plaintiffs admit with respect to the second paragraph 4 of the Counterclaim that the terms of the Retainer Agreement speak for themselves and deny the allegations of paragraph 4 to the extent they misrepresent the Retainer Agreement or quote its terms out of context.

5.     Plaintiffs admit with respect to paragraph 5 of the Counterclaim that the terms of the Retainer Agreement speak for themselves and deny the allegations of paragraph 5 to the extent they misrepresent the Retainer Agreement or quote its terms out of context.

6.     Upon information and belief, Plaintiffs admit the allegations of paragraph 6 of the Counterclaim.

7.     Plaintiffs admit the allegations of paragraph 7 of the Counterclaim that Defendant appeared as attorney of record for Plaintiffs during part of the "Titcomb Litigation" during the approximate time stated by Defendant, but deny the remaining allegations of paragraph 7.

---

[1] All numbers in the FACTS Section follow the numbering of the Counterclaim, which repeats numbers 1-4.

8.      Upon information and belief, Plaintiffs admit the allegations of paragraph 8 of the Counterclaim.

9.      Plaintiffs admit the allegations of paragraph 9 of the Counterclaim, but deny that any of the Motions provided any benefit or value to Plaintiffs in achieving a settlement.

10.      Upon information and belief, Plaintiffs are without information to form a belief as to the truth or accuracy of the allegations of paragraph 10 of the Counterclaim and therefore deny the same. Plaintiffs affirmatively allege that the work performed provided any benefit or value to Plaintiffs in achieving a settlement.

11.      Upon information and belief, Plaintiffs deny the allegations of paragraph 11 of the Counterclaim, and further deny that any work performed provided any benefit or value to Plaintiffs in achieving a settlement.

12.      Plaintiffs admit the allegations of paragraph 12 of the Counterclaim, but deny that the deposition provided any benefit or value to Plaintiffs in achieving a settlement.

13.      Plaintiffs admit the allegations of paragraph 13 of the Counterclaim, but deny that the work performed provided any benefit or value to Plaintiffs in achieving a settlement.

14.      Plaintiffs deny the allegations of paragraph 14 of the Counterclaim as to client meetings and are without information sufficient to form a belief as to the truth or accuracy of the remaining allegations of paragraph 14 of the Counterclaim, but deny that the work performed provided any benefit or value to Plaintiffs in achieving a settlement.

15.      Plaintiffs are without information sufficient to form a belief as to the truth or accuracy of the allegations of paragraph 15 of the Counterclaim, but deny that the work performed provided any benefit or value to Plaintiffs in achieving a settlement.

16.     Plaintiffs admit that Defendant claims to have drafted numerous legal documents, but are without information sufficient to form a belief as to the truth or accuracy of the allegations of paragraph 16 of the Counterclaim, and further deny that the work performed provided any benefit or value to Plaintiffs in achieving a settlement.

17.     Plaintiffs deny the allegations of paragraph 17 of the Counterclaim.

18.     Plaintiffs deny the allegations of paragraph 18 of the Counterclaim.

19.     Plaintiffs deny the allegations of paragraph 19 of the Counterclaim.

20.     Plaintiffs deny the allegations of paragraph 20 of the Counterclaim and affirmatively allege that Defendant was not forced to bring a motion that they knew lacked merit and breached Rule 11, an act for which Defendant cannot blame its client.

21.     Plaintiffs admit the allegations of paragraph 21 of the Counterclaim that the Court denied the motion, and allege that the terms and language of the Court's Order speak for themselves.

22.     Plaintiffs admit the allegations of paragraph 22 of the Counterclaim that Defendant did not depose Kent Titcomb, but deny the remaining allegations of that paragraph.

23.     Upon information and belief, Plaintiffs admit the allegations of paragraph 23 of the Counterclaim.

24.     Plaintiffs admit the allegations of paragraph 24 of the Counterclaim that Kent Titcomb's wife was not a party to the lawsuit and are without sufficient information to form a belief as to the truth or accuracy of the remaining allegations that she is a Florida resident.

25.     Plaintiffs admit that Kent Titcomb's wife's brothers were not parties to the Titcomb Litigation, but are without information sufficient to form a belief as to the truth or

accuracy of the remaining allegations of paragraph 25 of the Counterclaim and therefore deny the same.

26. Plaintiffs admit the allegations of paragraph 26 of the Counterclaim that the described brothers worked at times on the properties.

27. Plaintiffs deny allegations of paragraph 27 of the Counterclaim that they wanted six witnesses deposed.

28. Plaintiffs deny the allegations of paragraph 28 of the Counterclaim that cost was the reason that important witnesses did not get deposed in the Titcomb Litigation.

29. Plaintiffs deny the allegations of paragraph 29 of the Counterclaim as Kent Titcomb and other witnesses were never deposed.

30. Plaintiffs are without information sufficient to form a belief as to the truth or accuracy of the allegations of paragraph 30 of the Counterclaim, but deny that cost was the reason that Kent Titcomb and other important witnesses were not deposed.

31. Plaintiffs are without information sufficient to form a belief as to the truth or accuracy of the allegations of paragraph 31 of the Counterclaim and therefore deny the same.

32. Plaintiffs are without information sufficient to form a belief as to the truth or accuracy of the allegations of paragraph 32 of the Counterclaim and therefore deny the same.

33. Plaintiffs deny the allegations of paragraph 33 of the Counterclaim that Plaintiffs suggested Defendant work with Plaintiffs' Florida counsel to schedule the depositions, but allege that Defendant never took any of the depositions.

34. Plaintiffs deny the allegations of paragraph 34 of the Counterclaim that a corporation itself can be aggressive or demanding and further deny that Plaintiff Stursberg is any more demanding or aggressive than other similarly situated clients facing significant

litigation challenges against a better funded opponent and that Defendant's professional judgment needed to take that into account and failed to do so.

35.    Plaintiffs deny the allegations of paragraph 35 of the Counterclaim, and allege that Defendant was required to use its professional judgment to educate Plaintiffs on the best course to get to completion of the case without undertaking valueless tactics and depleting Plaintiffs' resources before the case was over and not to wage a litigation war against an opponent with superior resources that Plaintiffs could endure.

36.    Plaintiffs allege that the allegations of paragraph 36 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

37.    Plaintiffs allege that the allegations of paragraph 37 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same

38.    Plaintiffs allege that the allegations of paragraph 38 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

39.    Plaintiffs allege that the allegations of paragraph 39 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

40.    Plaintiffs allege that the allegations of paragraph 40 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

41.     Plaintiffs allege that the allegations of paragraph 41 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

42.     Plaintiffs allege that the allegations of paragraph 42 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the allegations alleged by Defendant occurred.

43.     Plaintiffs allege that the allegations of paragraph 43 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

44.     Plaintiffs deny the underlying allegations of the allegations of paragraph 44 of the Counterclaim and therefore deny the allegations of paragraph 44 of the Counterclaim.

45.     Plaintiffs deny the underlying allegations of the allegations of paragraph 45 of the Counterclaim and therefore deny the allegations of paragraph 45 of the Counterclaim.

46.     Plaintiffs deny the allegations of paragraph 46 of the Counterclaim.

47.     Plaintiffs deny the allegations of paragraph 47 of the Counterclaim.

48.     Plaintiffs admit the allegations of paragraph 48 of the Counterclaim that their last payment was in or about early December 2019.

49.     Plaintiffs admit the allegations of paragraph 49 of the Counterclaim that Defendant's withdrawal was on or about November 22, 2019.

50.     Plaintiffs are without information to form a belief as to the truth or accuracy concerning the allegations of paragraph 50 of the Counterclaim and therefore deny the same.

51.     Plaintiffs deny the allegations of paragraph 51 of the Counterclaim.

52.     Plaintiffs deny the allegations of paragraph 52 of the Counterclaim that Plaintiffs were required to pay Defendant's exorbitant fees, but admit that Plaintiffs made efforts to work out a resolution with Defendant until Defendant threatened Plaintiffs and eventually took the unlawful action of forcing Plaintiff Stursberg into involuntary bankruptcy, which prevented a favorable settlement for Plaintiffs and caused Plaintiff Stursberg significant damages.

53.     With respect to paragraph 53 of the Counterclaim, Plaintiffs state that the e-mail speaks for itself and represents Plaintiffs' willingness to work with Defendant until Defendant took the unlawful action of forcing Plaintiff Stursberg into involuntary bankruptcy, which prevented a favorable settlement for Plaintiffs and caused Plaintiff Stursberg significant damages.

54.     Plaintiffs deny the allegations of paragraph 54 of the Counterclaim.

55.     Plaintiffs deny the allegations of paragraph 55 of the Counterclaim.

56.     Plaintiffs deny the allegations of paragraph 56 of the Counterclaim.

57.     Plaintiffs deny the allegations of paragraph 57 of the Counterclaim.

58.     Plaintiffs deny the allegations of paragraph 58 of the Counterclaim.

59.     Plaintiffs admit the allegations of paragraph 59 of the Counterclaim.

60.     Plaintiffs admit the allegations of paragraph 60 of the Counterclaim as to 1648 Properties, but deny as to Plaintiff Stursberg.

61.     Plaintiffs allege that the allegations of paragraph 61 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

62.     Plaintiffs allege that the allegations of paragraph 62 of the Counterclaim are immaterial, impertinent and intentionally scurrilous and thus do not require a response, but deny the same.

63.     Plaintiffs admit the allegations of paragraph 63 of the Counterclaim.

64.     Plaintiffs deny the allegations of paragraph 64 of the Counterclaim.

65.     Plaintiffs admit the allegations of paragraph 65 of the Counterclaim.

66.     With respect to paragraph 66 of the Counterclaim, Plaintiffs admit that they seek redress for the unlawful conduct of Defendant for, among other things, unlawfully putting Plaintiff Stursberg into involuntary bankruptcy and for charging Plaintiffs excessive fees, and for attorneys' fees, but deny the remaining allegations of this paragraph.

67.     Plaintiffs deny the allegations of paragraph 67 of the Counterclaim.

68.     Plaintiffs deny the allegations of paragraph 68 of the Counterclaim at least as to certain claims asserted by Plaintiffs.

69.     Plaintiffs deny the allegations of paragraph 69 of the Counterclaim as to forum nonconveniens.

70.     With respect to paragraph 70 of the Counterclaim, Plaintiffs admit that Defendant hired counsel in Pennsylvania to defend itself.

71.     Plaintiffs admit the allegations of paragraph 71 of the Counterclaim, but deny the fees have been incurred to collect fees and costs from Plaintiffs.

72.     Plaintiffs deny the allegations of paragraph 72 of the Counterclaim.

73.     Plaintiffs admit the allegations of paragraph 73 of the Counterclaim and further allege that the legal work performed by Defendant for Plaintiffs provided no benefit or value to Plaintiffs in the settlement of that lawsuit.

74.     Plaintiffs admit the allegations of paragraph 74 of the Counterclaim.

75.     Plaintiffs admit the allegations of paragraph 75 of the Counterclaim.

76.     Plaintiffs admit the allegations of paragraph 76 of the Counterclaim.

77.     Plaintiffs are without information sufficient to form a belief as to the truth or accuracy of the allegations of paragraph 77 of the Counterclaim and therefore deny the same.

78.     The allegations of paragraph 78 of the Counterclaim call for a legal conclusion to which a response is not required, but if required Plaintiffs deny they had any rights to relinquish in the Big Lake Property..

79.     Plaintiffs deny the allegations of paragraph 79 of the Counterclaim.

80.     With respect to paragraph 80 of the Counterclaim, Plaintiffs admit that they did not accept or pay demands by Defendant that did not reflect what Defendant could possibly receive for the attorney liens that Defendant had claimed against the Big Lake property or Plaintiffs.

81.     With respect to the allegations of paragraph 81 of the Counterclaim, Plaintiffs will pay the value ultimately determined for the legal services provided by Defendant on a *quantum meruit* basis, which Plaintiffs allege is $0 based upon the lack of benefit provided by Defendant's legal services to the settlement of the underlying lawsuit and due to Defendant's unlawful conduct in putting Plaintiff Stursberg into involuntary bankruptcy which precluded a favorable settlement for Plaintiffs.

82. Plaintiffs deny the allegations of paragraph 82 of the Counterclaim and affirmatively allege that misusing the United States bankruptcy laws does not constitute a permissible "effort to collect debts from" Plaintiffs.

## COUNTERCLAIM I – BREACH OF CONTRACT

83. With respect to paragraph 83, Plaintiffs restate and reallege its answers to the foregoing paragraphs as though set forth in full herein.

84. Plaintiffs admit the allegations of paragraph 84 of the Counterclaim.

85. The allegations of paragraph 85 of the Counterclaim call for a legal conclusion which does not require a response.

86. With respect to the allegations of paragraph 86 of the Counterclaim, Plaintiffs state the language of the Retainer Agreement speaks for itself and does not require a further answer.

87. Plaintiffs admit the allegations of paragraph 87 of the Counterclaim, but allege that Defendant's legal services did not provide any benefit to the settlement achieved in the underlying lawsuit and any value that Defendant could claim was eliminated by Defendant's unlawful conduct in putting Plaintiff Stursberg into involuntary bankruptcy, which prevented a favorable settlement for Plaintiffs and caused Plaintiff Stursberg significant damages.

88. With respect to the allegations of paragraph 88 of the Counterclaim, Plaintiffs state the language of the Retainer Agreement speaks for itself and does not require a further answer.

89. Plaintiffs deny the allegations of paragraph 89 of the Counterclaim, including that Plaintiff Stursberg agreed to pay for work that was excessive, ill-considered, unhelpful, and cost ineffective.

90.     With respect to paragraph 90 of the Counterclaim, Plaintiffs deny that Defendant accurately stated any current balance that Plaintiffs could arguably owe to Defendant.

91.     Plaintiffs deny the allegations of paragraph 91 of the Counterclaim.

92.     With respect to the allegations of paragraph 92 of the Counterclaim, Plaintiffs state the language of the Retainer Agreement speaks for itself and does not require a further answer, but affirmatively allege that none of the fees and costs it has asserted as fees and costs incurred to collect its overdue fees and expenses are permitted under its Retainer Agreement. Plaintiffs further allege that this includes fees and costs purportedly incurred in Defendant's unlawful efforts to put Plaintiff Stursberg into involuntary bankruptcy.

93.     Plaintiffs deny the allegations of paragraph 93 of the Counterclaim and affirmatively assert that Defendant's unlawful violation of the November 20 Order has caused Plaintiffs unnecessary fees and expenses for which they should be reimbursed by Court Order.

94.     Plaintiffs deny the allegations of paragraph 94 of the Counterclaim.

95.     Plaintiffs deny the allegations of paragraph 95 of the Counterclaim.

96.     Plaintiffs deny the allegations of paragraph 96 of the Counterclaim.

## **COUNTERCLAIM II – ACCOUNT STATED**

97.     With respect to paragraph 97, Plaintiffs restate and reallege its answers to the foregoing paragraphs as though set forth in full herein.

98.     Plaintiffs admit the allegations of paragraph 98 of the Counterclaim.

99.     Plaintiffs deny the allegations of paragraph 99 of the Counterclaim.

100. With respect to paragraph 100 of the Counterclaim, Plaintiffs assert that Plaintiff Stursberg made an offer to resolve the fees issues between Plaintiffs and Defendant, which Defendant rejected and after which Defendant put Plaintiff Stursberg into involuntary bankruptcy eliminating any value Defendant's legal services could have under the *quantum meruit* provisions of its Retainer Agreement.

101. Plaintiffs deny the allegations of paragraph 101 of the Counterclaim.

102. Plaintiffs deny the allegations of paragraph 102 of the Counterclaim.

## **COUNTERCLAIM III – UNJUST ENRICHMENT**

103. With respect to paragraph 103, Plaintiffs restate and reallege its answers to the foregoing paragraphs as though set forth in full herein.

104. Plaintiffs admit the allegations of paragraph 104 of the Counterclaim.

105. Plaintiffs admit the allegations of paragraph 105 of the Counterclaim.

106. Plaintiffs deny the allegations of paragraph 106 of the Counterclaim and affirmatively state that the unlawful actions of Defendant have caused Plaintiffs great harm.

107. Plaintiffs deny the allegations of paragraph 107 of the Counterclaim and affirmatively alleged that Defendant refused an offer from Plaintiffs to pay much more than the value of their attorneys' fees and allowable costs, and instead demanded much more than the reasonable value of the legal services provided to them.

108. Plaintiffs deny the allegations of paragraph 108 of the Counterclaim.

109. Plaintiffs deny the allegations of paragraph 109 of the Counterclaim.

## **COUNTERCLAIM IV – FRAUD**

110. With respect to paragraph 110, Plaintiffs restate and reallege its answers to the foregoing paragraphs as though set forth in full herein.

111. Plaintiffs deny the allegations of paragraph 111 of the Counterclaim.

112. Plaintiffs deny the allegations of paragraph 112 of the Counterclaim.

113. Plaintiffs deny the allegations of paragraph 113 of the Counterclaim and affirmatively allege that Defendant's fraud claim is frivolous and in bad faith.

114. Plaintiffs deny the allegations of paragraph 114 of the Counterclaim.

115. Plaintiffs deny the allegations of paragraph 115 of the Counterclaim.

116. Paragraph 116 of the Counterclaim alleges a hypothetical to which no response is required. To the extent a response is required, Plaintiffs deny the allegations of paragraph 116.

117. Plaintiffs deny the allegations of paragraph 117 of the Counterclaim.

118. Plaintiffs deny the allegations of paragraph 118 of the Counterclaim.

119. Plaintiffs deny the allegations of paragraph 119 of the Counterclaim.

120. Upon information and belief, Plaintiffs admit the allegations of paragraph 120 of the Counterclaim

121. Plaintiffs admit the allegations of paragraph 121 of the Counterclaim, except are without information as to the truth or accuracy of the allegations about "incurred business expenses," and therefore deny the same.

122. Plaintiffs deny the allegations of paragraph 122 of the Counterclaim as the legal work performed by Defendant was excessive and ill-considered so that with reasonable judgment Defendant would have had time for other matters and would have better served Plaintiffs.

123. Plaintiffs deny the allegations of paragraph 123 of the Counterclaim.

124. Plaintiffs deny the allegations of paragraph 124 of the Counterclaim.

125. Plaintiffs deny the allegations of paragraph 125 of the Counterclaim.

## AFFIRMATIVE DEFENSES

For further reply to Defendants' Counterclaim, and to each count thereof, Plaintiffs allege the following Affirmative Defenses:

### First Affirmative Defense

1. The Counterclaim, and each purported claim for relief therein, fails to state a claim against Plaintiffs upon which relief can be granted.

### Second Affirmative Defense

2. The Counterclaim, and each purported claim for relief therein, is barred in whole or in part by the doctrines of waiver, estoppel, unclean hands, bad faith, and inequitable conduct. More specifically, among other improper conduct, Defendant used the United States Bankruptcy Court unlawfully as a tool in an attempt to extract fees and costs from Plaintiff Stursberg by putting him into involuntary bankruptcy. In addition, Defendant unlawfully extracted through threats, misuse of process, and violations of the November 20 Order of this Court a $250,000 payment, far beyond any payment Defendants could receive after proof of the value of its attorney liens, to release an attorney lien on the Big Lake Property that the Court in its November 20 Order required Defendant to release without any payment. Defendant's unlawful conduct rises to the level of coercion, economic duress, and potentially extortion.

### Third Affirmative Defense

3. Defendant's purported claim for Unjust Enrichment is barred by the existence of the Retainer Agreement and its requested relief for Breach of Contract, a legal remedy, that pertains to the same alleged legal services on which Defendant bases its Unjust Enrichment Counterclaim.

## Fourth Affirmative Defense

4.      Defendant is prohibited from recovery by virtue of each of Defendant's material breaches of its Retainer Agreement and its own contributory negligence or comparative fault. Among other breaches, Defendant has attempted to charge Plaintiffs for collection costs and fees that are not permitted under the terms of the Retainer Agreement, including purported collection costs and fees arising out of Defendant's unlawful effort putting Plaintiff Stursberg into involuntary bankruptcy. Further, Defendant has charged excessive fees for excessive work that did not contribute any value to Plaintiffs, particularly with respect to the ultimate settlement of the underlying lawsuit.

## Fifth Affirmative Defense

5.      Defendant's Counterclaims are barred, in whole or in part, by Defendant's economic coercion, duress and threats to third parties over whom Plaintiffs have no control and who paid Defendant in response to Defendant's unlawful conduct.

## Sixth Affirmative Defense

6.      Defendant's claim of fraud fails because Defendant has not pleaded fraud with particularity as required by Rule 9 of the Minnesota Rule of Civil Procedure.

## Seventh Affirmative Defense

7.      Defendant's damages, if any, were caused in whole or in part by Defendant's own actions or the actions of a third party or parties.

## PRAYER FOR RELIEF

**WHEREFORE**, 1648 Properties, LLC and Henry Stursberg pray for the following relief:

1. Defendant takes nothing on its pretended Counterclaims;

2. Judgment dismissing Defendant's Counterclaims with prejudice and on the merits;

3. An award to Plaintiffs on their costs, disbursement and reasonable attorneys' fees as allowed by law or by contract; and

4. Such other and further relief as the Court deems just and equitable.

Dated: December 15, 2020

*/s/ John A. Cotter*

John A. Cotter (134296)
Jon S. Swierzewski (108017)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive
Suite 1000
Minneapolis, Minnesota 55437-1060
(952) 835-3800
jcotter@larkinhoffman.com
jswierzewski@larkinhoffman.com

**Attorneys for Plaintiffs 1648 Properties, LLC and Henry Stursberg**

## ACKNOWLEDGMENT

I hereby acknowledge that sanctions may be awarded pursuant to Minn. Stat. § 549.211, subd. 3, if the court determines that this document violates Minn. Stat. § 549.211, subd. 2.

*/s/ John A. Cotter*

John A. Cotter

**Exhibit 7**

71-CV-20-1114

2021.03.1

Filed in District Court
State of Minnesota

6 11:34:41
-05'00'

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF SHERBURNE                          TENTH JUDICIAL DISTRICT

1648 Properties, LLC, and
Henry Stursberg,

                    Plaintiffs,

                                             **ORDER**

v.

                                             Court File No.: 71-CV-20-1114

Morrison Sund, PLLC,

                    Defendant,

and

KAW Parks, LLC,

                    Intervenor.

---

On December 17, 2020, the above-entitled matter came on for a hearing before District Court Judge Walter M. Kaminsky at the Sherburne County Government Center in Elk River, Minnesota.

    APPEARANCES:

        John Cotter, Attorney at Law, appeared on behalf of Plaintiff 1648 Properties, LLC.

        Plaintiff Henry Stursberg appeared.

        Daniel Bernheim, Plaintiff's Pennsylvania attorney, was present in a non-representative capacity.

        Ryan Dreyer and Eric Nasstrom, Attorneys at Law and Partners at Defendant Morrison Sund, PLLC, appeared on Defendant's behalf.

        Scott Blake, Attorney at Law, appeared on behalf of Intervenor KAW Parks, LLC.

NOW, THEREFORE, upon review of the file, and in consideration of the arguments of counsel, and the applicable law, the Court herewith makes the following:

1

# FINDINGS OF FACT

## Parties to this Litigation

1. Plaintiff 1648 Properties, LLC ("1648 Properties"), is a Pennsylvania limited liability company (LLC) located at 1528 Walnut Street, Suite 2008, Philadelphia, Pennsylvania.

2. Plaintiff Henry Stursberg ("Stursberg," collectively with 1648 Properties, "the Stursberg Parties") is an individual residing at 250 South 17th Street, Philadelphia, Pennsylvania.

3. Defendant Morrison Sund, PLLC ("Morrison"), is a Minnesota LLC located at 5125 County Road 101, Suite 200, Minnetonka, Minnesota.

4. Intervenor KAW Parks, LLC ("KAW Parks"), is a Minnesota LLC with its registered office address located at 126 Office Street, Big Lake, Minnesota, and its principal executive office located at 400 Nut Tree Drive, Deland, Florida.

## Titcomb Litigation – Parties thereto

5. The instant Litigation arises from and has implications in Sherburne County District Court 71-CV-18-605 ("Titcomb Litigation"). The case was assigned to the Honorable Brianne J. Buccicone.

6. On May 23, 2018, 1648 Properties commenced a lawsuit against seven (7) defendants: Kent Titcomb; Brenton Titcomb; Amicorp, Inc.; Amicorp Communities, LLC; KAW Parks, LLC; Pinerock Properties, LLC (collectively, "the Titcomb Parties"); and Wells Fargo Bank, N.A. Henry Stursberg was later added to the Titcomb Litigation as a third-party defendant.

7. With the exception of Wells Fargo, all corporate defendants in the Titcomb Litigation were owned or controlled by Kent Titcomb.

8. KAW Parks and Pinerock Properties were 100% owned by Amicorp Communities.

9. Amicorp Communities was 49% owned by Stursberg-owned 1648 Properties and 51% owned by Titcomb-owned Amicorp, Inc.

10. Morrison represented 1648 Properties and Henry Stursberg (the "Stursberg Parties") in the Titcomb Litigation from March 18, 2019, to November 22, 2019.

11. The Titcomb Parties were represented by attorney Scott Blake, who represents KAW Parks in this Litigation.

12. At stake in the Titcomb Litigation, among other things, were the real properties commonly known as Big Lake Mobile Home Park, 126 Office Street, Big Lake, Minnesota 55309 ("the Big Lake Property") and Sherburne Village Mobile Home Park, 104 Cherokee Street, Princeton, MN 55371 (the "Sherburne Property," together with the Big Lake Property, the "Parks"). The Parks were owned by KAW Parks.

13. The following diagram depicts the above-described corporate relationships as relevant to this Litigation as of November 1, 2019, shortly prior to Morrison's withdrawal as counsel for the Stursberg Parties in the Titcomb Litigation. The four parties to this Litigation are emphasized with bold outline.

## Corporate Relationships as of November 1, 2019



## **Morrison's Withdrawal – Liens –**
## **Legal Action Between Stursberg Parties and Morrison**

14. On November 22, 2019, Morrison withdrew as counsel for the Stursberg Parties in the Titcomb Litigation.

15. Morrison claimed outstanding invoices for legal services rendered to 1648 Properties pursuant to a March 18, 2019, retainer agreement ("Retainer Agreement"). Morrison asserted the Stursberg Parties owed $199,339.33.

16. Excerpted terms of the Retainer Agreement relevant to this Litigation include the following:

    a. "Length and Difficulty. Clients understand that matters often involve extremely difficult problems and sometimes take a long time to resolve. Clients recognize that the results of any legal matter cannot be guaranteed. Clients acknowledge that the Firm has not guaranteed and will not guarantee the results of this matter, that no such representations or guarantees have been or can be made, and that there are many factors [sic] can affect the length, difficulty or outcome of this matter."

    b. "Legal Fees. Clients agree to pay the Firm legal fees per hour at the rates set forth below, plus expenses, for the legal services described above. These rates are subject to periodic review and may increase during the pendency of the representation."

    c. "Billing. The Firm will bill Clients approximately once a month for fees and expenses. Payment shall be due within fifteen (15) days after the billing date. Clients agree that it will review all bills or invoices it receives from the Firm and that it will notify Firm promptly of any issues or concerns it has with its bill."

    d. "Interest. Clients agree to pay interest to the Firm at the rate of 5% per annum on all fees and expenses not paid within thirty days of the date of the bill. Interest shall accrue from the first day of each month following the month that payment was due."

    e. "Collection and Security Interest. Clients agree to pay the costs incurred by the Firm to collect overdue fees and expenses, including attorneys' fees at the rate of $200.00 per hour."

17. As late as December 2019, Henry Stursberg acknowledged the outstanding invoices and restated his intention to pay the debt in full.

4

18. On December 10, 2019, Morrison filed attorney lien notices against 1648 Properties, 1648 Properties' ownership stake in other entities, and the Big Lake Property itself (the "Big Lake Attorney Lien").

19. The liens asserted that the Stursberg Parties owed Morrison $199,339.33 (the "Original Lien Amount") plus interest and collection costs.

20. In December 2019, Morrison initiated an involuntary bankruptcy action against the Stursberg Parties.

21. On March 26, 2020, 1648 Properties sued Morrison in the state of Pennsylvania.

## Status of the Parks

22. In 2013, KAW Parks obtained a loan from Ladder Capital to purchase the Parks. In exchange, Ladder Capital recorded mortgages against the Parks.

23. The Ladder Capital loan went into default.

24. On December 4, 2019, the Parks went into foreclosure and were provisionally sold at a sheriff's auction to BHM Capital Management, LLC ("BHM"). BHM bid $3.07 million for the Big Lake Property and $2.2 million for the Sherburne Property.

25. Under Minnesota law, these foreclosure sales were not final. A foreclosed owner has one year from the date of foreclosure to redeem ownership by paying the necessary amount to the mortgage holder.

26. Accordingly, KAW Parks' deadline to redeem the foreclosed Parks was December 4, 2020 (the "Redemption Deadline"). If the Redemption Deadline were missed, title to the Parks would be conveyed to BHM.

27. All parties to the Titcomb Litigation recognized the Parks' value was at least $10 million. Because the Stursberg Parties and Titcomb Parties each held a considerable stake, the uncompensated loss of these assets would be catastrophic.

## Titcomb Litigation Settles – Settlement Agreement

28. On September 1, 2020, the Stursberg Parties and Titcomb Parties reached a confidential settlement agreement ("Settlement Agreement") in the Titcomb Litigation.

5

29. Under the Settlement Agreement, the Titcomb Litigation would be dismissed, and the adverse parties would cease to be co-owners of the joint venture Amicorp Communities.

30. The Settlement Agreement provided, *inter alia*:

    a. Amicorp, Inc. would purchase the Stursberg Parties' interest in Amicorp Communities, Pinerock, KAW Parks, and the Parks for $3,275,000;

    b. Amicorp, Inc. would have the right to sell and/or refinance the Parks in advance, in order to pay the Stursberg Parties their $3,275,000 (the "1648 Buyout");

    c. On or before the Closing Date or December 4, 2020, whichever occurred first, Amicorp, Inc. would pay the 1648 Buyout in the form of a lump sum;

    d. 1648 Properties would assign its 49% interest in Amicorp Communities to Amicorp, Inc., contemporaneous with the signing of the Settlement Agreement; and

    e. Judge Buccicone would resolve any and all disputes arising under the Settlement Agreement.

31. On September 15, 2020, as contemplated by the Settlement Agreement, 1648 Properties assigned its ownership interest in Amicorp Communities to Amicorp Inc., which thus became the sole owner of Amicorp Communities, KAW Parks, and the Parks properties.

32. When the Settlement Agreement was reached, the Morrison liens had existed for approximately nine (9) months. The parties were aware the lucrative Big Lake Property had a property title cloud. The Settlement Agreement contained the following language ("Titcomb Payout Clause"):

> The Stursberg Parties will be responsible for discharging and/or removing the Morrison Sund Liens on or before the Closing Date. If the Morrison Sund Liens are not removed on or before the Closing Date, the [Titcomb] Parties have the right to pay any amount required to remove the Morrison Sund Liens and shall deduct such amount from the [$3,275,000] Membership Interest Purchase price that will be paid to the Stursberg Parties. The Stursberg Parties acknowledge that they are fully responsible for any amounts allegedly owed to Morrison Sund and they have no right of contribution whatsoever from the [Titcomb] Parties. The Stursberg Parties agree to indemnify and hold harmless the [Titcomb] Parties from and against any liability

6

incurred or damages suffered by the [Titcomb] Parties as a result of the Morrison Sund Liens, including their reasonable attorneys' fees.

33. On September 24, 2020, Judge Buccicone issued an order dismissing the Titcomb Litigation (the "Dismissal Order"). The Dismissal Order reads, in accord with the parties' Settlement Agreement, "The Court shall retain jurisdiction over this matter for the purposes of enforcing the settlement agreement entered into by the Parties, to the extent necessary."

## KAW Parks Seeks to Sell Big Lake Property and Refinance Sherburne Property

34. Relying on the Settlement Agreement, KAW Parks sought to sell the Big Lake Property and refinance the Sherburne Property. The capital from the sale and the loan would be used to redeem the Parks from foreclosure.

35. On or about September 18, 2020, KAW Parks entered into a purchase agreement to sell the Big Lake Property to a third-party buyer (the "Big Lake Sale," resulting in the "Big Lake Proceeds" upon closing). KAW Parks also arranged to take out a loan with Highland Bank, which would be secured by a mortgage on the Sherburne Property (the "Highland Bank Loan"). Both were set to close November 18, 2020.

36. It was expected the influx of capital from the Big Lake Proceeds and the Highland Bank Loan would enable KAW Parks to rescue the Parks from foreclosure by paying the mortgage holder. KAW Parks would then transfer the redeemed Big Lake Property title to the third-party buyer and pay the Stursberg Parties the $3.275 million 1648 Buyout as previously agreed in the Settlement Agreement.

37. The Big Lake Sale purchase agreement also required that KAW Parks be able to provide clean title to the Big Lake Property. KAW Parks promised the third-party buyer that it would ensure that any encumbrances – such as Morrison's Attorney Lien – would be removed by the Closing Date. The title company, Old Republic National Title Insurance Company ("Old Republic") also required the encumbrance be removed as a precondition to selling insurance on the Big Lake Property title.

38. As established in the Settlement Agreement, removing the Attorney Lien was the Stursberg Parties' responsibility.

39. In mid-September 2020, after execution of the Settlement Agreement, KAW Parks counsel Scott Blake suggested to Morrison that in exchange for the voluntary discharge of the Attorney Lien, a certain amount of the proceeds of

7

the Big Lake Sale be placed in escrow, the proper amount to be determined and paid to Morrison after the Closing Date.

40. On September 18, 2020, Morrison attorney Ryan Dreyer communicated by e-mail to counsel for the Stursberg Parties (1) that the Stursberg Parties now owed Morrison $281,215.58, due to accrued interest and collection costs, and (2) that Morrison would not agree to discharge the liens for escrowed funds, only for funds actually paid.

### This Action – Stursberg Parties Sue Morrison For Discharge of Liens

41. On October 16, 2020, 1648 Properties and Henry Stursberg commenced this Litigation against Morrison.

42. In their Complaint, Stursberg Parties asserted that Morrison's Attorney Lien against the Big Lake Property and other attorney liens against the Stursberg Parties were improper and unlawful.

43. The Stursberg Parties' arguments can be summarized as follows:

(1) Because KAW Parks was the sole owner of the Parks, 1648 Properties never owned any interest in the Parks, and thus the liens are illegal; and

(2) Because the value of Morrison's legal representation of the Stursberg Parties in the Titcomb Litigation was $0, nothing is rightfully owed to Morrison, and thus the liens are illegal.

44. The Stursberg Parties requested as relief:

(1) The court order the liens be removed immediately, or

(2) The court order the Stursberg Parties to escrow the Original Lien Amount of $199,339.33 with the court following the closing of the Big Lake Sale, and additionally order the liens be removed immediately so that the Big Lake Sale could occur as planned.

45. The Stursberg Parties did not disclose to the Court in its Complaint the existence of the confidential Settlement Agreement's Titcomb Payout Clause.

46. On November 6, 2020, Morrison submitted its Answer, asserting numerous affirmative defenses and requesting that Morrison be awarded its costs, disbursements, and reasonable attorney fees as allowed at law or by contract (in particular, the Retainer Agreement executed March 18, 2019).

47. By request of the third-party buyer, the Closing Date of the Big Lake Sale was postponed from November 18, 2020, to December 1, 2020.

48. The December 4, 2020, Redemption Deadline was less than a month away.

### Stursberg Parties' Emergency Motion

49. On November 10, 2020, the Stursberg Parties submitted an "Emergency Application to Determine Existence, Scope, and Amount of Morrison Sund's Attorneys' Liens," and moved for an expedited hearing to be held before November 16, 2020.

50. On November 12, 2020, Morrison issued its Memorandum in Opposition to the Emergency Application.

51. On November 13, 2020, an expedited hearing on the Stursberg Parties' Emergency Application was heard by the Honorable Karen B. Schommer. Morrison attorney Ryan Dreyer was unable to attend, and Morrison co-counsel Eric Nasstrom argued for Morrison.

52. At the expedited hearing, Morrison argued against the Stursberg Parties' proposal to escrow $199,339.33, because the additional approximate $80,000 for interest and collection costs allegedly owed was unsecured by any of the existing liens.

53. In favor of escrow, the Stursberg Parties argued:

   (1) Forcibly discharging the Big Lake Attorney Lien would enable the Big Lake Sale to be completed;

   (2) Morrison would be guaranteed to recoup the Original Lien Amount;

   (3) Morrison's other liens against the Stursberg parties would persist; and

   (4) The Court would be able to decide how much more, if any, would be due at a later date.

54. On November 20, 2020, the Court issued an Order (the "11/20 Order") directing Morrison to discharge the Big Lake Attorney Lien and directing the Stursberg Parties to escrow the Original Lien Amount from its share of the Big Lake Proceeds.

55. Also on November 20, 2020, the Court scheduled a motion hearing to take place on December 17, 2020.

## Morrison's Refusal to Discharge Liens –
## Appeal – Amended Answer and Counterclaim

56. On November 24, 2020, Morrison appealed the 11/20 Order and refused to discharge the liens.

57. On November 24, 2020, Morrison also submitted its Amended Answer and Counterclaim against the Stursberg Parties in this Litigation. In its Counterclaim, Morrison accused the Stursberg Parties of breach of contract, unjust enrichment, and fraud.

58. On November 24 and 25, 2020, Morrison attorney Ryan Dreyer communicated by telephone and e-mail with KAW Parks counsel Scott Blake regarding the 11/20 Order. Dreyer communicated the following:

   a. Interest and collection costs had continued to accumulate, and were now in excess of $300,000;

   b. Morrison had appealed the 11/20 Order and would not voluntarily release the Big Lake Attorney Lien while the appeal was pending;

   c. Morrison had moved the Court to stay the enforcement of the 11/20 Order while the appeal was still pending, and a motion hearing on this issue was scheduled for December 17, 2020;

   d. Morrison would not voluntarily release the Big Lake Attorney Lien in exchange for the escrowing of any amount of money; and

   e. Even if Morrison's Big Lake Attorney Lien were removed, its other liens against the Stursberg Parties could subject KAW Parks to liability when the 1648 Buyout was satisfied.

59. On November 24, Blake contacted Old Republic National Title Insurance Company to provide an update and seek clarity on how Morrison's position might impact the Big Lake Sale.

60. Old Republic informed Blake that Old Republic would refuse to provide title insurance as long as the Big Lake Attorney Lien existed. Because Morrison appealed the 11/20 Order, Old Republic would not provide title insurance as long as the appeal was pending.

61. Additionally, Old Republic informed Blake that escrowing the Original Lien Amount of $199,339.33 as directed in the 11/20 Order would not be sufficient to remove all barriers to the Big Lake Sale as hoped by the Stursberg Parties and Titcomb Parties. Old Republic explained that because of the risk that the Court

of Appeals might reinstate the Big Lake Attorney Lien, Old Republic would not consider the title clean.

62. The Titcomb Parties recognized Morrison's pending appeal meant no deal for the third-party buyer as well, as their purchase agreement also required the delivery of clean title.

### Lien Release Agreement Between Morrison and Titcomb Parties

63. On November 25, 2020, the Titcomb Parties (including intervenor KAW Parks) entered into an oral contract with Morrison to secure the discharge of the Big Lake Attorney Lien. The written version (the "Lien Release Agreement") was executed November 30, 2020, and contained among its provisions:

   (1) On the Closing Date of the Big Lake Sale, the Titcomb Parties would cause $250,000 to be paid by wire to Morrison (the "Titcomb Payout");

   (2) In exchange for this promise to pay, Morrison would first release the Big Lake Attorney Lien and file the necessary paperwork to enable the Big Lake Sale to be completed;

   (3) Morrison and the Titcomb Parties would discharge any and all claims against one another that might arise from the Titcomb Payout.

64. Pursuant to the September 1, 2020, Settlement Agreement's Titcomb Payout Clause, the Titcomb Parties planned to deduct the $250,000 Titcomb Payout from the $3,275,000 1648 Buyout, diverting those $250,000 instead to Morrison.

65. Title insurance company Old Republic would facilitate the actual transfer of funds by wire. All of the moving parts had to be approved before any step would actually take place.

66. With the December 1, 2020, Closing Date less than a week away, and the December 4, 2020, Redemption Deadline close behind, the Lien Release Agreement meant a plan was in place to facilitate the Big Lake Sale. The Stursberg Parties were made aware of the Lien Release Agreement and objected, arguing that the 11/20 Order should be followed, but did not indicate any intention to prevent the Big Lake Sale from being completed.

67. The graphic below depicts the plan for the Closing Date as envisioned by the Lien Release Agreement. The graphic has been streamlined to include only those moving parts most relevant to this Litigation. The moving parts are numbered to show causal sequence but not durational sequence. When implemented, all parts of the process would occur almost simultaneously.

## The Plan for Closing Date December 1, 2020, per the Lien Release Agreement



## **December 1, 2020 – Big Lake Sale Closes – Last-Minute Changes**

68. At approximately 12:00 PM (noon), Old Republic commercial closer Robin Armstrong made a phone call to Henry Stursberg. To bolster security and protect against wire fraud, Old Republic's standard procedure is to call parties to a given transfer by telephone and confirm their wire instructions and the amount they are set to send and/or receive.

69. On this confirmation call, Armstrong asked Stursberg to confirm as correct the amount he was set to receive, $3,025,000 (the $3,275,000 1648 Buyout minus the $250,000 Titcomb Payout).

70. Stursberg objected to the reduction from the 1648 Buyout figure and told Old Republic that diverting any of the 1648 Buyout to Morrison would violate the 11/20 Order.

71. Immediately thereafter, Stursberg sent Armstrong a text message reading:

> "Robin you have the incorrect amount of the dispersement [sic] and if you're not going to comply with a court order let me know and I'll have a judge come down and shut the settlement down on the court order is 199,000 in escrow not 250 please confirm [phone number] I'm gonna have my attorney contact you now to [sic]."

72. Stursberg's refusal to confirm his disbursement amount led Old Republic to pause the entire process. Rather than wire funds piecemeal through a multi-step process fraught with potential dispute, Old Republic demanded all parties reach agreement and confirm disbursement amounts before any funds would be transferred. Urgent emails and phone calls between the parties ensued.

73. Morrison refused to discharge the Big Lake Attorney Lien unless it received the $250,000 Titcomb Payout, pursuant to the Lien Release Agreement. Without this discharge, no deal could occur.

74. The Stursberg Parties refused to confirm the disbursement unless they were to receive the full 1648 Buyout figure. Any diversion of the 1648 Buyout, even an escrow of the Original Lien Amount, was unacceptable. The Stursberg Parties represented that they would escrow the Original Lien Amount themselves as directed in the 11/20 Order and would not consent to the sum being escrowed directly by Old Republic. Morrison and the Titcomb Parties argued that the Stursberg Parties' position breached the Titcomb Payout Clause of the September 1, 2020, Settlement Agreement, but the Stursberg Parties held firm.

75. The Big Lake Sale was only salvaged when the Titcomb Parties agreed to disburse both Stursberg Parties and Morrison their respective demanded

amounts of $3,275,000 to the Stursberg Parties and $250,000 to Morrison. In total, this meant the Titcomb Parties paying $250,000 more than the agreed $3,275,000 to buy 1648 Properties out of its interest in Amicorp Communities.

76. With the disbursement amounts agreed, the Big Lake Sale and Highland Bank Loan closed successfully. The Parks were redeemed from foreclosure, the Big Lake Property was conveyed to the third-party buyer, and the Big Lake Proceeds were split among the Titcomb Parties, the Stursberg Parties, and Morrison.

77. On December 2, 2020, the Stursberg Parties escrowed the Original Lien Amount of $199,339.33 as directed by the 11/20 Order.

### KAW Parks' Intervention in this Litigation

78. Following the December 1, 2020, closing of the Big Lake Sale, the Titcomb Parties requested Morrison and the Stursberg Parties stipulate to allow KAW Parks' intervention in this Litigation. This would place the issue of whether the Stursberg Parties should reimburse KAW Parks before Judge Kaminsky, in a case where the Stursberg Parties had just escrowed funds.

79. Morrison agreed to stipulate to KAW Parks' intervention, but the Stursberg Parties did not.

80. On December 10, 2020, KAW Parks submitted its Emergency Motion to Intervene, so that it could be present for the December 17 motion hearing.

81. On December 16, 2020, the Stursberg Parties submitted their response in opposition to the intervention of KAW Parks. Arguing (1) The Settlement Agreement governed KAW Parks' claim, (2) The Settlement Agreement's terms and the Dismissal Order reserved jurisdiction for enforcing the Settlement Agreement with Judge Buccicone, and (3) Judge Kaminsky would be unable to provide KAW Parks with the relief it sought, the Stursberg Parties requested the Court deny the request to intervene.

82. The Court permitted KAW Parks' intervention.

83. On December 17, 2020, KAW Parks appeared as an intervenor before Judge Kaminsky, along with Plaintiffs Stursberg Parties and Defendant Morrison.

### Court of Appeals Dismissal

84. On December 30, 2020, after requesting and receiving informal memoranda, the Court of Appeals dismissed Morrison's appeal of the 11/20 Order. *1648 Props., LLC, et al. v. Morrison Sund, PLLC*, No. A20-1493 (Minn. Ct. App. Dec. 10,

14

2020). Morrison, the Court noted, argued that the appeal should be dismissed as moot, whereas Stursberg Parties argued it should be dismissed as premature.

85. The Court declined to address their arguments because both sides requested dismissal.

## **Remaining Issues for this Court**

86. In short, the property has been successfully liquidated, and all adverse parties have severed their ties. Remaining issues include:

    a. Are the Stursberg Parties' causes of action and motions moot?

    b. Do the Stursberg Parties owe Morrison under the Retainer Agreement and/or liens? If so, how much?

    c. Can this Court order Stursberg reimburse KAW Parks for $250,000?

    d. Should conduct-based attorney fees be awarded? If so, to whom, against whom, and in what amount?

# CONCLUSIONS OF LAW

## I. Mootness – Stursberg Parties' Causes of Action and Motions Are Moot or Otherwise Without Merit.

### *Generally.*

It is a well-established rule in Minnesota that a court only has jurisdiction to render a decision if there is a "justiciable controversy." *Kahn v. Griffin*, 701 N.W.2d 815, 821 (Minn. 2005) (citations omitted). "A controversy is only justiciable when it involves definite and concrete assertions of right. Merely possible or hypothetical injury will not satisfy this standard." *Id* (citations omitted). "If the court is unable to grant effectual relief, the issue raised is deemed to be moot." *Matter of Schmidt*, 443 N.W.2d 824, 826 (Minn. 1989). "Moreover, the court does not issue advisory opinions, nor decide cases merely to establish precedent." *Id*.

The Stursberg Parties brought various claims and motions designed to aid the closing of this multi-million-dollar real estate transaction. After the successful closing, the Court must determine which legal controversies still exist.

### *Violations of Minnesota Statutes § 481.13 – Attorney's Liens*

On October 16, 2020, the Stursberg Parties sued Morrison, alleging violations of Minnesota Statutes § 481.13. "Derived from common law and later codified in [Minn. Stat. § 481.13], an attorney lien attaches to any recovery by the attorney in the course of representation."

*Thomas A. Foster & Assocs., Ltd v. Paulson*, 699 N.W.2d 1, 5 (Minn. Ct. App. 2005). "Thus, if a client recovers money as a result of an attorney's services, the attorney has a lien on the recovery as security for fees owed by the client." *Id.*, citing *St. Cloud Nat'l Bank & Trust Co. v. Brutger*, 488 N.W.2d 852, 855 (Minn. Ct. App. 1992), *review denied* (Minn. Nov. 17, 1992).

Minnesota Statutes § 481.13 Subdivision 1 grants an attorney an inchoate lien on a recovery obtained through his or her efforts on behalf of a client. 7A C.J.S. *Attorney & Client* § 450 (2004). The attorney may petition a district court to establish the lien, determine the proper amount of the lien, and enter judgment accordingly. *N. States Power Co. v. Gas Servs. Inc.*, 690 N.W.2d 362, 365–66 (Minn. Ct. App. 2004); *Empro Corp. v. Scottland Hotels, Inc.*, 449 N.W.2d 734, 737 (Minn. Ct. App. 1990). The value of the lien ordinarily is determined based on the terms of the fee provisions of a retainer agreement. *Blazek v. N. Am. Life & Cas. Co.*, 265 Minn. 236, 240 (1963). When such an agreement does not exist, the amount of the lien is determined by the reasonable value of the services rendered. *Roehrdanz v. Schlink*, 368 N.W.2d 409, 412 (Minn. Ct. App. 1985).

In this case, Morrison imposed liens against the Big Lake Property and against the Plaintiffs. The Big Lake Attorney Lien has been discharged, and any remaining liens are mooted and superseded by virtue of this Court's comprehensive adjudication of who owes whom and in what amount. This also includes any remaining Morrison liens against Stursberg or any other parties.

17

### *Immediate Discharge of Attorney's Lien*

The Stursberg Parties' primary target through this Litigation has been the discharge of Morrison's attorney lien on the Big Lake Property. Morrison has discharged this lien. Because the lien no longer exists, the Court cannot grant Plaintiffs' requested relief. This issue is moot.

### *Escrow of Big Lake Proceeds in Original Lien Amount*

The Stursberg Parties requested the Court order them to escrow $199,339.33 from their share of the Big Lake Proceeds. The Stursberg Parties framed this request as a way for the Court to remove the lien without unduly prejudicing Morrison. On or before December 1, 2020, Morrison voluntarily discharged the lien, pursuant to the Lien Release Agreement with the Titcomb Parties. As Morrison avoided undue prejudice through this alternative method and removed the lien, the escrow solution became causally detached from the rest of the deal. Furthermore, the Stursberg Parties have already escrowed this amount with the Court. This issue is moot.

### *Show Cause Hearing – Civil Contempt of Court – Sanctions*

On November 30, 2020, the Stursberg Parties requested the Court sanction Morrison and Ryan Dreyer through constructive civil contempt for acting in bad faith and violating the 11/20 Order. Civil contempt of court can be found when a party "fail[s] to obey a court order in favor of the opposing party in a civil proceeding." *Minn. State Bar Ass'n v. Divorce Assistance Ass'n, Inc.*, 311 Minn. 276, 285 (1976). "Constructive contempts are those not

18

committed in the immediate presence of the court, and of which it has no personal knowledge…" Minn. Stat. § 588.01, subd. 3 (2014).

"[The contempt] power gives the trial court inherently broad discretion to hold an individual in contempt but only where the contemnor has acted contumaciously, in bad faith, and out of disrespect for the judicial process." *Newstrand v. Arend*, 869 N.W.2d 681, 692 (Minn. Ct. App. 2015) (internal quotations and citations omitted). "In exercising civil contempt powers …, the only objective is to secure compliance with an order presumed to be reasonable." *Hopp v. Hopp*, 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968); *see also Zaldivar v. Rodriguez*, 819 N.W.2d 187, 196 (Minn. Ct. App. 2012) ("The purpose of civil contempt proceedings is to induce future performance of a valid court order, not to punish for past failure to perform" (quotation omitted)). The Supreme Court has characterized contempt as an "extreme remedy." *Hampton v. Hampton*, 303 Minn. 500, 502, 229 N.W.2d 139, 140 (1975).

The 11/20 Order directed Morrison to discharge the lien on the Big Lake Property, so that the Big Lake Sale could close. Given this lien has been discharged and the property sold, nothing remains in the 11/20 Order with which Morrison need comply. Since the Court cannot grant relief, this issue is moot. The Court need not address whether Morrison acted with excessive bad behavior, in bad faith, or out of disrespect for the judicial process.

### *Correction of 11/20 Order*

On November 30, 2020, the Stursberg Parties asserted the Court had mischaracterized the facts in the 11/20 Order and requested alignment with the Stursberg Parties' interpretation. The Stursberg Parties disagreed with the Court's finding they had any kind of ongoing ownership or other interest in the Big Lake Property following the Settlement Agreement with the Titcomb Parties.

This question is moot. The factual issue of ownership pertained to the applicability of the lien. The lien no longer exists, and the property has been sold. The characterization of the Stursberg Parties' ownership interest in the Big Lake Property as of September 2020 in the 11/20 Order is immaterial to the outcome of the remaining issues.

Additionally, the Stursberg Parties' request will not be considered because it is not properly before the Court. The Minnesota Rules of General Practice, Rule 115.11, provides:

> "Motions to reconsider are prohibited except by express permission of the court, which will be granted only upon a showing of compelling circumstances. Requests to make such a motion, and any responses to such requests, shall be made only by letter to the court of no more than two pages in length, a copy of which must be served on all opposing counsel and self-represented litigants."

Minn. R. Gen. Prac. 115.11. The Stursberg Parties neither sought nor received the Court's express permission to reconsider this question, nor was any showing made of compelling circumstances. Accordingly, the motion is denied as a matter of procedure.

### Constructive Trust

On November 30, 2020, the Stursberg Parties requested any Big Lake Proceeds disbursed to Morrison be escrowed as a constructive trust. A constructive trust "is a judicially created equitable remedy imposed to prevent unjust enrichment of a person holding property under a duty to convey it or use it for a specific purpose." *Wright v. Wright*, 311 N.W.2d 484 (Minn. 1981) (citing *Koberg v. Jones*, 157 N.W.2d 47 (1968)). A constructive trust is found "for the purpose of working right and justice, regardless of whether the parties intended to create such a relation." *Larkin v. McCabe*, 299 N.W. 649 (Minn. 1941).

The two elements of a cause of action to enforce a constructive trust are "the existence of a fiduciary relation and the abuse by defendant of confidence and trust bestowed under it to plaintiffs harm." *Wilcox v. Nelson*, 35 N.W.2d 741, 744 (Minn. 1949). A constructive trust cannot be pronounced if either of these elements is missing. *Id.* In imposing a constructive trust, the Court must find, by clear and convincing evidence, that the trust is necessary to prevent unjust enrichment. *In re Estate of Eriksen.* 337 N.W.2d 671, 674 (Minn. 1983).

The Stursberg Parties lack standing to bring this motion. On December 1, 2020, the Titcomb Parties disbursed the full 1648 Buyout sum, $3,275,000, to the Stursberg Parties, because Stursberg refused to accept a reduced amount. The $250,000 Titcomb Payout disbursed to Morrison came entirely out of Titcomb's portion of the Big Lake Proceeds. Even assuming that Stursberg's refusal did not breach the Settlement Agreement, the Stursberg Parties suffered no injury by virtue of the other parties' side agreement. Rather,

in salvaging the deal and avoiding the loss of the Parks to foreclosure, the Titcomb Payout considerably benefitted the Stursberg Parties. Because the Plaintiffs suffered no harm, they lack standing. Their motion for a constructive trust and the escrowing of Morrison's share is denied.

## II. Contractual Damages – Stursberg Owes Morrison for Services, Interest, and Collection Costs.

Morrison counterclaims against the Stursberg Parties for (1) breach of contract, (2) account stated, (3) unjust enrichment, and (4) fraud.

### *Breach of Contract*

On March 18, 2019, the Stursberg Parties and Morrison executed a Retainer Agreement to govern their relationship through the Titcomb Litigation. Morrison asserts Stursberg has breached the contract and has been endeavoring to collect damages for over a year. In Minnesota, breach of contract has the following elements: (1) formation of a contract, (2) performance by the non-breaching party, and (3) breach of the contract by the opposing party. *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). If there is a breach, the Court must then assess the extent of damages.

### Contract Formation

"The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay &*

*Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). The Retainer Agreement executed March 18, 2019, meets each requirement. The contract's unambiguous terms and signature on Morrison's behalf constitute the offer. The acceptance is found in the same terms and Henry Stursberg's signature beneath the heading "Acceptance." Consideration is present in the form of the agreed exchange of legal services for monetary compensation. A legally enforceable contract was formed.

## Morrison's Performance

Under the Retainer Agreement, the Stursberg Parties and Morrison agreed (1) fees would be paid on the basis of hours worked, not results achieved; (2) no results would be guaranteed; (3) bills would be totaled approximately once per month, and the client (Stursberg) would "notify [Morrison] promptly of any issues or concerns it has with its bill." Nonetheless, Stursberg argues Morrison's failures (chiefly, to depose Kent Titcomb, to withstand Titcomb's motion to dismiss, and to solicit expert testimony) render its invoices meritless. The record shows Morrison represented the Stursberg Parties in numerous motion hearings, researched and produced memoranda of law, obtained and reviewed thousands of discovery documents, deposed Brenton Titcomb, and engaged in the mediation process on Stursberg's behalf. These facts are consistent with contractual performance. To prove Morrison's performance was deficient under the Retainer Agreement, in which it was agreed results could not be guaranteed, the Stursberg Parties would need to make a successful claim of legal malpractice or other relevant professional misconduct.

"To prevail on a legal-malpractice claim, a plaintiff must establish four elements: (1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Noske v. Friedberg*, 713 N.W.2d 866, 873 (Minn. Ct. App. 2006). In the absence of any element, the claim fails. *Id.* Expert testimony is generally required to establish both the standard of care and breach. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977).

The facts alleged by the Stursberg Parties do not satisfy elements (2), (3), or (4). They describe the Titcomb Litigation in general terms, and do not describe in depth what Morrison should have done instead, nor how those purportedly better decisions would have produced a more favorable outcome. No expert testimony on these questions was offered. The Retainer Agreement promises payment in exchange for hours of work, not results. On the evidence before it, the Court finds Morrison performed its obligations under the Retainer Agreement.

## Stursberg's Breach

The parties do not dispute the facts regarding the conduct of breach. The Stursberg Parties claim no further payment is due and accordingly admit they have made no further payment to Morrison. Breach is present.

24

## Damages

In contract actions, a sharp distinction is drawn between direct damages and consequential damages. Direct damages are those which naturally and ordinarily flow from the breach of a contract. *Hadley v. Baxendale*, 9 Exch. 341, 154 Eng. Rep. 145 (1854). Consequential damages are those that may have been reasonably contemplated by the parties, at the time of contract formation, as the probable consequence of breach of the contract. *See Imdieke v. Blenda-Life, Inc.*, 363 N.W.2d 121 (Minn. Ct. App. 1985). Consequential damages are recoverable only if the parties could have reasonably anticipated the resulting harm. *Lesmeister v. Dilly*, 330 N.W.2d 95 (Minn. 1983). Collection costs owed under a retainer agreement cannot be collected through a summary attorney-lien proceeding, but they can be recovered in a breach-of-contract action. *Effrem v. Effrem*, 818 N.W.2d 546, 551 (Minn. Ct. App. 2012).

Morrison's damages under the Retainer Agreement derive from three sources: (1) the amount outstanding at the imposition of the lien, $199,339.33; (2) interest on the Original Lien Amount; and (3) costs incurred to collect the outstanding fees.

The Original Lien Amount and the interest are direct damages resulting from Stursberg's breach. They are the amount he agreed and failed to pay. The collection costs are foreseeable consequential damages. The foreseeability is demonstrated by its explicit inclusion in the Retainer Agreement. Moreover, the existence of Minn. Stat. § 481.13 and related statutes shows that legal action is the proper recourse for attorneys who are not paid by their clients.

25

Morrison's damages under the Retainer Agreement are recoverable. The Stursberg Parties' breach of contract has damaged Morrison in the amount of $310,140.36. The $250,000 Titcomb Payout will be set off against Stursberg's debt to prevent Morrison's unjust enrichment. Thus, the Stursberg Parties owe Morrison $60,140.36 in contractual damages.

### *Account Stated*

An action for account stated is a party's request for confirmation that the amount invoiced is the amount owed. *Erickson v. Gen. United Life Ins. Co.*, 256 N.W.2d 255, 259 (Minn. 1977). As a general rule, courts treat contemporaneously created invoices as *prima facie* evidence of the accuracy and correctness of the debts they describe. *Id.* To successfully challenge an account stated, the alleged debtor must "affirmatively demonstrate either fraud or mistake by clear and convincing evidence." *Id.* The Stursberg Parties have not met this burden, and the Court therefore credits the Morrison invoices in calculating contractual damages.

### *Unjust Enrichment*

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable. It is commonly referred to as a quasi-contract or a contract implied-in-law claim." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). Morrison's successful breach-of-contract claim obviates the need for further analysis of its unjust

enrichment claim, because the remedies would be duplicative. The unjust enrichment claim is moot.

### *Fraud*

Morrison asserts the Stursberg Parties committed fraud, or intentional misrepresentation, in executing the Retainer Agreement while simultaneously intending to breach it in the future. In Minnesota, a plaintiff alleging fraud must allege the defendant: "(1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation." *M.H. v. Caritas Fam. Servs.*, 488 N.W.2d 282, 289 (Minn. 1992), citing *Florenzano v. Olson*, 387 N.W.2d 168, 174 (Minn. 1986). A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading. *Id*. A contracting party's failure to keep its promise alone does not support a claim of fraud, otherwise every breach-of-contract claim would be a fraud claim. *Vandeputte v. Soderholm*, 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974). However, misrepresentation of present intention can amount to fraud if it can be proven "that the promisor had no intention to perform at the time the promise was made." *Id*.

27

Rule 9.02 of the Minnesota Rules of Civil Procedure and its counterpart, Rule 9(b) of the Federal Rules of Civil Procedure, both provide that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." This pleading requirement is not satisfied by merely reciting the generic elements of fraud. *See Stubblefield v. Gruenberg*, 426 N.W.2d 912, 914 (Minn. Ct. App. 1988). According to the Minnesota Supreme Court, "[t]he requirements for a plea of fraud are satisfied when the ultimate facts are alleged." *In re Williams' Estate*, 254 Minn. 272, 283, 95 N.W.2d 91, 100 (1959). The United States Court of Appeals for the Eighth Circuit has explained that this rule is interpreted "in harmony with the principles of notice pleading" and to satisfy it, the complaint must allege "such matters as time, place, and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 785-86 (8th Cir. 2009); *see also Schaller Telephone Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 746 (8th Cir. 2002); *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1067, 1069 (8th Cir. 1995). This "heightened standard" requiring the plaintiff to "identify who, what, where, when, and how ... is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner v. U.S.*, 317 F.3d 883, 888 (8th Cir. 2003); *ADT Sec. Services, Inc. v. Swenson*, 2008 WL 2828867, *6-7 (D. Minn. 2008).

Conclusory allegations that a defendant's conduct was fraudulent are not sufficient to satisfy the rule. For example, in *Trooien v. Imeson*, the plaintiffs alleged in their complaint that the defendant had made a number of fraudulent misrepresentations regarding certain

aircraft leases in a series of e-mail messages. 2009 WL 1921685 (D. Minn. 2009). However, the plaintiffs neither attached the messages to, nor quoted them in, their complaint, nor did they provide any other details regarding the alleged misrepresentations. Consequently, the court concluded that the allegations in the plaintiff's complaint were not stated with sufficient particularity to meet the requirements of Rule 9(b). *Id.* at *3.

Morrison alleges that Stursberg falsely promised to pay his bills in the Retainer Agreement. As evidence of Stursberg's state of mind, Morrison suggests that Stursberg has a history of not paying his attorney fees. Its evidence of this supporting premise is lacking. Even if it were not, breach of a prior contract (or even several) is inadequate to prove mendacious state of mind in the formation of a new contract. Morrison's allegation of fraud fails to meet the particularity requirements of Rule 9.02 of the Minnesota Rules of Civil Procedure and must be dismissed.

## III. KAW Parks' Equitable Claim Requires Judge Buccicone's Interpretation of the Settlement Agreement

On September 1, 2020, the Stursberg Parties and Titcomb Parties reached a Settlement Agreement, and the Titcomb Litigation was tentatively resolved. The Settlement Agreement set the amount of the 1648 Buyout, gave Titcomb the power to pay off the Morrison liens at Stursberg's expense, and designated Judge Buccicone as contract enforcer.

Specifically, the "Dispute Resolution" clause of the Settlement Agreement reads as follows:

> "The Parties agree that any and all disputes arising out of this Agreement, including the making of this Agreement, or the negotiation, drafting, or execution of any other documents required to effectuate the transactions contemplated by this Agreement shall be submitted to the Honorable Brianne J. Buccicone for final resolution. Subject to her approval, any such disputes shall be brought to Judge Buccicone via informal letters and telephone/videoconference meetings (as opposed to formal motion practice) and shall be done on an expedited basis. The Parties agree that any such decisions or orders entered by Judge Buccicone shall be binding and no Party shall have a right to appeal any decision or order."

In its Complaint in Intervention, KAW Parks makes an equitable claim for reimbursement by Stursberg for the $250,000 Titcomb Payout. KAW Parks requests the Court release to it the $199,339.33 in escrow, in satisfaction of roughly 80% of the Titcomb Payout. KAW Parks requests in the alternative, if the Court decides this issue belongs to Judge Buccicone, that the escrow be maintained for her to release.

"[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *United States Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981). Unjust enrichment under a quasi-contract is an equitable remedy, and unjust enrichment claims will not lie when there is an enforceable contract. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) ("[Unjust enrichment] does not apply when there is an enforceable contract that is applicable."); *Robert Davis Const., Inc. v. Althoen*, 2014 WL 4672378, *4 (Minn. Ct. App. 2014) ("Recovery under a theory of unjust enrichment is only available when no enforceable

30

contract is available. This is in accord with the general principle that '[e]quitable relief is available only upon a showing that no adequate legal remedy exists.'" (citing *Caldas*, 820 N.W.2d at 838 and quoting *Stocke v. Berryman*, 632 N.W.2d 242, 245–46 (Minn. Ct. App. 2001), review denied (Minn. Sept. 25, 2001)); *see also ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 305 (Minn. 1996) (stating that "[a] party may not have equitable relief where there is an adequate remedy at law available").

The rationale for this rule of law is founded in freedom of contract. When parties have agreed to govern their relationship through an enforceable contract, a judge's equitable remedy would effectively rewrite the contract and deny one or both parties their contractual rights. *Cady v. Bush*, 283 Minn. 105, 110, 166 N.W.2d 358, 362 (1969).

If this Court were to interpret and enforce the Settlement Agreement, the parties would be denied their contractual rights under the Dispute Resolution clause. Because KAW Parks' claim for reimbursement lies in the Titcomb Payout clause of the same Settlement Agreement, the Court finds the issue belongs to Judge Buccicone. The escrowed funds will remain in escrow, to be disbursed in accord with Judge Buccicone's decision.

## IV. Conduct-based Attorney Fees

Generally, attorney fees are not recoverable unless authorized by statute or contract. *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549 (Minn. 2008). However, Minnesota Statutes § 518.14, Subdivision 1, empowers trial courts to award additional fees, costs and

31

disbursements against a party who unreasonably extends the length or expense of the proceeding. Rule 119 of the Minnesota Rules of General Practice dictates that motions for attorney fees "shall be accompanied by an affidavit of any attorney of record which establishes the following:

1. A description of each item of work performed, the date upon which it was performed, the amount of time spent on each item of work, the identity of the lawyer or legal assistant performing the work, and the hourly rate sought for the work performed;

2. The normal hourly rate for each person for whom compensation is sought, with an explanation of the basis for any difference between the amount sought and the normal hourly billing rate, if any;

3. A detailed itemization of all amounts sought for disbursements or expenses, including the rate for which any disbursements are charged and the verification that the amounts sought represent the actual cost to the lawyer or firm for the disbursements sought; and

4. That the affiant has reviewed the work in progress or original time records, the work was actually performed for the benefit of the client and was necessary for the proper representation of the client, and that charges for any unnecessary or duplicative work has been eliminated from the application or motion."

Minn. Gen. R. Prac. 119.02. Additionally, "[t]he motion should be accompanied by a memorandum of law that discusses the basis for recovery of attorney's fees and explains the calculation of the award of fees sought and the appropriateness of that calculation under applicable law." Minn. Gen. R. Prac. 119.04.

No party seeking conduct-based attorney fees in this Litigation has provided the Court with the requisite factual basis. Notwithstanding, the Court finds that all parties to this Litigation have engaged in the hardball tactics, brinksmanship, and puffery that often

accompany high-stakes transactions and litigation. No conduct-based attorney fees will

be awarded in conjunction with this Litigation.

## ORDER

1. The Stursberg Parties are hereby ordered to pay Morrison Sund, PLLC, in the amount of $60,140.36.

2. Morrison Sund, PPLC, is hereby ordered to discharge any remaining liens against the Stursberg Parties.

3. The escrowed funds shall remain in escrow, to be disbursed as decided by Judge Buccicone in the Titcomb Litigation, 71-CV-18-605.

4. All other motions not expressly addressed are DENIED.

**Let Judgment Be Entered Accordingly.**

**IT IS SO ORDERED.**                    **BY THE COURT:**

Dated: MARCH 16 - 2021

_____
The Honorable Walter M. Kaminsky
Judge of District Court

I hereby certify that the
foregoing order constitutes
the Judgment of the Court

DeVilbissHendry, Gina
(Sherburne Court
Administration)

DeVilbissHendry,
Gina (Sherburne
Court
Administration)
2021.03.16 11:35:16
-05'00'

33

**Exhibit 8**

STATE OF MINNESOTA

COUNTY OF SHERBURNE

-------------------------------------------------

1648 Properties, LLC, and Henry
Stursberg,

                Plaintiffs,

v.

Morrison Sund PLLC,

                Defendant,

and

KAW Parks, LLC,

                Intervenor.

-------------------------------------------------

**FILED**

April 2, 2021

**Office of Appellate Courts**

DISTRICT COURT

TENTH JUDICIAL DISTRICT

CASE TYPE: Civil Other/
Miscellaneous

**NOTICE OF APPEAL TO COURT
OF APPEALS**

TRIAL COURT CASE NUMBER: 71-
CV-20-1114

DATE FINAL ORDER ENTERED:
March 16, 2021

DATE JUDGMENT ENTERED: March
16, 2021

TO:   Clerk of the Appellate Courts, 245 Minnesota Judicial Center, 25 Rev. Dr. Martin
Luther King, Jr. Boulevard, Saint Paul, Minnesota 55155-6102; Defendants
Morrison Sund PLLC and its attorney Ryan Dreyer, Morrison Sund PLLC, 5125
County Road 101, Suite 200, Minnetonka, Minnesota 55345; and Intervenor KAW
Parks, LLC and its attorneys, Scott D. Blake and Lauren M. Weber, Felhaber
Larson, 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402.

      **PLEASE TAKE NOTICE** that the above-named Plaintiffs 1648 Properties, LLC,

and Henry Stursberg ("Plaintiffs") appeal to the Court of Appeals of the State of Minnesota

from a final order and judgment entered thereon, filed/entered on the dates shown above.

      Name, address, zip code, telephone number, and attorney registration license
number of attorneys for Plaintiffs:

John A. Cotter (#134296)
Nic S. Puechner (0397318)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437
Ph: (952) 896-3340
Fax: (952) 896-3333
jcotter@larkinhoffman.com
npuechner@larkinhoffman.com
Attorneys for Plaintiffs

Name, address, zip code, telephone number, and attorney registration license number of attorneys for Defendant Morrison Sund PLLC:

Ryan R. Dreyer (332252)
Morrison Sund PLLC
5125 County Road 101, Suite 200
Minnetonka, Minnesota 55345
Ph: (952) 975-0050
Fax: (952) 975-0058
rdreyer@morrisonsund.com
Attorneys for Defendant

Name, address, zip code, telephone number, and attorney registration license number of attorneys for identified Intervenor KAW Parks, LLC:

Scott D. Blake (0395862)
Lauren M. Weber (0396567)
Felhaber Larson
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Ph: (612) 339-6321
sblake@felhaber.com
lweber@felhaber.com

Proof of service on counsel for the adverse party and proof of filing with the Administrator of the Sherburne County District Court are attached. Also attached is a copy of the Notice of Filing of Order and Entry of Judgment dated March 16, 2021, as well as a copy of the Order dated March 16, 2021.

Dated: 4/2/2021                        s/John A. Cotter

John A. Cotter (#134296)
Nic S. Puechner (#0397318)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437
Ph: (952) 896-3340
Fax: (952) 896-3333
jcotter@larkinhoffman.com
npuechner@larkinhoffman.com
Attorneys for Plaintiff-Appellants

4850-3779-8883, v. 1

**Exhibit 9**


## STATE OF MINNESOTA
## IN COURT OF APPEALS

1648 Properties, LLC and
Henry Stursberg,

                Appellant,

          v.

Morrison Sund PLLC,

                Respondent,

and

KAW Parks, LLC,

                Intervenor.

District Court Case No.
71-CV-20-1114
Hon. Walter M. Kaminsky

Appellate Case No._____

**APPELLANT'S STATEMENT
OF THE CASE**

DATE OF ORDERS:
**Order Granting Judgment
Filed March 16, 2021
Judgment Entered March 16, 2021**

---

1. **Court or agency of case origination and name of presiding judge or hearing officer.**

   Sherburne County District Court, Tenth Judicial District

   Honorable Walter M. Kaminsky

2. **Jurisdictional Statement.**

   (A) **Appeal from District Court.**
   **Statute, rule or other authority authorizing appeal:**

   Minn. R. Civ. App. P. 103.03(a) and (g).

   **Date of entry of judgment or date of service of notice of filing of order from which appeal is taken:**

   Date of Order and Entry of Judgment:        March 16, 2021

**Authority fixing time limit for filing notice of appeal (specify applicable rule or statute):**

Minn. R. Civ. App. P. 104.01, subd. 1.

**Date of filing any motion that tolls appeal time:**

Not applicable.

**Date of filing of order deciding tolling motion and date of service of notice of filing:**

Not applicable.

**(B)    Certiorari appeal.**

Not applicable.

**(C)    Other appellate proceedings.**

Not applicable.

**(D)    Finality of order or judgment.**

**Does the judgment or order to be reviewed dispose of all claims by and against all parties, including attorney fees?**

Yes.

**If no:**

**Did the district court order entry of a final partial judgment for immediate appeal pursuant to MINN. R. CIV. APP. P. 104.01?**

Not applicable.

**If yes, provide date of order:**

March 16, 2021

**If no, is the order or judgment appealed from reviewable under any exception to the finality rule?**

Not applicable.

**If yes, cite rule, statute, or other authority authorizing appeal:**

Not applicable.

**(E)    Criminal only:**

Not applicable.

3.    **State type of litigation and designate any statutes at issue.**

This litigation relates to a dispute between Appellants 1648 Properties, LLC and Henry Stursberg (the "Stursberg Parties") and Respondent Morrison Sund PLLC ("Morrison") concerning attorneys' fees claimed by Morrison and a corresponding invalid attorney lien filed by Morrison in connection with those fees, with the Stursberg Parties asserting claims against Morrison for violation of Minn. Stat. § 481.13, Morrison asserting counterclaims against the Stursberg Parties for breach of contract, unjust enrichment, and fraud, and KAW Parks, LLC ("KAW Parks") seeking to intervene to assert an equitable claim for reimbursement of $250,000 from the Stursberg Parties.

4.    **Brief description of claims, defenses, issues litigated, and result below.  For criminal cases, specify whether conviction was for a misdemeanor, gross misdemeanor, or felony offense.**

This action first involved the effort by the Stursberg Parties to address, and to remove or have discharged, an unlawful attorney lien filed by Morrison against real property in Sherburne County known as the Big Lake Mobile Home Park (the "Property") against each of the Stursberg Parties and the filing of two UCC-1 Financing Statements (collectively, the "Morrison Sund Liens") after the Stursberg Parties terminated Morrison's representation of the Stursberg Parties in a lawsuit venued in Sherburne County District Court, Tenth Judicial District, Court File No. 71-CV-18-605 (the "Lawsuit"). That Lawsuit was settled in large part due to the failure of Morrison to have the matter ready for trial. Recently, a motion was filed alleging a breach of a settlement agreement as a direct result of Morrison's unlawful conduct which is the main issue in the present matter.

Morrison represented the Stursberg Parties for a short period spanning from March 2019 to December 2019, but during that short period, Morrison claims to have incurred approximately $300,000 in attorneys' fees and costs. On or about December 10, 2019, after its termination, Morrison recorded the Morrison Sund Liens. At the time of assertion of the Morrison Sund Liens, Morrison was aware that the Property was owned by KAW Parks and that Appellants did not have any interest or ownership in the Property, rendering the lien invalid at the time of

filing. In fact, in June 2019 the district court had determined that the Stursberg Parties did not have equitable title to the Property.

Also, in December 2019, Morrison filed an action in U.S. Bankruptcy Court for the District in Minnesota to place Appellant Stursberg into a Chapter 7 involuntary bankruptcy. The Bankruptcy Court dismissed the action and admonished Morrison for the filing of that action as an improper use of bankruptcy to collect a debt. In addition, Morrison knowingly falsified the Bankruptcy Petition by misrepresenting that venue was proper in Minnesota when they knew not one of the necessary criteria for proper venue applied. The resulting harm to Stursberg was, as intended by Morrison, significant. As a result, Stursberg filed an action against Morrison in the United States District Court for the Eastern District of Pennsylvania for, among other things, abuse of process (the "Pennsylvania Action").

The fees Morrison incurred in the unlawful bankruptcy filing and the defense of the Pennsylvania Action are included in the amount appealed. This fact was overlooked due to the failure of the Sherburne County District Court to conduct an evidentiary hearing and hold a summary proceeding after ruling that the Morrison attorney lien was removed and all issues related thereto were moot.

The Stursberg Parties had entered into a Confidential Settlement Agreement (the "Settlement Agreement") on September 1, 2020 with the defendants in the Lawsuit ("the Titcomb Parties'), one of which, KAW Parks, owned all rights, title and interest in the Property. The Settlement Agreement addressed what parties would be responsible for addressing the Morrison Sund Liens.

In light of the contention that Morrison was never entitled to an attorney lien and clearly not upon real Property in which their former client had no interest, the Stursberg Parties sought a judicial determination on the issue of the lien discharge. On November 20, 2020, upon a motion by the Stursberg Parties, the Sherburne County District Court found that the "value of [Morrison's] services are in dispute, and forms the underlying basis for the present action," directed Morrison to discharge its attorney lien on the Property, and directed the Stursberg Parties to place $199,339.33 in escrow from the proceeds of the sale of the Property in order to address the fee dispute (the "11/20 Order"). The amount to be placed in escrow was the amount Morrison represented to be the maximum they could recover for their claim of attorney fees. The Stursberg Parties placed the required money in escrow as ordered. Morrison refused to comply with the 11/20 Order.

On November 24, 2020, Morrison sought review from this Court of the 11/20 Order, Appeal No. A20-1493, and simultaneously filed an Amended Answer and

Counterclaims, alleging breach of contract, unjust enrichment, and fraud.[1] One day later, and unbeknownst to the Stursberg Parties, Morrison entered into an oral agreement with the Titcomb Parties, as buyers of the Property, to arrange for a release of the attorney lien against the Property, a recently filed Notice of Lis Pendens against the Property, and other threats by Morrison in exchange for $250,000—a $50,000 increased demand from that which was previously represented to the court as Morrison's maximum recover—to permit the closing to occur on time (the "Titcomb Payout"). Morrison and the Titcomb Parties memorialized this oral agreement in a written document, the Lien Release Agreement, on November 30, 2020. The Titcomb Parties voluntarily paid this ransom directly to Morrison, and the Titcomb Parties and Morrison agreed to release all claims against one another that might arise from the Titcomb Payout.

On November 30, 2020, the Stursberg Parties moved Sherburne County District Court for, among other things, emergency relief to include discharge of the attorney lien against the Property as previously ordered and sanctions against Morrison. Morrison moved for prejudgment attachment. The district court ruled that the motions would be heard on December 17, 2020.

On March 16, 2021, Sherburne County District Court issued the Order subject to this appeal. In that order, the court dismissed as moot the Stursberg Parties' cause of action against Morrison for violation of Minn. Stat. § 481.13, and the associated motions, on the basis that the Property was sold, Morrison discharged the one lien against the Big Lake Property, all other liens were moot based upon the order, and any arguments concerning the lien no longer needed to be addressed.

Without any due process concerning the Morrison counterclaims, including any motion before the court to resolve those counterclaims at the December 17 hearing or any opportunity for discovery, the court ruled on each of Morrison's counterclaims. The court awarded Morrison $60,140.36 and directed judgment be entered against the Stursberg Parties in that amount. Without a pending motion or evidence to support attorneys' fees and costs for Morrison's fees, now totaling $310,140.36, the district court adopted Morrison's unsubstantiated and ever-escalating claim. The court then subtracted the $250,000 Titcomb Payout Morrison received as a result of the side agreement between Morrison and the Titcomb Parties. The court did not address the question of whether the underlying attorney liens were valid as a matter of law, whether the fees charges by Morrison were lawful, whether Morrison and the Titcomb Parties were permitted to enter into a side agreement to effectuate closing on time, or whether Morrison had, in fact, complied with the Settlement Agreement and discharged all of the Morrison

---

[1] On December 30, 2020, this Court dismissed Appeal No. A20-1493, with both parties agreeing, for different reasons, that dismissal of the appellate case was appropriate at that time.

Sund Liens as required by the Settlement Agreement—which it had not, or whether Morrison had violated a court order to discharge the Attorney Liens as of closing exclusively upon the funds being placed into escrow.

**5.      List specific issues proposed to be raised on appeal.**

Appellants Stursberg Parties will raise following questions on appeal:

1.      Did the district court err by dismissing as moot the Stursberg Parties' cause of action against Morrison for violation of Minn. Stat. § 481.13?

2.      Is an attorney entitled to include the costs of collection, including attorneys' fees and costs associated with obtaining an attorney lien under Minn. Stat. § 481.13, in the amount of the lien?

3.      Did the district court err by concluding that Morrison voluntarily discharged the Morrison Sund Liens?

4.      Did the district court violate the Stursberg Parties' due process by ruling and entering judgment on the counterclaims of Morrison when, among other things, there was no motion pending before the court that would allow it to reach the merits of those claims, no discovery was allowed, and Morrison offered no evidence of the actual attorneys' fees and costs it had incurred as alleged collection fees and costs, particularly where a request for a jury trial had been demanded?

5.      Did the court err by awarding Morrison attorney-fee damages against the Stursberg Parties for breach of contract in the absence of an opportunity to conduct discovery, a motion by Morrison bringing the Morrison counterclaims before the court for summary judgment, and a jury trial as had been demanded?

6.      Did the district court err by awarding Morrison damages for attorneys' fees in excess of the amount contained in Morrison's attorney lien, including without proof of the actual attorneys' fees and costs incurred?

7.      Did the district court err by calculating Morrison's damages under an account stated cause-of-action, when Morrison has failed to produce invoices reflecting all of its claimed damages of $310,140.36 or a course of dealing that such invoices were accepted as valid?

8. Did the district court err by declining to levy conduct-based attorneys' fees against Morrison for refusing to comply with the 11/20 Order?

9. Is the award of damages in the district court's order supported by substantial evidence?

**6. Related appeals.**

**List all prior or pending appeals arising from the same action as this appeal. If none, so state.**

A20-1493

**List any known pending appeals in separate actions raising similar issues to this appeal. If none are known, so state.**

None are known.

**7. Contents of record.**

**Is a transcript necessary to review the issues on appeal?**

Yes.

**If yes, full or partial transcript?**

Full.

**Has the transcript already been delivered to the parties and filed with the district court administrator?**

No.

**If not, has it been ordered from the court reporter?**

No, but it will be ordered in accordance with Rule 110.02.

**If a transcript is unavailable, is a statement of the proceedings under Rule 110.03 necessary?**

Not applicable.

**In lieu of the record as defined in Rule 110.01, have the parties agreed to prepare a statement of the record pursuant to Rule 110.04?**

No.

8.  **Is oral argument requested?**

      Yes.

      **If so, is argument requested at a location other than that provided in Rule 134.09, subd. 2?**

      No.

      **If yes, state where argument is requested:**

      Not applicable.

9.  **Identify the type of brief to be filed.**

      Formal brief under Rule 128.02.

10. **Names, addresses, and telephone numbers of attorney for appellant and respondent.**

      **Counsel for Appellants 1648 Properties, LLC and Henry Stursberg:**

      **Larkin Hoffman Daly & Lindgren Ltd.**
      John A. Cotter (134296)
      Nic S. Puechner (0397318)
      8300 Norman Center Drive, Suite 1000
      Minneapolis, Minnesota 55437-1060
      Telephone: (952) 835-3800
      jcotter@larkinhoffman.com
      npuechner@larkinhoffman.com

      **Counsel for Respondent Morrison Sund PLLC:**

      **Morrison Sund PLLC**
      Ryan R. Dreyer (332252)
      5125 County Road 101, Suite 200
      Minnetonka, Minnesota 55345
      Telephone: (952) 975-0050
      rdreyer@morrisonsund.com

**Counsel for Intervenor KAW Parks, LLC**

**Felhaber Larson**
Scott D. Blake (0395865)
Lauren M. Weber (0396567)
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 339-6321
sblake@felhaber.com
lweber@felhaber.com


Dated: April 2, 2021       s/ John A. Cotter
John A. Cotter (134296)
Nic S. Puechner (0397318)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive, Suite 1000
Minneapolis, Minnesota 55437-1060
Telephone: (952) 835-3800
Facsimile: (952) 896-3333
jcotter@larkinhoffman.com
npuechner@larkinhoffman.com

Attorneys for Plaintiff-Appellants


### ACKNOWLEDGMENT

I hereby acknowledge that sanctions may be awarded pursuant to Minn. Stat. § 549.211, subd. 3, if the court determines that this document violates Minn. Stat. § 549.211, subd. 2.

s/ John A. Cotter
John A. Cotter

**Exhibit 10**

**STATE OF MINNESOTA**

**COUNTY OF SHERBURNE**

**DISTRICT COURT**

**TENTH JUDICIAL DISTRICT**
File No. 71-CV-20-1114
Case Type: Civil Other/Misc.

1648 Properties, LLC, and
Henry Stursberg

Plaintiffs,

v.

Morrison Sund, PLLC,

Defendant.

**AFFIDAVIT OF
HENRY J. STURSBERG
IN SUPPORT OF EMERGENCY
APPLICATION REGARDING
MORRISON SUND ATTORNEY'S
LIENS**

---

COMMONWEALTH OF PENNSYLVANIA)
                                                          )      ss.
COUNTY OF PHILADELPHIA              )

Henry J. Stursberg, being first duly sworn upon oath, deposes and states as follows:

1.        I am competent to testify as to the matters stated in this affidavit, which are based on my personal knowledge.

2.        This Affidavit is made in support of the Application of Plaintiff 1648 Properties, LLC ("1648 Properties") and me to determine that the attorney's lien filed by Defendant Morrison Sund does not apply to certain real property.

3.        I am an individual resident of the Commonwealth of Pennsylvania.

4.        I am the member and owner of 1648 Properties.

5.        1648 Properties is a limited liability company organized under the laws of the Commonwealth of Pennsylvania.

6.        Up until September 1, 2020, 1648 Properties owned forty-nine percent of Amicorp Communities, Inc., a Florida corporation ("Communities").  Up until September 1,

2020, the remaining fifty-one percent (51%) of Communities was owned by Amicorp, Inc., a Florida corporation ("Amicorp"). As of September 15, 2020, Amicorp owns 100% of Communities.

7.      Communities is the sole owner of KAW Parks, LLC, a Minnesota limited liability company ("KAW Parks").

8.      KAW Parks owns certain real property in Sherburne County, Minnesota, including a mobile home park known as Big Lake Mobile Home Park (the "Property"). The legal description for the Property is:

> The South half of the Northwest quarter of the Northeast quarter (SE ½ of NW ¼ of NE ¼) of Section Thirty (30), Township Thirty-three (33), Range Twenty-seven (27), Sherburne County, Minnesota

KAW Parks was at all times during the pendency of the Lawsuit and remains today the sole fee owner of the Property.

9.      1648 Properties was previously involved as a plaintiff in litigation against Amicorp, Communities and KAW Parks (and other defendants) in 2018. I was personally a third-party defendant in that litigation. The litigation was commenced by 1648 Properties in the Sherburne County District Court, File No. 71-CV-18-605 ("the Lawsuit").

10.      I entered into an Engagement Letter with Morrison Sund at the outset of their representation of me and 1648 Properties. I have attached a true and correct copy of that Engagement Letter as Exhibit A.

11.      The Lawsuit was brought in part in an attempt to enforce the terms of a settlement agreement entered into on March 22, 2018 among 1648 Properties, Amicorp. Communities and KAW Parks (the "2018 Settlement Agreement"). Defendant Morrison Sund knew, from its representation of me and 1648 Properties, that our ability to perform under the 2018 Settlement

2.

Agreement was going to require me and 1648 Properties to obtain financing to pay for the Big Lake Property.

12.    Morrison Sund represented 1648 Properties and me in the Lawsuit from approximately March 11, 2019 until Morrison Sund's representation was terminated in November 2019. On November 22, 2019, Morrison Sund withdrew as counsel for me and 1648 Properties in the Lawsuit. KAW Parks was represented in the Lawsuit by Scott Blake of Felhaber Larson.

13.    In the 2018 Settlement Agreement, 1648 Properties was going to purchase the Property from KAW Parks. There was no written purchase agreement and the 2018 Settlement Agreement was not recorded on the Property.

14.    During the approximately eight months that Morrison Sund represented Plaintiffs 1648 Properties and Stursberg, Morrison Sund invoiced me and 1648 Properties approximately $281,339.33, averaging over $30,000 per month. I paid Morrison Sund $85,000.00. Morrison Sund now claims I owe them $199,339.33 for attorney's fees, plus interest and additional legal fees and costs incurred after their representation ended.

15.    I have attached as Exhibit B true and correct copies of the invoices that Morrison Sund sent to me for their attorneys' fees and costs and which describe the legal services they performed.

16.    During the time Morrison Sund represented me and 1648 Properties, its attorney filed numerous motions. For the most part, 1648 Properties and I lost these motions.

17.    While Morrison Sund provided legal services to me and 1648 Properties for a little over eight months, Morrison Sund in that time took only one deposition – Brenton Titcomb, the son of Kent Titcomb, the owner of Amicorp, Inc. The Brenton Titcomb deposition was not

in my view helpful to Plaintiffs' case or my defense. The most important witness was Kent Titcomb as he was the most central and important witness for the case of 1648 Properties. But by the time that Morrison Sund had incurred over $284,000 in time at the time of its termination, the deposition of Kent Titcomb had not been taken.

18.     I terminated Morrison Sund in late November 2019 because I was unhappy with its performance and the progress of the case and exasperated over what it thought were excessive attorney's fees. Morrison Sund had brought a lot of motions and had a poor rate of success and had only deposed one witness.

19.     On December 10, 2019, Morrison Sund recorded a Notice of Attorney Lien against the Property and filed two UCC-1 Financing Statements asserting attorney's liens, one against me and one against 1648 Properties. The Notice of Attorney Lien claims that attorney's fees of $199,339.33 are owed. The attorney's liens against me and 1648 Properties are against my ownership interest in 1648 Properties and against 1648 Properties' ownership interest in Communities and "KAW Parks, LLC (if any)," respectively. *See* Exhibits B and C to the Complaint.

20.     On January 8, 2020, Morrison Sund filed a petition in the United States Bankruptcy Court for the District of Minnesota attempting to force me into involuntary bankruptcy. Morrison Sund acted as their own attorneys.

21.     Before Morrison Sund filed its petition, I had had a communication with William Burton of Morrison Sund, the attorney at Morrison Sund to whom I had been referred, in late December 2019 or early January 2020.

22.     Knowing my livelihood was as a commercial mortgage broker and financial consultant in Philadelphia, Mr. Burton threatened to try to put me into involuntary bankruptcy,

which he knew would have serious consequences for my livelihood if I did not agree with to the Morrison Sund fee demands.

23.     When I did not agree to the Morrison Sund's unreasonable demands, Morrison Sund filed an involuntary bankruptcy petition against me on January 8, 2020.

24.     Morrison falsely alleged that I was not generally paying my debts as they came due, the falsity of which was established in court at the hearing, so Morrison Sund could justify filing the petition in Minnesota.  Morrison Sund made other false allegations against me to try  to maintain the involuntary bankruptcy action in the District of Minnesota.

25.     In fact, Morrison Sund knew from representing me that I had lived in Philadelphia for over 36 years and had all of my business and principal assets in Pennsylvania for over 25 years.

26.     The Bankruptcy Court dismissed the petition against me at an expedited hearing on January 15, 2020, after Morrison Sund conceded that the petition contained misrepresentations and had been filed as leverage to collect its own debt, which the Bankruptcy Court deemed improper.  In order to mitigate the harm to me and my personal and business reputation, the records of the proceeding have been sealed by order of Bankruptcy Judge Kathleen H. Sandberg.

27.     I have incurred and paid legal fees in excess of $75,000 to fight off the improper involuntary bankruptcy petition of Morrison Sund.

28.     Morrison Sund's filing of the petition for involuntary bankruptcy prevented me from achieving a favorable settlement of the Lawsuit.

29.     Before the filing of Morrison Sund's petition against me, I had entered into settlement discussions to purchase the Big Lake Property from Kent Titcomb and KAW Parks.  I

had an offer from Mr. Titcomb in early January for purchase of the Property that I was advised to take and that I had decided to take.

30. I had contacted lenders and had opportunities and was able to obtain the necessary financing to consummate the purchase of the Property.

31. It was then that I found out that Morrison Sund had filed its petition to put me into involuntary bankruptcy.

32. Morrison Sund's petition for involuntary bankruptcy affected my credit standing and eliminated my ability to borrow money. The filing of the petition prevented me from getting the financing required to purchase the Property. As a result, I could not consummate a settlement to purchase the Big Lake Property.

33. If I had been able to consummate that settlement, I would have, among other things, owned a profitable mobile home park and had annual depreciation related to the Big Lake Mobile Home Park of over $350,000 per year.

34. On March 26, 2020, I commenced an action against Morrison Sund and William Burton of Morrison Sund in the United States District Court for the Eastern District of Pennsylvania, No. 2:20-cv--01635. to recover losses from the bad faith filing, abuse of process, and other unlawful conduct that occurred when Morrison Sund filed its involuntary bankruptcy petition against me to obtain payment of the fees I disputed that I owed to them. Thus far, Defendant Morrison Sund has only appeared to move for dismissal for lack of personal jurisdiction.

35. During the eight months it represented 1648 Properties and me, Morrison Sund invoiced the total sum of $284,339.33. 1648 Properties and I paid Morrison Sund $105,000.00. I have attached to this affidavit as Exhibit C a true and correct copy from business records I

6.

regularly keep and maintain in the ordinary course of my business the amount and details of the payments made to Morrison Sund to pay its attorneys' fees.

36.     I have attached hereto as Exhibit D a true and correct copy of an e-mail from Ryan Dreyer of Morrison Sund to my attorney, Daniel Bernheim, dated September 18, 2020, which states that Morrison Sund is demanding $281,215.58, under their alleged attorney's liens.

37.     The Lawsuit did not result in the enforcement of the 2018 Settlement Agreement. Instead, on September 1, 2020, 1648 Properties and I entered into a Confidential Settlement Agreement (the "2020 Settlement Agreement") with Amicorp, Communities, KAW Parks and certain other parties.

38.     The Lawsuit ultimately settled in September 2020 through the efforts of Plaintiffs' Pennsylvania counsel, Daniel Bernheim, and Plaintiffs' counsel of record in the Lawsuit, John Cotter.

39.     While the Settlement Agreement is confidential, the settlement involved 1648 Properties selling its membership interest in Communities for a stated amount to be received at or before a date in the future.

40.     As of the date of the Settlement, 1648 Properties and I no longer have any direct or indirect ownership interest in Communities and do not have any indirect interest in any company downstream of Communities.

41.     In the 2020 Settlement Agreement, 1648 Properties is not purchasing the Big Lake Property or any other property owned by KAW Parks or any other party. Instead, 1648 Properties sold its ownership interest in Communities to Amicorp. 1648 Properties and I have given up all claims against Amicorp, Communities, KAW Parks and the other defendants in the Lawsuit.

42.     As a result of the 2020 Settlement Agreement, the Lawsuit was dismissed with prejudice as of September 21, 2019.

43.     KAW Parks is presently attempting to obtain the funds to consummate the settlement. A sale of the Property by KAW Parks to fund the amount due Plaintiffs pursuant to the Settlement Agreement is scheduled to take place on November 18, 2020 to complete the terms of the settlement.

44.     None of the legal services performed by Morrison Sund contributed to the settlement.

45.     The settlement does not involve Plaintiffs obtaining any interest in or to the Property on which Morrison Sund has placed its attorney lien. The settlement also does not result in specific performance of the 2018 Settlement Agreement that was the subject of Count I of the Second Amended Complaint in the Lawsuit.

46.     Instead of 1648 Properties or me receiving the Property owned by KAW Parks, we both have given up the opportunity to own that Property.

47.     I specifically disagree with much of the work done by Morrison Sund and dispute the amount of fees it claims I and 1648 Properties owe Morrison Sund. Ultimately, the legal work of Morrison Sund has not provided any value or benefit to me and the actions of Morrison Sund have actually caused me and 1648 Properties significant damage.

48.     The holder of the mortgage on the Property foreclosed on that mortgage, and the property was purchased by an unrelated third party on December 4, 2019.

49.     It is my understanding that the owner of real estate such as the Property has one year from the date of the sale, or until December 4, 2020 in the case of the Property, to redeem from the sale. Consequently, the period to redeem the Property expires on December 4, 2020.

50.     Morrison Sund's attorney's lien on the Property has jeopardized the possible redemption of the Property, at great financial risk to me, 1648 Properties, KAW Parks, and the owner of Communities, Kent Titcomb.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
HENRY J. STURSBERG

Subscribed and sworn to before me this
9th day of November, 2020.

_____
            Notary.

Khalid Najadat

Commonwealth of Pennsylvania-Notary Seal
KHALID NAJADAT, NOTARY PUBLIC
DELAWARE COUNTY
MY COMMISSION EXPIRES FEBRUARY 7, 2023
COMMISSION NUMBER 1343889

4816-1157-7808, v. 2

# EXHIBIT A

# RETAINER AGREEMENT

1. <u>Purpose</u>. By this Agreement, 1648 Properties, LLC and Henry Stursberg ("**Clients**") retain the law firm of **Morrison Sund PLLC** ("**Firm**") to be legal counsel for the purpose of representing Clients in the following matter(s):

**Litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park**

Clients have the right to end this Agreement and terminate the Firm's services at any time. The Firm has the right to terminate this Agreement and withdraw from this representation for any reason (providing that Clients are not unduly prejudiced), including the nonpayment by Clients of fees and costs when due.

2. <u>Length and Difficulty</u>. Clients understand that matters often involve extremely difficult problems and sometimes take a long time to resolve. Clients recognize that the results of any legal matter cannot be guaranteed. Clients acknowledge that the Firm has not guaranteed and will not guarantee the results of this matter, that no such representations or guarantees have been or can be made, and that there many factors can affect the length, difficulty or outcome of this matter.

3. <u>Communication</u>. The Firm shall make every effort to keep Clients informed of developments and will send copies of all important letters and documents upon request. Clients are encouraged to contact the Firm regarding any questions it has about the tactics and strategies being employed during the course of the representation.

4. <u>Legal Fees</u>. Clients agree to pay the Firm legal fees per hour at the rates set forth below, plus expenses, for the legal services described above. *These rates are subject to periodic review and may increase during the pendency of the representation.*

**Litigation:**

| | |
|---|---|
| Brian M. Sund | $425.00 |
| Bradley J. Ayers | $325.00 |
| Ryan R. Dreyer | $310.00 |
| Eric G. Nasstrom | $315.00 |
| Cynthia L. Hegarty | $390.00 |
| Nathaniel R. Greene | $275.00 |
| Jeffrey R. Underhill | $275.00 |
| Matthew R. Burton | $310.00 |

**Real Estate:**

| | |
|---|---|
| James F. Morrison | $375.00 |
| Arian Tavakolian | $275.00 |

**Corporate:**

| | |
|---|---|
| Michael J. Murphy | $375.00 |
| Thomas A. Judd | $400.00 |

1208646

|                          |          |
|--------------------------|----------|
| Scott S. Payzant         | $350.00  |
| Kaitlin F. Eisler        | $275.00  |

**Trust and Estate:**

|                          |          |
|--------------------------|----------|
| James M. Clay            | $425.00  |
| Erika Stein Rosenhagen   | $335.00  |
| Robyn L. Ingber          | $275.00  |

**Paralegals:**

|                          |          |
|--------------------------|----------|
| Carrie Hentges           | $135.00  |
| Katie Burns              | $125.00  |

If Clients request services that fall outside the scope of this Agreement, Clients will be notified of the additional costs of those services and the Firm will not provide such services and incur such costs until authorized by Clients. If the Firm's services are terminated for any reason, Clients shall pay reasonable compensation to the date of termination.

5. <u>Retainer</u>. A retainer in the amount of **$15,000.00** shall be paid to the Firm before any legal services are provided on Clients' behalf. The Firm accepts no responsibility to perform legal services until the retainer has been paid. This retainer will be applied against the overall fee and any unused portion shall be refunded upon completion of all work on this matter.

6. <u>Expenses</u>. The Firm will pay out-of-pocket expenses or $500.00, or less, incurred during the representation and include these expenses on monthly invoices. Clients agree to pay, or promptly reimburse, the Firm for all expenses Firm pays in this matter. Expenses paid by the Firm will be itemized on the bill. Clients understand that the Firm will forward expenses greater than $500.00 to Clients for direct payment. Clients understand that the amount of these expenses may be substantial. Clients agree to promptly pay third-party providers for all expenses forwarded to Clients for direct payment and hold Firm harmless for all such expenses.

7. <u>Billing</u>. The Firm will bill Clients approximately once a month for fees and expenses. Payment shall be due within fifteen (15) days after the billing date. Clients agree that it will review all bills or invoices it receives from the Firm and that it will notify Firm promptly of any issues or concerns it has with its bill. Clients understand and affirm that the Firm may terminate its representation of Clients if any invoice remains unpaid after thirty (30) days of its date of issuance.

8. <u>Interest</u>. Clients agree to pay interest to the Firm at the rate of 5% per annum on all fees and expenses not paid within thirty days of the date of the bill. Interest shall accrue from the first day of each month following the month that payment was due.

9. <u>Collection and Security Interest</u>. Clients agree to pay the costs incurred by the Firm to collect overdue fees and expenses, including attorneys' fees at the rate of $200.00 per hour.

**MORRISON SUND PLLC**

Matthew Burton (0210018)
Ryan R. Dreyer (0332252)
5125 County Road 101
Suite 200
Minnetonka, MN 55345
P: (952) 975-0050
F: (952) 975-0058
E:rdreyer@morrisonsund.com;
mburton@morrisonsund.com

## ACCEPTANCE

**I HEREBY ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT, UNDERSTAND ITS TERMS, AND AGREE TO BE BOUND BY SUCH AGREEMENT.**

The terms of this Agreement are accepted on this ___18th___ day of March, 2019.

**1648 PROPERTIES, LLC**

By: Henry Stursberg

Its: _MANAGING MEMBER_

**HENRY STURSBERG**

Henry Stursberg

# EXHIBIT B

# Morrison Sund PLLC

### 5125 County Road 101, Suite 200
### Minnetonka, MN 55345

TEL:   952.975.0050                    FAX:   952.975.0058                    TAX ID NUMBER: 27-1594984

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL                                                    03/31/2019
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :        455683

Matter # :        7452-001

**Attention:**

**RE:**    Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| 03/11/2019 | Corresp with Henry Stursberg. | 1.00 | 310.00 | MRB |
| 03/11/2019 | Review file documents, discuss with Matt Burton; prepare for meeting with client. | 1.40 | 434.00 | RRD |
| 03/12/2019 | TCs with Henry Stursberg. | 1.50 | 465.00 | MRB |
| 03/12/2019 | Review file documents and participate in telephone conference with client regarding details and background of dispute. | 1.60 | 496.00 | RRD |
| 03/13/2019 | Review file documents and draft retainer agreement; review correspondence from client. | 1.80 | 558.00 | RRD |
| 03/14/2019 | Review Third-Party Complaint and review draft Answer prepared by Kevin Dunleavy. | 4.10 | 1,271.00 | RRD |
| 03/14/2019 | Reviewing file and drafting answer to third party complaint; research on brokerage statutes and penalties for non-compliance. . | 4.50 | 1,237.50 | JRU |
| 03/18/2019 | Email to James Bartholomew @ Lighthouse Management receivership; pull receivership motion from Monson matter. | 0.25 | 77.50 | MRB |
| 03/19/2019 | Research receivership pleading and conf call with client. | 1.00 | 310.00 | MRB |
| 03/19/2019 | Review file documents; telephone conference with client and Morris Kurtzman the accountant; telephone conference and various emails with Kevin Dunleavy regarding file transfer; review file documents from Kevin Dunleavy. | 4.40 | 1,364.00 | RRD |
| 03/19/2019 | Review pleadings and summary judgment motion in preparation for call with client; drafting response to summary judgment motion. . | 6.80 | 1,870.00 | JRU |
| 03/20/2019 | Drafting response to motion for partial summary judgment. . | 6.50 | 1,787.50 | JRU |
| 03/21/2019 | Time. | 0.10 | 31.00 | MRB |
| 03/21/2019 | Drafting response to summary judgment motion. . | 2.30 | 632.50 | JRU |
| 03/22/2019 | Review various emails from client regarding willingness of Stinson lawyers to provide testimony; review file documents; draft correspondence to Stinson lawyers regarding assistance in testimony. . | 1.10 | 341.00 | RRD |

| Date | Description | Hours | Amount | |
|------|-------------|-------|--------|---|
| 03/25/2019 | Review correspondence from client regarding telephone conference request regarding deadlines; review file documents regarding Motion for Summary Judgment; draft section of Memorandum of Law in Opposition to Motion for Summary Judgment regarding equitable conversion including legal research. | 2.10 | 651.00 | RRD |
| 03/26/2019 | Review correspondence from client regarding counterclaims and accounting; review new correspondence from client regarding phone call; review file documents to confirm pending deadlines. | 0.50 | 155.00 | RRD |
| 03/29/2019 | Review Third Party Complaint and communicate with client regarding response to Third Party Claims and Summary Judgment Motion; telephone conference with Dan Scott; review correspondence from Dan Scott; draft/revise memorandum to file; update timeline for case. | 6.20 | 1,922.00 | RRD |
| 03/31/2019 | Review correspondence from client and respond, draft K-1 Demand letter; research CFR for authority for penalty for late delivery of K-1. | 1.30 | 403.00 | RRD |
| | **TOTALS** | 48.45 | **$14,316.00** | |

**DISBURSEMENTS**

| Date | Description | Amount |
|------|-------------|--------|
| 03/24/2019 | Courier Service. | 31.91 |
| | Total Disbursemnets | $31.91 |
| | **TOTAL FEE & DISBURSEMENTS** | **$14,347.91** |

**TRUST ACCOUNT**      $0.00

| Date | Description | Amount |
|------|-------------|--------|
| 03/20/2019 | Check #3360 | 15,000.00 |
| 03/31/2019 | Trust Application | (14,347.91) |
| | Ending Balance: | $652.09 |

**PAYMENTS**

| | |
|---|---|
| Previous Balance | $0.00 |
| Previous Payments | ($14,347.91) |

**Balance Now Due**      **$0.00**

# Morrison Sund PLLC

5125 County Road 101, Suite 200
Minnetonka, MN 55345

TEL:   952.975.0050                  FAX:   952.975.0058                  TAX ID NUMBER:  27-1594984

Henry Stursberg and 1648 Properties, LLC                                                04/30/2019
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102                                    Invoice # :        455917

                                                          Matter # :        7452-001

**Attention:**

**RE:**    Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| 04/01/2019 | Review accounting records file and review file documents; read Memorandum of Law in Support of Motion for Summary Judgment; telephone conference with Stinson counsel; draft and finalize demand letter to Titcomb counsel. | 4.80 | 1,488.00 | RRD |
| 04/01/2019 | Drafting response to motion for partial summary judgment. . | 8.80 | 2,420.00 | JRU |
| 04/02/2019 | Draft Memorandum of Law in Opposition to Motion for Summary Judgment; review file documents; legal research regarding equitable title to subject real estate and level of equitable title needed for standing to initiate partition action; telephone conference with Stinson attorneys Dan Scott and Tom Nelson regarding declaration relative to March 22, 2018 mediation; review draft declaration; telephone conference with client regarding responses to Amicorp's motions. | 3.30 | 1,023.00 | RRD |
| 04/02/2019 | Drafting response to motion for partial summary judgment, correspondence with Daniel Scott re: same; drafting response to motion to amend. . | 8.80 | 2,420.00 | JRU |
| 04/03/2019 | Confer with Ryan Dreyer re case issues and email to Atty Rader in FL. | 0.15 | 46.50 | MRB |
| 04/03/2019 | Telephone conference with Dan Scott regarding signed and final declaration in Opposition to Motion for Summary Judgment; review and respond to various correspondence from client; legal research regarding equitable conversion, basis for partition; draft and make final revisions to Memorandum of Law in Opposition to Motion for Partial Summary Judgment; update client regarding response to Summary Judgment Motion and response to Motion to Amend Counterclaim; review file documents. | 4.30 | 1,333.00 | RRD |
| 04/03/2019 | Drafting responses to motion for partial summary judgment and motion to amend. . | 6.60 | 1,815.00 | JRU |
| 04/04/2019 | Rvw documents from FL counsel and review and edit memorandum. | 0.30 | 93.00 | MRB |
| 04/04/2019 | Review file documents and continue preparing response to Motion to Amend Counterclaim and Third Party Claims. | 0.30 | 93.00 | RRD |
| 04/04/2019 | Draft responses to motion to amend. . | 7.80 | 2,145.00 | JRU |
| 04/05/2019 | Draft and finalize response to motion to amend. | 7.50 | 2,062.50 | JRU |
| 04/08/2019 | Review financial documents and correspondence from client regarding financial institutions to subpoena records from. | 1.20 | 372.00 | RRD |

| | | | | |
|---|---|---|---|---|
| 04/08/2019 | Review defendants' responses to discovery to draft demand letter for supplementation. . | 5.50 | 1,512.50 | JRU |
| 04/09/2019 | Looked up addresses and Drafted Subpoenas and Notice of Taking Depositions Duces Tecum for Wells Fargo, Midland, and Minnco. | 1.60 | 200.00 | KLB |
| 04/09/2019 | Looked through file for addresses and tax ID numbers of the KAW Parks. | 0.60 | 75.00 | KLB |
| 04/09/2019 | Review file documents and search for Quickbook records; telephone conference with client regarding update on pending motions, motion for receiver, motion to amend complaint and notice of lis pendens; draft Answer to Third Party Complaint and serve and file. | 3.30 | 1,023.00 | RRD |
| 04/09/2019 | Draft letter demanding supplementation of discovery; review reply briefs on motion for partial summary judgment and motion to amend and draft oral argument outline. | 7.00 | 1,925.00 | JRU |
| 04/10/2019 | Drafted Cover letter to Wells Fargo and Minnco Credit Union. | 0.40 | 50.00 | KLB |
| 04/10/2019 | Email to Metro Legal to serve subpoenas enc documents. | 0.30 | 37.50 | KLB |
| 04/10/2019 | Discussion with attorney R. Dryer re service at Metro and follow up. | 0.20 | 25.00 | KLB |
| 04/10/2019 | Phone call with Metro Legal re service. | 0.20 | 25.00 | KLB |
| 04/10/2019 | Rvw responsive pleadings. | 0.25 | 77.50 | MRB |
| 04/10/2019 | Review Reply Memorandum of Law in Support of Motions for Summary Judgment and to Amend Counterclaim; draft correspondence to client; review discovery documents. | 4.80 | 1,488.00 | RRD |
| 04/10/2019 | Draft outline for oral argument on motion for summary judgment and motion to amend; finalize discovery letter. . | 4.80 | 1,320.00 | JRU |
| 04/11/2019 | Received affidavit of service on Minnco and efiled and served on opposing counsel along with subpoena and Notice of Deposition Duces Tecum. | 0.50 | 62.50 | KLB |
| 04/11/2019 | Draft outline for oral argument and prepare for same. . | 8.80 | 2,420.00 | JRU |
| 04/12/2019 | Efiled and served Wells Fargo affidavit, Subpoena and Depo notice on OC. | 0.40 | 50.00 | KLB |
| 04/12/2019 | Reviewed file for additional information to give to Minnco Credit union. Numerous telephone conversations with them trying to find information in their system. | 1.60 | 200.00 | KLB |
| 04/12/2019 | Prepare for hearing, travel to hearing, attend hearing and return from hearing; follow up with Minnico Credit Union regarding subpoenas and EINs for entities. . | 5.70 | 1,767.00 | RRD |
| 04/12/2019 | Prepare for and argue at hearing on defendants' motion for summary judgment and motion to amend. . | 6.50 | 1,787.50 | JRU |
| 04/15/2019 | Review correspondence from client, review file documents and draft update correspondence to client. . | 2.00 | 620.00 | RRD |
| 04/15/2019 | Review documents in file for evidence to support second amended complaint. . | 2.20 | 605.00 | JRU |
| 04/16/2019 | Went through file for TAX id numbers to give to Wells Fargo. | 0.40 | 50.00 | KLB |
| 04/16/2019 | Review file documents and prepare for telephone conference with opposing counsel regarding subpoenas; conduct telephone conference with opposing counsel regarding scope of subpoenas and discovery issues in general; review draft protective order and draft revisions; finalize protective order. | 3.80 | 1,178.00 | RRD |
| 04/16/2019 | Meet and confer conference with defendants' counsel re; discovery responses. . | 0.50 | 137.50 | JRU |

| Date | Description | Hours | Amount | Initials |
|---|---|---|---|---|
| 04/18/2019 | Review correspondence from opposing counsel regarding reducing scope of bank subpoenas; draft response to reduction request; review file documents; draft memo to file regarding suspicious Amicorp, Inc. transactions; draft correspondence to client. | 4.20 | 1,302.00 | RRD |
| 04/19/2019 | Drafted Subpoena, Depo Notice and cover letter to Minnco and Brenton Titcomb. | 1.50 | 187.50 | KLB |
| 04/19/2019 | Email to Metro Legal enc subpoena, cover letter and depo notice to serve on Minnco and Titcomb. | 0.30 | 37.50 | KLB |
| 04/19/2019 | Review file documents and analyze Minnco accounts on KAW Parks, LLC financial statement; draft new bank and Brenton Titcomb subpoenas, service correspondence and Notice of Taking Depositions; arrange service; review file documents and update memorandum regarding Titcomb Fraud; communicate with client and client's accountant regarding Quickbook records. | 5.80 | 1,798.00 | RRD |
| 04/22/2019 | Received and efiled affidavit of service on Titcomb, cover letter and subpoena. | 0.70 | 87.50 | KLB |
| 04/22/2019 | Drafted Amended Notice of Depo for Titcomb. | 0.30 | 37.50 | KLB |
| 04/22/2019 | Review correspondence from client; telephone call to client (left voicemail); review correspondence from opposing counsel and respond; review file documents and download Quickbook records. | 1.80 | 558.00 | RRD |
| 04/23/2019 | Drafted Deposition Notice, Subpoena and Correspondence to Bank of America, 21st Century Bank and Riverwood Bank. | 1.20 | 150.00 | KLB |
| 04/23/2019 | Rvw accounting transactions and confer with Atty Dreyer re same; tc with client. | 0.35 | 108.50 | MRB |
| 04/23/2019 | Review file documents and quickbook record set from Morris; review file documents and draft correspondence to Judge regarding April 24, 2019 telephone conference; telephone conference with client; review opposing parties' submission to Court relating to telephone conference. . | 3.70 | 1,147.00 | RRD |
| 04/24/2019 | Review file documents, research cases cited by Defendants in April 23, 2019 letter to Judge Buccicone, prepare for telephone conference at 10:00 a.m. with Court; conduct telephone conference with Court regarding Defendants' request to limit scope of subpoena; telephone conference with client regarding subpoena; work on motion for appointment of a receiver. | 3.80 | 1,178.00 | RRD |
| 04/25/2019 | Rvw client email and research Pine Rock Properties. | 0.35 | 108.50 | MRB |
| 04/25/2019 | Review correspondence from client and respond; review correspondence from opposing counsel regarding depositions on April 26, 2019 and respond; telephone conference with Wells Fargo legal team regarding subpoenaed documents and response time; review corporate documents from Stinson file. | 3.20 | 992.00 | RRD |
| 04/26/2019 | Review draft letter to Wells Fargo, draft revisions and return to opposing counsel; review documents produced in discovery, update timeline and draft deposition outline of Brenton Titcomb; draft correspondence to opposing counsel regarding Wells Fargo letter changes and objection to Amicorp's suggested language. | 4.70 | 1,457.00 | RRD |
| 04/29/2019 | Review file documents and draft Americorp, Inc. list of documents to opposing counsel. | 0.50 | 155.00 | RRD |
| 04/29/2019 | Review documents in file for evidence supporting allegations in second amended complaint. . | 6.20 | 1,705.00 | JRU |

| Date | Description | Hours | Amount | |
|------|-------------|-------|--------|---|
| 04/30/2019 | Review corporate documents relating to KAW Parks, LLC, Amicorp Communities, LLC and 1648 Properties, LLC; telephone conference with client regarding details of formation of joint venture entities; draft Amended Complaint; telephone conference with Wells Fargo regarding subpoena document production; review correspondence from opposing counsel regarding letter to Wells Fargo;. | 2.80 | 868.00 | RRD |
| 04/30/2019 | Conference call with client and drafting proposed second amended complaint. | 2.60 | 715.00 | JRU |

|  | **TOTALS** | 159.20 | **$44,539.00** |

**DISBURSEMENTS**

| Date | Description | Amount |
|------|-------------|--------|
| 04/03/2019 | Memorandum - Motion Response. | 80.00 |
| 04/03/2019 | QuickBooks Software. | 246.22 |
| 04/05/2019 | Memorandum - Motion. | 80.00 |
| 04/10/2019 | Answer of Henry Strusberg to Third-Party Complaint. | 300.00 |
| 04/10/2019 | Legal Process Service - Minnco Credit Union & Wells Fargo Bank. | 180.00 |
| 04/12/2019 | RRD Travel and Meals - Hearing on Defendants Motion for Partial Summary Judgment and Amend Counterclaim. | 152.90 |
| 04/18/2019 | Document Request. | 8.00 |
| 04/19/2019 | Legal Process Service Minnco Credit Union & Brenton Titcomb. | 250.00 |
|  | Total Disbursemnets | $1,297.12 |
|  | **TOTAL FEE & DISBURSEMENTS** | **$45,836.12** |

**TRUST ACCOUNT**                                                                       $652.09

| 04/30/2019 | Trust Application | (652.09) |
|  | Ending Balance: | $0.00 |

**PAYMENTS**

| Previous Balance | $14,347.91 |
| Previous Payments | ($15,000.00) |

**Balance Now Due**                                                              **$45,184.03**

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

5125 County Road 101, Suite 200
Minnetonka, MN 55345

TEL:    952.975.0050

TAX ID NUMBER: 27-1594984

05/31/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :      456094

Matter # :      7452-001

**RE:**     Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| 05/01/2019 | Review file documents and strategise amended complaint claims including specific instances of breach of fiduciary duty; review accounting irregularities; draft correspondence to Frederickson attorneys regarding recorded board meeting. | 1.90 | 589.00 | RRD |
| 05/02/2019 | TC with client re pending issues and Stinson bill; second tc with client. | 0.35 | 108.50 | MRB |
| 05/02/2019 | Review documents and correspondence from opposing counsel; draft correspondence to opposing counsel; review recording of member meeting and review discovery documents produced by Amicorp, Inc. and related entities; update timeline. | 4.20 | 1,302.00 | RRD |
| 05/02/2019 | Call with client; drafting amended complaint. | 6.10 | 1,677.50 | JRU |
| 05/03/2019 | Review correspondence from opposing counsel to Judge Buccicone; review file documents and legal research regarding scope of discovery and intermingling of assets; review documents from Frederikson and Byron from 2017 - 2018; draft correspondence to client; review correspondence from client and draft Second Amended Complaint. | 5.30 | 1,643.00 | RRD |
| 05/03/2019 | Drafting motion to amend complaint, amended complaint, and review of documents for same. | 5.20 | 1,430.00 | JRU |
| 05/06/2019 | TC with Kent Kjellberg re acting as a receiver. | 0.35 | 108.50 | MRB |
| 05/06/2019 | Review documents in "Stinson File - Flash Drive" folder and update timeline; legal research regarding Minnesota LLC statute and equitable powers of court to award attorney fees; review Dunleavy documents; telephone conference with client regarding accounting frauds and receivership motion. | 6.40 | 1,984.00 | RRD |
| 05/06/2019 | Drafting motion for receiver. . | 4.20 | 1,155.00 | JRU |
| 05/07/2019 | Confer with Atty Dreyer re receivership issues. | 0.35 | 108.50 | MRB |
| 05/07/2019 | Review document production from Wells Fargo; reach out to proposed receiver and discuss potential receivership; review quick book records to verify figures in declaration of Henry Stursberg; telephone conference with client regarding Wells Fargo records; legal research regarding Minnesota limited liability company act. | 8.10 | 2,511.00 | RRD |
| 05/07/2019 | Drafting motion for receiver. . | 6.20 | 1,705.00 | JRU |
| 05/08/2019 | Review Wells Fargo Subpoena and communications. | 0.10 | 12.50 | KLB |

| Date | Description | Hours | Amount | Initials |
|---|---|---|---|---|
| 05/08/2019 | Update outline of Brent Titcomb deposition; review discovery documents through DEF.1446; analyze viability of claims following evidence of agreement to pay 10% management fee to Amicorp, Inc; review and respond to correspondence from client; review and respond to emails from Court regarding rescheduled telephone conference regarding Wells Fargo Subpoena. | 2.30 | 713.00 | RRD |
| 05/08/2019 | Drafting motion for receiver. | 6.50 | 1,787.50 | JRU |
| 05/09/2019 | Review correspondence from opposing attorney regarding copies of WF document production; respond to opposing counsel with timeline for production; telephone conference with proposed receiver; draft Declaration of Kent Kjellberg; telephone conference with client regarding Declaration and DEF. 1214; continue reviewing discovery documents produced by Amicorp, Inc. | 4.20 | 1,302.00 | RRD |
| 05/09/2019 | Drafting motion for receiver. | 2.50 | 687.50 | JRU |
| 05/10/2019 | Analyze expense reimbursement issues and tax implications. | 0.50 | 197.50 | JMC |
| 05/10/2019 | Review emails from client regarding Declaration in Support of Motion for Receiver; review file documents and Quickbook Records; draft and revise Declaration of Kent Kjellberg; draft and revise declaration of Henry Stursberg; draft Proposed Order Appointing Receiver. | 7.10 | 2,201.00 | RRD |
| 05/10/2019 | Draft and finalize motion for receiver and motion to amend complaint. | 7.20 | 1,980.00 | JRU |
| 05/11/2019 | Review and respond to correspondence from client regarding receivership motion; update Brenton Titcomb deposition outline. | 0.50 | 155.00 | RRD |
| 05/13/2019 | Telephone conference with Mark Burndom regarding how Wells Fargo was handled at beginning of lawsuit; review file documents. | 0.40 | 124.00 | RRD |
| 05/14/2019 | Review file documents and correspondence from opposing counsel regarding communications with Wells Fargo; prepare letter to Judge Buccicone regarding Amicorp, Inc. documents. | 0.70 | 217.00 | RRD |
| 05/15/2019 | Review file documents; draft letter to Judge regarding May 16, 2019 telephone conference; legal research regarding cases on scope of discovery when parties co-mingle assets; review and respond to various emails from client regarding Titcomb's response to Motions to Amend and Appoint Receiver; analyze settlement value of case. | 3.30 | 1,023.00 | RRD |
| 05/16/2019 | Discuss hearing strategy with Atty Dreyer. | 0.25 | 77.50 | MRB |
| 05/16/2019 | Review file documents; telephone conference with client and accountant regarding WF documents; resend WF documents; discuss status of pending motions; various emails with Court staff regarding 3:30 p.m. telephone conference and cancellation; correspondence with opposing counsel regarding correspondence with WF. | 0.70 | 217.00 | RRD |
| 05/16/2019 | Drafting deposition outline for B. Titcomb. | 2.50 | 687.50 | JRU |
| 05/17/2019 | Conf call with client and R Dreyer re strategy. | 0.32 | 100.00 | MRB |
| 05/17/2019 | Research Titcomb plane. | 0.20 | 62.00 | MRB |
| 05/17/2019 | Review file and conduct telephone conference with client; review documents produced in discovery and draft outline of Brenton Titcomb deposition. | 1.50 | 465.00 | RRD |
| 05/17/2019 | Draft outline for deposition of B. Titcomb and review documents for same. | 4.80 | 1,320.00 | JRU |

| Date | Description | Hours | Amount | Initials |
|---|---|---|---|---|
| 05/18/2019 | Review Declaration of Kent Titcomb and exhibits; draft correspondence to client with Amicorp's response to Motions to Amend Complaint and Appoint Receiver; analyze Amicorp response and evidence. | 2.40 | 744.00 | RRD |
| 05/18/2019 | Review Defendants' response to motion to amend and to appoint receiver; draft reply to same. | 6.60 | 1,815.00 | JRU |
| 05/19/2019 | Review Affidavit of Kent Titcomb and exhibits; analyze effect on motion for appointment of receiver. | 0.40 | 124.00 | RRD |
| 05/19/2019 | Draft reply to motion to amend and to appoint receiver. | 4.90 | 1,347.50 | JRU |
| 05/20/2019 | Review correspondence from client regarding Stinson Leonard demands; draft response; telephone conference with client regarding facts for Reply Declaration; review file documents; review emails from client regarding original transaction. | 3.90 | 1,209.00 | RRD |
| 05/20/2019 | Draft reply to motion to amend and appoint receiver. | 12.60 | 3,465.00 | JRU |
| 05/21/2019 | Call to Depo International to schedule court reporter. | 0.20 | 25.00 | KLB |
| 05/21/2019 | Filed/served MOL in Support of Motion to Amend First Amended Complaint and for Appointment of a Receiver, Supplemental Declaration of Henry Stursberg and Exhibits. | 0.40 | 50.00 | KLB |
| 05/21/2019 | Review correspondence from client; organize and review early emails from project; analyze Reply Memoranda of Law in Support of Motions to Amend Complaint and Appoint Receiver; respond to client emails. | 1.60 | 496.00 | RRD |
| 05/21/2019 | Draft response to motion to amend and motion to appoint receiver; prepare for deposition of Brenton Titcomb. | 10.40 | 2,860.00 | JRU |
| 05/22/2019 | Review file documents and analyze deposition testimony of Brenton Titcomb. | 0.50 | 155.00 | RRD |
| 05/22/2019 | Take Brenton Titcomb's deposition; draft outline for motion hearing. | 6.30 | 1,732.50 | JRU |
| 05/23/2019 | Draft correspondence to client with update following Brenton deposition; telephone conference with client regarding May 24, 2019 hearing agenda; review Declaration of Marie Jeffreys; draft/revise correspondence to client delivering Brenton transcript, Jeffreys Declaration; prepare for May 24 hearing on Motions to Amend Complaint and Appoint Receiver. | 3.20 | 992.00 | RRD |
| 05/23/2019 | Draft outline and prepare for oral argument on motion to amend complaint and motion for receiver. | 9.20 | 2,530.00 | JRU |
| 05/24/2019 | Travel to Sherburne County Courthouse; attend hearing on Motions to Amend Complaint and Appoint Receiver; return to office; telephone conference with client; telephone conference with Florida counsel regarding coordination of Minnesota and Florida cases. | 5.10 | 1,581.00 | RRD |
| 05/24/2019 | Oral argument on motion to amend and appoint receiver; research on domesticating subpoena in Florida. . | 5.80 | 1,595.00 | JRU |
| 05/28/2019 | Review correspondence from client and analyze case deadlines. | 0.40 | 124.00 | RRD |
| 05/31/2019 | Courtesy Discount. | | (8,000.00) | |

|  | TOTALS | 169.50 | $40,496.00 | |

## DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 04/19/2019 | TransUnion - searches. | 40.00 |
| 05/06/2019 | UCC Search - Henry Stursberg. | 20.00 |

| Date | Description | Amount |
|---|---|---|
| 05/06/2019 | UCC Search - 1648 Properties. | 20.00 |
| 05/10/2019 | Notice of Motion and Motion for Appointment of a Receiver. | 80.00 |
| 05/10/2019 | Notice of Motion and Motion to Amend First Complaint. | 80.00 |
| 05/16/2019 | Sherburne County- Notice of Motion and Motion Requestion Relation-Back to Original Filing Date Under Minn. Gen. R. Prac. 11.04(1). | 80.00 |
| 05/20/2019 | Sherburne County- Amended Notice of Motion and Motion Requesting Relation Back to Original Filing Date. | 80.00 |
| 05/28/2019 | Document Request. | 33.00 |
|  | Total Disbursemnets | $433.00 |
|  | **TOTAL FEE & DISBURSEMENTS** | **$40,929.00** |

**TRUST ACCOUNT**                                                                            $0.00

                                                              Ending Balance:                $0.00

**PAYMENTS**

Previous Balance                                                                      $45,836.12

Previous Payments                                                                    ($652.09)


**Balance Now Due**                                                                  **$86,113.03**

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

5125 County Road 101, Suite 200
Minnetonka, MN 55345

TEL: 952.975.0050

TAX ID NUMBER: 27-1594984

06/30/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :     456485

Matter # :     7452-001

**RE:**     Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| 06/04/2019 | Corrsp with client. | 0.20 | 62.00 | MRB |
| 06/05/2019 | Review file documents and Motion for Protective Order; correspondence to client regarding response deadline and need for action. | 0.70 | 217.00 | RRD |
| 06/05/2019 | Drafting response to motion to quash. . | 2.50 | 687.50 | JRU |
| 06/06/2019 | Corresp with client and Atty Stoenber re dismissal issues. | 0.15 | 46.50 | MRB |
| 06/06/2019 | Review Motion for Protective Order and analyze authority in support of client's right to obtain Amicorp, Inc.'s documents. | 1.30 | 403.00 | RRD |
| 06/06/2019 | Drafting response to motion to quash. . | 5.80 | 1,595.00 | JRU |
| 06/07/2019 | Strategy call with client. | 1.00 | 100.00 | MRB |
| 06/07/2019 | Review file documents including scheduling order deadlines and pending motions; telephone conference with client regarding upcoming discovery and motion for protective order. | 1.40 | 434.00 | RRD |
| 06/07/2019 | Drafting response to motion to quash. . | 7.10 | 1,952.50 | JRU |
| 06/10/2019 | Review and revise Affidavit of Ryan R. Dreyer in opposition to Motion for Protective Order; review correspondence from client. | 0.70 | 217.00 | RRD |
| 06/10/2019 | Drafting response to motion to quash. . | 6.80 | 1,870.00 | JRU |
| 06/11/2019 | Review file documents and Memorandum of Law in Opposition to Motion for Protective Order; draft correspondence to client with Motion for Protective Order response. | 0.80 | 248.00 | RRD |
| 06/12/2019 | Review and analyze Amicorp, Inc.'s Reply Memorandum of Law in Support of its Motion for Protective Order; draft correspondence to client with Reply documents and analysis. | 1.40 | 434.00 | RRD |
| 06/13/2019 | Review analyze subpoena to Kent Kjellberg; forward to client; review correspondence from client regarding list of witnesses to depose; analyze discoverable evidence witnesses may have; draft correspondence to client about deposing seven witnesses in Florida. | 1.10 | 341.00 | RRD |
| 06/13/2019 | Review of reply to response to motion to quash; begin drafting outline for argument. . | 1.60 | 440.00 | JRU |

| Date | Description | | | |
|---|---|---|---|---|
| 06/14/2019 | Review file documents and draft correspondence to client; prepare for hearing on motion for protective order. | 0.90 | 279.00 | RRD |
| 06/14/2019 | Draft outline for oral argument on motion to quash. . | 4.50 | 1,237.50 | JRU |
| 06/17/2019 | Travel to and attend hearing on motion for protective order. | 3.80 | 1,178.00 | RRD |
| 06/17/2019 | Prepare for and argue at motion hearing for motion to quash; research on domesticating foreign subpoena in Florida. . | 7.50 | 2,062.50 | JRU |
| 06/18/2019 | Address Searches on 6 Employees from Amicrop. | 0.90 | 112.50 | KLB |
| 06/18/2019 | Drafting letters rogatory/commision for subpoenas; research what is required in different counties to obtain subpoenas in foreign case. . | 3.80 | 1,045.00 | JRU |
| 06/19/2019 | Review of Rader memo on domesticating foreign subpoenas; edit letters rogatory and subpoenas. . | 1.20 | 330.00 | JRU |
| 06/20/2019 | Review analyze correspondence from client regarding claims; respond to email. | 0.30 | 93.00 | RRD |
| 06/20/2019 | Drafting responses to Defendant's discovery on 1648. . | 1.80 | 495.00 | JRU |
| 06/21/2019 | Review correspondence to client regarding update on witness subpoenas; prepare response update to client. | 0.10 | 31.00 | RRD |
| 06/21/2019 | Drafting responses to Defendants' discovery on 1648. . | 6.60 | 1,815.00 | JRU |
| 06/25/2019 | Finalizing writs appointing commissioners and letter to Judge re same; drafting responses to discovery and reviewing documents to produce with marking for redactions. . | 5.90 | 1,622.50 | JRU |
| 06/26/2019 | Drafting responses to discovery; review and redact documents for production. . | 4.80 | 1,320.00 | JRU |
| 06/28/2019 | Review and redact documents for production. | 4.70 | 1,292.50 | JRU |
| | **TOTALS** | 79.35 | $21,961.00 | |

**DISBURSEMENTS**

| | | |
|---|---|---|
| 05/24/2019 | Travel. | 51.50 |
| 06/01/2019 | On Line Research. | 366.33 |
| 06/05/2019 | On-Line Search May 17. | 19.99 |
| 06/12/2019 | Filing Memorandum with Sherburne County. | 80.00 |
| 06/15/2019 | On Line Research. | 127.63 |
| 06/30/2019 | On Line Research. | 216.29 |
| | Total Disbursemnets | $861.74 |
| | **TOTAL FEE & DISBURSEMENTS** | **$22,822.74** |

| **TRUST ACCOUNT** | | $0.00 |
|---|---|---|
| | Ending Balance: | $0.00 |

**PAYMENTS**

| | |
|---|---|
| Previous Balance | $86,113.03 |
| Previous Payments | ($50,000.00) |
| **Balance Now Due** | **$58,935.77** |

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

### 5125 County Road 101, Suite 200
### Minnetonka, MN 55345

TEL:   952.975.0050

TAX ID NUMBER:  27-1594984

07/31/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :        456708

Matter # :        7452-001

RE:     Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| 07/01/2019 | Review file documents and respond to correspondence from client. | 0.80 | 248.00 | RRD |
| 07/01/2019 | Reviewing and redacting documents for production and information to be used in discovery responses. . | 3.50 | 962.50 | JRU |
| 07/02/2019 | Saving numerous documents into R drive, combining emails and documents into Acrobat PDFs and redacting bank statements. | 6.50 | 812.50 | KLB |
| 07/02/2019 | Review correspondence from Florida counsel, review file and provide documents to co-counsel in Florida. | 2.30 | 713.00 | RRD |
| 07/10/2019 | Review file documents and correspondence from client; respond to email regarding status of subpoenas. | 0.30 | 93.00 | RRD |
| 07/12/2019 | Review orders appointing commissioners from Judge Buccicone; draft correspondence to client with orders and steps moving forward regarding depositions of Florida residents. | 0.40 | 124.00 | RRD |
| 07/15/2019 | Review correspondence from client; conduct telephone conference with client. . | 0.80 | 248.00 | RRD |
| 07/15/2019 | Drafting responses to discovery. . | 2.80 | 770.00 | JRU |
| 07/16/2019 | Drafting responses to discovery and reviewing client documents for information to be used in discovery responses. . | 7.10 | 1,952.50 | JRU |
| 07/17/2019 | Review correspondence from client regarding discovery responses and mediation; review file documents; review Florida Pleadings regarding dismissal of Counts I and II of Florida Complaint. | 0.60 | 186.00 | RRD |
| 07/17/2019 | Draft and finalize discovery responses; call and email to H. Stursberg re: same. | 5.30 | 1,457.50 | JRU |
| 07/18/2019 | Reviewing documents for production and finalizing responses to Defendants' discovery. . | 4.80 | 1,320.00 | JRU |
| 07/19/2019 | Review correspondence from opposing counsel regarding mediators; review file documents; draft correspondence to opposing counsel. | 0.70 | 217.00 | RRD |
| 07/19/2019 | Drafting second set of discovery to defendants. . | 4.10 | 1,127.50 | JRU |
| 07/22/2019 | Drafting second set of discovery to defendants. | 3.50 | 962.50 | JRU |
| 07/23/2019 | Review scheduling correspondence from opposing attorney and draft correspondence to client and respond to opposing attorney regarding mediation dates. . | 0.30 | 93.00 | RRD |

| 07/23/2019 | Review and redact documents for production. | 4.50 | 1,237.50 | JRU |
|---|---|---|---|---|
| 07/25/2019 | Review/analyze voice mail and email from Mark Birnbaum; review file documents and analyze Judge Buccicone's summary judgment decision; telephone conference (left vm) with Mark Birnbaum, Wells Fargo's attorney regarding dismissal of claims concerning Wells Fargo and status of Subpoena to Wells Fargo Bank, N.A. for Amicorp, Inc.'s financial records; draft correspondence to Mark Birnbaum regarding subpoena and claims against Wells Fargo Bank, N.A.'s interest in the subject properties. | 1.30 | 403.00 | RRD |
| 07/25/2019 | Final privilege review of documents; prepare same for production. . | 1.00 | 275.00 | JRU |
| 07/26/2019 | Review follow up email from Mark Birnbaum regarding Wells Fargo Subpoena; respond to Mark's email. | 0.30 | 93.00 | RRD |
| 07/29/2019 | Review correspondence from client regarding mediation dates and selection of mediator; review file documents; review notes from previous conversations; draft responsive correspondence to client. | 0.90 | 279.00 | RRD |
| 07/30/2019 | Review and analyze correspondence from client regarding demands from Stinson Law Firm for payment of fees; review file documents including summary judgment decision from Judge Buccicone; respond to client's inquiry about Stinson demands and interpretation of summary judgment decision. | 1.20 | 372.00 | RRD |

|  | **TOTALS** | 53.00 | $13,946.50 |  |
|---|---|---|---|---|

**DISBURSEMENTS**

| 07/18/2019 | RRD Travel - Mileage & Meals JUN 10 Hearingon Motion for Protective Order. | 86.86 |
|---|---|---|
|  | Total Disbursemnets | $86.86 |
|  | **TOTAL FEE & DISBURSEMENTS** | **$14,033.36** |

**TRUST ACCOUNT**                                                    $0.00

                                        Ending Balance:        $0.00

**PAYMENTS**

Previous Balance                                              $58,935.77

Previous Payments                                                $0.00

**Balance Now Due**                                          **$72,969.13**

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

5125 County Road 101, Suite 200
Minnetonka, MN 55345

TEL:    952.975.0050

TAX ID NUMBER:  27-1594984

08/31/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :        456809

Matter # :        7452-001

**RE:**    Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| 08/01/2019 | Review file documents and locate known Titcomb banks in Florida. | 0.30 | 93.00 | RRD |
| 08/01/2019 | Review documents to identify banks per client request; email to client re: same. . | 0.50 | 137.50 | JRU |
| 08/05/2019 | TC with client and draft note to Noteboom. | 1.00 | 100.00 | MRB |
| 08/05/2019 | Review and analyze correspondence from client regarding Stinson account receivable. | 0.20 | 62.00 | RRD |
| 08/07/2019 | Review and analyze order on motion to amend. | 0.50 | 137.50 | JRU |
| 08/08/2019 | Rvw order and comment; corresp with client; rvw issues with Atty Underhill. | 0.35 | 108.50 | MRB |
| 08/08/2019 | Review and analyze Order on Motions to Amend Complaint and Appoint Receiver; draft update correspondence to client with analysis of Order; review file documents and communicate with JRU regarding forwarding Order to Shawn Rayder. . | 1.10 | 341.00 | RRD |
| 08/08/2019 | Email to R. Dreyer re: order on motion to amend; email to S. Rader re: motion to amend. . | 0.20 | 55.00 | JRU |
| 08/13/2019 | Corresp with client re pending matters. | 0.10 | 31.00 | MRB |
| 08/13/2019 | Review file and follow up with client regarding strategy moving forward and discovery responses. . | 1.40 | 434.00 | RRD |
| 08/14/2019 | Reviewed file for T charts and rent roll documents. | 2.60 | 325.00 | KLB |
| 08/14/2019 | TC with client; confer with co-counsel and conf call with Kent Kjellberg; conf call with client; email to client. | 2.00 | 620.00 | MRB |
| 08/14/2019 | Review file documents and correspondence from client; follow up with client. . | 4.90 | 1,519.00 | RRD |
| 08/14/2019 | Draft amended complaint; calls and email re: deadlines in scheduling order. | 3.40 | 935.00 | JRU |
| 08/15/2019 | Conf call with client and confer with counsel. | 0.30 | 93.00 | MRB |
| 08/15/2019 | Work on locating valuation expert. | 0.25 | 77.50 | MRB |
| 08/15/2019 | Telephone conference with client regarding Kent Titcomb production of rent rolls and t-12s to Kent Kjellberg; discussion regarding settlement strategy; review file documents and email documents to client that were sent out for personal service on Brenton Titcomb; track down expert witness to value mobile home parks. | 3.00 | 930.00 | RRD |

| | | | | |
|---|---|---|---|---|
| 08/15/2019 | Draft amended complaint and summons; draft answer to third party complaint; draft discovery to Brenton Titcomb; call with potential real estate appraiser. . | 6.30 | 1,732.50 | JRU |
| 08/16/2019 | Review update on service of documents on Brenton Titcomb. | 0.10 | 31.00 | RRD |
| 08/16/2019 | Call with appraiser and email to same; email to court re: scheduling conference. . | 0.80 | 220.00 | JRU |
| 08/19/2019 | Rvw correspondence from client. | 0.10 | 31.00 | MRB |
| 08/19/2019 | Telephone conference with Henry Stursberg regarding settlement proposal. . | 0.60 | 186.00 | RRD |
| 08/19/2019 | Reviewing documents and drafting timeline. . | 2.50 | 687.50 | JRU |
| 08/20/2019 | TC with Kent Kjellberg. | 0.10 | 31.00 | MRB |
| 08/20/2019 | Review correspondence from client and file documents regarding telephone conference with court about schedule changes; analyze Kent's wife's involvement in Amicorp, Inc. for purposes of deposition. | 0.50 | 155.00 | RRD |
| 08/20/2019 | Preparation and appear on telephone conference with court re: scheduling order; reviewing documents and drafting timeline; review Defendants' discovery responses. . | 6.20 | 1,705.00 | JRU |
| 08/21/2019 | Telephone conference with client regarding Leyvi deposition, mediation and broker commission dispute in Pine City; review Amicorp's discovery responses and internet research on Brenton Titcomb and Li Li (Brenton's girlfriend). | 1.20 | 372.00 | RRD |
| 08/21/2019 | Email to court re: scheduling order and delaying trial. . | 0.20 | 55.00 | JRU |
| 08/22/2019 | Drafting letter to defendants' re: deficiencies in discovery responses. . | 4.80 | 1,320.00 | JRU |
| 08/23/2019 | Review emails from client and Kent Titcomb regarding Kent's request to refinance mortgage soon; draft/revise correspondence to client. | 0.40 | 124.00 | RRD |
| 08/23/2019 | Draft letter re: deficient discovery responses of Amicorp. . | 5.20 | 1,430.00 | JRU |
| 08/26/2019 | Drafting letter in response to discovery objections. . | 1.50 | 412.50 | JRU |
| 08/27/2019 | Drafting objections to discovery responses in preparation for motion to compel. | 5.30 | 1,457.50 | JRU |
| | **TOTALS** | 57.90 | $15,949.00 | |

**DISBURSEMENTS**

| | | |
|---|---|---|
| 08/31/2019 | On Line Research. | 111.24 |
| | Total Disbursemnets | $111.24 |
| | **TOTAL FEE & DISBURSEMENTS** | **$16,060.24** |

**TRUST ACCOUNT**        $0.00

       Ending Balance:    $0.00

**PAYMENTS**

| | |
|---|---|
| Previous Balance | $72,969.13 |
| Previous Payments | ($10,000.00) |

**Balance Now Due**        **$79,029.37**

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

### 5125 County Road 101, Suite 200
### Minnetonka, MN 55345

TEL:    952.975.0050

TAX ID NUMBER:  27-1594984

09/30/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :      457190

Matter # :      7452-001

**RE:**    Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| 09/03/2019 | Review file documents and update client;. | 0.50 | 155.00 | RRD |
| 09/04/2019 | Reviewing new documents produced by Defendants and drafting timeline. | 6.90 | 1,897.50 | JRU |
| 09/06/2019 | Review file documents and discovery produced by Amicorp, Inc. | 0.60 | 186.00 | RRD |
| 09/09/2019 | Review Order from District Court on Motion for Protective Order; draft correspondence to client. | 0.60 | 186.00 | RRD |
| 09/10/2019 | Review Order from District Court regarding Motion for Protective Order; telephone conference with client regarding Order and mediation strategies; draft demand letter to Wells Fargo Bank, N.A. | 2.40 | 744.00 | RRD |
| 09/10/2019 | Reviewing defendants' documents and drafting timeline with same. . | 4.10 | 1,127.50 | JRU |
| 09/11/2019 | Review of voluminous financial documents and created and uploaded them into share file link. | 3.80 | 475.00 | KLB |
| 09/11/2019 | Review correspondence from client and Scott Blake; draft response to client; various telephone conferences with client and opposing counsel regarding mediation, refinance and motion to amend third party complaint; review file documents and scheduling order. | 4.80 | 1,488.00 | RRD |
| 09/11/2019 | Drafting timeline and reviewing defendants' document production. . | 5.50 | 1,512.50 | JRU |
| 09/12/2019 | Reviewing defendants' documents and drafting timeline. | 2.70 | 742.50 | JRU |
| 09/13/2019 | Review file including communications from opposing counsel regarding disclosure of Amicorp, Inc.'s document production. | 0.30 | 93.00 | RRD |
| 09/13/2019 | Drafting timeline and review defendants' document production for information to include in timeline. . | 4.50 | 1,237.50 | JRU |
| 09/14/2019 | Review correspondence from client, review file and draft correspondence to client; prepare for mediation and review documents produced in discovery. | 2.50 | 775.00 | RRD |
| 09/14/2019 | Drafting mediation statement. . | 2.50 | 687.50 | JRU |
| 09/16/2019 | Rvw multiple emails from client. | 0.20 | 62.00 | MRB |
| 09/16/2019 | Review correspondence from client regarding loan; review file. | 3.30 | 1,023.00 | RRD |
| 09/16/2019 | Drafting mediation statement. . | 6.30 | 1,732.50 | JRU |

| Date | Description | Hours | Amount | Atty |
|------|-------------|-------|--------|------|
| 09/17/2019 | Review file documents and prepare for mediation. | 2.30 | 713.00 | RRD |
| 09/17/2019 | Drafting mediation statement and reviewing Defendants' documents for materials to include with mediation statement. . | 6.80 | 1,870.00 | JRU |
| 09/18/2019 | Review documents production prior to mediation. . | 5.80 | 1,595.00 | JRU |
| 09/19/2019 | Respond to correspondence from client; review file documents and prepare for mediation; analyze financial data relative to parks in preparation for offers at mediation;. | 5.30 | 1,643.00 | RRD |
| 09/19/2019 | Reviewing documents and prepare for mediation. . | 7.50 | 2,062.50 | JRU |
| 09/20/2019 | Draft proposed Settlement Agreement and Mutual Release; travel to and attend mediation at Felhaber Larson; return from mediation; review emails and respond. . | 14.30 | 4,433.00 | RRD |
| 09/20/2019 | Attend mediation at Felhaber Larson. . | 10.00 | 2,750.00 | JRU |
| 09/23/2019 | Various telephone conferences with client regarding possible settlement at $1.75 Million, T-12 Statements and response to demand to refinance KAW Parks, LLC's debts; review documents and communications from client, mediator and opposing counsel. | 2.10 | 651.00 | RRD |
| 09/23/2019 | Drafting motion to compel production of Amicorp financial records and other withheld discovery. . | 6.50 | 1,787.50 | JRU |
| 09/24/2019 | Draft response letter to Amicorp, Inc.'s attorney's demand to refinance KAW Parks, LLC's debt. | 4.10 | 1,271.00 | RRD |
| 09/24/2019 | Drafting motion to compel. . | 5.10 | 1,402.50 | JRU |
| 09/25/2019 | Telephone conference with client regarding Affidavit of Publication and December 8, 2019 sale date, and negotiation terms; telephone conference with Judge Dickstein regarding T-12s. | 3.80 | 1,178.00 | RRD |
| 09/25/2019 | Drafting motion to compel. | 5.50 | 1,512.50 | JRU |
| 09/26/2019 | Review correspondence from mediator, client and opposing counsel regarding settlement negotiations; analyze impasse on T-12 statements; review correspondence from opposing counsel and mediator; draft response. | 4.00 | 1,240.00 | RRD |
| 09/26/2019 | Drafting motion to compel; review letter from Defendants re: Stursberg Discovery responses. . | 7.50 | 2,062.50 | JRU |
| 09/27/2019 | Review file documents; communicate with client; conduct telephone conference with client and mediator; review discovery documents, update timeline, review motion documents. | 6.10 | 1,891.00 | RRD |
| 09/27/2019 | Draft, edit, and finalize motion to compel. . | 5.20 | 1,430.00 | JRU |
| 09/28/2019 | Review Motion for Mandatory Injunction and limited receiver; forward motions to client;. | 1.10 | 341.00 | RRD |
| 09/30/2019 | Draft opposition to motion to amend. | 5.10 | 1,402.50 | JRU |
| | **TOTALS** | 159.60 | $45,360.50 | |

**DISBURSEMENTS**

| Date | Description | Amount |
|------|-------------|--------|
| 09/16/2019 | Process Server - Brenton Titcomb August 17. | 200.00 |
| 09/16/2019 | Person & Judgement Search - Henry Stursberg, Henry J. Stursberg AUG 15. | 10.00 |
| 09/20/2019 | RRD Travel Mileage and Parking, Mediation, September 20. | 49.35 |
| 09/20/2019 | JRU Travel - Mileage & Parking to attend Mediation. | 49.58 |

| | | |
|---|---|---:|
| 09/26/2019 | Transcript Copy - Wadsworth Complaint. | 16.87 |
| | Total Disbursemnets | $325.80 |
| | **TOTAL FEE & DISBURSEMENTS** | **$45,686.30** |

**TRUST ACCOUNT**                                                            $0.00

Ending Balance:    $0.00

**PAYMENTS**

| | |
|---|---:|
| Previous Balance | $79,029.37 |
| Previous Payments | ($10,000.00) |

**Balance Now Due**                                                   **$114,715.67**

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

5125 County Road 101, Suite 200
Minnetonka, MN 55345

TEL:    952.975.0050

TAX ID NUMBER:  27-1594984

10/31/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :     457436

Matter # :      7452-001

**RE:**    Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| 10/01/2019 | Various correspondence with client regarding settlement negotiations and mediation with lawyers and mediator; review file documents. | 2.10 | 651.00 | RRD |
| 10/01/2019 | Drafting opposition to motion to amend and motion for protective order. . | 6.10 | 1,677.50 | JRU |
| 10/02/2019 | Telephone conference with opposing counsel regarding settlement negotiations; draft/revise various correspondence to opposing counsel and mediator regarding settlement negotiations; draft/revise correspondence to client regarding settlement offer idea; telephone conferences with client regarding reconvening mediation; review file documents. | 3.70 | 1,147.00 | RRD |
| 10/02/2019 | Draft opposition to motion for mandatory injunction and receiver. . | 3.20 | 880.00 | JRU |
| 10/03/2019 | Review correspondence from opposing counsel; review file documents; review correspondence from client; respond to client; draft correspondence to opposing counsel regarding recommencing mediation; draft correspondence to client. . | 0.40 | 124.00 | RRD |
| 10/03/2019 | Drafting opposition to motion for mandatory injunction; drafting declarations and identifying exhibits for oppositions to motion for mandatory injunction, motion for protective order, and motion to amend. . | 14.30 | 3,932.50 | JRU |
| 10/04/2019 | Draft/revise Memoranda of Law in Opposition to Amicorp, Inc.'s Motions for Amendment to Protective Order, Amendment to Counterclaim and First Amended Third Party Complaint and Motions for Mandatory Injunction or in the alternative Appointment of Limited Receiver; review file documents and produce financial documents to client again; various telephone conferences with client; telephone conference with Shawn Raider regarding appointment of receiver. | 4.70 | 1,457.00 | RRD |
| 10/04/2019 | Finalize opposition to all three motions from defendants. . | 5.50 | 1,512.50 | JRU |
| 10/07/2019 | Review correspondence from client and respond; review file documents; research federal court jurisdiction and client's draft email to Stinson Leonard; draft correspondence to client. | 2.80 | 868.00 | RRD |
| 10/07/2019 | Draft reply in support of motion to compel. . | 7.40 | 2,035.00 | JRU |
| 10/08/2019 | Review Motion to Compel Discovery and response; review cases and federal statutes regarding federal court jurisdiction; conduct telephone conference with client; draft and revise discovery responses; review motion documents; review emails from client regarding project and investment. | 5.70 | 1,767.00 | RRD |

| | | | | |
|---|---|---|---|---|
| 10/08/2019 | Draft reply to motion to compel; finalize and file same. . | 6.50 | 1,787.50 | JRU |
| 10/09/2019 | Review file documents and correspondence from client; respond to client regarding coffee meeting prior to Friday hearing. | 0.40 | 124.00 | RRD |
| 10/09/2019 | Draft response to letter re: 1648's discovery responses; draft outlines for motion hearing. . | 6.30 | 1,732.50 | JRU |
| 10/10/2019 | Review discovery emails forwarded by client; organize emails for production in discovery; communicate with client regarding rendezvous. . | 0.70 | 217.00 | RRD |
| 10/10/2019 | Prepare outlines and oral argument for motion hearing. . | 11.20 | 3,080.00 | JRU |
| 10/11/2019 | Travel to Elk River; review memoranda of law filed in support of and in opposition of numerous motions; attend meeting with client and Kent Kjellberg; prepare Kent Kjellberg direct examination; travel to and attend hearing on motions; negotiations with opposing counsel following hearing; attend lunch meeting with client and Kent Kjellberg; return to office. | 6.80 | 2,108.00 | RRD |
| 10/11/2019 | Oral argument on motion to compel; motion for mandatory injunction; motion for protective order and motion to amend; draft letter regarding dicovery responses. | 8.80 | 2,420.00 | JRU |
| 10/14/2019 | Rvw receivership issues with Atty Dreyer. | 0.10 | 31.00 | MRB |
| 10/14/2019 | Various telephone conferences with client and opposing counsel regarding recommencing mediation; review correspondence from client; draft update correspondence to client; review discovery demand letter from opposing counsel. | 1.20 | 372.00 | RRD |
| 10/14/2019 | Draft response to discovery letter and serve. . | 1.00 | 275.00 | JRU |
| 10/15/2019 | Corresp with client. | 0.10 | 31.00 | MRB |
| 10/15/2019 | Review emails from client; review email from mediator regarding ex parte contact from Henry; analyze proposal from mediator regarding mandatory arbitration; telephone conferences with client and Kent Kjellberg; review file documents. | 1.90 | 589.00 | RRD |
| 10/16/2019 | Draft supplemental discovery requests to all defendants. . | 3.50 | 962.50 | JRU |
| 10/17/2019 | Drafting letter to S. Blake re: discovery responses. . | 1.80 | 495.00 | JRU |
| 10/18/2019 | Emails to S. Blake re: depositions; email to Henry re motion hearing. . | 1.20 | 330.00 | JRU |
| 10/21/2019 | TC with Kent Kjellberg. | 0.10 | 31.00 | MRB |
| 10/21/2019 | Review and respond to correspondence from client regarding allegations of auction on 12/4/19; investigate reports of auction of personal property on 12/4/19 including telephone conference with Kent Kjellberg; follow up with client; communicate with mediator regarding developments on possible arbitration; draft correspondence to client regarding settlement negotiations and discovery schedules. | 3.10 | 961.00 | RRD |
| 10/21/2019 | Supplement responses to discovery; identify documents with responsive information. . | 7.50 | 2,062.50 | JRU |
| 10/22/2019 | Review correspondence from client regarding proposed communication to Kent Titcomb; respond to client; telephone conference with client regarding discovery responses, arbitration proposal and settlement possibilities; telephone conference with Judge Dickstein; follow up telephone conference with client; review file documents. | 6.30 | 1,953.00 | RRD |
| 10/22/2019 | Supplement discovery responses and identify documents with responsive information. . | 7.70 | 2,117.50 | JRU |

| Date | Description | Hours | Amount | Atty |
|---|---|---|---|---|
| 10/23/2019 | Telephone conference with client regarding arbitration; various telephone conferences with Scott Blake and Judge Dickstein regarding proposed arbitration; review file documents and analyze claims; review various emails (more than 15) from client, Judge Dickstein, opposing counsel and Court Administration. | 5.40 | 1,674.00 | RRD |
| 10/23/2019 | Review and redact documents for production; supplement discovery responses. . | 5.20 | 1,430.00 | JRU |
| 10/24/2019 | Confer re strategy with Atty Dryer. | 0.35 | 108.50 | MRB |
| 10/24/2019 | Review correspondence from client, mediator and opposing counsel; telephone conference with client. | 0.90 | 279.00 | RRD |
| 10/24/2019 | Draft motion for appointment of receiver. | 8.70 | 2,392.50 | JRU |
| 10/25/2019 | Review and respond to correspondence from client and Judge Dickstein regarding T-12s; begin drafting deposition outline of Kent Titcomb; review/revise Memorandum of Law in Support of Motion for Appointment of broader receiver; telephone conference with Kent Kjellberg regarding November 8, 2019 hearing at 1:00 p.m; process discovery emails and analyze case against Kent Titcomb. | 3.40 | 1,054.00 | RRD |
| 10/25/2019 | Draft motion for appointment of a receiver; draft supplemental discovery responses. | 6.20 | 1,705.00 | JRU |
| 10/28/2019 | Review analyze discovery responses; telephone conference with client regarding supplemental responses and discovery hills to die on; legal research regarding licensure laws and applicability to discovery defenses. | 3.50 | 1,085.00 | RRD |
| 10/28/2019 | Draft supplemental discovery responses with bates numbers identifying documents with responsive information; call with client re: discovery responses and depositions; email to opposing counsel re: depositions and meet and confer conference. . | 7.30 | 2,007.50 | JRU |
| 10/29/2019 | Drafting discovery responses and review documents for responsive information; call with client re: licensure and discovery requests. | 7.10 | 1,952.50 | JRU |
| 10/30/2019 | Draft supplemental responses; review and redact documents from client; call with opposing counsel re; discovery responses and dismissal of private attorney general claim and deposition scheduling. | 7.20 | 1,980.00 | JRU |
| 10/31/2019 | Telephone conferences with client and JRU; review file documents and brewing discovery disputes between parties; work on deposition schedule; update deposition outline of Kent Titcomb. | 1.50 | 465.00 | RRD |
| 10/31/2019 | Drafting outlines for depositions of Florida witnesses; call with client re deposition scheduling and private attorney general claims; emails with opposing counsel re: deposition scheduling; emails with client re: deposition scheduling and stop work on file until T-12 reports provided. | 5.20 | 1,430.00 | JRU |

|  | **TOTALS** | | $55,294.00 | |

**DISBURSEMENTS**

| Date | Description | Amount |
|---|---|---|
| 10/07/2019 | Filing Fee to File Motion for Mandatory Injunction. | 80.00 |
| 10/07/2019 | Filing Fee to File Motion Amended Protective Order. | 80.00 |
| 10/11/2019 | RRD Travel - Mileage for Hearing. | 48.43 |
| 10/11/2019 | JRU Travel - Mileage for Hearing. | 48.72 |
| 10/25/2019 | Filing Fee to File Notice of Motion and Motion for Appointment of a Receiver. | 80.00 |

Total Disbursemnets

|  |  |
|---|---|
| Total Disbursemnets | $337.15 |
| **TOTAL FEE & DISBURSEMENTS** | **$55,631.15** |

**TRUST ACCOUNT**                                              $0.00

Ending Balance:    $0.00

**PAYMENTS**

| | |
|---|---|
| Previous Balance | $114,715.67 |
| Previous Payments | $0.00 |

**Balance Now Due**                                          **$170,346.82**

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# Morrison Sund PLLC

## 5125 County Road 101, Suite 200
## Minnetonka, MN 55345

TEL:    952.975.0050

TAX ID NUMBER: 27-1594984

11/30/2019

Henry Stursberg and 1648 Properties, LLC
PERSONAL & CONFIDENTIAL
1528 Walnut St., Suite 2008
Philadelphia, PA 19102

Invoice # :        457518

Matter # :        7452-001

**RE:**    Litigation against Kent Titcomb and related entities regarding Big

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| 11/01/2019 | Review and redact documents from client for production; email to Florida counsel re: depositions. . | 3.50 | 962.50 | JRU |
| 11/04/2019 | Draft various correspondence to opposing counsel regarding dispute over date and location of Henry Stursberg and 1648 Properties, LLC's depositions; telephone conference with opposing counsel regarding updated T-12s and deposition; draft correspondence to client regarding deposition on 11/18/19 and Henry's threat that he'll call Judge Buccicone regarding his request to cancel the 11/8/19 hearing until T-12s arrive; analyze flights that Henry Stursberg could take following 11/18 deposition; draft correspondence to client with alternative flight arrangements to settle brewing dispute over 11/18 deposition. | 2.60 | 806.00 | RRD |
| 11/04/2019 | Draft memo in reply to opposition to receivership; call with Scott Blake re: T-12 documents and status of production. . | 6.30 | 1,732.50 | JRU |
| 11/05/2019 | Review file documents and correspondence from opposing counsel and client regarding updated T-12s on Big Lake Property and Sherburne Property; draft various correspondence to client regarding T-12s and receivership hearing scheduled 11/8/19. . | 0.10 | 31.00 | RRD |
| 11/05/2019 | Draft reply memo in support of motion for receiver. . | 5.50 | 1,512.50 | JRU |
| 11/06/2019 | TC with Henry re many issues with Jeff. | 1.00 | 310.00 | MRB |
| 11/06/2019 | Draft various correspondence to client regarding scheduling of telephone conference; draft correspondence to client after client missed scheduled telephone conference; review file documents and motion papers for 11/8/19 hearing. | 0.60 | 186.00 | RRD |
| 11/06/2019 | Draft responses to Defendants' second set of discovery; emails to Florida counsel re: deposition notices, call with client re: depositions. . | 5.80 | 1,595.00 | JRU |
| 11/07/2019 | Review file documents and draft cross examination outline for receiver hearing; review and respond to correspondence from client regarding hearing; review pleadings, file documents and case law regarding receiverships in preparation for hearing; telephone conference with Kent Kjellberg regarding testimony at hearing; draft hearing outlines. | 8.50 | 2,635.00 | RRD |
| 11/08/2019 | Legal research regarding case law support for appointment of receiver; prepare for hearing on appointment of receiver; travel to and attend hearing on appointment of receiver; return from hearing on appointment of receiver [not including happy hour at Chop's]. | 10.40 | 3,224.00 | RRD |

| Date | Description | Hours | Amount | Initials |
|---|---|---|---|---|
| 11/11/2019 | Rvw case status and issues with Atty Dreyer. | 0.25 | 77.50 | MRB |
| 11/11/2019 | Review/analyze and revise discovery responses including 1648 Properties, LLC's Answer to Defendants' Kent and Brenton Titcomb's First Set of Interrogatories, 1648 Properties, LLC's Response to Defendants' Kent and Brenton Titcomb's First Set of Requests for Production of Documents, Third-Party Defendant Henry Stursberg's Answers to Defendants Second Set of Interrogatories and Third-Party Defendant Henry Stursberg's Response to Defendants Second Set of Requests for Production of Documents;. | 2.60 | 806.00 | RRD |
| 11/12/2019 | Downloaded documents from Night Owl Discovery. | 0.90 | 112.50 | KLB |
| 11/12/2019 | Review file documents; analyze settlement negotiations; draft/revise proposed settlement offer to Amicorp, Inc.'s counsel; draft correspondence to client; various telephone conferences with client regarding settlement offer; revise settlement proposal and deliver to opposing counsel; telephone conference with opposing counsel regarding settlement proposal and possible settlements; review discovery document production from opposing counsel; draft update to client regarding settlement proposal delivery and opposing counsel's schedule this week. | 2.60 | 806.00 | RRD |
| 11/14/2019 | Draft/revise correspondence to opposing counsel regarding update on response to settlement proposal; telephone conference with client; leave voicemail for opposing counsel; review/analyze 11/14/19 Order from Judge Buccicone regarding appointment of limited receiver; draft/revise correspondence to client with analysis of Order; review file documents. | 1.70 | 527.00 | RRD |
| 11/15/2019 | Review/analyze correspondence from client regarding receivership order; review file documents and prepare notices of taking depositions of Florida and Minnesota witnesses; review various correspondence from opposing counsel regarding objection to deposition of Henry Stursberg in Minnesota concurrent with 1648 Properties' designee deposition; draft/revise second correspondence to client with another copy of 11/14/19 receivership order; research appealability and timeline of appeal of receivership order. | 3.10 | 961.00 | RRD |
| 11/15/2019 | Emails with Florida counsel re: deposition notices and subpoenas; email to opposing counsel re: failure to cooperate in subpoenas of John Wilson and new deposition locations; draft subpoenas and deposition notices for nine witnesses. . | 5.20 | 1,430.00 | JRU |
| 11/16/2019 | Review email from client regarding last minute cancellation of 11/18/19 deposition because he needed "time to think about how best to proceed"; draft/revise response email to Henry Stursberg with advice about skipping scheduled deposition on 11/18/19 and likely sanctions if deposition is skipped. | 0.20 | 62.00 | RRD |
| 11/16/2019 | Draft 30.02 topics for notice to corporate witnesses; draft Rule 11 motion facts. . | 3.00 | 825.00 | JRU |
| 11/17/2019 | Various telephone calls to client including leaving voicemail for client to confirm via email if 11/18/19 deposition would be attended; review email from client regarding missed call. | 0.30 | 93.00 | RRD |

| | | | | |
|---|---|---|---|---|
| 11/18/2019 | Telephone conferences with Scott Blake regarding Henry's decision not to appear for 11/18/19 deposition and attempt to reschedule; review various correspondence from client and opposing counsel regarding depositions; draft correspondence to client regarding 11/18/19 deposition, attempts to reschedule, advise regarding communicating directly with opposing counsel; analyze counteroffer from Kent Titcomb; draft correspondence to client regarding counteroffer from Kent Titcomb; draft correspondence to client regarding rescheduled deposition for 11/20/19; draft correspondence to client regarding change of date of deposition to 11/21/19 and Kent Titcomb's presence; analyze opposing counsel's request to depose KAW Parks, LLC's representative in Florida instead of Minnesota; draft correspondence to opposing counsel regarding KAW Parks, LLC designee deposition and 1648 Properties, LLC's designee deposition. | 3.30 | 1,023.00 | RRD |
| 11/18/2019 | Draft Rule 11 motion. . | 6.10 | 1,677.50 | JRU |
| 11/19/2019 | Review emails from client and opposing counsel regarding rescheduling the rescheduled deposition of 1648 Properties; review file documents pursuant to Henry Stursberg's request for Morrison Sund to provide documents to him; review District Court Order on Motions to Modify Protective Order, Amend Answer and Counterclaim and Motion to Compel Discovery; draft correspondence to client regarding deposition and various matters; telephone conference with Receiver regarding background of dispute; draft/revise correspondence to receiver with MSA; draft/revise correspondence to client regarding receiver conversation and obligation to comply with receiver. | 4.20 | 1,302.00 | RRD |
| 11/19/2019 | Draft Rule 11 Motion. . | 5.50 | 1,512.50 | JRU |
| 11/20/2019 | Correspond with client re case matters and representation X 3. | 1.00 | 310.00 | MRB |
| 11/20/2019 | Review correspondence from opposing counsel regarding objections to deposition notices for Minnesota and Florida depositions including Henry's decision not to appear for his , 11/7/19, 11/18/19 or 11/21/19 depositions; coordinate delivery of Nigh Owl documents to client; draft correspondence to opposing counsel regarding Henry's decision not to appear for 11/21/19 deposition. | 1.10 | 341.00 | RRD |
| 11/20/2019 | Draft Rule 11 Motion. . | 6.20 | 1,705.00 | JRU |
| 11/21/2019 | Telephone conference with Stursberg & Fine's receptionist trying to connect with Henry Stursberg (call refused by Henry); review correspondence from opposing counsel; review updated QB data set received from opposing counsel; coordinate delivery of QB updates to client. | 0.40 | 124.00 | RRD |
| 11/21/2019 | Draft Rule 11 Motion and finalize for service. | 4.20 | 1,155.00 | JRU |
| 11/22/2019 | Work with team to export client's file to transferable media; review file documents to ascertain best method of exporting file; monitor progress. | 1.70 | No Charge | RRD |
| 11/22/2019 | Review file documents and prepare list of case deadlines for client and future counsel; telephone conferences with opposing counsel regarding withdrawal, status of depositions scheduled for 11/25 and 11/26 and Florida depositions; review and respond to various communications from client; draft correspondence to client regarding file transition; draft/revise Notice of Withdrawal. | 2.50 | 775.00 | RRD |

| 11/22/2019 | Call with opposing counsel re: withdrawal from representation and cancellation of depositions scheduled for week of November 25. | 0.20 | 55.00 | JRU |

|  | **TOTALS** | $28,674.50 |

**DISBURSEMENTS**

| 11/08/2019 | RRD Travel - Mileage - Hearing on Receivership. | 45.01 |
| 11/21/2019 | Sherburne County Court Filing Fee - Motion for Rule 11 Sanctions. | 80.00 |
| 11/25/2019 | Process Server. | 193.00 |
|  | Total Disbursemnets | $318.01 |
|  | **TOTAL FEE & DISBURSEMENTS** | **$28,992.51** |

| **TRUST ACCOUNT** |  | $0.00 |
|  | Ending Balance: | $0.00 |

**PAYMENTS**

| Previous Balance |  | $170,346.82 |
| Previous Payments |  | $0.00 |

| **Balance Now Due** |  | **$199,339.33** |

Payment is due within 15 days of receipt of this invoice.
Payments received after the date of this invoice are not reflected on this statement.

WE ACCEPT PAYMENT THROUGH VISA, MASTERCARD, & AMERICAN EXPRESS

# EXHIBIT C

| Type | Date | Num | Name | Memo | Original Amount | Paid Amount | Balance |
|------|------|-----|------|------|----------------:|------------:|--------:|
| Payment | 03/18/2019 | wire | morrison sund pllc | morrison sund pllc | 15,000.00 | 15,000.00 | 15,000.00 |
| Payment | 06/30/2019 | on line | morrison sund pllc | morrison sund pllc | 40,000.00 | 40,000.00 | 55,000.00 |
| Payment | 06/30/2019 | on line | morrison sund pllc | morrison sund pllc | 10,000.00 | 10,000.00 | 65,000.00 |
| Payment | 08/31/2019 | on line | morrison sund pllc | morrison sund pllc | 10,000.00 | 10,000.00 | 75,000.00 |
| Payment | 10/31/2019 | on line | morrison sund pllc | morrison sund pllc | 10,000.00 | 10,000.00 | 85,000.00 |
| Payment | 11/30/2019 | on line | morrison sund pllc | morrison sund pllc | 10,000.00 | 10,000.00 | 95,000.00 |
| Payment | 12/08/2019 | on line | morrison sund pllc | morrison sund pllc | 10,000.00 | 10,000.00 | 105,000.00 |
| **Total** | | | | | | **105,000.00** | **105,000.00** |

# EXHIBIT D

**From:** Ryan Dreyer [mailto:RDreyer@morrisonsund.com]
**Sent:** Friday, September 18, 2020 1:13 PM
**To:** Bernheim, Daniel
**Cc:** Eric Nasstrom; Jeffrey Underhill
**Subject:** Morrison Sund PLLC Attorney's Lien - Stursberg/1648 Properties

Mr. Bernheim, I understand from Scott Blake that Henry has reached settlement terms on the Minnesota lawsuit against Titcomb and his entities. Mr. Blake asked me if Morrison Sund PLLC is willing to release its attorney's lien against the Big Lake property in exchange for an escrow of some of the settlement proceeds pending resolution of claims between Morrison Sund and Henry. Henry, 1648 Properties and Stursberg & Fine owe Morrison Sund PLLC $281,215.58 in the following breakdown:

Attorney Fees from Minnesota Case: $191,407.83
Interest on unpaid fees owed: $9,460.15
Collection Attorney Fees: $61,004.50
Collection Costs: $19,343.10
Total: $281,215.58

Morrison Sund looks at this as an opportunity for a global settlement with Henry and his entities and will agree to release its attorney's lien in the real estate in exchange for payment via wire of $281,215.58 and a mutual release of claims between it (including attorneys), Henry and his entities. You should be aware that in addition to the attorney's lien recorded against the real estate, Morrison Sund PLLC also has perfected security interests in any proceeds that Henry and/or 1648 Properties may receive from settlement of this lawsuit, sale of the land or otherwise. Morrison Sund will terminate these security interests as part of a settlement on the above terms.

Let me know if you'd like to discuss this in further detail.

Best regards,

RYAN R. DREYER



MORRISON SUND PLLC
—— ATTORNEYS AT LAW —— ———PRINCIPAL

5125 COUNTY ROAD 101, SUITE 200
MINNETONKA, MN 55345
TEL: (952) 277-0116
FAX: (952) 975-0058

rdreyer@morrisonsund.com

This message is for the designated recipient only and may contain privileged, proprietary, or otherwise private information. If you have received it in error, please notify the sender immediately and delete the original. Any other use of the email by you is prohibited.

This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. If you are not the intended recipient of this message you are prohibited from

copying, distributing or otherwise using this information. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank you.

The content of any e-mail sent to or received by Wilentz, Goldman & Spitzer, P.A. or any of its attorneys will not create an attorney-client relationship and shall not be binding on this law firm or its client(s) unless an undertaking of attorney client representation has been signed and delivered by a duly authorized representative of the firm. No e-mail transmission by the sender of this e-mail will constitute an "electronic signature" unless the person sending the email expressly states that this e-mail constitutes an electronic signature or the document on which a handwritten signature appears specifically states that it may be delivered via electronic or e-mail transmittal.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

# Exhibit 11

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

Court File No. MP 20-402-KHS

H.J.S.

---

**NOTICE OF HEARING AND MOTION**
**FOR ATTORNEYS' FEES AND COSTS**

To:     Morrison Sund, PLLC, through its attorney of record:

The requestor H.J.S. by undersigned counsel hereby moves the court for the relief requested below (the "Motion").

1.      The court will hold a **telephonic** hearing on the Motion at **10:30 a.m. on Wednesday, June 3, 2020**, before the Honorable Kathleen H. Sanberg, Judge of the Bankruptcy Court, Courtroom 8W, Diana E. Murphy United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415.

2.      Under Local Rule 9006-1(c), any response to the Motion must be filed and served by delivery or by mail not later than five days before the hearing.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

3.      This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rule 1070-1.

4.      The legal predicate for the relief sought herein is 11 U.S.C. §§ 303(i)(1) and 108(b).  The Motion is filed under Fed. R. Bankr. P. 9013 and 9014, and Local Rules 9013-1 through -3.  Notice of the hearing on the Motion is provided pursuant to Local Rules 9013-3 and 2002-1(b).

5.      On January 8, 2020, Morrison Sund, PLLC filed an Involuntary Petition under chapter 7 of the Bankruptcy Code (the "Involuntary Petition") against H.J.S.  *See* Case No. 20-40050-KHS, Docket No. 1.

6.      On January 15, 2020, the Court entered an Order dismissing the Involuntary Petition.  In that Order, H.J.S.'s right to seek a judgment for costs and attorneys' fees against M&S under 11 U.S.C. § 303(i)(1) was expressly preserved.

7.      Attached to the Affidavit of Amy J. Swedberg accompanying the Motion as Exhibit A is a true and correct copy of Maslon's invoice for services rendered to H.J.S. during the month of January, 2020 and early February, 2020, that were reasonably necessary in connection with the dismissal of the Involuntary Petition and related, post-dismissal matters.  In addition, Maslon LLP has incurred the attorneys' fees in preparing and filing this Motion and will incur additional attorneys' fees through the conclusion of the hearing on the Motion.   H.J.S. recognizes the Court's discretion in awarding attorneys' fees and costs and thus has submitted a proposed order with a blank for the dollar amount awarded.

8.      H.J.S. also requests clarification that the petitioning creditor, Morrison Sund, PLLC, cannot use its disputed, pre-petition judgment as a basis to setoff or otherwise seek to avoid its obligation to comply with an order from this Court directing Morrison Sund, PLLC to pay H.J.S. for his attorneys' fees and costs in the amount ordered by this Court.

**RESERVATION OF RIGHTS TO ASSERT
CLAIMS UNDER 11 U.S.C. § 303(i)(2)**

9.      H.J.S. continues to reserve the right to file and pursue claims and remedies under 11 U.S.C. § 303(i)(2) or otherwise including claims for damages, including actual damages and punitive damages, caused by the filing of the Involuntary Petition when the full extent and amount of such damages are known in the future.  H.J.S. has also commenced legal proceedings

in federal court in his home state of Pennsylvania asserting certain claims against Morrison Sund, PLLC that may obviate the need for further redress from the bankruptcy court.

WHEREFORE, the H.J.S. respectfully requests that this court enter an order:

(i)     Ordering Morrison Sund, PLLC to pay H.J.S. for his attorneys' fees and costs that were reasonably incurred by him in seeking the dismissal of the Involuntary Petition;

(ii)    expressly reserving H.J.S.'s right to file and pursue claims and remedies under 11 U.S.C. § 303(i)(2) or otherwise; and

(iii)   granting such other relief as is just and appropriate.

Respectfully submitted,

Dated:  May 18, 2020                         **MASLON LLP**

                                             By: */e/ Amy J. Swedberg*
                                                   Amy J. Swedberg (#271019)
                                             3300 Wells Fargo Center
                                             90 South Seventh Street
                                             Minneapolis, MN  55402
                                             Phone:  612-672-8367
                                             amy.swedberg@maslon.com

                                             *Counsel for H.J.S.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

H.J.S.

Court File No. MP 20-402-KHS

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

H.J.S. moves for an order awarding him attorneys' fees and costs incurred in connection

with the dismissal of the involuntary petition filed against him on January 8, 2020.  The factual

background is set forth in the related proceedings that have been sealed by this Court in Case No.

20-40050-KHS (the "Sealed Proceedings")

I.    **H.J.S. is Entitled to an Order Awarding His Attorneys' Fees and Costs Under 11
      U.S.C. § 303(i)(1).**

The Bankruptcy Code expressly permits an award of attorneys' fees and costs to an

alleged debtor that is the subject of an involuntary bankruptcy filing if such petition is dismissed,

and if the alleged debtor does not waive the right to such fees and costs, regardless of the finding

of good faith or "bad faith" finding that is necessary for additional damages under 11 U.S.C.

§ 303(i)(2).  Specifically, section 303(i)(1) states:

> If the court dismisses a petition under this section other than on consent of all
> petitioners and the debtor, and if the debtor does not waive the right to judgment
> under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>
>      (A) costs; or
>      (B) a reasonable attorney's fee;

11 U.S.C. § 303(i)(2).

A finding of bad faith is not necessary for the award of attorneys' fees and costs incurred by H.J.S. in connection with the dismissal of the Involuntary Petition.  All that is necessary is that the petition is dismissed "other than on consent of all petitioners and the debtor" and the debtor "does not waive the right to judgment under this subsection."   11 U.S.C. § 303(i)(1). "[A]ny petitioning creditor in an involuntary case, whether signing the initial petition or later joining as a petitioner under section 303(c), should expect to pay the debtor's attorney's fees and costs if the petition is dismissed."  *In re Kidwell*, 158 B.R. 203, 217 (Bankr. E.D. Ca. 1993).  In *Kidwell*, the court noted:

> The Congress drafted the statute to make an award of costs and fees the norm. While the better view is that such awards are discretionary and not mandatory, courts exercise their discretion in light of two factors. First, the progenitor of section 303(i)(1) is former Bankruptcy Rule 115(e), which makes such awards 'routine.' Second, the statute makes plain that bad faith is not relevant unless consequential and punitive damages are under consideration.

*Id.* (citing *In re Kearney*, 121 B.R. 642, 644–45 (Bankr. M.D. Fla.1990); *In re Anderson*, 95 B.R. 703, 704–05 (Bankr. W.D. Mo. 1989); *In re Johnston Hawks, Ltd.*, 72 B.R. 361, 365 (Bankr. D. Haw. 1987), *aff'd*, 885 F.2d 875 (9th Cir. 1989)).  Several bankruptcy courts have recognized the presumption that attorneys' fees should be awarded whenever an involuntary petition is dismissed by order of the court and the right to such fees is not waived by the alleged debtor. *See In re Scrap Metal Buyers of Tampa, Inc.,* 253 B.R. 103 (M.D. Fla. 2000) (finding a rebuttable presumption that attorney's fees are warranted for dismissal of an involuntary petition); I*n re K.P. Enterprise*, 135 B.R. 174 (Bankr. D. Me. 1992) (recognizing attorneys' fees are generally awarded upon any dismissal).

Here, the Involuntary Petition was dismissed by an Order of the Court entered on January 15, 2020, in the Sealed Proceedings, and that Order provided that H.J.S. expressly reserved the right to seek costs and attorneys' fees under 11 U.S.C. § 303(i), as well as other

2

damages, the extent of which are not fully known or can be quantified as of the date of the filing

of this Motion.  At the hearing to consider the expedited dismissal of the Involuntary Petition,

this Court emphasized that well established rule that involuntary bankruptcy is not to be used for

debt collection.  Indeed, the United States Court of Appeals for the Eighth Circuit admonished a

another petitioning creditor for using involuntary bankruptcy as a tool to collect a single disputed

debt especially when state courts are readily available for this purpose:

> A creditor does not have a special need for bankruptcy relief if it can go to state
> court to collect a debt. . . .   In sum, we think that [petitioning creditor] should
> clearly have been on notice from the existing case law that it stood little chance of
> prevailing as a sole creditor attempting to force a debtor into involuntary
> bankruptcy over a single disputed debt.  Under any balancing test, the equities
> weigh heavily in favor of [the alleged debtor], who in no way appears to be behind
> in paying his debts except as to the complex litigation now pending in state court.

*In re Nordbrock*, 772 F.2d 397, (8th Cir. 1985) (dismissing involuntary petition where creditor

was attempting to use the bankruptcy court as a forum not only for collection, but for trial of its

disputed claim).   Notwithstanding this established rule, it appears that using involuntary

bankruptcy as a collection mechanism for its disputed invoices is exactly what Morrison Sund,

PLLC was threatening to do in the e-mails produced as evidence in the Sealed Proceedings.

A substantial award of attorneys' fees and costs under 11 U.S.C. § 303(i)(1) is not

unprecedented, especially in cases where an involuntary petition was filed "improperly"

regardless of a finding of bad faith.  *See, e.g., In re John Richards Homes Building Company

L.L.C.,* 312 B.R. 849 (E.D. Mich. 2004) (affirming award of attorneys' fees of $285,379 and

costs of $27,851.68); *In re Diloreto*, 442 B.R. 373 (E.D. Pa. 2010) (affirming bankruptcy court's

award of $63,150 in attorneys' fees).  *See also In re Brewer*, No. 6:11-bk-04174-KSJ, 2012 WL

2076421 (Bankr. M.D. Fla. 2012) (recognizing that "[d]ue to the seriousness" of an involuntary

bankruptcy filing, "courts have broad discretion in awarding fees and costs when it finds that a

creditor has ***improperly*** filed an involuntary petition against a debtor") (emphasis added).  Here,

the Involuntary Petition was undoubtedly filed "improperly" regardless of whether it was filed in

bad faith or in good faith, because involuntary bankruptcy "is not intended to be used in an

exclusively self-serving manner as a collection device." *In re Tichy Elec. Co.*, 332 B.R. 364, 376

(Bankr. N.D. Iowa 2005).

Finally, an award of attorneys' fees and cost is not prohibited in this case because the

Court's dismissal was under the abstention provisions of section 305, instead of dismissal under

section 303. *See In re Macke Int'l Trade Inc.*, 370 B.R. 236, 248 (9th Cir. BAP 2007); *Kidwell*,

203 B.R. at 216; *In re Trina Assoc.,* 128 B.R. 858, 873 (Bankr. E.D.N.Y. 1991). In *Kidwell*, the

court noted:

> There are only two charted safe harbors from the section 303(i) remedies: (1)
> dismissal with consent of the debtor and of all petitioners and (2) waiver by the
> debtor of the right to judgment. 11 U.S.C. § 303(i). All other dismissals are
> exposed to section 303(i) remedies, including, for example, dismissal pursuant to
> section 305 abstention based on the interests of creditors and the debtor being
> better served by dismissal.

*Kidwell*, 203 B.R. at 216. *See also Macke Int'l Trade Inc.*, 370 B.R. at 248 (stating "we hold that

the statutory scheme allows, and indeed preempts other causes of action for, relief against those

who inappropriately invoke the involuntary bankruptcy process, whether the petition is dismissed

under § 303 or via § 305(a)(1)"); *In re Reynolds*, No. 9:14–bk–10690–PC, 2014 WL 5325749, at

*2 (Bankr. N.D. Ca. 2014) (dismissing involuntary petition under section 305(a) and expressly

allowing the alleged debtor to bring a motion for attorneys' fees under section 303(i)); *In re*

*Olympic Property Partners, LLC*, No. 15-23658, at Docket No. 28 (Bankr. S.D.N.Y. Jan. 26,

2016), *appeal dismissed*, 566 B.R. 334 (S.D.N.Y. 2017) (same). *See also In re Gen. Aeronautics*

*Corp.*, 594 B.R. 442, 483 (Bankr. D. Utah 2018) (recognizing that "[w]hile § 305(a) dismissals

have supported the imposition of fees and costs, the Court concludes that the facts of this case do

not warrant such a result . . . [under] a totality of the circumstances test").

In *In re TPG Troy, LLC*, the United States Court of Appeals for the Second Circuit considered an appeal of an award of costs and attorneys' fees to the alleged debtor after the bankruptcy court had dismissed the involuntary petition under the abstention provisions of section 305(a).  793 F.3d 228 (2nd Cir. 2015).  In first recognizing that a "decision to abstain under Section 305(a) is unreviewable" the court found that a justiciable controversy still existed on the issue of attorneys' fees.  *Id.* at 232.  The Second Circuit affirmed the bankruptcy court's award of attorney's fees stating:

> The bankruptcy court did not abuse its discretion in awarding fees here. As properly determined below, nothing in the record supports the Creditors' arguments against the award. Moreover, an award of attorneys' fees and costs serves to discourage the filing of involuntary petitions to force debtors to pay on a disputed debt. At bottom, Section 303(i)(1) is a fee-shifting provision that requires no showing of bad faith, and aims to keep the putative estate whole.

*Id.* at 235 (citations omitted).  Thus, it is still appropriate and within this Court's discretion to award attorneys' fees under 11 U.S.C. § 303(i) notwithstanding the prior dismissal under 11 U.S.C. § 305(a)(1).  Indeed, as with the bankruptcy court's orders in the prior decisions noted above, this Court's order dismissing the Involuntary Petition against H.J.S. under section 305(a) expressly reserved the issue of attorneys' fees and other damages that may be awarded under section 303(i).  *See* Sealed Proceedings, Order Granting Expedited Relief Dismissing the Involuntary Chapter 7 Bankruptcy Petition, Sealing All Records of the Proceedings and Granting Related Relief, at ¶ 6.

## II.     Morrison Sund, PLLC Cannot Setoff its Disputed Pre-Petition Debt.

H.J.S. also seeks clarification, in the form of the specific order that he is requesting and not in the form of declaratory relief, that Morrison Sund, PLLC cannot setoff or otherwise seek to avoid its obligation to pay his attorneys' fees and costs by defensively using its disputed, pre-petition debt against H.J.S.  The appellate courts that have addressed this unique issue, including

the Bankruptcy Appellate Panel for the Ninth Circuit and at least one other district court, have consistently found setoff impermissible in this situation. *See In re Macke Intern. Trade, Inc.,* 370 B.R. at 255-56 (recognizing the "consensus of courts is that a setoff of this sort is impermissible"); *In re Diloreto,* 442 B.R. at 376–77 (affirming the bankruptcy court's decision stating "we agree with Judge Fox and the Macke court that '[i]f a setoff were allowed, there would be little downside to a creditor's resort to an involuntary bankruptcy petition against a debtor, even if its conduct did not rise to the level of 'bad faith,' " and that the allowance of a setoff right would severely weaken the purpose of 303(i).' "). Importantly, these unique setoff issues were decided by the bankruptcy courts and on appeal in the context of a motion to dismiss, and not in the context of requests for declaratory relief in an adversary proceeding.

In considering another petitioning creditor's motion to permit setoff from an order directing the payment of attorneys' fees, the bankruptcy court noted:

> We totally reject [petitioning creditor]'s notion that a fee award, per § 303(i), can be set off against the claim which an unsuccessful petitioning creditor in an involuntary case has against the Debtor. . . .
>
> * * *
>
> We believe that there are very strong public policy reasons why an award pursuant to § 303(i) should not and cannot be permitted to be set off against the unsuccessful petitioning creditor's claims against the Debtor. It can be assumed that most, if not all, petitioning creditors in involuntary cases are owed sums by Debtors. If the petitioning creditor could suffer no other recourse except a reduction in his probably - uncollectible judgment as a penalty for requiring a debtor to defend an unjustified case, and Congress has specifically stated should result in such a penalty, the disincentive built into the system to discourage such actions would evaporate. The rule sought by [petitioning creditor] would surely be a boon to creditors who seek to wear down to submission small debtors such as the Debtor here.

*In re Schiliro,* 72 B.R. 147, 149 (Bankr. E.D. Pa. 1987). The *Schiliro* court went on to note that the equitable right to seek to exercise setoff rights in bankruptcy must be "narrowly construed." *Id.* at 150 (citing *In re Lessig Construction, Inc.,* 67 B.R. 436, 441 (Bankr. E.D. Pa. 1986)). The

6

court recognized "there can be little doubt that the actual recipient of the § 303(i) Order is to be the Debtor's counsel, Mr. DiFrank" notwithstanding the statutory language directing a fee award to "the Debtor, as opposed to his counsel." *Id.* Thus, in denying the petitioning creditor's request to exercise setoff rights, the court reasoned:

> . . . in actuality, the § 303(i) award must be understood as compensation to counsel for his or her efforts and as, effectively, an award of fees to the Debtor's counsel. We believe that [debtor] would have no more claim to retain the award of attorneys fees pursuant to § 303(i) than he would have a justified contention that [debtor's counsel] Mr. DiFrank was liable for his debts.
>
> * * *
>
> **Our Orders . . . directing [petitioning creditor] to pay** the sum of $6,542.50 to the Movant, [debtor], are reaffirmed, and **this sum shall be paid within ten (10) days of the date of this Order**

*Schiliro,* 72 B.R. at 150-52 (emphasis added). Importantly, the *Schiliro* bankruptcy court affirmed its ruling ordering the petitioning creditor to pay the attorneys' fee award notwithstanding the reference to a "judgment" in section 303(i). In considering whether the award should be in favor of counsel or the debtor, the court had noted: "Congress, in drafting the Code, indicated, in § 303(i), that the Debtor, as opposed to his counsel, was entitled to a *judgment* for, *inter alia*, a reasonable attorneys fee." *Id.* at 1149 (emphasis in original).

Likewise, in this case, Morrison Sund, PLLC should not be permitted to seek to use its disputed, pre-petition debt to setoff or otherwise avoid an award of attorneys' fees and costs to H.J.S. In *Macke*, the Bankruptcy Appellate Panel for the Ninth Circuit recognized the "consensus" that a setoff in this situation is not permitted. *See Macke Intern. Trade, Inc.*, 370 B.R. at 255-56. It is not permitted because it would completely undermine the fee shifting provisions of section 303(i) and destroy the "the disincentive" for creditors to file improper involuntary petitions that was "built into" this fee shifting provision. *Schiliro*, 72 B.R. at 149. Thus, in order to expressly avoid the inequitable result recognized in *Schiliro* and other

7

decisions, H.J.S. seeks an order of this court directing the amount of fees and costs awarded to him is to be paid by Morrison Sund, PLLC within thirty (30) days.

## CONCLUSION

For the reasons set forth herein, H.J.S. respectfully requests that this court enter an order: (i) ordering Morrison and Sund to pay H.J.S. for his attorneys' fees and costs that were reasonably incurred by him in seeking the dismissal of the Involuntary Petition within thirty (30) days; (ii) reserving H.J.S.'s right to file and pursue claims and remedies under 11 U.S.C. § 303(i)(2) or otherwise; and (iii) granting such other relief that is just and equitable.

Respectfully submitted,

Dated:  May 18, 2020

**MASLON LLP**

By: */e/ Amy J. Swedberg*
    Amy J. Swedberg (#271019)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Phone:  612-672-8367
amy.swedberg@maslon.com

*Counsel for H.J.S.*

8

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

H.J.S.

Court File No. MP 20-402-KHS

### AFFIDAVIT OF AMY J. SWEDBERG

STATE OF MINNESOTA    )
                                          )ss
COUNTY OF HENNEPIN   )

Amy J. Swedberg, being first duly sworn upon oath, deposes and states:

1.        I am a partner at Maslon LLP  ("Maslon") and I represented the alleged debtor, H.J.S., in seeking the dismissal of the involuntary petition filed against in the above-referenced matter.  I submit this affidavit in support of the motion of H.J.S. for an award of attorneys' fees and costs (the "Motion") incurred by him in connection with such dismissal.

2.        Attached hereto as ***Exhibit A*** is Maslon's invoice for services rendered to H.J.S. during the month of January, 2020 and early February, 2020, that were reasonably necessary and were incurred in connection with H.J.S. seeking the dismissal of the Involuntary Petition and related, post-dismissal matters.   This invoice has been redacted to remove attorney-client privileged information and all identifying information for H.J.S.  Maslon has incurred attorneys' fees in preparing and filing the Motion in the amount of $6,160 and will incur an estimated $2,500 in additional attorneys' fees through the conclusion of the hearing on the Motion.

FURTHER YOUR AFFIANT SAYETH NOT.

Subscribed and sworn before                    /e/ *Amy J. Swederg*
me on the 15th of May, 2020                     Amy J. Swedberg

/e/ *Notary Public*
Notary Public

MASLON

# INVOICE FOR PROFESSIONAL SERVICES

| | |
|---|---|
| Invoice Number | 40220650-0014 |
| Invoice Date | 2/6/2020 |
| Client Number | S008160 |
| Matter Number | 20200064 |

---

## Re:  Defense of Involuntary Bankruptcy Petition

FOR PROFESSIONAL SERVICES RENDERED:  THROUGH FEBRUARY 5, 2020

| 01/09/20 | RCS | ATTENTION TO ISSUES REGARDING INVOLUNTARY BANKRUPTCY AND ISSUES REGARDING STAY OF LITIGATION; CALLS AND E-MAILS REGARDING SAME. | 3.80 | 2,128.00 |
|---|---|---|---|---|
| 01/09/20 | AJS | TELEPHONE CONFERENCE AND DRAFT E-MAILS REGARDING ▮▮▮▮▮▮▮▮▮▮; LEGAL RESEARCH AND ANALYSIS REGARDING SAME; REVIEW PETITION AND DOCKET FOR PROCEEDING. | 2.80 | 1,540.00 |
| 01/10/20 | AJS | MEETING WITH CLIENT AND DRAFT AFFIDAVIT FOR MOTION TO DISMISS; DRAFT E-MAILS TO PETITIONING CREDITOR'S COUNSEL AND JUDGE'S CLERK REGARDING HEARING; DRAFT NOTICE OF HEARING AND MOTION TO DISMISS AND FOR RELATED RELIEF, MEMORANDUM OF LAW IN SUPPORT OF SAME AND PROPOSED ORDER; LEGAL RESEARCH AND ANALYSIS REGARDING ▮▮▮▮▮▮; DRAFT MULTIPLE E-MAILS TO CLIENT; LEGAL RESEARCH REGARDING ▮▮▮▮▮▮▮▮ AND DRAFT E-MAILS REGARDING SAME; DRAFT PROPOSED LETTER TO CLIENT'S CREDITORS REGARDING INVOLUNTARY BANKRUPTCY FILING. | 11.50 | 6,325.00 |
| 01/10/20 | RCS | FOLLOW UP REGARDING INVOLUNTARY BANKRUPTCY FILING; ATTENTION TO MOTION TO ABSTAIN AND FOR RELATED RELIEF; CONFERENCE WITH CLIENT AND A. SWEDBERG REGARDING SAME; REVIEW DRAFT MOTION PAPERS. | 3.10 | 1,736.00 |
| 01/11/20 | RCS | REVIEW E-MAILS REGARDING BANKRUPTCY MOTION AND COMMUNICATIONS WITH TRUSTEES. | 0.40 | 224.00 |

PAYMENT DUE UPON RECEIPT          FEDERAL ID NUMBER 41-0648239
DISBURSEMENTS AND SERVICES WHICH HAVE NOT BEEN PROCESSED WILL APPEAR ON A LATER INVOICE.

MASLON LLP  3300 WELLS FARGO CENTER  |  90 SOUTH SEVENTH STREET  |  MINNEAPOLIS, MN 55402-4140  |  612.672.8200  |  MASLON.COM

S008160
20200064
2/6/2020

█████████████
Defense of Involuntary Bankruptcy Petition

Invoice Number    40220650-0014
Page    2

| Date | Atty | Description | Hours | Amount |
|------|------|-------------|-------|--------|
| 01/11/20 | AJS | REVIEW MULTIPLE E-MAILS FROM PETITIONING CREDITOR'S COUNSEL AND DRAFT E-MAILS TO SAME; TELEPHONE CONFERENCE WITH CLIENT; DRAFT STIPULATION AND PROPOSED ORDER FOR MOTION TO DISMISS; LEGAL RESEARCH AND ANALYSIS REGARDING ████████ ███████████████; DRAFT PROPOSED INTERIM AGREEMENT FOR PETITIONING CREDITOR'S COOPERATION IN SEEKING EXPUNGEMENT OR SEALING OF RECORD; DRAFT MULTIPLE E-MAILS TO CLIENT; DRAFT E-MAIL TO U.S. TRUSTEE'S OFFICE REQUESTING CONSENT TO PROPOSED STIPULATION ON MOTION TO DISMISS. | 5.50 | 3,025.00 |
| 01/12/20 | AJS | TELEPHONE CONFERENCES WITH CLIENT AND COUNSEL FOR PETITIONING CREDITORS; REVIEW AND DRAFT E-MAILS; DRAFT POWER OF ATTORNEY FOR COMMUNICATING WITH CREDIT CARD COMPANIES AND LIST OF CREDIT CARDS. | 2.20 | 1,210.00 |
| 01/12/20 | RCS | E-MAILS REGARDING EMERGENCY MOTION AND POSSIBLE STIPULATION. | 0.60 | 336.00 |
| 01/13/20 | RCS | FOLLOW UP REGARDING BANKRUPTCY ISSUES AND BANKRUPTCY COURT MOTION; ATTENTION TO ISSUES REGARDING CREDIT CARD COMPANIES. | 1.90 | 1,064.00 |
| 01/13/20 | AJS | MULTIPLE TELEPHONE CONFERENCES WITH CLIENT ████████ ████████████████████; DRAFT SUPPLEMENTAL AFFIDAVIT OF CLIENT, MOTION TO SEAL RECORD, MEMORANDUM OF LAW IN SUPPORT OF SAME AND PROPOSED ORDER; MULTIPLE TELEPHONE CONFERENCES WITH COUNSEL FOR PETITIONING CREDITOR; DRAFT MULTIPLE E-MAILS; LEGAL RESEARCH REGARDING MOTION TO SEAL AND OTHER FEDERAL STATUTES; DRAFT E-MAILS TO COURT CLERK AND U.S. TRUSTEE'S OFFICE. | 8.20 | 4,510.00 |
| 01/14/20 | AJS | TELEPHONE CONFERENCE WITH COUNSEL FOR PETITIONING CREDITOR; CONFERENCE REGARDING ████████ AND LEGAL RESEARCH AND ANALYSIS REGARDING SAME; DRAFT AMENDED MOTION, SUPPLEMENTAL MEMORANDUM OF LAW AND REVISED PROPOSED ORDER; DRAFT MULTIPLE E-MAILS TO CLIENT. | 4.80 | 2,640.00 |
| 01/14/20 | SLS | REVIEW INVOLUNTARY PETITION, MOTION TO DISMISS, AND REPLY; ANALYZE STATUTE AND CONSULT WITH A. SWEDBERG. | 1.50 | 810.00 |
| 01/14/20 | RCS | E-MAILS AND CALLS REGARDING ████████████████; REVIEW AMENDED MOTION. | 2.00 | 1,120.00 |
| 01/15/20 | RCS | PREPARE FOR AND ATTEND BANKRUPTCY COURT HEARING; FOLLOW UP REGARDING SAME AND REGARDING FAXES TO CREDIT BUREAUS. | 3.50 | 1,960.00 |

PAYMENT DUE UPON RECEIPT          FEDERAL ID NUMBER 41-0648239
DISBURSEMENTS AND SERVICES WHICH HAVE NOT BEEN PROCESSED WILL APPEAR ON A LATER INVOICE.

MASLON LLP  3300 WELLS FARGO CENTER  |  90 SOUTH SEVENTH STREET  |  MINNEAPOLIS, MN 55402-4140  |  612.672.8200  |  MASLON.COM

S008160          ████████████                               Invoice Number      40220650-0014
20200064         Defense of Involuntary Bankruptcy Petition    Page    3
2/6/2020

| 01/15/20 | AJS | PREPARE FOR AND ATTEND HEARING ON MOTION TO DISMISS AND RELATED MOTION TO SEAL OR EXPUNGEMENT OF ALL RECORDS OF INVOLUNTARY BANKRUPTCY PROCEEDING; REVISE PROPOSED ORDER AND DRAFT MULTIPLE E-MAILS TO COURT CLERK; REVIEW AND DRAFT E-MAILS REGARDING SENDING ORDER TO CREDIT BUREAUS AND OBTAINING TRANSCRIPT OF HEARING. | 6.20 | 3,410.00 |
| 01/16/20 | AJS | DRAFT COVER LETTERS TO CREDIT BUREAUS; DRAFT MULTIPLE E-MAILS TO COURT CLERK REGARDING AUDIO RECORDING OF HEARING; DRAFT LETTER REQUESTING OPENING OF MISCELLANEOUS SUPPLEMENTAL PROCEEDINGS TO PURSUE ORDERS SUPPLEMENTAL TO INVOLUNTARY BANKRUPTCY PROCEEDINGS; TELEPHONE CONFERENCES WITH CLIENT AND COUNSEL FOR PETITIONING CREDITOR; REVIEW MULTIPLE E-MAILS FROM CLIENT AND RESPOND TO SAME. | 3.50 | 1,925.00 |
| 01/16/20 | RCS | FOLLOW UP REGARDING CREDIT BUREAU ISSUES; RESEARCH REGARDING SAME; DRAFT LETTER TO CREDIT BUREAU LEGAL DEPARTMENTS. | 3.00 | 1,680.00 |
| 01/17/20 | RCS | FURTHER ATTENTION TO BANKRUPTCY COURT ORDER AND ISSUES REGARDING CREDIT BUREAUS AND CREDIT CARDS; SEND FOLLOW UP E-MAILS TO CREDIT BUREAUS. | 1.50 | 840.00 |
| 01/17/20 | AJS | DRAFT MULTIPLE E-MAILS TO CLIENT; DRAFT AND REVIEW E-MAILS REGARDING CREDIT BUREAU REPORTING. | 2.30 | 1,265.00 |
| 01/20/20 | AJS | TELEPHONE CONFERENCE WITH CLIENT. | 0.30 | 165.00 |
| 01/21/20 | RCS | FOLLOW UP REGARDING CREDIT BUREAUS AND ISSUES REGARDING BANKRUPTCY HEARING. | 0.50 | 280.00 |
| 01/22/20 | RCS | E-MAILS WITH CREDIT BUREAUS; FOLLOW UP REGARDING SAME; REVIEW EMAILS WITH BANKRUPTCY COURT. | 0.80 | 448.00 |
| 01/23/20 | RCS | ATTENTION TO ISSUES REGARDING CREDIT BUREAUS AND CREDIT CARDS DUE TO INVOLUNTARY BANKRUPTCY. | 0.60 | 336.00 |
| 01/23/20 | AJS | DRAFT E-MAILS TO JUDGE'S CLERK AND CLIENT. | 0.30 | 165.00 |
| 01/24/20 | AJS | TELEPHONE CONFERENCE WITH CLIENT AND CREDIT CARD COMPANIES; DRAFT E-MAILS TO JUDGE'S CLERK REGARDING HEARING; REVIEW STATUTE ████████████████ ████; DRAFT MULTIPLE E-MAILS; DRAFT E-MAIL TO CITIBANK AND TELEPHONE CONFERENCE WITH SAME. | 1.70 | 935.00 |
| 01/24/20 | RCS | ATTENTION TO ISSUES REGARDING CREDIT CARD COMPANIES; REVIEW LETTER TO CITI BANK. | 0.40 | 224.00 |

PAYMENT DUE UPON RECEIPT                                      FEDERAL ID NUMBER 41-0648239
DISBURSEMENTS AND SERVICES WHICH HAVE NOT BEEN PROCESSED WILL APPEAR ON A LATER INVOICE.

MASLON LLP 3300 WELLS FARGO CENTER  |  90 SOUTH SEVENTH STREET  |  MINNEAPOLIS, MN 55402-4140  |  612.672.8200  |  MASLON.COM

S008160
20200064
2/6/2020

█████████████
Defense of Involuntary Bankruptcy Petition

Invoice Number    40220650-0014
Page    4

| | | | | |
|---|---|---|---|---|
| 01/26/20 | AJS | DRAFT MOTION AND PROPOSED ORDER FOR RELEASE OF TRANSCRIPT; DRAFT MOTION, MEMORANDUM OF LAW AND PROPOSED ORDER FOR ATTORNEYS' FEE MOTION. | 2.30 | 1,265.00 |
| 01/27/20 | AJS | DRAFT MULTIPLE E-MAILS TO CLIENT; DRAFT E-MAILS TO COURT CLERK REGARDING HEARING AND MOTION TO RELEASE TRANSCRIPT; ATTEMPTS TO REACH CITIBANK SUPERVISOR BY TELEPHONE; RESEARCH ALTERNATIVE FAX NUMBER FOR CITIBANK CREDIT BUREAU DISPUTE DEPARTMENT. | 1.80 | 990.00 |
| 01/27/20 | RCS | ATTENTION TO EFFECTS FROM INVOLUNTARY BANKRUPTCY. | 0.70 | 392.00 |
| 01/28/20 | RCS | RESEARCH REGARDING CITIBANK LEGAL DEPARTMENT; DRAFT E-MAIL TO LEGAL DEPARTMENT REGARDING CREDIT CARD REINSTATEMENT. | 0.80 | 448.00 |
| 01/28/20 | AJS | DRAFT E-MAILS TO CLIENT; REVIEW E-MAILS REGARDING CREDIT CARD COMPANY ISSUES. | 0.50 | 275.00 |
| 01/31/20 | RCS | ATTENTION TO CITIBANK ISSUES; E-MAILS REGARDING SAME. | 1.20 | 672.00 |
| 02/04/20 | AJS | DRAFT E-MAIL TO CLIENT WITH UPDATE ON MULTIPLE MATTERS. | 0.30 | 165.00 |
| 02/05/20 | AJS | REVIEW E-MAIL AND INFORMATION FROM CLIENT REGARDING LEXIS NEXIS RECORD OF BANKRUPTCY FILING; DRAFT LETTER TO LEXIS NEXIS. | 0.50 | 275.00 |

                                   TOTAL HOURS         81.00

| | | | |
|---|---|---|---|
| STEVEN SCHLEICHER | 1.50 | at | $540.00 |
| R. CHRISTOPHER SUR | 24.80 | at | $560.00 |
| AMY J. SWEDBERG | 54.70 | at | $550.00 |

          CURRENT FEES                                    44,783.00

FOR COSTS ADVANCED AND EXPENSES INCURRED:

| | | |
|---|---|---|
| 1/31/20 | COURT FILING FEE FOR MISCELLANOUS BANKRUPTCY PROCEEDING - 01/24/20 | 47.00 |

                CURRENT EXPENSES                              47.00

                TOTAL BALANCE                          $44,830.00

PAYMENT DUE UPON RECEIPT          FEDERAL ID NUMBER 41-0648239
DISBURSEMENTS AND SERVICES WHICH HAVE NOT BEEN PROCESSED WILL APPEAR ON A LATER INVOICE.
MASLON LLP  3300 WELLS FARGO CENTER  |  90 SOUTH SEVENTH STREET  |  MINNEAPOLIS, MN 55402-4140  |  612.672.8200  |  MASLON.COM



DUE UPON RECEIPT

| Invoice Number | 40220650-0014 |
|---|---|
| Invoice Date | 2/6/2020 |
| Client Number | S008160 |
| Matter Number | 20200064 |

**REMITTANCE COPY**
**PLEASE SEND WITH CHECK TO:**

**MASLON LLP**
**3300 WELLS FARGO CENTER**
**90 SOUTH SEVENTH STREET**
**MINNEAPOLIS, MINNESOTA 55402-4140**

**ATTENTION: ACCOUNTS RECEIVABLE**

| | |
|---|---|
| Total Services: | $44,783.00 |
| Total Expenses: | $47.00 |
| **Total Amount Due:** | **$44,830.00** |

PAYMENT DUE UPON RECEIPT                    FEDERAL ID NUMBER 41-0648239
DISBURSEMENTS AND SERVICES WHICH HAVE NOT BEEN PROCESSED WILL APPEAR ON A LATER INVOICE.

MASLON LLP  3300 WELLS FARGO CENTER  |  90 SOUTH SEVENTH STREET  |  MINNEAPOLIS, MN 55402-4140  |  612.672.8200  |  MASLON.COM

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

H.J.S.

Court File No. MP 20-402-KHS

**UNSWORN CERTIFICATE OF SERVICE**

I, Amy J. Swedberg, declare that on May 18, 2020, the following documents:

1.  Notice of Hearing and Motion for Attorneys' Fees and Costs;

2.  Memorandum of Law in Support of Motion for Attorneys' Fees and Costs;

3.  Affidavit of Amy J. Swedberg; and

4.  [proposed] Order.

were served by e-mail as follows:

Cynthia Hegarty
CHegarty@morrisonsund.com

Matthew Burton
MBurton@morrisonsund.com


Dated:  May 18, 2020                     By: /e/ *Amy J. Swedberg*_____
                                            Amy J. Swedberg

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

H.J.S.

Court File No. MP 20-402-KHS

# ORDER

This matter came before the court on H.J.S.'s Motion for Attorneys' Fees and Costs,

IT IS ORDERED:

1.       For the reasons stated on the record at the hearing, the motion is granted.

2.       Within thirty (30) days after the entry of this Order, Morrison Sund, PLLC, is ordered to pay H.J.S. total attorneys' fees and costs in the amount of $_____.

3.       Nothing herein shall prejudice H.J.S.'s right to file and pursue claims and remedies under 11 U.S.C. § 303(i)(2) or otherwise.  At this time, the Court makes no findings regarding bad faith as required for relief under 11 U.S.C. § 303(i)(2).

BY THE COURT:

Dated:                                        _____
                                                     Kathleen H. Sanberg
                                                     United States Bankruptcy Judge

# Exhibit 12

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Henry Stursberg, <br><br>                      Plaintiff, <br><br> v. <br><br> Morrison Sund, PLLC and Matthew Burton, <br><br>                      Defendants. | Court File No.:2:20-cv-01635-KSM <br><br><br> **DECLARATION OF RYAN R. DREYER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

STATE OF MINNESOTA )
                          ) ss.
COUNTY OF HENNEPIN )

I, Ryan Dreyer, state, verify, and declare as follows:

1.      I am a principal of Morrison Sund, PLLC ("Morrison Sund"), and am familiar with the above captioned matter.

2.      I represented 1648 Properties, LLC, an entity owned or controlled by Plaintiff Henry Stursberg, in the matter of *1648 Properties, LLC v. Amicorp., Inc.*, Case No. 71-cv-18-605 ("Minnesota Case"), which is venued in the State Court of Minnesota in Sherburne County. Attorney Jeffrey Underhill, an associate at Morrison Sund, also worked on the file with me.

3.      Mr. Underhill and I handled discovery, motion practice, court appearance and other aspects of the case, including communications with Plaintiff.

4.      Except when we met Plaintiff in person, all communications Mr. Underhill and I had with Plaintiff were through email, phone, regular mail, or perhaps, text messaging.

5.     Neither Jeff nor I ever set foot in Pennsylvania for the purpose of meeting with Plaintiff or otherwise representing him or his companies in the Minnesota Action. The court hearings, depositions and mediation all took place in Minnesota.

6.     Any in-person meetings Jeff and I had with Plaintiff occurred in Minnesota and related to motion hearings Plaintiff attended or mediation.

7.     I am not licensed to practice law in the Commonwealth of Pennsylvania, and neither is Mr. Underhill. I have never appeared in any court in Pennsylvania *pro hac vice*. I do not solicit clients that reside in the Commonwealth of Pennsylvania. Plaintiff is the only client from Pennsylvania that I can recall ever representing.

8.     Pursuant to the claims in the Complaint, almost all of the witnesses that will have relevant information are Minnesota residents including but not limited to:

- Kent Kjellberg

- Kirk Kjellberg

- Scott Blake

- Jeffrey Underhill

- Jeffrey Knutson

- Jeremy Krahn

- R. Chris Sur

- Matthew Burton

- Kevin Dunlevy

- Lowell Noteboom

- Daniel Scott

- Thomas Nelson

- Michael Wadsworth

9.      Many of the documents and records relevant to defense of the claims asserted in the Complaint also reside in Minnesota including at the Bankruptcy Court for the District of Minnesota, the Sherburne County District Court, the Maslon Law Firm, the Felhaber Larson law firm, the Beisel & Dunlevy law firm, the Sinson law firm and Morrison Sund PLLC.

10.      Attached as **Exhibit A** is a true and correct copy of an Attorney Lien that Morrison Sund PLLC has recorded against real property in Sherburne County Minnesota that is owned in part by Plaintiff's entity 1648 Properties, LLC and was subject of Morrison Sund PLLC's joint representation of Plaintiff and his entity 1648 Properties, LLC.  Pursuant to Minn. Stat. § 481.13, Morrison Sund PLLC is required to bring a summary action in Sherburne County District Court in Minnesota in relation to this Attorney Lien.

## ACKNOWLEDGMENT

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that everything I have stated in this declaration is true and correct.

Dated: 5/15/20

_____
Ryan Dreyer

**ATTORNEY LIEN**

DATE: **December 10, 2019**

NOTICE IS HEREBY GIVEN, pursuant to Minn. Stat. 481.13, that the undersigned, **Morrison Sund PLLC**, a law firm of licensed attorneys (the "**Lien Claimant**"), hereby claims and intends to hold a lien for compensation for legal services in the amount of **one hundred ninety-nine thousand, three hundred thirty-nine and 33/100** Dollars (**$199,339.33**) plus interest and collection costs upon the interest (if any) of **1648 Properties, LLC** (the "**Client**") in that certain real property in **Sherburne County**, Minnesota, legally described as follows:

> **South Half of the Northwest Quarter of the Northeast Quarter (S1/2 of NW1/4 of NE1/4) of Section Thirty (30), Township Thirty-three (33), Range Twenty Seven (27)**
>
> **PID #: 65-030-1215**
> **Commonly Known as: 126 Office Street, Big Lake, MN 55309**

*Check here if all or part of the described real property is Registered (Torrens)* ☐

Morrison Sund PLLC

By: Erika Rosenhagen
Its: Managing Member

EXHIBIT
A

State of Minnesota, County of **Hennepin**

This instrument was acknowledged before me on **December 10, 2019,** by **Erika Rosenhagen as Chief Manager of Morrison Sund PLLC**.

(Stamp)



RYAN RUSSELL DREYER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2020

_____
(signature of notarial officer)

Title (and Rank): _____

My commission expires: _____
(month/day/year)

THIS INSTRUMENT WAS DRAFTED BY:
**Morrison Sund PLLC**
**5125 County Road 101, Suite 200**
**Minnetonka, MN 55345**
**RRD**

# Exhibit 13

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Henry Stursberg,<br><br>                     Plaintiff,<br><br>v.<br><br>Morrison Sund, PLLC and Matthew Burton,<br><br>                 Defendants. | Court File No.:2:20-cv-01635-KSM<br><br><br>**DECLARATION OF ERIKA L. STEIN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

STATE OF MINNESOTA )
                           ) ss.
COUNTY OF HENNEPIN )

I, Erika L. Stein, state, verify, and declare as follows:

1.     I am a principal of Morrison Sund, PLLC ("Morrison Sund") and serve as the firm's managing member. I have been the firm's managing member since March 2017. In that capacity, I am aware of the filing of the above-captioned matter and have first-hand knowledge regarding the statements I make in this declaration.

2.     Morrison Sund's business address is 5125 County Road 101, Suite 200, Minnetonka, MN. Currently, Morrison Sund employees fifteen attorneys, which includes one attorney that is in an of counsel position.

3.     Morrison Sund has no other offices than the one located in Minnetonka.

4.     All of Morrison Sund's employees live in Minnesota, and all of them work from the office in Minnetonka when not working remotely due to the COVID 19 pandemic.

5. Morrison Sund has no attorneys licensed to practice law in the State of Pennsylvania.

6. Morrison Sund directs no advertisements toward the Commonwealth of Pennsylvania or otherwise takes no steps to market or engage in business development activities in the Commonwealth of Pennsylvania.

## ACKNOWLEDGMENT

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that everything I have stated in this declaration is true and correct.

Dated: May 18, 2020

Erika L. Stein

# Exhibit 14

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Henry Stursberg,<br><br>                Plaintiff,<br><br>v.<br><br>Morrison Sund, PLLC and Matthew Burton,<br><br>                Defendants. | Court File No.:2:20-cv-01635-KSM<br><br><br>**DECLARATION OF MATTHEW R. BURTON IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

STATE OF MINNESOTA )
                       ) ss.
COUNTY OF HENNEPIN )

I, Matthew R. Burton, state, verify, and declare as follows:

1.      I became a principal of Morrison Sund, PLLC ("Morrison Sund") effective April 1, 2020. I have been employed as an attorney at Morrison Sund since January of 2019.

2.      Prior to this firm's representation of Plaintiff in the matter of *1648 Properties, LLC v. Amicorp., Inc.*, Case No. 71-cv-18-605 ("Minnesota Action"), I had no prior dealings or communications with Plaintiff.

3.      I was introduced to Plaintiff by Kent Kjellberg, who owns a mobile home park in Monticello, Minnesota, as I was informed that Plaintiff needed legal representation in the Minnesota Action, which was already on-going and had been started by Plaintiff's prior counsel. From there, I put Plaintiff in contact with Morrison Sund attorney Ryan Dreyer.

4.      I am not licensed to practice law in the Commonwealth of Pennsylvania, and do not represent clients in any courts venued in Pennsylvania.  Nor do I actively solicit clients that live or reside in Pennsylvania.

5.      At no time during the course Morrison Sund's representation of Plaintiff did I travel to Pennsylvania.  My communications with Plaintiff were through emails, phone calls, letters sent by U.S. mail, and by text messaging.

6.      I am a resident of the State of Minnesota and have permanently resided in this State for over 30 years.

7.      While I attended Pennsylvania State University as an undergraduate, it has been over 44 years since I lived in Pennsylvania.  I attended law school in Minnesota at the William Mitchell College of Law, which is now called Mitchell Hamline.

8.      Plaintiff's counsel emailed me a copy of the complaint on March 26, 2020, and he sent me the summons and complaint by email and certified mail with return receipt requested under cover of letter dated Thursday, April 23, but I did not sign the return receipt.  I have learned that Morrison Sund's receptionist, Nichole Tessier, signed the receipt for the letter on Monday, April 27.  The letter was addressed to my business address at Morrison Sund.  Due to COVID 19, I have not been working at the office, and was not in the office on the date it was received.  I have not been served with the summons and complaint in this action.

## ACKNOWLEDGMENT

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that everything I have stated in this declaration is true and correct.

Dated: May 18, 2020

/s/ Matthew R. Burton
Matthew R. Burton

**Exhibit 15**

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

**STATE OF MINNESOTA**                     **DISTRICT COURT**

**COUNTY OF SHERBURNE**                **TENTH JUDICIAL DISTRICT**

| | |
|---|---|
| 1648 Properties, LLC and Henry Stursberg,<br><br>                             Plaintiffs,<br>v.<br><br>Morrison Sund, PLLC,<br><br>                             Defendant. | Court File No.:  71-CV-20-1114<br>Case Type:  Civil Other/Miscellaneous<br>Hon. Walter Kaminsky<br><br>**AMENDED ANSWER AND<br>COUNTERCLAIM** |

Defendant Morrison Sund, PLLC ("Morrison Sund") answers and responds to the Complaint of Plaintiffs 1648 Properties, LLC ("1648 Properties") and Henry Stursberg ("Stursberg") (collectively, "Plaintiffs") as follows:

## GENERAL DENIAL

Unless expressly admitted, conditioned, or qualified, Morrison Sund denies each and every allegation contained in the Complaint and puts Plaintiffs to their burden of proof.

## SPECIFIC RESPONSES

Morrison Sund answers and responds to each separately enumerated paragraph in the Complaint as follows:

## PARTIES

1.      As to paragraph 1, is without sufficient knowledge or information to either admit or deny the current legal status or address of 1648 Properties and therefore denies the allegations and puts Plaintiffs to their burden of proof.

2.      As to paragraph 2, is without sufficient knowledge or information to either admit or deny the current address of Stursberg and therefore denies the allegations and puts Plaintiffs to their burden of proof.

3.      As to paragraph 3, admits.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

4.      As to paragraph 4, admits Morrison Sund transacts business within the State of Minnesota. As to the remaining allegations, states the allegations therein regarding personal jurisdiction constitute legal conclusions to which no response need be given. To the extent Plaintiffs have any legitimate and cognizable claims against Morrison Sund or any of its attorneys, however, personal jurisdiction would rest exclusively in Minnesota.

5.      As to paragraph 5, admits Morrison Sund has its principal place of business in Hennepin County and that some of the transactions alleged in the Complaint occurred in Sherburne County.

## **FACTS**

6.      As to paragraph 6, admits.

7.      As to paragraph 7, admits.

8.      As to paragraph 8, admits.

9.      As to paragraph 9, denies.

10.     As to paragraph 10, is without sufficient knowledge or information to either admit or deny the current ownership status of KAW Parks and therefore denies the allegations and puts Plaintiffs to their burden of proof. Admits Amicorp Communities was a defendant in the Lawsuit, as that term is used in the Complaint.

11.     As to paragraph 11, is without sufficient knowledge or information to either admit or deny that KAW Parks is the current sole fee owner of the "Property," as that term is used in the Complaint, and therefore denies the allegations and puts Plaintiffs to their burden of proof.

12.     As to paragraph 12, is without sufficient knowledge or information to either admit or deny that the Property is commonly known as the Big Lake Mobile Home Park and therefore denies the allegations and puts Plaintiffs to their burden of proof.

13. As to paragraph 13, states that the invoices Morrison Sund sent to Plaintiffs speak for themselves. Morrison Sund affirmatively alleges that all work it billed for was performed and justified.

14. As to paragraph 14, admits Morrison Sund caused a Second Amended Complaint to be filed on or about August 15, 2019.

15. As to paragraph 15, states that the Second Amended Complaint speaks for itself regarding the claims made. As to the remaining allegations, denies that any causes of action included or omitted in the Second Amended Complaint negatively affected Plaintiffs' ability to pursue their case.

16. As to paragraph 16, denies.

17. As to paragraph 17, admits Morrison Sund took the deposition of Brenton Titcomb. As to the remaining allegations, states that any decisions to not depose other parties were tactics of counsel made with Plaintiffs' knowledge and/or caused by Plaintiffs' acts or omissions.

18. As to paragraph 18, states that any decisions regarding if and when to retain an expert were tactics of counsel made with Plaintiffs' knowledge and/or caused by Plaintiffs' acts or omissions. As to the remaining allegations, denies that Morrison Sound should have paid out of pocket for expert fees.

19. As to paragraph 19, denies that the fees of Morrison Sund were unreasonable or excessive and puts Plaintiffs to their burden of proof. As to the remaining allegations, admits Plaintiffs refused to pay Morrison Sund's legal fees and further states that Plaintiffs habitually failed to pay invoices of Morrison Sund in full.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

20. As to paragraph 20, admits that Morrison Sund withdrew from representing Plaintiffs from the Lawsuit but deny any suggestion or implication this was by choice.

21. As to paragraph 21, admits.

22. As to paragraph 22, admits. The Notice of Attorney's Lien attached to the Complaint as **Exhibit A** speaks for itself.

23. As to paragraph 23, admits. The UCC1 attached to the Complaint as **Exhibit B** speaks for itself.

24. As to paragraph 24, denies.

25. As to paragraph 25, admits. The UCC1 attached to the Complaint as **Exhibit C** and labeled as the Stursberg UCC1 speaks for itself.

26. As to paragraph 26, denies.

27. As to paragraph 27, denies.

28. As to paragraph 28, denies.

29. As to paragraph 29, denies.

30. As to paragraph 30, admits Plaintiffs dispute the value of legal services Morrison Sund provided. Morrison Sund denies that Plaintiffs' dispute is factually or legally relevant or supported and puts Plaintiffs to their burden of proof.

31. As to paragraph 31, denies.

32. As to paragraph 32, admits an involuntary bankruptcy petition was filed and then promptly dismissed by stipulation of the parties. As to the remaining allegations therein, denies and puts Plaintiffs to their burden of proof.

33. As to paragraph 33, is without sufficient knowledge or information to either admit or deny Plaintiffs and the parties labeled in the Complaint as the Titcomb Parties settled all

claims and entered into a settlement agreement. Despite repeated demands, Morrison Sund has not been provided the settlement agreement and is not privy to the terms or conditions of settlement. Morrison Sund admits, upon information and belief, that the Court may have entered an order dismissing the Lawsuit.

34.     As to paragraph 34, is without sufficient knowledge or information to either admit or deny the allegations therein and therefore denies the allegations and puts Plaintiffs to their burden of proof.

35.     As to paragraph 35, denies.

36.     As to paragraph 36, admits the Property has been foreclosed upon because Plaintiffs and/or the Titcomb Parties defaulted on one or more loans.

37.     As to paragraph 37, denies.

38.     As to paragraph 38, denies.

39.     As to paragraph 39, denies.

40.     As to paragraph 40, denies.

41.     As to paragraph 41, admits attorney Scott Blake communicated with Morrison Sund attorney Ryan Dreyer about escrowing funds from the putative sale of the Property and removal of the Notice of Attorney's Lien. As to the remaining allegations therein, denies.

42.     As to paragraph 42, states the text of the email reprinted therein speaks for itself. Morrison Sund further states that disclosure of the email may be in violation of Rule 408 of the Minnesota Rules of Evidence.

43.     As to paragraph 43, denies. The fees identified therein relate to Morrison Sund's successful defense against Stursberg's motion for attorney fees and sanctions brought in Minnesota Bankruptcy Court as well as defending against an action Stursberg commenced

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

against Morrison Sund and one of its attorneys, Matthew Burton, in the United States District Court Eastern District of Pennsylvania, Case No. 2:20-cv-01635-KSM ("Pennsylvania Action").

44.     As to paragraph 44, denies.

## COUNT I
## VIOLATION OF MINN. STAT. § 481.13 – NOTICE OF ATTORNEY'S LIEN ON THE PROPERTY

45.     As to paragraph 45, restates and alleges all previous responses, allegations, and denials.

46.     As to paragraph 46, admits.

47.     As to paragraph 47, denies.

48.     As to paragraph 48, denies.

49.     As to paragraph 49, admits.

50.     As to paragraph 50, is without sufficient knowledge or information to either admit or deny the allegations therein and puts Plaintiffs to their burden of proof.

51.     As to paragraph 51, denies.

52.     As to paragraph 52, denies.

53.     As to paragraph 53, denies.

54.     As to paragraph 54, denies.

55.     As to paragraph 55, denies.

56.     As to paragraph 56, denies Plaintiffs are entitled to the relief requested therein.

57.     As to paragraph 57, denies Plaintiffs are entitled to the relief requested therein.

1509425

## COUNT II
## VIOLATION OF MINN. STAT. 481.13 – NOTICE OF ATTORNEY'S LIENS AGAINST PLAINTIFFS 1648 PROPERTIES AND STURSBERG

58.     As to paragraph 58, restates and alleges all previous responses, allegations, and denials.

59.     As to paragraph 59, admits.

60.     As to paragraph 60, denies.

61.     As to paragraph 61, denies.

62.     As to paragraph 62, denies.

63.     As to paragraph 63, denies.

64.     As to paragraph 64, denies.

65.     As to paragraph 65, denies.

66.     As to paragraph 66, denies.

67.     As to paragraph 67, denies Plaintiffs are entitled to the relief requested therein.

68.     As to paragraph 68, denies Plaintiffs are entitled to the relief requested therein.

## **AFFIRMATIVE DEFENSES**

Morrison Sund asserts the following affirmative defenses:

1.     Plaintiffs' Complaint fails in whole or in part to state claims upon which relief may be granted.  Minn. Stat. § 481.13 does not create a cause of action in favor of Plaintiffs.

2.     Plaintiffs' Complaint fails in whole or in part under the doctrine of abstention or similar grounds because Plaintiffs purport to assert claims and causes of action that they have already asserted in the pending Pennsylvania Action.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

3.      Plaintiffs' Complaint fails in whole or in part because of Plaintiffs' own fraud, misrepresentations, negligence, breaches of contract, unclean hands, unjust enrichment, and unlawful or inequitable conduct.

4.      Plaintiffs' Complaint fails in whole or in part because any alleged harms suffered by Plaintiffs are the result of their own conduct or the conduct of third parties over whom Morrison Sund has no control.

5.      Plaintiffs' Complaint fails in whole or in part because Plaintiffs have failed to take reasonable steps to mitigate their purported damages or have created their own damages.

6.      Plaintiffs' Complaint fails in whole or in part by application of preemption, res judicata, or collateral estoppel.

7.      Plaintiffs' Complaint fails in whole or in part because Plaintiffs lack standing.

8.      Plaintiffs' Complaint fails in whole or in part by application of waiver, ratification, accounts stated, and estoppel.

9.      Morrison Sund is entitled to an attorney's lien as allowed under Minn. Stat. § 481.13.

10.     Morrison Sund reserves the right to amend the Answer to add affirmative defenses upon further discovery of facts supporting such affirmative defenses.

**COUNTERCLAIM**

Morrison Sund asserts the following Counterclaims against 1648 Properties, LLC and Henry Stursberg.

**PARTIES**

1.      1648 Properties, LLC ("1648 Properties") is a Pennsylvania Limited Liability Company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1528 Walnut Street, Suite 2008, Philadelphia, PA 19102.

2.      Henry Stursberg ("Stursberg") is an individual residing in Pennsylvania.

3.      Morrison Sund PLLC ("Morrison Sund") is a Minnesota Limited Liability Company with its principal place of business at 5125 County Road 101, Suite 200, Minnetonka Minnesota 55435.

4.      Personal jurisdiction of 1648 Properties, LLC and Henry Stursberg is proper because 1648 Properties, LLC and Henry Stursberg have submitted to the jurisdiction of the Sherburne County District Court by invoking the power of this Court to obtain their own affirmative relief through the filing of a summons and complaint.

## FACTS

1.      On March 18, 2019, Plaintiff in this lawsuit 1648 Properties and Stursberg entered into a Retainer Agreement with Morrison Sund.

2.      1648 Properties and Stursberg retained Morrison Sund to represent them in "litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park." (the "Titcomb Litigation").

3.      The Big Lake Property and the Sherburne Village Property have a combined value of approximately $12,500,000.00 with roughly $7,000,000.00 of equity above and beyond what is owed to the secured lender.

4.      The Retainer Agreement required 1648 Properties and Stursberg to pay Morrison Sund's invoices within 15 days after the billing date, to "review all bills or invoices it receives

from the Firm and that it will notify Firm promptly of any issues or concerns it has with its bill" and "to pay interest to the Firm at the rate of 5% per annum on all fees and expenses."

5. The Retainer Agreement specifically states that "Clients agree to pay the costs incurred by the Firm to collect overdue fees and expenses, including attorneys' fees at the rate of $200.00 per hour."

6. On March 29, 2019, Morrison Sund formally noticed its appearance in the Titcomb Litigation.

7. From March 29, 2019 until November 22, 2019, Morrison Sund acted as attorney of record for Plaintiffs and eventually also appeared on behalf of Stursberg & Fine following its addition to the Titcomb Litigation.

8. Among other hearings in the Titcomb Litigation, Morrison Sund appeared on behalf of 1648 Properties and Stursberg at the following hearings:

April 12, 2019 Motion for Summary Judgment

April 24, 2019 Motion Hearing (Reduce Scope of Subpoena)

May 24, 2019 Motion to Amend Complaint and Appoint Receiver

June 17, 2019 Motion for Protective Order

August 20, 2019 Motion to Amend Scheduling Order

October 11, 2019 Motions to Compel, Injunction, Protective Order and Amend

November 8, 2019 Motion for Appointment of Receiver

9. Morrison Sund produced Memoranda of Law and filed documents in support or opposition to Motions.

10. Morrison Sund thoroughly researched, briefed, served and filed documents for Motions.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

11. Morrison Sund obtained and reviewed tens of thousands of discovery documents from the Titcomb Entities.

12. Morrison Sund deposed Brenton Titcomb,

13. Morrison Sund attended an all-day mediation that also required Morrison Sund to participate in follow up telephone conferences and to send and receive electronic communications.

14. Morrison Sund engaged in many client meetings, telephone conferences, and negotiations.

15. Morrison Sund conducted extensive legal research.

16. Morrison Sund drafted numerous legal documents.

17. After the fact, 1648 Properties and Stursberg wrongly criticizes Morrison Sund's representation of them in the Titcomb Litigation.[1]

18. One of 1648 Properties' and Stursberg's improper criticisms is for pursuing the receiver motion.

---

[1] As Stursberg has raised an actual controversy about Morrison Sund's work, instituted a civil proceeding against Morrison Sund, and has made allegations about its representation, Morrison Sund is free to shed more light on the accusations and is not bound any confidentiality owed to Stursberg. Minn. R. P. Cond. 1.6(b)(8). It is well established under Minnesota law that even without an express waiver of the attorney-client privilege, the client impliedly waives the privilege where he himself discusses the contents of a professional communication or where he makes an attack upon the professional competence of his counsel. *State v. Walen,* 563 N.W.2d 742, 752 (Minn. 1997); *Melrose Floor Co. v. Lechner,* 435 N.W.2d 90, 92 (Minn. Ct. App. 1989) (stating that the attorney-client privilege may be waived by the plaintiff's choice to sue the lawyer).

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

19.     However, before work began on the receiver motion, Morrison Sund advised 1648 Properties and Stursberg that the court would likely deny the motion for appointment of a receiver because there was limited evidence of imminent harm.

20.     1648 Properties and Stursberg insisted that a Motion for Appointment of Receiver be filed.  Accordingly, Morrison Sund researched, drafted, filed and argued the Motion for Appointment of Receiver as demanded by Stursberg.

21.     The court denied the Motion for Appointment of Receiver ruling there was insufficient evidence of imminent harm.

22.     Another one of 1648 Properties' and Stursberg's improper criticisms is that Morrison Sund did not depose Kent Titcomb.

23.     Kent Titcomb resides in Florida.

24.     Kent Titcomb's wife resides in Florida and was a non-party to the Titcomb Litigation.

25.     Kent Titcomb's wife's brothers reside in Florida and were non-parties to the Titcomb Litigation.

26.     1648 Properties and Stursberg alleged that Kent Titcomb's wife's brothers worked on the properties that were the subject of the Titcomb Litigation.

27.     1648 Properties and Stursberg wanted Morrison Sund to depose these six people: Kent Titcomb, Kent Titcomb's wife, Kent Titcomb's wife's three brothers, Kent Titcomb's Florida bookkeeper.

28.     Making several trips to Florida to depose each of these six people would be costly.

29.     Morrison Sund endeavored to take all six depositions in one trip.

30.     Doing all six depositions in one trip would reduce cost and save 1648 Properties and Stursberg money.

31.     Defense counsel in the Titcomb Litigation would not accept service of subpoenas to compel the depositions of these six people.

32.     Morrison Sund obtained orders appointing commissioners to obtain subpoenas in several different Florida county courts.

33.     Morrison Sund was in the process of coordinating with the 1648 Properties' and Stursberg's Florida counsel for service and scheduling of the depositions but Morrison Sund's representation ended before Morrison Sund deposed Kent Titcomb.

34.     1648 Properties and Stursberg are aggressive and demanding clients.

35.     1648 Properties and Stursberg insisted upon extremely aggressive litigation strategy and tactics in the Titcomb Litigation.

36.     1648 Properties and Stursberg demanded that Morrison Sund remove the Titcomb Litigation to federal court and get a federal prosecutor to arrest Kent Titcomb.

37.     Morrison Sund spent substantial time and effort during the Titcomb Litigation explaining and re-explaining that 1648 Properties and Stursberg were unlikely to succeed in removing the state court action to federal court and attempting to get federal prosecutors involved would be counterproductive to their goal of a business separation.

38.     1648 Properties and Stursberg demanded that Morrison Sund sue Kent Titcomb's wife.

39.     1648 Properties and Stursberg alleged that Kent Titcomb's wife's brothers were undocumented immigrants.

40.     1648 Properties and Stursberg demanded that Morrison Sund attempt to have Kent Titcomb's wife's brothers deported.

41.     1648 Properties and Stursberg believed that the threat of deportation would force a favorable settlement for them in the Titcomb Litigation.

42.     There was no evidence or facts that supported 1648 Properties' and Stursberg's claims regarding Kent Titcomb's wife or Kent Titcomb's wife's brothers.

43.     Morrison Sund explained and re-explained to 1648 Properties and Stursberg that making a threat to deport someone for the purposes of obtaining a favorable settlement agreement is unlawful and unethical and that it is not the job of private counsel to enforce the immigration laws of the United States.

44.     1648 Properties and Stursberg made numerous other similarly baseless demands of Morrison Sund.

45.     Morrison Sund refused to take action on these demands due to their impropriety and lack of factual support. However, each time, Morrison Sund attorneys had to explain and re-explain why 1648 Properties and Stursberg's baseless demands were not ethical, legal or in their best interests to pursue.  These explanations and re-explanations added to the time Morrison Sund attorneys spend on 1648 Properties and Stursberg's case and are part of the unpaid invoices.

46.     Morrison Sund sent monthly invoices to 1648 Properties and Stursberg for the legal services it provided to them pursuant to the Retainer Agreement.

47.     1648 Properties and Stursberg paid Morrison Sund a total of $95,000.00.

48.     1648 Properties' and Stursberg's last payment occurred on December 6, 2019.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

49. On November 22, 2019, Morrison Sund filed a Notice of Withdrawal as Counsel for 1648 Properties and Stursberg in the Titcomb Litigation.

50. In December 2019, 1648 Properties and Stursberg sought a 50% discount of their fees owed to Morrison Sund and offered to pay on a payment plan.

51. By the conclusion of Morrison Sund's representation, 1648 Properties and Stursberg had incurred additional legal fees and costs of at least $199,339.33.

52. Following conclusion of the representation, 1648 Properties and Stursberg repeatedly confirmed to Morrison Sund that they would pay Morrison Sund PLLC's legal bills in full.

53. In a December 13, 2019 email, Henry Stursberg stated:

I have a payment plan with your firm which I have honored. Per your direction I will continue to pay $10,000 per month until the invoice is paid in full. Henry

54. As of November 8, 2020, Morrison Sund is owed at least the following amounts from 1648 Properties and Stursberg:

| | |
|---|---|
| Attorney Fees from Sherburne County Court File 71-CV-18-605: | $191,407.83 |
| Interest on unpaid fees: | $10,782.94 |
| Attorney Fees – Breach of Retainer Agreement: | $63,134.50 |
| Collection Costs/Disbursements: | $19,343.10 |
| **Total:** | **$281,215.58** |

55. While 1648 Properties and Stursberg were refusing to pay Morrison Sund, 1648 Properties and Stursberg were arranging settlements and/or paying their other creditors in the State of Minnesota.

56. 1648 Properties and Stursberg have sought the advice and counsel of at least six separate Minnesota law firms.

57. 1648 Properties and Stursberg owe several Minnesota attorneys and Minnesota law firms for legal representation provided to them.

58. 1648 Properties and Stursberg have a habit of refusing to pay Minnesota attorneys for their legal fees.

59. In December 2019, 1648 Properties and Stursberg retained the law firm of Maslon LLP.

60. Prior to Morrison Sund's representation, 1648 Properties and Stursberg had retained the law firm of Stinson Leonard Street ("Stinson").

61. Several times, Henry Stursberg made disparaging remarks to Morrison Sund attorneys about Stinson that, upon information and belief, are not true.

62. 1648 Properties' and Stursberg's untrue and disparaging statements are illegitimate excuses for not paying their debt to Stinson.

63. Prior to Morrison Sund's representation, 1648 Properties and Stursberg had retained Kevin Dunlevy of Beisel Dunlevy, P.A.

64. 1648 Properties and Stursberg wrongly accuse Morrison Sund of excessive billing.

65. On March 26, 2020, 1648 Properties and Stursberg sued Morrison Sund and Matthew Burton, one of Morrison Sund PLLC's owners in the U.S. District Court for the Eastern District of Pennsylvania Case No. 20-CV-01635 (the "Pennsylvania Action").

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

66.     In the Pennsylvania Action, 1648 Properties and Stursberg seeks, among other things, to avoid their obligations pursuant to the Retainer Agreement and as well as an award of attorney fees against Morrison Sund.

67.     The Pennsylvania Action is frivolous and without merit.

68.     Additionally, the U.S. District Court for the Eastern District of Pennsylvania does not have personal jurisdiction over Morrison Sund.

69.     The U.S. District Court for the Eastern District of Pennsylvania is an inconvenient forum for litigating a breach of contract matter that arose solely in the great State of Minnesota.

70.     Morrison Sund was forced to hire Pennsylvania counsel to defend itself in the Pennsylvania Action.

71.     Morrison Sund is incurring legal fees, costs and disbursements to defend the Pennsylvania action.

72.     The legal fees, costs and disbursements Morrison Sund is incurring in the Pennsylvania Action are recoverable against 1648 Properties and Stursberg under the Retainer Agreement.

73.     During September 2020, 1648 Properties, LLC, Mr. Stursberg and the other Defendants settled their claims in the Titcomb Litigation.

74.     Morrison Sund filed a Notice of Attorney Lien on the Big Lake Property.

75.     Morrison Sund filed UCC-1 financing statements on 1648 Properties and Henry Stursberg.

76.     1648 Properties and Stursberg requested that Morrison Sund remove its Notice of Attorney Lien from the Big Lake Property.

77.     1648 Properties and Stursberg requested that Morrison Sund remove its UCC 1 filing statements.

78.     Upon information and belief, as part of the settlement of the Titcomb litigation, 1648 Properties and Stursberg agreed to relinquish its rights to the Big Lake Property in exchange for payment of money.

79.     Morrison Sund has offered to remove its Notice of Attorney Lien and UCC-1 filing statements in exchange for payment of its account.

80.     1648 Properties and Stursberg refuse to accept Morrison Sund's offer.

81.     1648 Properties and Stursberg have no intention of paying for the services Morrison Sund provided them.

82.     1648 Properties and Stursberg have taken deliberate action to avoid payment of their debts and to frustrate any effort to collect debts from them.

### COUNT I - BREACH OF CONTRACT

83.     Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

84.     On March 18, 2019, 1648 Properties, LLC and Henry Stursberg entered into a Retainer Agreement with Morrison Sund.

85.     The Retainer Agreement is an enforceable contract.

86.     The 1648 Properties, LLC and Henry Stursberg retained Morrison Sund to represent them in "litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park."

87.     Morrison Sund performed legal services for 1648 Properties, LLC and Henry Stursberg.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

88.     1648 Properties, LLC and Henry Stursberg agreed to pay invoices within 15 days after the billing date, to "review all bills or invoices it receives from the Firm and that it will notify Firm promptly of any issues or concerns it has with its bill" and "to pay interest to the Firm at the rate of 5% per annum on all fees and expenses."

89.     On numerous occasions, 1648 Properties, LLC and Henry Stursberg reaffirmed their promise to pay for these services.

90.     1648 Properties, LLC and Henry Stursberg have failed to become current on their outstanding balance.

91.     Therefore, 1648 Properties, LLC and Henry Stursberg have breached the contract.

92.     The Retainer Agreement specifically states that "Clients agree to pay the costs incurred by the Firm to collect overdue fees and expenses, including attorneys' fees at the rate of $200.00 per hour."

93.     Morrison Sund has incurred and continues to incur attorneys' fees, costs, disbursements, and interest as a direct and proximate result of 1648 Properties, LLC's and Henry Stursberg's breach of contract.

94.     Morrison Sund has incurred and continues to incur attorneys' fees, costs, disbursements, and interest as a direct and proximate result of 1648 Properties, LLC's and Henry Stursberg's failure to make timely payment pursuant to the Retainer Agreement.

95.     Morrison Sund has incurred and continues to incur attorneys' fees, costs, disbursements, and interest as a direct and proximate result of 1648 Properties, LLC's and Henry Stursberg's continued assertion of frivolous claims that seek to avoid liability under the Retainer Agreement.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

96.     Accordingly, Morrison Sund has been damaged in an amount exceeding $50,000.00 exclusive of interest, costs and disbursements.

## COUNT II - ACCOUNT STATED

97.     Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

98.     As alleged above, Morrison Sund sent Invoices to 1648 Properties, LLC and Henry Stursberg demanding total payment of the unpaid balance.

99.     1648 Properties, LLC and Henry Stursberg received these invoices, did not object to or dispute the amount owed.

100.    On or about December 13, 2019, Henry Stursberg acknowledged 1648 Properties, LLC's and Stursberg's obligation to pay the invoices and promised to pay Morrison Sund PLLC "in full."

101.    1648 Properties, LLC and Henry Stursberg acquiesced to the amount owed as shown by the Invoices they received and to which they did not object and to which they promised to pay.

102.    Therefore, 1648 Properties, LLC and Henry Stursberg is liable to Morrison Sund for account stated in the total amount of $199,339.33, plus prejudgment interest, attorneys' fees, costs and disbursements.

## COUNT III - UNJUST ENRICHMENT

103.    Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

104.    Morrison Sund preformed legal services for the 1648 Properties, LLC and Henry Stursberg.

105.     Morrison Sund represented the 1648 Properties, LLC and Henry Stursberg in litigation against Kent Titcomb and related entities regarding Big Lake Mobile Home Park and Sherburne Village Mobile Home Park.

106.     1648 Properties, LLC and Henry Stursberg were enriched by a vigorous and intense defense of their legal interests that ultimately led to a settlement benefitting 1648 Properties, LLC and Henry Stursberg.

107.     1648 Properties, LLC and Henry Stursberg has failed to pay Morrison Sund PLLC the reasonable value of the legal services provided to them.

108.     It is unjust and unreasonable for 1648 Properties, LLC and Henry Stursberg to obtain the fruits of Morrison Sund's labor without payment.

109.     Accordingly, Morrison Sund has been damaged in an amount exceeding $50,000.00 exclusive of attorneys' fees, interest, costs and disbursements.

## COUNT IV – FRAUD

110.     Morrison Sund restates and re-alleges each and every allegation contained herein and incorporates the same by reference.

111.     Before Morrison Sund, PLLC represented 1648 Properties, LLC and Henry Stursberg, 1648 Properties, LLC and Henry Stursberg avoided paying their previous attorneys the full value of the legal services provided to them including but not limited to Stinson, LLP and Beisel & Dunlevy P.A.

112.     On March 18, 2019 when 1648 Properties, LLC and Henry Stursberg executed Morrison Sund PLLC's Retainer Agreement, they had no intention of paying Morrison Sund PLLC for all of the legal work they were about to demand Morrison Sund PLLC perform.

113.     Thus, 1648 Properties, LLC and Henry Stursberg knowingly and intentionally misrepresented that they would pay for the legal services rendered to them by Morrison Sund, PLLC when they entered into the Retainer Agreement.

114.     In subsequent communications oral and written, 1648 Properties, LLC and Henry Stursberg knowingly and intentionally misrepresented that they would pay for their account owing to Morrison Sund, PLLC.

115.     Morrison Sund, PLLC relied on 1648 Properties, LLC's and Henry Stursberg's promise to pay for legal services and began performing work to protect on 1648 Properties, LLC's and Henry Stursberg's interests in the Minnesota properties.

116.     Had Morrison Sund PLLC known that 1648 Properties, LLC and Henry Stursberg did not intend to pay it for its services, Morrison Sund PLLC would not have entered into the Retainer Agreement or performed work for Plaintiffs.

117.     After Morrison Sund PLLC had performed a substantial amount of work and it came time for 1648 Properties, LLC and Henry Stursberg to pay for that work, like they had done with Stinson, LLP and Beisel & Dunlevy PA, 1648 Properties, LLC and Henry Stursberg refused to pay for the legal services rendered to them by Morrison Sund PLLC.

118.     Furthermore, 1648 Properties, LLC and Henry Stursberg are attempting to secrete their non-exempt assets from Minnesota in order to put their assets beyond the reach of Minnesota Courts thereby frustrating Morrison Sund PLLC's collection efforts.

119.     In furtherance of this fraud, 1648 Properties, LLC and Henry Stursberg filed a frivolous lawsuit against Morrison Sund PLLC and one of its attorneys in the United States District Court Eastern District of Pennsylvania, Case No. 2:20-cv-01635-KSM ("Pennsylvania Action") in an attempt to harass Morrison Sund PLLC into dropping its claims for attorney fees.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

120.    Morrison Sund PLLC has had to incur attorneys' fees, interest, costs and disbursements defending the Pennsylvania Action.

121.    While representing 1648 Properties, LLC and Henry Stursberg, Morrison Sund, PLLC expended hundreds of hours of attorney and legal assistant time, incurred business expenses, and incurred costs.

122.    While representing 1648 Properties, LLC and Henry Stursberg, Morrison Sund PLLC's attorneys could not use the same time to represent other clients and generate income from other clients.

123.    1648 Properties, LLC's and Henry Stursberg's fraudulent representations are the actual and proximate cause of Morrison Sund PLLC's damages.

124.    Morrison Sund PLLC's injuries from the fraudulent misrepresentations are separate and distinguishable from its damages arising from breach of the retainer agreement.

125.    Accordingly, Morrison Sund, PLLC has suffered compensatory damages in an amount exceeding $50,000.00 exclusive of attorneys' fees, interest, costs and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Morrison Sund prays for the following relief:

1.    That Plaintiffs take nothing as and for their pretended causes of action;

2.    That the Complaint be dismissed with prejudice and on the merits;

3.    That Morrison Sund, PLLC be awarded judgment on its Counterclaim against 1648 Properties, LLC and Henry Stursberg, jointly and severally;

4.    That Morrison Sund be awarded prejudgment interest, costs, disbursements, and reasonable attorneys' fees as allowed at law or by contract; and

5.    For any other relief this Court deems just and equitable.

Filed in District Court
State of Minnesota
11/24/2020 2:43 PM

# JURY DEMAND

Pursuant to Rule 38 of the Minnesota Rules of Civil Procedure, Morrison Sund, PLLC

demands a trial by jury on all issues appropriate for the jury to consider.

**MORRISON SUND PLLC**

Dated:  November 24, 2020

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. § 549.211.


*/s/ Ryan R. Dreyer*

*/s/ Ryan R. Dreyer*
Ryan R. Dreyer (0332252)
Eric G, Nasstrom (0278257)
5125 County Road 101
Suite 200
Minnetonka, MN  55345
P:  (952) 975-0050
F:  (952) 975-0058
E:  rdreyer@morrisonsund.com
      enasstrom@morrisonsund.com

***ATTORNEYS FOR DEFENDANT
MORRISON SUND PLLC***

1509425