UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Henry Stursberg,                              File No. 22-cv-00841 (ECT/ECW)

            Plaintiff,

v.                                            **OPINION AND ORDER**

Morrison Sund PLLC and
Matthew Burton,

            Defendants.

---

Amy S. Conners and Michael A. Stephani, Best & Flanagan LLP, Minneapolis, MN, and Daniel S. Bernheim, Wilentz, Goldman & Spitzer, P.A., Philadelphia, PA, for Plaintiff Henry Stursberg.

Eric G. Nasstrom and Ryan R. Dreyer, Morrison Sund PLLC, Minnetonka, MN, for Defendants Morrison Sund PLLC and Matthew Burton.

---

In this diversity case, Plaintiff Henry Stursberg alleges that Defendant Morrison Sund, a law firm, abused the process available in the United States Bankruptcy Courts by filing a "wrongful and knowingly false" involuntary Chapter 7 case against him under 11 U.S.C. § 303. Stursberg asserts state common-law tort claims and seeks compensatory damages in excess of $1 million and punitive damages.

Morrison Sund has filed a motion to dismiss Stursberg's original Complaint, ECF No. 24, and a subsequent motion to dismiss an Amended Complaint that Stursberg claims to have filed properly as a matter of course under Federal Rule of Civil Procedure 15, ECF No. 32. Morrison Sund's motion to dismiss the Amended Complaint will be granted

because the pleading was not authorized.  The motion to dismiss the original Complaint will be granted because a Bankruptcy Code provision, 11 U.S.C. § 303(i), preempts Stursberg's state claims.

I[1]

*The Parties.*  "Stursberg is the principal owner of a mortgage brokerage and financial consulting firm located in Philadelphia[,]," where he also lives.  Compl. [ECF No. 1] ¶¶ 2, 7.  The firm arranges financing for mobile-home parks throughout the United States.  *Id.* ¶ 8.  Morrison Sund is a law firm with its principal place of business in Minnetonka, Minnesota.  *Id.* ¶ 3.

*Stursberg and a former business partner have a falling out.*  This case's origins trace to a dispute between Stursberg and Ken Titcomb, a former client of Stursberg's firm.[2]  In 2013, Stursberg and Titcomb together purchased two mobile-home parks in Minnesota, one in Big Lake and one in Princeton.  *Id.* ¶¶ 9–10.  Stursberg and Titcomb each formed an entity to own the parks.  *Id.* ¶ 11.  Stursberg formed an entity called 1648 Properties, LLC, and it owned 49% of the parks.  *Id.*  Titcomb formed an entity called Amicorp, Inc.,

---

[1]     In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Complaint, *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014), or from public records embraced by the Complaint, *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).  Public records embraced by the Complaint here include court orders and other records of court proceedings.  *C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 764 (8th Cir. 2012).

[2]     A more complete description of the facts underlying this dispute appears in *Stursberg v. Morrison Sund, PLLC*, No. 20-cv-1635-KSM, 2020 WL 7319546, at *2– 3 (E.D. Pa. Dec. 11, 2020), *reconsideration denied*, 2021 WL 288899 (E.D. Pa. Jan. 28, 2021).

2

and it owned 51% of the parks. *Id.* Titcomb managed the parks' day-to-day operations. *Id.* ¶ 15. "By 2017," Stursberg determined that Titcomb's parks-related operational and business activities had become "intolerable." *Id.* ¶ 17. In May 2018, after attempts at selling the parks and mediating their disputes did not succeed, *see id.* ¶¶ 17–20, Stursberg's entity, 1648 Properties, brought suit against Titcomb and his entity, Amicorp, in Minnesota state district court, *id.* ¶¶ 21–22. The Complaint calls this case the "Minnesota Action," *id.* ¶ 22, and that convention will be followed here.

*Stursberg and 1648 Properties retain Morrison Sund to represent their interests in the Minnesota Action, but the relationship terminates after roughly eight months.* Stursberg and 1648 Properties retained Morrison Sund on March 18, 2019. *Id.* ¶ 23. Morrison Sund principal Matthew Burton was the primary attorney responsible for the matter. *Id.* Morrison Sund was the third law firm Stursberg retained in the case. *See id.*, Ex. B [ECF No. 1-6] at 9 (transcript p. 26) (identifying first two firms).[3] "From March 2019 until November 2019, Morrison Sund ran up legal fees of approximately $300,000 and accomplished basically nothing." *Id.* ¶ 24. Stursberg identifies several tasks the law firm failed to complete. *Id.* ¶¶ 24–25. And Stursberg alleges that the firm "wasted time with sanctions motions and other unproductive activities." *Id.* ¶ 24. In November 2019, Stursberg notified Morrison Sund "of the apparent necessity to change counsel." *Id.* ¶ 26. "Rather than wait for replacement counsel to enter their appearance, Morrison Sund withdrew from the case and began issuing threatening emails to Stursberg advising him

---

[3]      Unless noted otherwise, page cites are to ECF pagination, not to the exhibit's original pagination.

that the firm's fees as of November 27, 2019[,] were $170,346.82 and that another $30,351.50 was to be billed, for a total of $200,698.32." *Id.* "As of that date, 1648 Properties had already paid Morrison Sund $95,000.00." *Id.*

*Morrison Sund files an involuntary Chapter 7 bankruptcy petition against Stursberg, and the Bankruptcy Court dismisses the petition.* Morrison Sund filed the petition in the United States Bankruptcy Court for the District of Minnesota on January 8, 2020. *Id.*, Ex. A at 2. The petition's filing followed additional communications between the firm and Stursberg regarding the firm's outstanding bills, with the firm threatening collection efforts and Stursberg insisting "that Morrison Sund cease issuing threats over collection of his invoices which appeared padded and for actions not authorized nor completely litigated." *See id.* ¶¶ 27–28. One week after the petition's filing, on January 15, 2020, Bankruptcy Judge Kathleen H. Sanberg held an expedited hearing. *See id.* Ex. B [ECF No. 1-6]. At that hearing, Judge Sanberg expressed concern that Morrison Sund had filed the petition, not in the interest of Stursberg's creditors generally, but instead as a "debt collection device," which she viewed as "a huge problem." *Id.* ¶ 32 and Ex. B at 9 (Tr. at 28). Judge Sanberg remarked: "[W]hen I look at this whole case, it – quite frankly, it smells bad." *Id.* (Tr. at 29). On Stursberg's request, and with Morrison Sund's agreement, Judge Sanberg dismissed the petition specifically under 11 U.S.C. § 305(a)(1) (entitled "**Abstention**"); Stursberg sought a § 305(a)(1) dismissal specifically because it did not require Stursberg to "notify all creditors as would otherwise be necessary for a dismissal under" a different section of the Bankruptcy Code, 11 U.S.C. § 303. *Id.* ¶ 31 and

4

Ex. B at 10 (Tr. at 33), 11 (Tr. at 36–37).  Judge Sanberg ordered this dismissal from the bench at the conclusion of the January 15 hearing.  *See id.* Ex. B at 11 (Tr. at 36–37).

*Stursberg sues Morrison Sund and Burton in the United States District Court for the Eastern District of Pennsylvania.*  Stursberg filed the case on March 26, 2020.  *See Stursberg v. Morrison Sund, PLLC*, No. 20-cv-1635-KSM, 2020 WL 7319546, at *5 (E.D. Pa. Dec. 11, 2020), *reconsideration denied*, 2021 WL 288899 (E.D. Pa. Jan. 28, 2021). Stursberg asserted claims for abuse of process, wrongful use of civil proceedings, intentional infliction of emotional distress, intentional interference with existing and prospective contractual relations, breach of contract, and credit defamation.  *See id.* at *1, *5.  Morrison Sund moved to dismiss the case on four grounds.  Three of these grounds— insufficient service of process, lack of personal jurisdiction, and improper venue—were essentially procedural.  *Id.* at *1.  One was substantive—Morrison Sund argued that the Bankruptcy Code preempted Stursberg's state-law claims.  *Id.*  In a thorough memorandum opinion, District Judge Karen Spencer Marston granted Morrison Sund's motion on all three procedural grounds.  Judge Marston determined first that Stursberg had failed to show that the Morrison Sund receptionist who signed a certified-mail receipt for the summons and complaint was authorized to accept service.  *Id.* at *5–6.  Judge Marston next determined that the court lacked personal jurisdiction over Stursberg's claims for breach of contract, intentional infliction of emotional distress, contractual interference, and credit defamation.  *Id.* at *12–15.  Finally, Judge Marston determined that venue in that court was improper over Stursberg's abuse-of-process and wrongful-use-of-proceedings claims.  *Id.* at *15–18.

*While his case is pending in the Eastern District of Pennsylvania, Stursberg returns to the Bankruptcy Court in Minnesota with a motion seeking attorney fees and other relief.* Stursberg filed the motion on May 18, 2020.  ECF No. 6-1 at 282–84.  In the motion, Stursberg sought to recover "his attorneys' fees and costs that were reasonably incurred by him in seeking the dismissal of the Involuntary Petition" filed by Morrison Sund, an order "reserving [his] right to file and pursue claims and remedies under 11 U.S.C. § 303(i)(2) or otherwise" and other unspecified relief that the court might have found "just and appropriate."  *Id.* at 284.  Judge Sanberg held a hearing on the motion on June 10, 2020.  *See* ECF No. 6-1 at 6–67 (hearing transcript).  Judge Sanberg denied the motion from the bench for two basic reasons.  First, she determined that the motion was untimely under Fed. R. Bankr. P. 7054.  That rule, as Judge Sanberg explained, requires that "a motion for fees and related nontaxable expenses must be filed no later than 14 days after entry of judgment[.]"  ECF No. 6-1 at 57.  Judge Sanberg explained:

> Here the court entered judgment on January 15, 2020.  Under the Federal Bankruptcy Rules and Rules of Civil Procedure, the deadline to file a motion for fees and costs expired on January 29, 2020.  [Stursberg] did not file the instant motion until May 18, 2020, over 100 days after the time expired.

*Id.* at 59.  Second, Judge Sanberg determined that "dismissals pursuant to [11 U.S.C. §] 305 preclude recovery under section 303(i)."  *Id.* at 60.  As support for this determination, Judge Sanberg cited the "plain language" of § 303(i) and decisions from bankruptcy courts within the Eighth Circuit holding that "damages under 303(i) are unavailable in a case dismissed under 305."  *Id.* at 61.  Judge Sanberg also observed that these decisions' "underlying rationale is sound."  *Id.*  She explained: "It would be inconsistent to decline to

6

exercise jurisdiction and dismiss a case on the grounds that the parties' interests are best served by the court's noninvolvement but then consider a suit for damages stemming from the same procedure." *Id.*

*Stursberg commences this case in the Eastern District of Pennsylvania, and that court transfers the case here.* Stursberg filed this case originally in the Eastern District of Pennsylvania on February 23, 2021. *See* Compl. In his Complaint, Stursberg asserted claims for abuse of process (Count I) and wrongful use of civil proceedings (Count II) against Morrison Sund. *See id.* ¶¶ 37–53. Morrison Sund moved to dismiss the Complaint in that court, raising several procedural and substantive defenses including that the case be transferred to the District of Minnesota. *See* ECF No. 6. Judge Marston granted Morrison Sund's transfer motion (without addressing the other grounds for dismissal raised by Morrison Sund). *See* ECF Nos. 15, 16. In view of Stursberg's failure to address Morrison Sund's improper-venue argument, Judge Marston ordered transfer under 28 U.S.C. § 1406(a). ECF No. 15 at 5–6. Alternatively, Judge Marston determined that transfer would be appropriate under 28 U.S.C. § 1404(a). *Id.* at 6–8. The case arrived here on April 14, 2022, ECF No. 17.

*Left for decision following transfer are Morrison Sund's motion to dismiss and the propriety of Stursberg's Amended Complaint.* Following transfer, Morrison Sund renewed its motion to dismiss. ECF No. 24. Stursberg responded by filing a purported Amended Complaint that adds Burton as a Defendant and that adds claims for intentional infliction of emotional distress and intentional interference with existing and prospective contractual relations. ECF No. 29. Morrison Sund and Burton then filed an amended motion

challenging the Amended Complaint's procedural propriety and, failing that, the claims asserted in it.  ECF No. 32.  Morrison Sund raises essentially four issues: (1) whether Stursberg's Amended Complaint is operative; (2) whether Stursberg's claims are barred by claim preclusion; (3) whether Stursberg's claims are preempted by the Bankruptcy Code, specifically 11 U.S.C. § 303(i); and (4) failing all of those arguments, whether Stursberg's claim against Burton for intentional infliction of emotional distress is barred by the applicable statute of limitations.[4]

## II

A plaintiff may amend his complaint once as a matter of course within 21 days after serving it or, if it is one to which a responsive pleading is required, then within 21 days after being served with a motion under rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Stursberg's post-transfer Amended Complaint is not operative.  Stursberg filed no amended complaint while the case was pending in the Eastern District of Pennsylvania. Stursberg served his Complaint on February 26, 2021.  ECF No. 2.  And Morrison Sund filed its Rule 12(b) motion on April 27, 2021.  ECF No. 6.  At the latest, then, Stursberg's

---

[4]     There is another case in Minnesota state court between 1648 Properties/Stursberg and Morrison Sund.  *See 1648 Properties, LLC v. Morrison Sund, PLLC*, No. A21-0432, 2022 WL 93369 (Minn. Ct. App. Jan. 10, 2022), *review denied* (Minn. Apr. 19, 2022).  In this case, 1648 Properties and Stursberg sought to remove an attorney lien Morrison Sund placed on property in which 1648 Properties possessed an interest, and Morrison Sund counterclaimed seeking recovery of its unpaid legal fees via a breach-of-contract claim. *See id.* at *1–2.  This second Minnesota state court case, however, has no bearing on the legal questions presented by Morrison Sund's dismissal motion in this case.

deadline to amend his complaint as a matter of right in that court was May 18, 2021, or 14 days after Morrison Sund filed and served its motion.  Fed. R. Civ. P. 15(a)(1).  In other words, had the case remained in that court, Stursberg plainly missed his chance to amend as of right.

The fact that the case was transferred here did not result in a re-start or revive Stursberg's ability to amend as a matter of course.  As the leading treatise explains:

> When an action is transferred, it remains in the posture it was in and all further proceedings in the action merely are referred to and determined by the transferee tribunal.  This leaves in place whatever already has been done in the transferor court.  Of course, the transfer order does not terminate the action.  Rather, for all purposes, including tolling of the statute of limitations, the action is ongoing.  If the defendant's motion to transfer is granted before the defendant has filed an answer, the plaintiff still may take a voluntary dismissal of the action under Civil Rule 41(a), and amend as a matter of right under Civil Rule 15(a) *if that option has not been exhausted*.

15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure: Venue in the District Courts* § 3846 at 102–03 (4th ed. 2013) (emphasis added).  To put the issue in the treatise's phrasing, then, Stursberg exhausted his right to amend as a matter of course while this case remained in the Eastern District of Pennsylvania, and this exhaustion is left in place following that court's transfer order.

Against this authority, Stursberg's position is not persuasive.  He argues that "a plain reading of" Rule 15(a) shows that Morrison Sund's filing of a renewed Rule 12(b) motion post-transfer essentially revived his ability to amend the Complaint as of right.  Pl.'s Mem. in Opp'n [ECF No. 37] at 8.  This argument does not account for the nature of an inter-district transfer as described in the above-quoted treatise: this court receives the case

in the same status as if it had remained in the transferor court. The only thing that changed is the court in which the case will be adjudicated. *Cf. Van Dusen v. Barrack*, 376 U.S. 612, (1964) ("We believe, therefore, that both the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms."). In other words, Rule 15(a) cannot be applied here without accounting for Stursberg's pre-transfer exhaustion of his right to amend as a matter of course.[5]

### III

### A

Morrison Sund first argues that the Bankruptcy Court's judgment dismissing Stursberg's involuntary petition precludes Stursberg from pursuing this case and seeking damages from Morrison Sund arising from its filing of the involuntary petition. This argument invokes the doctrine of claim preclusion. *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001). Claim preclusion does not implicate a federal court's subject-matter jurisdiction. *Knutson v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010) ("Full faith and credit comprises the law of issue and claim preclusion and 'is not a jurisdictional matter.'") (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 293 (2005)).

---

[5]    In a footnote, Stursberg seems to suggest he nonetheless should be granted leave to file the Amended Complaint under Rule 15(a)(2). *See* Pl.'s Mem. in Opp'n at 8 n.5. Stursberg, however, has filed no motion seeking leave, much more a motion that complies with D. Minn. LR 15.1. *See GWG DLP Funding V, LLC v. PHL Variable Ins. Co.*, 54 F.4th 1029, 1035–37(8th Cir. 2022) (affirming with-prejudice dismissal for failure to comply with D. Minn. LR 15.1). This request is therefore denied.

Therefore, this aspect of Morrison Sund's motion is decided under the familiar standards governing Rule 12(b)(6) motions.

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint's factual allegations need not be detailed, but they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the claim-preclusion doctrine, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507–08 (2001)). A bankruptcy court is a federal court, so it follows that the preclusive effect of a bankruptcy court's judgment is determined by federal law. *See In re Kane*, 254 F.3d 325, 328 (1st Cir. 2001). Under federal common law, claim preclusion applies when "'(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based

upon the same claims or causes of action.'" *Elbert*, 903 F.3d at 782 (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). "'[W]hether two claims are the same for [claim preclusion] purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate.'" *Id.* (quoting *Murphy v. Jones*, 877 F.2d 682, 684–85 (8th Cir. 1989)). Claim preclusion is an affirmative defense that a defendant must plead and prove, but a court may nonetheless dismiss an action on this basis under Rule 12(b)(6) if the complaint (including public records and documents it embraces) establishes that the plaintiff's claims are precluded. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012).

The Bankruptcy Court's judgment dismissing Stursberg's involuntary petition does not preclude Stursberg's claims in this case because the Bankruptcy Court's judgment was not "on the merits." Recall that Stursberg requested, Morrison Sund agreed to, and Judge Sanberg ordered the involuntary petition dismissed under 11 U.S.C. § 305. *See* ECF No. 1-6 at 3 (Tr. at 3) (noting Stursberg's request under § 305(a)(1)); 10 (Tr. at 33) (noting Morrison Sund's "support" for Stursberg's requested dismissal); 11 (Tr. at 36–37) (noting Judge Sanberg's decision "to dismiss the petition under 305").

Section 305 allows a bankruptcy court to abstain from exercising its jurisdiction in a case if the court finds, as relevant here, that "the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a)(1); *see also In re Pennino*, 299 B.R. 536, 538–39 (B.A.P. 8th Cir. 2003) (explaining that § 305 "permits a court to abstain and dismiss a case"). Bankruptcy Judge Gregory F. Kishel has described § 305 as follows:

> This is a grant of authority to decline to exercise another grant of authority. The initial grant, of course, is the endowing of jurisdiction over all cases under the Bankruptcy Code and all civil proceedings arising in them, which is given by 28 U.S.C. §§ 1334(a)–(b). Under § 305(a), however, the bankruptcy court may decline to exercise that jurisdiction, relegating a debtor and its creditors to the governance of non-bankruptcy law. H.R. REP. No. 595, 95th Cong. 1st Sess. 325 (1977); S. REP. No. 989, 95th Cong.2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787. *See also In re G–N Partners,* 48 B.R. 459, 461 (Bankr.D.Minn.1985) ("Congress has therefore given the Court the power to actually decline the jurisdiction that Congress has given it . . . ").

*In re NRG Energy, Inc.*, 294 B.R. 71, 79 (Bankr. D. Minn. 2003); *see also In re Mikkelson*, 499 B.R. 683, 697–98 (Bankr. D.N.D. 2013) (analyzing applicable factors and declining to abstain under § 305). This is how Judge Sanberg understood her order of January 15, 2020—that is, as an abstention. Among other reasons Judge Sanberg cited to deny Stursberg's later motion for attorneys' fees and other relief, she explained: "It would be inconsistent to *decline to exercise jurisdiction* and dismiss a case on the grounds that the parties' interests are best served by the court's noninvolvement but then consider a suit for damages stemming from the same procedure." ECF No. 6-1 at 61 (emphasis added).

An abstention order, however, is not "on the merits" for purposes of claim preclusion. *See, e.g.*, *Amadi v. Dep't of Children & Families*, 245 F. Supp. 3d 316, 320 (D. Mass. 2017); *Thaler v. Casella*, 960 F. Supp. 691, 697 (S.D.N.Y. 1997); *see also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 4436 at 168–70 (3d ed. 2017) ("If circumstances make it appropriate for a federal court to dismiss rather than stay an action on the basis of 'abstention' . . . , the dismissal does not preclude a second action on the

same claim."). The abstention-based dismissal of Stursberg's involuntary petition thus does not bar Stursberg's claims in this case under federal claim-preclusion principles.[6]

B

Morrison Sund next argues that the Bankruptcy Code—specifically 11 U.S.C. § 303(i)—preempts the state claims Stursberg asserts in his Complaint for abuse of process and wrongful use of civil proceedings. For this argument, Morrison Sund relies on many non-binding federal and state decisions determining in various contexts that the Bankruptcy Code preempts state claims based on Code violations. Among these decisions are several holding specifically that § 303(i) preempts state claims seeking damages arising from the assertedly bad faith or improper filing of an involuntary bankruptcy petition. Neither the Supreme Court nor the Eighth Circuit have addressed whether § 303(i) preempts state law claims arising from the allegedly wrongful commencement of an involuntary bankruptcy petition.

Begin by identifying and differentiating among the preemption doctrines. There is "complete preemption"—it "only applies where a federal statute 'so completely pre-

---

[6]    This issue—whether a § 305(a)(1) abstention is a judgment on the merits—was not the subject of briefing. And before Judge Sanberg, the Parties expressed positions that seem contrary to how they might have addressed this issue in the context of this motion. At the hearing on January 15, 2020, Stursberg expressed the understanding that § 305(a)(1) authorizes dismissal "*or*" abstention and asked explicitly and repeatedly for the former. *See, e.g.*, ECF No. 1-6 at 3 (Tr. at 4, 5), 4 (Tr. at 7). The non-abstention-based dismissal Stursberg evidently sought, if it were possible, might be a judgment on the merits. In contrast, at the hearing on June 10, 2020, Morrison Sund expressed its understanding "that when the court [as Judge Sanberg had] abstains under 305, it declines to exercise jurisdiction[.]" ECF No. 6-1 at 42. In other words, Morrison Sund's position before the Bankruptcy Court seems at odds with its position here that the Bankruptcy Court's dismissal was on the merits.

14

empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal.'" *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "A conclusion that there is complete preemption effectively maintains that 'the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute.'" *Id.* (quoting *King v. Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). Complete preemption may have jurisdictional consequences. This occurs, for example, in removed cases where a pleaded state-law claim is completely preempted by a federal statute—*i.e.*, the claim, though pleaded under state law, in fact arises under federal law for purposes of the well-pleaded-complaint rule thus establishing federal-question jurisdiction. *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). In contrast to complete preemption, "[o]rdinary preemption is a federal defense that exists where a federal law has superseded a state law claim." *Johnson*, 701 F.3d at 248. There are three types of ordinary preemption. (1) "Express preemption occurs where a federal law explicitly prohibits or displaces state regulation in a given field." *Id.* (2) Conflict preemption, as its name implies, occurs where a state law "directly conflicts with federal law." *Id.* "Conflict preemption occurs when compliance with both federal and state laws is impossible, and when a state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Keller v. City of Fremont*, 719 F.3d 931, 940 (8th Cir. 2013) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). (3) Finally, there is field preemption. "Where Congress occupies an entire field . . . even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state

regulation in the area, even if it is parallel to federal standards." *Arizona v. United States*, 567 U.S. at 401.

Section 303 of the Code governs involuntary cases, and it establishes a comprehensive adjudicatory regime over which the federal district courts have exclusive jurisdiction. 28 U.S.C. § 1334(a); *see also id.* § 157(a) (authorizing district courts to refer all cases "arising under title 11" to the district's bankruptcy judges); *In re McDonald*, 590 B.R. 506, 509 (B.A.P. 8th Cir. 2018) ("Claims that *arise under* title 11 involve causes of action created or determined by a statutory provision of title 11."). Section § 303, for example, gives the debtor the chance to controvert the petition and, unless otherwise ordered, to continue to operate any business and "continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. §§ 303(d), (f). "After notice and a hearing, and for cause, the court may require the petitioners . . . to file a bond to indemnify the debtor for such amounts as the court may later allow under [§ 303(i)]." *Id.* § 303(e). "Section 303(i) provides that if an involuntary case is dismissed, other than on the consent of the debtor and the petitioning creditors, and assuming the debtor has not waived its rights under [§] 303(i), petitioning creditors may be liable to the debtor for various sums." 2 Richard Levin and Henry J. Sommer *Collier on Bankruptcy* ¶ 303.33 (16th ed. 2018). These sums include reasonable attorneys' fees and costs and, if the bankruptcy court finds that the petition was filed in bad faith, then compensatory and punitive damages. 11 U.S.C. § 303(i).

Though "11 U.S.C. § 303(i) is almost uniformly held to preempt a debtor's state law claims against petitioning creditors[,]" *In re John Richards Homes Bldg. Co., L.L.C.*, 298

B.R. 591, 598 (E.D. Mich. 2003), the cases do not reflect consensus regarding which preemption doctrine justifies this conclusion. For example, in *In re Miles*, the Ninth Circuit held that "11 U.S.C. § 303(i) completely preempts state law tort causes of action for damages predicated upon the filing of an involuntary bankruptcy petition," meaning that complaints alleging only state-law causes of action had been properly removed to bankruptcy court because the complaints in fact asserted claims under § 303(i). 430 F.3d 1083, 1086–93 (9th Cir. 2005). The Ninth Circuit then determined that the § 303(i) claims failed on their merits because the court interpreted § 303(i) to provide only the debtor with a claim, and the plaintiffs in the case were non-debtor third parties. *Id.* at 1093–94.[7] By contrast, in *Koffman v. Osteoimplant Tech., Inc.*, the district court applied ordinary preemption principles to conclude that the Bankruptcy Code preempted state-law claims for abuse of process and malicious prosecution. 182 B.R. 115, 127 (D. Md. 1995). The court focused its analysis "on the extent to which Congress has occupied the field of sanctioning improper behavior in bankruptcy proceedings, and the extent to which allowing state courts to rule on the propriety of actions taken in a federal court in alleged violation of federal statutes would present an obstacle to the achievement of the objectives of Congress in enacting the Bankruptcy Code." *Id.* at 123. Thus, while the court did not call out field or conflict preemption explicitly, it seems to have grounded its decision on

---

[7]    An earlier Ninth Circuit case held that state courts lack jurisdiction to adjudicate a state-law abuse-of-process claim contesting the validity of a Chapter 11 bankruptcy petition based essentially on the exclusive jurisdiction federal courts possess over bankruptcy petitions. *Gonzales v. Parks*, 830 F.2d 1033, 1035–37 (9th Cir. 1987).

these concepts. *Id.*; *see also Glannon v. Garrett & Assocs., Inc.*, 261 B.R. 259, 263–66 (D. Kan. 2001).

The question is close and difficult, but I conclude that Stursberg's state tort claims are at least conflict preempted. The conflict arises from Congress's evident objective to create a damages claim arising from an involuntary case's bad faith filing and place exclusive responsibility for adjudicating such claims in the bankruptcy courts. "Section 303(i) does not create an independent cause of action." 2 *Collier on Bankruptcy* ¶ 303.33[1]. "The prayer for relief must be made in connection with the underlying proceeding in the bankruptcy court. This means that the same court that dismisses the petition is the court that may award damages under [§] 303(i)." *Id.* Section 303(i) thus reflects a congressional objective that the same bankruptcy court in which the involuntary case was filed and dismissed determine in the exercise of its discretion whether attorney's fees or costs should be awarded to the debtor, determine whether the petition was filed in "bad faith," and, if the answer to that question is "yes," then determine whether, and in what amount, compensatory and punitive damages should be awarded to the debtor. 11 U.S.C. § 303(i). Allowing Stursberg's claims to proceed would mean that a jury would decide whether to award relief, under state standards that perhaps differ from those applied under § 303(i). It is difficult to reconcile that prospect with § 303(i)'s remedial regime.

If Stursberg's claims for abuse of process and wrongful use of civil proceedings survived conflict preemption, I would adopt the reasoning of those federal courts that have found similar claims preempted based on broader preemption principles. *E.g.*, *In re Miles*, 430 F.3d at 1089–91; *In re Rosenberg*, Nos. 09-13196-BKC-AJC and 10-3812-BKC-AJC-

A, 2012 WL 1021724, at **6–7 (Bankr. S.D. Fla. Mar. 26, 2012); *Glannon*, 261 B.R. at 263–66; *Koffman*, 182 B.R. at 123–128; *Mason v. Smith*, 672 A.2d 705, 706–09 (N.H. 1996); *cf. In re Reid*, 854 F.2d 156, 161 (7th Cir. 1988) (finding that "§ 303(i) . . . has pre-empted the judiciary's equitable power to redistribute attorneys' fees in bankruptcy cases").[8]

Stursberg argues that a line of Third Circuit cases, beginning with *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47 (3d Cir. 1988), hold that § 303(i) does not preempt state-law damages claims arising from the frivolous or bad faith filing of an involuntary bankruptcy case, and he argues these cases should be followed here.  This is not persuasive.

*Paradise Hotel* involved the filing of an involuntary Chapter 7 case against a hotel operator/debtor (Paradise) by the hotel operator's creditors.  *Id.* at 48.  "According to Paradise, this filing immediately created a crisis in relations between Paradise and its other creditors, resulted in conditions under which Paradise could not meet the demands of its creditors, on a current basis, and left Paradise with no alternative but to file a voluntary petition under Chapter 11[.]"  *Id.*  At Paradise's request, the bankruptcy court stayed the involuntary case.  *Id.*  After the Chapter 11 case's completion, Paradise brought suit against one of the creditors responsible for filing the involuntary case, the Bank of Novia Scotia,

---

[8]    To be clear, this is not an express-preemption case.  Neither party has cited, and research has not identified, a relevant statute.  Also, notwithstanding the Ninth Circuit's rationale in *In re Miles*, neither party seeks complete preemption here.  Neither Morrison Sund nor Stursberg suggest that Stursberg's claims could or should be adjudicated in this case as if they arise under § 303(i).

asserting federal and state damages claims arising from the involuntary case's filing.  *Id.*
at 49.  Relevant here, the Bank argued that Paradise's claims failed because "the remedy
provided by § 303(i)(2) of the Code against petitioners who have filed in bad faith is an
exclusive one."  *Id.*  The court rejected this argument, but its reasoning was fact-specific:

> Under § 706 of the Code a debtor, with exceptions not here
> relevant, is entitled as of right to convert a Chapter 7
> proceeding to a Chapter 11 proceeding at any time.  Frequently,
> it is in the debtor's best interest to convert without delay and
> commence its reorganization as promptly as possible.  If we
> were to accept the Bank's arguments regarding the exclusivity
> of § 303(i)(2), we would place a debtor in this situation on the
> horns of a dilemma by requiring it to choose between two
> unattractive alternatives.  One alternative would be to pay the
> price of indefinitely postponing the conversion in order to
> litigate the legal sufficiency of the petition, the bad faith of the
> petition, and the amount of its damages in the Chapter 7 case.
> The other alternative would be to convert immediately in order
> to secure the Chapter 11 advantages the debtor was intended to
> have but thereby release its claims against the petitioner who
> allegedly petitioned in bad faith.  We think Congress did not
> intend that a debtor should have to pay this kind of penalty for
> exercising its statutory right to convert promptly.  Accordingly,
> we decline to hold that § 303(i)(2) is an exclusive remedy in a
> situation of this kind.

*Id.* at 52.  The Third Circuit's analysis suggests *Paradise Hotel* should be confined to its
apparently unique facts, and other courts have endorsed this understanding.  *See In re John
Richards Homes Bldg. Co.,* 298 B.R. at 598 (citing *Mason*, 672 A.2d at 708).  Stursberg
did not confront the *Paradise Hotel* dilemma.

Stursberg suggests he encountered a different, *Paradise*-like problem.  As Stursberg
describes things, he faced "the Hobson's choice of withdrawing his dismissal motion since
§ 303(i) damages are not available when the petitioner consents to dismissal or allowing

the dismissal and having no remedy." Pl.'s Mem. in Opp'n at 16.  This understanding of § 303(i) is not correct.  Section 303(i) does not say that a debtor loses his right to seek relief when merely he "consents to dismissal."  The debtor must also "waive the right to judgment under" § 303(i)'s remedial provisions.  Stursberg didn't do that.  He sought attorneys' fees and other relief under § 303(i) before Judge Sanberg.  Following other bankruptcy courts within the Eighth Circuit, Judge Sanberg denied the motion.  Regardless, Stursberg's pursuit of § 303(i) relief shows that, at least at that time, Stursberg encountered no dilemma.[9]

If it were not confined to its facts, *Paradise Hotel* would remain unpersuasive for a different reason.  After quoting § 303(i), the court observed that the statute "does not require that all such claims be so adjudicated, . . . and we know of no case which so holds." *Paradise Hotel*, 842 F.2d at 52.  As noted, however, in the almost 35 years since *Paradise Hotel* was decided, there is an almost uniform consensus that § 303(i) preempts a debtor's state law damages claims against petitioning creditors arising from the involuntary case's filing.

The other post-*Paradise Hotel* Third Circuit cases Stursberg cites are not persuasive, either.  In *Rosenberg v. DVI Receivables XVII, LLC*, the debtor, Rosenberg, recovered damages under § 303(i) against several entities that filed an involuntary bankruptcy petition against him.  835 F.3d 414, 417 (3rd Cir. 2016).  Later, the debtor's

---

[9]     Stursberg argues that § 303(i) remedies are unavailable when a case is "dismissed under Section 305." Pl.'s Mem. in Opp'n at 16.  It is true that Judge Sanberg reached that conclusion, but there are cases going the other way.  *E.g.*, *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 248–53 (B.A.P. 9th Cir. 2007).

wife and several trusts affiliated with the debtor brought a federal lawsuit "to recover damages stemming from the involuntary bankruptcy petitions filed against" the debtor. *Id.* The district court found that the plaintiffs' state-law tort claims were preempted by § 303(i). *Id.* at 417–18. But the plaintiffs in the federal lawsuit were not "debtors," so they could not recover damages under § 303(i). *Id.* at 418. The Third Circuit therefore reversed, noting that Congress could not have intended in the Bankruptcy Code to preempt the field of state tort law "for non-debtors based on the filing of an involuntary bankruptcy petition." *Id.* at 419. The appeals court expressly declined to determine, however, "whether similar state law claims brought by debtors would be subject to preemption." *Id.* at 419 n.1. *Robbins v. Fulton Bank, N.A.* involved state-law tort claims brought by a debtor against a creditor who filed a frivolous adversary proceeding in the debtor's voluntary bankruptcy matter. No. 17-cv-2763, 2018 WL 1693386, at *1 (E.D. Pa. Apr. 6, 2018). The creditor argued that federal bankruptcy law preempted the field of all state claims arising out of bankruptcy proceedings, noting that the Pennsylvania Supreme Court had so held. *Id.* at *2–3 (citing *Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875 (Pa. 2006)). But because the Third Circuit Court of Appeals reached a different conclusion in *Paradise Hotel* and *Rosenberg*, finding federal bankruptcy law did not preempt certain state claims in some situations, the *Robbins* court had little difficulty concluding that the debtor's argument of complete field preemption was without merit. *Id.* at *3. Stursberg's claims in this case are materially different from the claims in *Rosenberg* and *Robbins*: Stursberg is a debtor against whom a § 303 involuntary case was filed, and he seeks damages specifically for that case's filing.

\*

As noted, Stursberg has filed no motion seeking leave to amend in compliance with D. Minn. LR 15.1.  Also, Stursberg has not suggested, and it is difficult to see, how he might amend his Complaint to get past the preemption problem.  For these reasons, the dismissal will be with prejudice.

### ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that:

1.     Defendant Morrison Sund PLLC's Motion to Dismiss [ECF No. 24] is **GRANTED**.

2.     Defendants Morrison Sund PLLC and Matthew Burton's Amended Motion to Dismiss [ECF No. 32] is **GRANTED**.

3.     This action is **DISMISSED WITH PREJUDICE**.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 3, 2023                                    s/ Eric C. Tostrud
                                                                   Eric C. Tostrud
                                                                   United States District Court